UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

BLACKROCK BALANCED CAPITAL
PORTFOLIO, et al.,

               **Plaintiffs,**

      - against -

HSBC BANK USA, NATIONAL
ASSOCIATION, et al.,

               **Defendants.**
------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3|31|15
```

**OPINION AND ORDER**

**14 Civ. 9366 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

       This action arises out of the alleged failure of HSBC Bank USA,

National Association ("HSBC") to discharge its duties as a trustee for 271

residential mortgage backed securities ("RMBS") trusts.[1]  These trusts include  244

individual Pooling and Servicing Agreements (the "PSA Trusts") and 27 Indenture

Trusts.[2]  This action was originally filed in state court, but removed by plaintiffs to

federal court under the Trust Indenture Act of 1939 ("TIA").[3]  After the Second

---

[1]      *See* Complaint ("Compl.") at 25.

[2]      *See id.* at 25.

[3]      *See* Plaintiffs' Motion for Voluntary Dismissal Filed in State Court,
Ex. 7 to 12/13/14 Declaration of George A. Borden, Defendants' Counsel.

Circuit determined that the PSA Trusts were not governed by the TIA, both parties agreed that neither the TIA nor the Class Action Fairness Act conferred federal jurisdiction over claims arising out of those trusts.[4]  Because of this, defendants filed a motion to dismiss all claims arising out of the PSA Trusts under Rule 12(b)(1) for lack of subject-matter jurisdiction.[5]  Plaintiffs then filed an opposition brief arguing that this Court has supplemental jurisdiction over their state law claims arising out of the PSA Trusts, because the claims arose under a common nucleus of facts as those arising from the Indenture Trusts.[6]  For the following reasons, defendants' motion is DENIED.

## II.    BACKGROUND

### A.    PSA and Indenture Trusts

Both the PSA Trusts and Indenture Trusts are species of RMBS trusts. In general, these trusts begin when a sponsor packages together residential mortgages which it originated or bought from other financial institutions.[7]  The

---

[4]      *See* Transcript of Conference on January 6, 2015, at 9.  *See also Retirement Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon,* 775 F.3d 154 (2d Cir. 2014).

[5]      *See* Defendants' Motion to Dismiss.

[6]      *See* Plaintiffs' Opposition to Defendants' Motion to Dismiss for Lack of Jurisdiction ("Pl. Opp.").

[7]      *See* Compl. at 36.

sponsor then transfers these loans to a depositor, who segments the cash flows and investment risks into different levels of investment, or "tranches."[8]  The sponsor, in its capacity as a "seller," also makes certain representations and warranties to the depositor regarding the quality and risk of the mortgage loans.[9]  The depositor then transfers the pool to an issuing trust (in this case, HSBC), who uses it as collateral for the RMBS that will be issued and sold to the investors.[10]  During this process, the sponsor also appoints a servicer, who collects payments from and monitors the underlying borrowers.[11]  The servicer then funnels these payments to the trustee, who in turn passes them along to the investors.[12]

A PSA Trust is formed when mortgage loans are pooled into a trust and certificates representing ownership interest in the trust are purchased by investors.[13]  Because these ownership interests are (1) a "certificate of interest or participation" in (2) "two or more securities" that (3) "hav[e] substantially different

---

[8]     *See id.*

[9]     *See id.* at 38.

[10]    *See id.* at 37.

[11]    *See id.*

[12]    *See id.*

[13]    Reply Memorandum in Support of HSBC Bank USA, N.A.'s Motion to Dismiss ("Def. Mem.") at 5.

