# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

ATTORNEYS AT LAW

NEW YORK • CALIFORNIA • LOUISIANA • ILLINOIS

BENJAMIN GALDSTON
beng@blbglaw.com
(858) 720-3188

August 25, 2015

**VIA ECF AND HAND DELIVERY**

Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, NY 10007

      Re:    *BlackRock Balanced Capital Portfolio (FI), et al. v. HSBC Bank USA, N.A.*, No. 14-cv-9366; *Royal Park Invs. SA/NV, et al. v. HSBC Bank USA, N.A.*, No. 14-cv-8175; *Phoenix Light SF Ltd., et al. v. HSBC Bank USA, N.A.*, No. 14-cv-10101; *Nat'l Credit Union Admin. Bd., et al. v. HSBC Bank USA, N.A.*, No. 15-cv-2144

Dear Judge Scheindlin:

      On behalf of Plaintiffs in the above-referenced actions, I write to request the Court compel defendant HSBC to conduct a reasonable search for documents responsive to Plaintiffs' document requests.[1] HSBC improperly limits its search to its Corporate Trust Department, thereby withholding highly probative evidence of HSBC's knowledge of Seller and Servicer breaches and HSBC's breach of its duty to avoid conflicts of interest within HSBC's servicing, securitization and origination divisions.

      As the Court held, Plaintiffs sufficiently alleged HSBC learned of defective loans in the Trusts through, among other sources, "reports and litigation concerning common originators' systemic abandonment of underwriting standards, as well as common Sponsors' pervasive disregard of prudent securitization standards" and "litigation contending the specific loans in some of the specific Trusts had been misrepresented." *Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n*, 2015 WL 3466121, at *7 (S.D.N.Y. June 1, 2015). For example, the FHFA coordinated litigation against HSBC and 17 other RMBS underwriters uncovered evidence of systemic and pervasive Seller breaches of representations and warranties through a reunderwriting of thousands of loan files, including loan files within 19 of the Trusts (2 of which are Bellwether Trusts).[2] Similarly, Plaintiffs sufficiently pled HSBC's actual knowledge of Servicer defaults, including because HSBC "was the target of government investigations, prosecutions, and settlements with

---

[1] The parties met and conferred extensively both telephonically and in correspondence but have reached an impasse.

[2] These two Bellwether Trusts are ACE 2005-AG1 and NHELI 2007-1.

Honorable Shira A. Scheindlin
August 25, 2015
Page 2

---

many of the Servicers to the Trusts for the same alleged improper servicing practices." *Id*. at *10. Plaintiffs are informed and believe that these proceedings similarly involved loans within the Trusts at issue, including Bellwether Trusts. Documents relevant to these proceedings indisputably reside within HSBC's securitization and servicing divisions.

HSBC's securitization and servicing divisions also possess documents relevant to Plaintiffs' claim that HSBC breached its duty to avoid conflicts of interest. Plaintiffs allege that, in addition to HSBC's financial interest in cultivating recurring business with the various banks that served as Master Servicers for the Trusts, "HSBC was involved with the Master Servicers' misconduct, helped facilitate it, or looked the other way in these cases so that the Master Servicers would return the favor when the roles were reversed." *Id*. at *13. Plaintiffs further allege that HSBC (and its affiliates), in its capacity as a loan seller to other trusts in which the Sellers and Servicers had roles as trustee or servicer, sold defective loans for which HSBC faced repurchase liability.[3] Consequently, HSBC, as trustee for the Trusts, failed to take action against the Trusts' Sellers and Servicers because doing so would have exposed HSBC to enormous liability for its own misconduct as a servicer, sponsor and originator. Plaintiffs are entitled to develop evidence of such *quid pro quo* arrangements with the Sellers and Servicers through HSBC's origination, securitization and servicing divisions.

Plaintiffs' document requests seek information directly relevant to the issues of HSBC's knowledge and conflicts of interest. Under Fed. R. Civ. P. 34(a), HSBC must perform a reasonable search for responsive documents within its possession, custody or control. While HSBC does not dispute that it has access to responsive documents within its servicing, securitization and origination divisions, HSBC refuses to search beyond its Corporate Trust Department based on "relevance" and burden objections.

HSBC's relevance objection is without merit. The Governing Agreements speak of the Trustee's "discovery" and the Trustee's "actual knowledge," but define the term "Trustee" broadly as "HSBC Bank USA, N.A." and not solely HSBC's Corporate Trust Department. HSBC Bank USA, N.A. is also the entity involved in the numerous investigations and actions concerning Loans in the Trusts and common Sellers and Servicers. DBALT 2006-AR5, PSA §1.1. As the Court recognized, the knowledge HSBC obtained through its servicing, securitization and origination divisions on these matters is properly the subject of discovery. *Id*. at *7 ("*How* HSBC gained this actual knowledge, or whether in fact it had actual knowledge, may be determined through discovery.") (emphasis in original).

HSBC claims that, assuming it discovered Seller breaches and had actual knowledge of Servicer defaults, an exculpatory provision in the Governing Agreements immunizes it from liability. In particular, the Governing Agreements state that HSBC shall not be charged with or "deemed to have knowledge of [an Event of Default] unless a Responsible Officer of the Trustee

---

[3] *See*, *e.g.*, BR Amended Complaint [ECF No. 89] at ¶¶14-15, 494-97.

assigned to and working in the Trustee's Corporate Trust Office obtains actual knowledge thereof or unless written notice of any event which is in fact such [an Event of Default] is received by the Trustee and such notice references the Certificates, the Trust or this Agreement." *See, e.g.*, DBALT 2006-AR5, PSA § 8.1(a). This contention is frivolous.

Preliminarily, this provision only pertains to circumstances where an Event of Default has occurred. It does not deal with circumstances prior to an Event of Default, when HSBC has a duty to, among other things, promptly provide notice of seller breaches it discovered and enforce the responsible seller's repurchase obligations, or send a notice to cure to a responsible servicer upon learning of a material servicer breach.

More fundamentally, the provision only pertains to circumstances under which HSBC may be "charged with knowledge" of a default, a phrase commonly understood to refer to the imputation of constructive knowledge in circumstances where actual knowledge is absent. *BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 397 (S.D.N.Y. 2011), citing *Wash. Nat'l Ins. Co. v. Morgan Stanley & Co., Inc.*, 1999 WL 461796, at *9 (S.D.N.Y. July 2, 1999) ("However, the issue is whether WNIC can be charged with knowledge of these articles even if no one at WNIC actually read them."). Thus, HSBC's mischaracterization of this provision ignores the common meaning of the phrase "charged with knowledge."

Further, the Governing Agreements provide that HSBC is not insulated "from liability for its own negligent action, its own negligent failure to act or its own misconduct." *See, e.g.*, DBALT 2006-AR5, PSA § 9.1. HSBC's failure to inform responsible officers within the Corporate Trust Department of Seller and Servicer defaults, of which Plaintiffs alleges HSBC had actual knowledge, unquestionably gives rise to liability for HSBC's negligence.

Finally, HSBC provides no support for its burden objection and has declined Plaintiffs' several requests for specific information (*e.g.*, volume of documents and electronic information; number of custodians). *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 102 (S.D.N.Y. 2013) (general unsupported burden objections are insufficient to exclude discovery).

Plaintiffs respectfully request the Court order HSBC to conduct a reasonable search for responsive documents, including within its origination, securitization and servicing divisions, and produce such documents by November 20, 2015.

Respectfully submitted,

Benjamin Galdston