LAW OFFICES
# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

EDWARD REDDINGTON
(202) 434-5063
ereddington@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

August 31, 2015

<u>Via ECF and E-mail</u>

Honorable Shira A. Scheindlin
United States District Court, Southern District of New York

    Re:    <u>Response to August 25, 2015 Letters</u>

Dear Judge Scheindlin:

    Plaintiffs have sued HSBC Bank USA, N.A. ("HSBC") as indenture trustee in 283 specific trusts (the "at-issue trusts"). Plaintiffs' claims are based on duties purportedly owed as trustee in the at-issue trusts. At the Court's direction, discovery is first proceeding in 24 bellwether trusts. Against this backdrop, HSBC informed Plaintiffs that documents relevant to their claims would be in its Corporate Trust and Loan Agency ("CTLA") department.[1] CTLA is the department that performs trustee services in the at-issue trusts. Moreover, no other department in HSBC performs trustee duties in RMBS deals. Plaintiffs, however, move to compel documents from separate HSBC departments that have nothing to do with trustee services or the at-issue trusts. More specifically, Plaintiffs seek documents relating to HSBC's "origination, securitization and servicing divisions." These divisions do not overlap with CTLA, do not share personnel or facilities with CTLA, do not perform trustee services, and do not perform any role in the at-issue trusts. Plaintiffs' request should be denied.

**I.    The Scope of HSBC's Proposed Search is Reasonable**

    A party is only required to do a reasonable search for documents. Fed. R. Civ. P. 26(b); *see also, e.g., Moll v. Telesector Res. Grp., Inc.*, 2010 WL 4642931, at *3 (W.D.N.Y. Nov. 17, 2010) (denying motion to compel where defendant had performed a reasonable search), *vacated in part on other grounds*, 760 F.3d 198 (2d Cir. 2014). Moreover, discovery is not intended to be a fishing expedition. Here, HSBC's proposed search is reasonable. The *only role* HSBC performed in the at-issue trusts was *indenture trustee*; Plaintiffs have sued HSBC in that role. CTLA is the only department in HSBC that performs RMBS trustee services. And, HSBC has attempted to reasonably identify, preserve, and collect information from relevant CTLA employees.

---

[1] While the parties continue to meet and confer, to date Plaintiffs have only identified general locations, not specific departments, in their clients they intend to search.

WILLIAMS & CONNOLLY LLP

Honorable Shira A. Scheindlin
August 31, 2015
Page 2

In contrast, Plaintiffs' proposed discovery into separate departments is not reasonable. HSBC did not service a single loan in the at-issue trusts; nor did HSBC sponsor any of the at-issue trusts. And, because Plaintiffs' claims against a trustee are required to be trust and loan specific, HSBC's purported activities as originator, sponsor, or servicer in unrelated trusts and for unrelated loans would not support their claims against the trustee.

## II.    Plaintiffs Seek Documents Not Relevant to Their Claims

Discoverable documents must be relevant to the claims and defenses. There is no right to obtain irrelevant documents. *See, e.g.*, *King Cnty., Wash. v. IKB Deutsche Industriebank AG*, 2012 WL 3553775, at *3-4 (S.D.N.Y. Aug. 17, 2012) (Scheindlin, J.) (denying discovery where moving party failed to show relevance). Plaintiffs rely on their conflict of interest claim to justify seeking documents outside the trustee department. The Court addressed this claim in its June 1, 2015 Order, rejecting some allegations, but finding Plaintiffs had sufficiently pled a theory that the trustee "helped facilitate" Master Servicer misconduct or "looked the other way in these cases," so that the Master Servicers "would return the favor when the roles were reversed." *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 2015 WL 3466121, at *13 (S.D.N.Y. June 1, 2015) ("June 1 Order"). Thus, Plaintiffs' conflict of interest allegation relates not to HSBC's securitization or servicing activities in unrelated trusts, but instead relates to the trustee's alleged relationship with Master Servicers in at-issue trusts. For the 24 bellwether trusts, Wells Fargo is the Master Servicer. Plaintiffs have subpoenaed Wells Fargo. And, HSBC has confirmed that it will do a reasonable search of its trustee department for documents relevant to Plaintiffs' conflict of interest claim. Documents held by separate departments in HSBC will not shed light on the trustee's purported relationship with Master Servicers.

