January 22, 2016

**VIA EMAIL and HAND DELIVERY**

Honorable Sarah Netburn
Thurgood Marshall Courthouse
United States District Court
40 Foley Square, Room 430
New York, New York 10007

      Re:    *Royal Park Investments SA/NV v. HSBC Bank USA, N.A.*, No. 14-cv-08175-SAS-SN; *BlackRock Balanced Capital Portfolio (FI), et al. v. HSBC Bank USA, N.A.*, No. 14-cv-09366-SAS-SN; *Phoenix Light SF Limited, et al. v. HSBC Bank USA, N.A.*, No. 14-cv-10101-SAS-SN; *National Credit Union Administration Board, et al. v. HSBC Bank USA, N.A.*, No. 15-cv-02144-SAS-SN

Dear Judge Netburn,

In accordance with the Court's January 7, 2016 Order (ECF No. 127), the parties respectfully submit this joint letter describing the presently outstanding discovery disputes.

**I.**      **Plaintiffs' Positions**

      **A.**      **HSBC's Continued Violation Of The Court's Orders Compelling Disclosure Of Its Origination, Securitization, And Servicing Personnel**

The Court has thrice ordered HSBC to disclose "full organizational charts" or information sufficient to understand the structure and personnel in its origination, securitization, and servicing divisions for January 1, 2010 through the present so that Plaintiffs may select additional custodians, including a "head and one to three deputies per department." HSBC still has not provided such information.

      **B.**      **HSBC's Refusal To Include Additional Searches Selected By Plaintiffs**

In accordance with the Court's direction at the January 6 conference, Plaintiffs identified search nos. 53 and 54 from their November 20 proposal as two additional searches to be applied to ESI. HSBC refuses to include these searches, claiming the searches will require review of over 600,000 documents, including purportedly "irrelevant" materials – none of which HSBC has shared with Plaintiffs.

      C.      **Additional Proposed HSBC Custodians**

Plaintiffs identified proposed additional HSBC custodians beginning October 10, 2015 through January 8, 2016; however, HSBC refuses to provide substantive biographical information or add any custodians. Plaintiffs request the Court compel HSBC to provide the requested information.

Additionally, based on publicly available information and documents produced by HSBC thus far, Plaintiffs respectfully submit that good cause exists to believe **Irene Dorner**, President and CEO, and **Stuart Alderoty**, Senior Executive Vice President and General Counsel, are reasonably likely to have relevant, responsive, non-privileged information concerning HSBC's (i) discovery of seller breaches of representations and warranties, (ii) actual knowledge of servicer defaults; and (iii) conflicts of interest. Accordingly, Dorner and Alderoty are appropriate HSBC custodians.

      D.      **HSBC's Request For Additional Plaintiff Custodians**

**BlackRock Plaintiffs**: Plaintiffs have agreed to search **128** custodians. HSBC has requested, and Plaintiffs have provided, information concerning more than 150 additional individuals, including **67** individuals HSBC added following the January 6 conference. Plaintiffs have consistently provided information to HSBC regarding the roles and responsibilities of these individuals, including why they were not involved in the RMBS transactions at issue and why they are not reasonably likely to have relevant, responsive information.

Consistent with the Court's suggestion that if any additional individuals were to be added to Plaintiffs' custodian list, that number would be minimal, Plaintiffs are prepared to add a limited number of additional custodians. HSBC, however, continues to insist upon an unreasonable and disproportional number of Plaintiff custodians. HSBC recently demanded the inclusion of at least **72** additional custodians from DZ Bank, Kore Advisors, Sealink and PIMCO, alone.

**NCUA Plaintiffs:** HSBC has requested 12 additional custodians from one of the five failed corporate credit unions based on the fact that the individuals were defendants in a lawsuit brought by NCUA related to the failure of that credit union. NCUA does not believe that those individuals are likely to have relevant and responsive documents that are not captured by its ongoing searches of other custodians and shared locations. The parties have not reached an agreement on this issue.

      E.      **Documents Produced By HSBC In Related RMBS Proceedings**

NCUA has requested that HSBC apply the parties' agreed-upon search terms to HSBC's document production in *FHFA v. HSBC North America Holdings, Inc., et al.*, No. 11-cv-06189 (S.D.N.Y.), and produce the results of that search here. The parties continue to meet and confer on this issue.