rights and privileges," PSA Trusts are exempted from the TIA and are instead governed by New York State law.[14] Under the PSAs, HSBC is required to oversee and enforce the sellers' and servicers' obligations.[15] Furthermore, HSBC is required to give prompt, written notice to all parties to the PSA upon discovery of a breach or misrepresentation of a seller.[16] The PSAs also impose a heightened obligation on HSBC upon an "Event of Default."[17] This occurs when a responsible officer of HSBC discovers that a servicer has breached some obligation, such as a failure to observe or perform any covenant.[18] Upon the Event of Default, HSBC is typically required to give written notice to all parties and exercise "the rights and powers vested in it by the PSA using the same degree of care and skill as a prudent person would exercise or use."[19]

An Indenture Trust is a specially created entity known as a Delaware Statutory trust that accepts a pool of mortgage loans and issues debt on its own

---

[14]   15 U.S.C. § 77ddd(a)(2). *See also Retirement Bd. of the Policemen's Annuity and Ben. Fund of the City*, 775 F.3d at 166-70.

[15]   *See* Compl. at 40.

[16]   *See id.* at 42.

[17]   *Id.*

[18]   *See id.* at 43.

[19]   *Id.*

-4-

behalf.[20]   Neither party contests that an Indenture Trust is governed by the TIA under federal law.[21]   The specially created trust makes a contract (known as the "Indenture") with HSBC, who holds the assets of the trust in trust for the investors.[22]   The Indenture places duties upon the trust to enforce any rights of the mortgage loans and preserve and defend the title of the trust estate.[23]   HSBC, as the Indenture Trustee, must promptly notify all parties if it has actual knowledge of a breach of representations or warranty by the sellers.[24]   Under the Indenture, HSBC also takes on additional obligations when it has actual knowledge of an "Event of Default."[25]   Under the Indenture, this occurs when the trust fails to perform some covenant or agreement made in the Indenture and the default is not cured in a fixed amount of time.[26]   Only the conduct of the trust can constitute an Indenture Trust Event of Default.[27]   However, under the Indenture, the trust is obligated to enforce

---

[20]     *See* Def. Mem. at 5.

[21]     *See id.* at 8.

[22]     *See* Compl. at 48.

[23]     *See id.*

[24]     *See id.* at 49.

[25]     *See id.*

[26]     *See id.*

[27]     *See id.*

the rights of the mortgage loans by policing servicer defaults and misrepresentations.[28]  Therefore, known and unremedied servicer defaults trigger an Event of Default under the Indenture Trust as well as the PSA Trust.[29]

These two types of trusts, though different, have many common characteristics.  Both the PSAs and the Indentures impose on HSBC four identical duties material to the present action.[30]  HSBC was required to (1) protect the trust, (2) ensure the trust took title to the mortgage loans, (3) enforce the sellers' repurchase obligations, and (4) take on certain duties upon an Event of Default.[31]  While an Event of Default is abstractly different in the PSA and Indenture Trust, in both cases HSBC's duties are triggered upon learning that a servicer has breached its obligations.[32]  HSBC used a similar set of policies and procedures, as well as the same officers and personnel, to oversee and manage both types of trusts.[33]  Eleven

---

[28]     *See id.*

[29]     *See id.  See also* Def. Mem. at 6.

[30]     *See id.* at 37-38.

[31]     *See id.* at 40-43, 48-50.

[32]     *See id.  See also Retirement Bd. of Policemen's Annuity & Ben. Fund of City of Chicago v. Bank of New York Mellon*, 914 F. Supp. 2d 422, 432 (S.D.N.Y. 2012) (*rev'd on other grounds*, *Retirement Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago,* 775 F.3d at 166).

[33]     *See* Compl. at 40.

of the twelve originators disclosed in the prospectus supplements for the Indenture

Trusts are also originators for the PSA Trusts, and five of the seven sponsors for

the Indenture Trusts are also sponsors for the PSA Trusts.[34]  Wells Fargo also

serves as master servicer for 26 of the 27 Indenture Trusts and for 221 of the 244

PSA Trusts.[35]

## III.   APPLICABLE LAW

### A.     Rule 12(b)(1) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert by

motion the defense that a court lacks subject-matter jurisdiction to hear a claim.[36]

Federal courts have limited subject-matter jurisdiction and may not entertain

matters when they do not have jurisdiction.[37]  "The plaintiff bears the burden of

proving subject-matter jurisdiction by a preponderance of the evidence."[38]  Courts

---

[34]      *See* 03/23/15 Supplemental Declaration of Plaintiffs' Attorney Timothy A. DeLange in Opposition to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction ("DeLange Aff.") at 2-4.