In an effort to avoid this logic, Plaintiffs suggest in their August 25 letter that the conflict arose in HSBC's separate securitization and servicing departments, not in the trustee department. This theory does not support the discovery they seek. Plaintiffs' breach of duty claim is based on the trustee's alleged duty to avoid conflicts of interest. To advance their conflict claim, Plaintiffs hypothesize a *quid pro quo*—an agreement by the trustee to overlook Master Servicer misconduct. This theory presumes trustee employees participated in this *quid pro quo*. If not, there would be no reason for trustee employees to act or not act in a manner that created a conflict. Thus, there is no conflict unless relevant CTLA employees acted or refrained from acting in support of the *quid pro quo*. And, because HSBC's securitization and servicing departments had no role in the at-issue trusts and no duties as trustee, employees in those separate departments would have no basis to know what the master servicers were doing in the at-issue trusts or what actions were required of the trustee in those trusts. Accordingly, CTLA is the relevant department to search under Plaintiffs' conflict theory.

## III.   Plaintiffs' Arguments about Knowledge and the Trustee Are Inconsistent with Plaintiffs' Burden and the Governing Agreements

The obligations of indenture trustees in RMBS trusts are very limited. *See, e.g.*, *Bank of N.Y. v. Tyco Int'l Grp., S.A.*, 545 F. Supp. 2d 312, 324 n. 79 (S.D.N.Y. 2008) (citing *Meckel v.*

...

WILLIAMS & CONNOLLY LLP

Honorable Shira A. Scheindlin
August 31, 2015
Page 3

*Cont'l Res. Co.*, 758 F.2d 811, 816 (2d Cir. 1985)).  And, Plaintiffs cannot rely on generic allegations or "pervasive breach" to prove their case. *See Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 162 (2d Cir. 2014) (noting "even proof that [the indenture trustee] *always* failed to act when it was required to do so would not prove their case"); *MASTR Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS Real Estate Sec. Inc.*, 2015 WL 764665, at *10-12 (S.D.N.Y. Jan. 9, 2015) (rejecting "pervasive breach" as fundamentally inconsistent with the governing agreements).  Instead, Plaintiffs must prove their case "loan by loan and trust by trust." June 1 Order at *6 & *10; *see also Policemen's Annuity*, 775 F.3d at 162; DBALT 2006-AR5 PSA § 8.1(a) ("[T]he Trustee shall not be deemed to have knowledge of a[n] . . . Event of Default unless a Responsible Officer of the Trustee assigned to and working in the Trustee's Corporate Trust Office has actual knowledge thereof.").

Plaintiffs try to side-step the trustee's limited duties and their burden to prove actual knowledge by an officer in the trust department by arguing the Governing Agreements define "Trustee" as HSBC Bank USA, N.A. and suggesting the provision that sets forth the actual knowledge standard really means constructive knowledge.  Plaintiffs' novel characterizations are unpersuasive.  The Governing Agreements generally define the relevant corporate trust office as the "designated office of the Trustee . . . at which at any particular time its corporate trustee business with respect to this Agreement is administered." *See, e.g.*, DBALT 2006-AR5 PSA § 1.01 (definition of "Corporate Trust Office").  For HSBC, this is CTLA and nowhere else.  The Governing Agreements also generally provide that the Trustee shall not have notice of any default "unless a Responsible Officer of the Trustee has actual knowledge thereof or unless written notice of any event which is in fact such a default is received by the Trustee at the Corporate Trust Office." *See, e.g.*, DBALT 2006-AR5 PSA § 9.2.  And, this Court previously has noted that Plaintiffs must "prove that HSBC had actual knowledge regarding the loans at issue here." June 1 Order at *7.  Here, the relevant office is CTLA, and the relevant loans are those in the at-issue trusts.  Thus, Plaintiffs' novel arguments about knowledge or the identity of the trustee do not support their requested discovery.

**IV.     Plaintiffs' Request is Overly Broad and Burdensome**

Finally, to facilitate discovery in a large and complicated case, the parties are first pursuing discovery in 24 bellwether trusts.  HSBC's securitization and servicing departments performed no role in any of the at-issue trusts, including the bellwether trusts.  Plaintiffs' request for securitization and servicing documents implicates separate trusts for which HSBC is not trustee, employees who do not perform trustee duties, and tens of thousands of loans not in the trusts upon which Plaintiffs sue.  Thus, Plaintiffs' request disregards the bellwether process and unnecessarily would increase discovery time, volume, and cost.

For the foregoing reasons, HSBC respectfully requests the Court deny Plaintiffs' motion.

WILLIAMS & CONNOLLY LLP

Honorable Shira A. Scheindlin
August 31, 2015
Page 4

                Sincerely,

                Edward C. Reddington

cc:  Counsel for all parties via ECF