Honorable Sarah Netburn
January 22, 2016
Page 3

## II. Defendant's Positions

HSBC believes the issues raised in this letter with respect to Plaintiffs' document custodians will require more than 30 minutes to address and cannot be adequately discussed and resolved in a telephonic conference. Accordingly, HSBC requests the opportunity to appear in person to discuss these issues.

### A. Plaintiffs' Custodians

Since the January 6 hearing, the parties have met and conferred regarding custodians for five plaintiff groups (*BlackRock* plaintiffs PIMCO, DZ Bank, Kore, and Sealink, and *NCUA* plaintiff WesCorp). Following those meet and confers, Plaintiffs still have refused to offer any additional custodians. The parties continue to meet and confer, but HSBC believes impasse has been reached with respect to PIMCO, DZ Bank, Kore, and WesCorp. HSBC requests those entities be compelled to provide additional relevant custodians described below.[1]

#### 1. PIMCO Custodians

The majority of the Plaintiff entities in the *BlackRock* case are PIMCO funds, and 28 separate PIMCO funds are plaintiffs just in the Bellwether trusts. PIMCO routinely tells its many clients that their investments will be managed by experienced fund managers who are supported by teams of subject matter experts. Yet, PIMCO collectively has offered only 5 custodians for its 28 Bellwether funds. These proposed custodians do not cover all of PIMCO's relevant funds, and they do not cover all of the relevant time period, which spans more than a decade. In contrast, HSBC has offered 30 custodians, including 6 who are not even from its corporate trust department. As a comparison to other plaintiffs, BlackRock, which is similar in sophistication to PIMCO, has offered 37 custodians to cover only 5 Bellwether entities.

To date, PIMCO has offered only two Bellwether fund managers. Together, these two custodians manage only 4 of the 28 PIMCO Bellwether funds. Despite numerous requests, PIMCO has not provided HSBC with more specific information about its fund managers, investment committees, and other persons with relevant knowledge regarding the issues raised in Plaintiffs' complaint. PIMCO's approach has been to unilaterally declare that no one else is relevant. At the direction of the Court, PIMCO was required to identify for HSBC key employees from its fund advisors. Yet, after doing so, PIMCO did not offer a single new person from these advisors as a custodian. It is clear that this is a deliberate strategy and that PIMCO will not offer a reasonable and proportional number of relevant custodians unless ordered.

By reviewing only public information and the documents that PIMCO has produced to date (many of which are not responsive to the parties' proposed search terms but are instead a document

---

[1] HSBC reserves the right to seek additional custodians from these and other plaintiff entities based on information learned in discovery.

dump of largely irrelevant materials), HSBC has been able to identify 29 different individuals who had management responsibility for 21 of the PIMCO Bellwether funds during the relevant time period. With respect to the remaining 7 PIMCO Bellwether funds, HSBC has requested but PIMCO has not provided information on its fund managers. Each of these fund managers is responsible for the investment decisions of his or her funds and is certain to have relevant knowledge about key issues raised in the *BlackRock* complaint.

Notwithstanding the relevance of PIMCO's 29 fund managers and their many support personnel, at this time HSBC is only requesting to add a total of 18 PIMCO custodians, comprised of 9 fund managers and 9 RMBS specialists. *See* Ex. A. Together, these 9 fund managers cover only 21 of the 28 Bellwether funds. The 9 RMBS specialists were responsible for a variety of relevant tasks related to PIMCO's RMBS investments, including, but not limited to, monitoring servicer performance, analyzing the housing market, and evaluating individual investments. This compromise proposal would bring PIMCO's total custodians to only 22—less than PIMCO is demanding from HSBC, fewer than have been offered by similarly sophisticated plaintiffs who allege fewer losses in fewer funds, and not even 1 custodian for each PIMCO plaintiff Bellwether fund.

### 2. DZ Bank Custodians

DZ Bank is a large commercial bank that alleges losses of more than $30 million just in the Bellwether trusts. Plaintiffs offer only two custodians from DZ Bank. At this time, HSBC proposes an additional 6 DZ Bank custodians. *See* Ex. B.