[35]      *See id.* at 5-10.

[36]      *See* Fed. R. Civ. P. 12.

[37]      *See In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 392 (S.D.N.Y. 2014) (citing *Purdue Pharma L.P. v. Kentucky,* 704 F.3d 208, 213 (2d Cir. 2013)).

[38]      *Al-Khazraji v. United States*, 519 Fed. App'x 711, 713 (2d Cir. 2013) (citing *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012) (quotation marks omitted)).

also have an "independent obligation to establish the existence of subject-matter

jurisdiction."[39]  In considering a motion to dismiss for lack of subject-matter

jurisdiction, the court must assume the truth of material facts alleged in the

complaint.[40]  In cases where the defendant challenges the factual basis of the

plaintiff's assertion of jurisdiction, the plaintiff must show jurisdiction

"affirmatively, and that showing is not made by drawing from the pleadings

inferences favorable to the party asserting it."[41]  In fact, "in dismissing a complaint

for lack of subject-matter jurisdiction under Rule 12(b)(1), a court may 'refer to

evidence outside the pleadings.'"[42]

    **B.**    **Supplemental Jurisdiction**

        If a court has original jurisdiction it may exercise supplemental

jurisdiction over "all other claims that are so related to claims in the action within

such original jurisdiction that they form part of the same case or controversy."[43]

---

[39]    *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d at 385.

[40]    *See Hijazi v. Permanent Mission of Saudi Arabia to United Nations*, 403 Fed. App'x 631, 632 (2d Cir. 2010).

[41]    *Jordan v. Verizon Corp.*, 391 Fed. App'x 10, 12 (2d Cir. 2010) (citing *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quotation marks omitted)).

[42]    *Burfeindt v. Postupack*, 509 Fed. App'x 65, 67 (2d Cir. 2013) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

[43]    28 U.S.C. § 1367(a) ("Section 1367(a)").

Claims arise under the same case or controversy when they "'derive from a common nucleus of operative fact' and are such that one would ordinarily expect them to be tried in one judicial proceeding."[44]  Thus, the exercise of supplemental jurisdiction is appropriate where "the facts underlying the federal and state claims substantially overlap . . . or where the presentation of [the] federal claim necessarily [brings] the facts underlying the state claim before the court."[45]  Conversely, supplemental jurisdiction is lacking where the federal and state claims rest on essentially unrelated facts.[46]  Supplemental jurisdiction is the "favored and normal course of action" that has been construed generously.[47]  "Pointing to differences among claims (*e.g.* different underlying facts, different defendants) does not help determine whether the claims are part of the same case or controversy.  Rather, the key question is whether the parties would ordinarily be expected to try all of those claims in one judicial proceeding given the common

---

[44]     *People ex rel. Abrams v. Terry*, 45 F.3d 17, 23 n.7 (2d Cir. 1995) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

[45]     *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000).

[46]     *See id*. at 704-05.

[47]     *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 254 (2d Cir. 1991).

threads running through those claims."[48]

## C.   Retaining Supplemental Jurisdiction

After Section 1367(a) is satisfied, a court must then determine whether, in its discretion, it should exercise supplemental jurisdiction.[49]  "Where section 1367(a) is satisfied, "the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c)."[50]  A district court may decide to refuse to exercise supplemental jurisdiction if (1) the state law claim raises a novel or complex issue of state law, (2) the state law claim substantially predominates over the federal claim, (3) the district court has dismissed all other claims over which it had federal jurisdiction, or (4) there are exceptional circumstances.[51]  Predominance relates to the type of the claim, not the number of claimants or amount of damages involved.[52]  "Courts in this circuit have found that state claims predominate over federal claims where the federal

---

[48]     *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 510 F. Supp. 2d 299, 324 (S.D.N.Y. 2007).