### 3. Kore Custodians

Kore has offered only a single document custodian and has refused to provide discovery from the portfolio managers who support Kore's RMBS investments. At this time, HSBC requests the addition of 4 Kore custodians. *See* Ex. C.

### 4. WesCorp Custodians

In *NCUA v. Robert A. Siravo, et al.*, No. 10-cv-01597 (C.D. Cal.), NCUA sued 16 WesCorp officers and directors alleging those individuals were responsible for WesCorp's RMBS losses. NCUA now takes the contradictory position that none of these individuals are relevant here, even though WesCorp's RMBS investments are squarely at issue. HSBC requests 3 of these *Siravo* defendants be included as custodians. *See* Ex. D.

### B. **Search Terms for Electronically-Stored Information**

Judge Scheindlin previously suggested Plaintiffs should identify a targeted, minimal number of additional search terms that Plaintiffs believe the parties should run. Nov. 16, 2015 Hr'g Tr. at 21:12-15. In response to this suggestion, Plaintiffs crafted 7 new search "terms" that are not at all targeted or minimal. Following the January 6 hearing, Plaintiffs selected two of these

overbroad terms—terms 53 and 54—as the additional terms they request be run. When expanded out to their many permutations, these "two terms" result in over 11,000 distinct terms. As an example of their overbroad nature, these proposed terms require running the term "FDIC" within 50 words of a list which includes a number of FDIC-insured banks. As another example, these proposed terms require running "serv*" "within 25 words of "loan*," which would return any document relating to loan servicing by the Bellwether entities without regard to whether such a document involves an alleged problem with servicing.

HSBC ran these proposed terms across its 30 document custodians and determined that these terms alone would require the review of more than 600,000 additional documents. In light of this, HSBC proposed a counter-proposal that slightly modified the search strings, but which included a vast majority of Plaintiffs' proposed terms. *See* Ex. E. Plaintiffs have rejected that proposal out of hand without providing any rationale for their rejection, any information on how many documents either sets of terms would require Plaintiffs to review, or any counter-proposal.

### C. Plaintiffs' Request for Documents from Other RMBS Litigations

Plaintiffs request HSBC search documents produced in a separate case, *FHFA v. HSBC North America Holdings, Inc., et al.*, No. 11-cv-06189 (S.D.N.Y.), using the search terms the parties agree to in this case. In *FHFA v. HSBC*, FHFA alleged in a civil suit that there were problems in HSBC-sponsored securities. The FHFA case against HSBC did not involve the trusts at issue in the instant case, and FHFA did not allege problems with HSBC's provision of trustee services. In short, this separate case is irrelevant to Plaintiffs claims in this case, which relate to different trusts and are limited to claims against HSBC as trustee. Moreover, the FHFA case was resolved with no admission of liability.

None of the custodians in the FHFA case were employees of HSBC's corporate trust and loan department ("CTLA"). Judge Scheindlin already has told Plaintiffs what discovery they get outside CTLA—a maximum of a few custodians encompassing the head and a deputy or two from HSBC Bank USA's separate origination, securitization and servicing departments. Sept. 4 Hr'g Tr. at 32: 7-16; 33:2-4. Judge Scheindlin also has told Plaintiffs that Plaintiffs do not get discovery into irrelevant trusts and into irrelevant loans. Sept. 4 Hr'g Tr. at 25:19-22. The securities at issue in the FHFA case are not at issue here. NCUA's request to produce documents from the FHFA litigation is a patent attempt to do an end-run around Judge Scheindlin's rulings.

Moreover, of the employees we have been able to identify thus far who were custodians in the FHFA case, only one was an employee of HSBC Bank USA. Employees from separate legal entities are not relevant here—it is HSBC Bank USA that was the indenture trustee under all of the governing agreements. Significantly, the one custodian from the FHFA case who was an HSBC Bank USA employee—Mark Wirth—is someone HSBC has already offered Plaintiffs as a custodian. Mr. Wirth is one of the six non-CTLA custodians HSBC has offered to produce documents from in accordance with Judge Scheindlin's guidance. NCUA's request should be denied.