[49]     *See* 28 U.S.C. § 1367(c).

[50]     *Shahriar v. Smith & Wollensky Rest. Grp., Inc*., 659 F.3d 234, 245 (2d Cir. 2011) (citing *Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998)).

[51]     *See id.*

[52]     *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 162 (S.D.N.Y. 2008).

claims involve a technical or other issue that is peripheral to the state claims . . . and where the factual or legal analyses governing the federal and state claims are unrelated."[53]

When deciding whether to exercise supplemental jurisdiction, a federal court should consider and weigh the values of judicial economy, convenience, fairness, and comity.[54]  In order for a certain circumstance to be considered "exceptional," it must be "quite unusual" and federal courts "'must ensure that the reasons identified as 'compelling' are not deployed in circumstances that threaten this principle.'"[55]  "In providing that a district court 'may' decline to exercise such jurisdiction, [Section 1367(c)] is permissive rather than mandatory," and therefore a district court may retain jurisdiction over the

---

[53]     *SST Global Tech. LLC v. Chapman*, 270 F. Supp. 2d 444, 456 (S.D.N.Y. 2003) (citing *McConnell v. Costigan*, No. 00 Civ 4598, 2000 WL 1716273, at *5 (S.D.N.Y. Nov. 16, 2000); *Freer v. Mayer*, 796 F. Supp. 89, 94 (S.D.N.Y. 1992)).

[54]     *See City of Chicago v. International Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997) (holding that the exercise of pendent jurisdiction is a favored course of action).

[55]     *See Itar-Tass Russian News Agency*, 140 F.3d at 448 (quoting *Executive Software N. Am. Inc. v. United States Dist. Court*, 24 F.3d 1545, 1558 (9th Cir. 1994)).

action even if one or more factors are met.[56]

## III.   DISCUSSION

### A.   This Court Has Supplemental Jurisdiction Over the State Law Claims

Plaintiffs argue that because the 244 PSA Trusts fall under the "same nucleus of operative fact" as the twenty-seven Indenture Trusts, this Court has subject-matter jurisdiction over both.[57]  Both the Indenture and PSA Trusts contain substantially similar contract provisions and impose similar obligations on HSBC.[58]  It is simpler to adjudicate the meaning of these contractual provisions in a common forum.  Furthermore, deciding the meaning of these provisions together will reduce the risk of conflicting state and federal court interpretations, and therefore will avoid creating an unnecessary conflict.  After the meaning of the provisions are decided, plaintiffs will prove their claims under substantially similar agreements with substantially the same burden of proof.  Furthermore, though plaintiffs will still need to prove their claims loan-by-loan and trust-by-trust, the allegations arise from the common conduct of HSBC in systematically failing to

---

[56]       *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (citing *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998)).

[57]       Pl. Opp. at 8.

[58]       *See* Complaint at 40-43, 48-50.

perform its duties as a trustee.  This common thread supports the exercise of supplemental jurisdiction.

   The two types of trusts also have many overlapping parties, making it simpler and more logical for the claims arising out of them to be adjudicated together. The claims will likely require depositions of many of the same witnesses, given that HSBC's corporate trust department is responsible for administrating both types of trusts, regardless of whether they were PSA or Indenture Trusts.[59]  As noted, the vast majority of agreements and sponsors of the Indenture Trusts served in the same capacity for the PSA Trusts.[60]  Perhaps most importantly, Wells Fargo served as master servicer for 26 of the 27 Indenture Trusts as well as for 221 of 244 of the PSA Trusts.[61]  Although there are parties who worked with the PSA Trusts, and not the Indenture Trusts, this does not remove the state claims from the ambit of the federal court's supplemental jurisdiction.  Rather, it is the *overlap* amongst the parties which establishes the common thread.  It would be cumbersome to conduct parallel depositions and task two courts with making findings of fact when the same parties were involved in most of the claims.