Honorable Sarah Netburn
January 22, 2016
Page 6

### D. **Plaintiffs' Request for Additional HSBC Custodians Outside CTLA**

Plaintiffs have told Judge Scheindlin that they need discovery outside HSBC Bank USA's corporate trust and loan department ("CTLA") because, according to Plaintiffs' theory, non-CTLA HSBC Bank USA employees allegedly learned something relevant about the Bellwether trusts in the instant case from their purported knowledge of the FHFA litigation, the interagency review of servicing, and four forced-placed insurance class actions. Based on Plaintiffs' representations, Judge Scheindlin allowed limited discovery outside HSBC Bank USA's trustee department, but specifically noted on multiple occasions that this discovery would be limited to a small number of custodians and would not include discovery into loans and trusts that are not at issue in the instant case. *See, e.g.*, Sept. 4, 2015 Hr'g Tr. at 25:19-22; 33:3-4  While Plaintiffs' first told Judge Scheindlin their purported factual basis for discovery arose in 2012, they later changed this date to 2010.

Prior to 2011, origination and servicing functions related to RMBS loans generally were not performed by HSBC Bank USA. Instead, those functions were performed by a separate legal entity—HSBC Mortgage Corporation (USA) ("HMCU"), a subsidiary of HSBC Bank USA. Over the course of 2011, in response to regulatory changes, HMCU assigned its mortgage servicing rights to HSBC Bank USA. By approximately the second quarter of 2013, HSBC Bank USA had outsourced servicing to a sub-servicer, PHH Mortgage Corporation.

Based on Plaintiffs' representations and Judge Scheindlin's guidance, HSBC has now proposed six custodians from outside its corporate trustee department. These six custodians are in addition to the 24 CTLA custodians offered by HSBC. The proposed non-CTLA custodians include Mark Wirth, Michael Maser, Michael Emer, David Goeden, Joseph Meyer, and Marcy Hertz. Mark Wirth is the head of whole loan trading, and since 2010 effectively has been the entirety of HSBC Bank USA's RMBS sponsoring department. Michael Maser is the head of the HSBC Bank USA department that oversees mortgage management (which includes oversight of originations and servicing). David Goeden was in charge of the origination and servicing department in the 2010 and 2011 time period both at HMCU[2] and HSBC Bank USA (after HMCU assigned rights to HSBC Bank USA). Joseph Meyer, Michael Emer and Marcy Hertz were all deputies in charge of overseeing either originations or servicing under Mr. Maser or Mr. Goeden.

HSBC has fully complied with the guidance provided by Judge Scheindlin. Plaintiffs' insistence on additional non-CTLA custodians is an example of the problematic approach they

---

[2] To justify Plaintiffs' request for discovery, Plaintiffs asserted that the knowledge of HSBC Bank USA employees outside the corporate trust department may be relevant because HSBC Bank USA, and not merely the corporate trust department, is the trustee under the governing agreements. HSBC reserves all rights on this issue. Plaintiffs have provided no justification for seeking discovery in separate legal entities and none exists. Nevertheless, because Mr. Goeden and Mr. Meyer were HSBC Bank USA officers following the change in 2011, in the interest of compromise HSBC Bank USA is willing to offer them as custodians for the 2010 and 2011 time period.

Honorable Sarah Netburn
January 22, 2016
Page 7

have taken with respect to discovery for the last six months—on the one hand, they demand increasingly burdensome and attenuated discovery from HSBC, while on the other hand they stonewall and refuse to compromise with respect to providing discovery from relevant Plaintiff custodians. The Court should reject this obvious gamesmanship.

### III.  Settlement Conference

The Court has scheduled a settlement conference for March 10, 2016. Pursuant to the Court's instructions, the parties have met and conferred and believe that in light of the status of discovery, a March 10, 2016 settlement conference is premature. The parties respectfully request that the settlement conference be continued 90 days. The parties will meet and confer and propose alternative dates, subject to the Court's approval.

### IV.  Conclusion

The parties thank the Court for its attention and look forward to addressing these matters during the January 25, 2016 telephonic conference.