---

[59]  *See id.* at 40.

[60]  *See* DeLange Aff. at 2-4.

[61]  *See id.* at 5-10.

**B.      This Court Will Retain Supplemental Jurisdiction Over Plaintiffs'
State Law Claims**

There is no reason for this Court not to exercise its supplemental

jurisdiction.  Neither party seriously argues that plaintiffs' garden variety contract

and breach of fiduciary duty claims raise novel or complex issues of state law.

Furthermore, this Court still must exercise its original jurisdiction over the

Indenture Trust claims.

HSBC claims that plaintiffs' state law claims predominate over their

federal law claims.  However, while there are certainly more state claims then

federal claims, these claims are of the same type.  In adjudicating the TIA claim for

the Indenture Trusts, this Court must determine issues relating to (1) HSBC's

duties to enforce Seller and servicing violations; (2) whether plaintiffs can prove

that HSBC discovered Seller breaches of representations and warranties and

servicing violations, the occurrence of an Event of Default, and HSBC's

knowledge of an Event of Default; and (3) whether HSBC provided notice to

holders and acted prudently subsequent to an Event of Default.  Adjudicating the

PSA Trust claims will involve the interpretation of substantially similar contract

provisions, arising from the same set of operative facts.  While defendants argue

that the number of PSA state law contract claims show predominance, these claims

do not raise "factual and legal issues" that are "wholly distinct" and "more

-14-

complex[,] require more judicial resources to adjudicate[, or] are more salient in the case as a whole than the federal law claims."[62]

There are also no exceptional or compelling circumstances which justify declining jurisdiction.  Both the state law claims arising from the PSA Trusts and the federal law claims arising from the Indenture Trusts derive from similar legal theories.  The mere number of trusts is not a decisive consideration.  This Court has experience in adjudicating large, complex litigation and is equipped to manage the trust-by-trust determination of liability in one action.  Declining to exercise supplemental jurisdiction would actually increase the complexity of the action by creating parallel proceedings regarding one subject matter.  Furthermore, the fact that plaintiffs originally filed the action in state court is no reason to decline supplemental jurisdiction.  Thus, there are no compelling reasons for declining to exercise jurisdiction over the PSA Trust claims.

IV.   CONCLUSION

For the foregoing reasons, HSBC's motion to dismiss based on lack of subject matter jurisdiction is DENIED.  The Clerk of the Court is directed to close this motion [Docket No. 33].

---

[62]     *Jager v. Boston Rd. Auto Mall, Inc.*, No. 14 Civ. 614, 2015 WL 235342, at *5 (S.D.N.Y. Jan. 16, 2015) (quoting *Diven v. Amalgamated Transit Union Int'l & Local 689*, 38 F.3d 598, 601 (D.C. Cir. 1994)).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March ⁣/, 2015

**-Appearances -**

**For Plaintiffs:**

(212) 506-2500

Blair A. Nicholas, Esq.
Benjamin Galdston, Esq.
David R. Kaplan, Esq.
Lucas E. Gilmore, Esq.
Timothy A. Delange, Esq.
Bernstein Litowitz Berger & Grossmann
LLP
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
(858) 793-0070

Jeroen Van Kwawegen, Esq.
Hannah E. Ross, Esq.
Bernstein Litowitz Berger & Grossmann
LLP
1285 Avenue of the Americas, 38th Fl.
New York, NY 10019
(212) 554-1400

Jennifer M. Rosa, Esq.
Mayer Brown LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 506-2500

**For Defendant:**

Andrew W. Rudge, Esq.
George A. Borden, Esq.
Kevin M. Hodges, Esq.
Vidya Atre Mirmira, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

Michael Orth Ware, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY 10019