Respectfully submitted,

| /s/ Benjamin Galdston | /s/ Christopher M. Wood | /s/ Kevin M. Hodges |
|---|---|---|
| Benjamin Galdston | Christopher M. Wood | Kevin M. Hodges |
| Bernstein Litowitz Berger & Grossmann LLP | Robbins Geller Rudman & Dowd LLP | Edward C. Reddington Williams & Connolly LLP |
| *Counsel for Plaintiffs BlackRock Balanced Capital Portfolio (FI), et al.* | *Counsel for Plaintiff Royal Park Investments SA/NV* | *Counsel for Defendant HSBC Bank USA, N.A.* |

| /s/ John A. Libra | /s/ Steven S. Fitzgerald |
|---|---|
| John A. Libra | Steven S. Fitzgerald |
| Korein Tillery, LLC | Wollmuth Maher & Deutsch LLP |
| *Counsel for Plaintiffs National Credit Union Administration Board, et al.* | *Counsel for Plaintiffs Phoenix Light SF Limited, et al.* |

# EXHIBIT A

**Exhibit A**

| | | HSBC's Requested Custodians for 28 PIMCO Funds Invested in Bellwether Trusts |
|---|---|---|
| 1 | Daniel Ivascyn | Manager for at least 9 Bellwether funds; member of PIMCO's portfolio management and strategy groups; head of the MBS/ABS Portfolio Management & Research Team ("MBS/ABS Team"); oversees PIMCO's mortgage- and asset-backed opportunistic strategies. |
| 2 | Scott Simon | Manager for at least 1 Bellwether fund; member of PIMCO's portfolio management and strategy groups; head of the MBS/ABS team; serves a co-lead portfolio manager for PIMCO's mortgage- and asset-backed opportunistic strategies; serves on PIMCO's Investment Committee and shadow Investment Committee. |
| 3 | William Gross | Manager for at least 2 Bellwether funds; received regular MBS market updates from custodian Jing Yang; listed in an October 2009 e-mail exchange as the primary portfolio manager for the purchase of a Bellwether trust; has publicly alleged that other PIMCO managers pursued less traditional investments, like RMBS securities, against his advice to inflate their own compensation. |
| 4 | Mohsen Fahmi | Manager for at least 4 Bellwether funds and generalist portfolio manager; focus on global fixed income assets; participates in correspondence regarding bellwether trusts. |
| 5 | Mark Keisel | Manager for at least 3 Bellwether funds; participates in correspondence regarding bellwether trusts. |
| 6 | Nicholas Johnson | Manager for at least 2 Bellwether funds; participates in correspondence regarding bellwether trusts. |
| 7 | Jeremie Banet | Manager for at least 2 Bellwether funds; participates in correspondence regarding bellwether trusts. |
| 8 | Curtis Mewbourne | Manager for at least 1 Bellwether fund; participates in correspondence regarding bellwether trusts. |
| 9 | Eve Tournier | Manager for at least 1 Bellwether fund; executive vice president in the London office and head of pan-European credit portfolio management. |
| 10 | Jennifer Bridwell | Product Manager for PIMCO's MBS/ABS team; member of the Residential Credit Team with a focus on Resi Structured Products; supports the asset-backed securities trading desk by providing credit research, trade ideas, and surveillance of sector-specific ABS issues; participates in correspondence regarding Bellwether trusts. |
| 11 | Haidi Gu | Loan Performance Specialist for the MBS/ABS Team; member of the U.S. Real Estate Analytics Team; mortgage specialist in structured credit group; conducts loan level performance and surveillance; participates in correspondence regarding Bellwether trusts. |

**Exhibit A**

| | **HSBC's Requested Custodians for 28 PIMCO Funds invested in Bellwether Trusts** | |
|---|---|---|
| 12 | Lalantika Padmanabhan | Structured Credit Associate for the MBS/ABS Team; focuses on ABS Analytics; conducts servicer surveillance; monitors Bellwether trust performance and ratings; communicates with trustees regarding Bellwether trusts; evaluates settlement offers for Bellwether trusts. |
| 13 | Giang Bu | Member of the MBS/ABS team with a focus on non-agency MBS/Consumer Credit; member of the Residential Credit team with a special focus on Resi Structured Products and CDOs/Manufactured Housing; participates in correspondence regarding Bellwether trusts. |
| 14 | Marco van Akkerren | Senior Vice President and member of the MBS/ABS team; focuses on non-agency MBS/Consumer Credit; member of the U.S. Real Estate Analytics Team; conducts mortgage credit modeling; participates in correspondence regarding Bellwether trusts. |
| 15 | Ji Li | Member of the MBS/ABS team with a focus on non-agency MBS/Consumer Credit; member of the U.S. Real Estate Analytics Team; conducts mortgage credit modeling; participates in correspondence regarding Bellwether trusts. |
| 16 | Sunil Kothari | Product Associate for the MBS/ABS Team; structured credit analyst for PIMCO advisory; participates in correspondence regarding Bellwether trusts. |
| 17 | Dan Hyman | Member of Mortgage Portfolio Management & Research Team; member of the Residential Credit team with a special focus on Agency Mortgages; portfolio manager focusing on asset- and mortgage-backed securities; participates in correspondence regarding Bellwether trusts. |
| 18 | Vineer Bhansali | Head of PIMCO's analytics department; supervises a team of over 20 financial and software engineers; oversees PIMCO's quantitative investment portfolios; participates in correspondence regarding Bellwether trusts. |

# EXHIBIT B

**Exhibit B**

| | **HSBC's Requested DZ Bank Custodians** | |
|---|---|---|
| 1 | Bruce Ritz | Led review and analysis of all RMBS purchases and recommended purchase of a Bellwether trust |
| 2 | Nancy O'Connor | Succeeded Bruce Ritz in 2009 |
| 3 | Wolfgang Goebler | Succeeded Bruce Ritz in 2009 |
| 4 | Simon Buckley | RMBS trader who analyzed and executed RMBS transactions and ordered purchase of a Bellwether trust |
| 5 | Gerhard Schmidt | Responsible for oversight of DZ Bank's securities purchases and was final approval authority for purchase of a Bellwether trust |
| 6 | Ingo Holzwart | RMBS Trader who analyzed and executed RMBS trades |
| 7 | Jeff Lenamon | RMBS Trader who analyzed and executed RMBS trades |
| 8 | Nikolas Tsioullis | RMBS Trader with day-to-day oversight responsibility for DZ Bank's RMBS portfolio |
| 9 | Monica Ravinet | Responsible for examining monthly and quarterly RMBS trustee reports |

# EXHIBIT C

**Exhibit C**

| | | HSBC's Requested Kore Custodians |
|---|---|---|
| 1 | David Kessler | Senior Portfolio Manager; provides support in connection with RMBS-related investments; focuses on investment research and analysis |
| 2 | Julio Maceira | Senior Portfolio Manager; provides support in connection with RMBS-related investments; focuses on investment research and analysis |
| 3 | Darren Craft | Portfolio Manager; provides support in connection with RMBS-related investments; focuses on investment research and analysis |
| 4 | Alex Herman | Portfolio Manager; provides support in connection with RMBS-related investments; focuses on investment research and analysis |

# EXHIBIT D

**Exhibit D**

| | **HSBC's Requested WesCorp Custodians** | |
|---|---|---|
| 1 | Robert Siravo | • "As President and CEO [of WesCorp], Siravo was responsible for . . . ensuring that WesCorp's assets were managed in a profitable and secure manner." *NCUA v. Robert A. Siravo, et al.*, No. 10-cv-1597, 2d Am. Compl. ¶ 53.<br><br>• Was part of team that "implemented [WesCorp's] overall business strategies, including its strategies of significantly increasing investment income by investing in higher-yielding securities and by substantial borrowing." *Id.* ¶ 57.<br><br>• Was a voting member of WesCorp's Asset and Liability Committee ("ALCO"), which "review[ed] . . . and recommend[ed] . . . investment security purchases and sales." *Id.* ¶¶ 25, 60.<br><br>• Signed WesCorp's Investment Action Plans for at least two Bellwether trusts that encouraged WesCorp's retention of the securities.<br><br>• Served on WesCorp's Enterprise Risk Management Committee, which provided WesCorp's risk governance. |
| 2 | Todd Lane | • "As Chief Financial Officer, Lane was responsible for WesCorp's financial affairs, including its financial statements and financial operations . . . . Lane functioned as 'second in command' at WesCorp and therefore had general supervisory responsibility over WesCorp." *NCUA v. Robert A. Siravo, et al.*, No. 10-cv-1597, 2d Am. Compl. ¶ 55.<br><br>• Was part of team that "implemented [WesCorp's] overall business strategies, including its strategies of significantly increasing investment income by investing in higher-yielding securities and by substantial borrowing." *Id.* ¶ 57.<br><br>• Was a voting member of WesCorp's Asset and Liability Committee ("ALCO"), which "review[ed] . . . and recommend[ed] . . . investment security purchases and sales." *Id.* ¶¶ 25, 60.<br><br>• "Lane was an integral part of WesCorp's senior management team, and he was responsible, along with the other senior officials, for WesCorp's failure." *NCUA v. Robert A. Siravo, et al.*, No. 10-cv-1597, NCUA's Opp'n to Lane's 2d Mot. to Dismiss, ECF No. 127, at 1.<br><br>• Involved in the performance of Impairment Tests for Bellwether trust.<br><br>• Served on the Enterprise Risk Management Committee. |
| 3 | Thomas Swedberg | • WesCorp's Vice President of Strategic Planning. *See NCUA v. Robert A. Siravo, et al.*, No. 10-cv-1597, 2d Am. Compl. ¶ 11.<br><br>• Member of the Asset/Liability Staff Committee, which "was responsible for review of investment security purchases and sales and the prevailing investment strategies and potential changes thereto." *Id.* ¶ 59.<br><br>• Attended ALCO meetings where Bellwether trusts were included in agenda materials.<br><br>• Served on the Enterprise Risk Management Committee. |

# EXHIBIT E

**Exhibit E – Search Term Proposals**

| **Plaintiff's Proposal** | **HSBC's Counter-Proposal** |
|---|---|
| (loan* OR mortg* OR file* OR doc*) W/25 (miss* OR incomp* OR error OR problem* OR mistak* OR fail* OR cur* OR receiv* OR deficien* OR delinquen* OR defect* OR EPD OR "early payment default" OR FPD OR review OR list OR serv* OR admin* OR modif* OR write-down OR (write w/3 down) OR loss* OR modif* OR valu* OR delete* OR substit* OR supplement* OR misrep* OR REO OR robo* OR putback* OR put-back* OR (put w/3 back) OR "put back" OR review* OR reunder* OR re-under OR deterior* OR wors* OR deviat* OR violat* OR inelig*) | (loan* or mortg*) w/10 (cur* or deficien* or list or loss or valu*)<br><br>(loan* or mortg*) w/25 (incomp* or problem* or mistak* or fail* or delinquen* or defect* or EPD or "early payment default" or FPD or "write-down" or (write w/3 down) or substit* or misrep* or robo* or putback* or put-back* or (put w/3 back) or "put back" or reunder* or deterior* or wors* or deviat* or violat* or inelig*)<br><br>(file*or doc*) w/10 (miss* or error or deficien*)<br><br>(file* or doc*) w/25 (incomp* or error or problem* or mistak* or fail* or defect* or EPD or "early payment default" or FPD or "write-down" or (write w/3 down) or misrep* or robo* or putback* or put-back* or (put w/3 back) or "put back" or reunder* or deterior* or wors* or deviat* or violat* or inelig*) |
| FHFA OR FPD OR FCIC OR FDIC OR FTC OR "Federal Trade Commission" OR "Federal Reserve" OR fannie OR Freddie OR OCC OR CFPB OR government* OR regulat* OR "Fed* Reserve" OR (OCC OR (Office w/5 Comptroller w/5 currency)) OR (OTS OR ("Office w/3 Trift")) OR (DOJ OR "justice dep*" OR (Dep* w/3 Justice)) OR Senate OR Levin OR Coburn OR Coakley OR Missal OR "Attorney General" OR NYAG OR "National Mortgage Settlement" | FHFA OR FPD OR FCIC OR FTC OR "Federal Trade Commission" OR "Federal Reserve" OR OCC OR CFPB OR "Fed* Reserve" OR (OCC OR (Office w/5 Comptroller w/5 currency)) OR (OTS OR ("Office w/3 Thrift")) OR (DOJ OR "justice dep*" OR (Dep* w/3 Justice)) OR Senate OR Levin OR Coburn OR Coakley OR Missal OR "Attorney General" OR NYAG OR "National Mortgage Settlement" |