LAW OFFICES

## WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

EDWARD REDDINGTON
(202) 434-5063
ereddington@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

May 13, 2016

**VIA ECF**

Honorable Sarah Netburn
Thurgood Marshall Courthouse
United States District Court
40 Foley Square, Room 430
New York, New York 10007

Re: *Coordinated RMBS Trustee Actions Against HSBC Bank USA, N.A.*,
Nos. 14-cv-08175; 14-cv-09366; 14-cv-10101; 15-cv-02144; 15-cv-10032; 15-cv-10096

Dear Judge Netburn:

  I write to respond to Plaintiffs' May 10 letter motion requesting HSBC Bank USA, N.A. ("HSBC") be compelled to produce "all deposition and other testimony provided by or on behalf of HSBC" in three unrelated proceedings: the FHFA Coordinated Litigation, the Coordinated Force-Place Insurance Litigation, and the Interagency Review of Foreclosure Practices.

  These transcripts are not relevant to the instant case, and Plaintiffs did not request them in their document requests. Moreover, the transcripts Plaintiffs seek to compel have nothing to do with the loans or trusts at issue in this case or even HSBC's activities as an indenture trustee. Indeed, not a single employee from HSBC's trust department was deposed in connection with any of these matters. Rather, any testimony from these proceedings concerned the activities of different HSBC departments or, even more likely, different legal entities having nothing to do with the loans and trusts that are at issue in this case.

  Thus, Plaintiffs' motion to compel indirectly seeks to evade the limits on discovery outside HSBC's trust department previously imposed by this Court. For each of these reasons, the Court should reject Plaintiffs' attempt to compel the production of irrelevant items they have not even requested.

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
May 11, 2016
Page 2

I.   **Plaintiffs Cannot Compel the Production of Materials They Have Not Requested**

    As a threshold matter, Plaintiffs never requested the production of the transcripts they now seek to compel. More than a year ago, on April 29, 2015, Plaintiffs served 52 separate requests for production on HSBC. Notwithstanding their voluminous nature, Plaintiffs' requests do not seek deposition transcripts or testimony from the above proceedings. In fact, the words "deposition," "transcript," and "testimony" do not appear anywhere in Plaintiffs' 26-page document requests. Neither do the words "FHFA," "interagency review" or "force-place insurance litigation." Plaintiffs cannot compel the production of items they have not validly requested. This is black letter law and common sense. Fed. R. Civ. P. 37(a)(3)(B)(iv); *Almonte v. Florio*, 2013 WL 22231288, at *1 (S.D.N.Y. Sept. 26, 2003) (requiring a party seeking to compel discovery "first make a discovery request on the adverse party").

    Perhaps for this reason, Plaintiffs attempt to rely upon 11 more-general requests identified in their May 10 letter to support their motion. These requests have nothing to do with depositions in the above proceedings and do not fairly call for the production of transcripts from them. Such a reading would render virtually no limits on Plaintiffs' requests, causing them to be fatally overbroad. HSBC preserved its objections to each of the referenced requests, and where HSBC agreed to produce documents in response to those requests, HSBC generally agreed to do so only with respect to documents related to the trusts at issue in this case. HSBC did not agree to produce documents for unrelated proceedings or trusts not at issue in this case—and no good reason exists to require the production of such irrelevant materials. Courts routinely refuse to compel the production of documents in the face of overbroad and vague document requests, and Plaintiffs cannot compel the production of unrequested documents. These reasons alone justify denying Plaintiffs' motion.

II.   **Deposition Transcripts from Unrelated Matters Are Not Relevant to This Case**

    The federal rules do not permit discovery into matters that are not relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Here, Plaintiffs seek testimony purportedly given in three unrelated proceedings. Those proceedings are not relevant to this case. First, Plaintiffs' claims in this case are brought against HSBC solely in its capacity as indenture trustee in specific trusts. The proceedings Plaintiffs have identified have nothing to do with HSBC's role as indenture trustee and do not involve the trusts that are at-issue in this case. Second, allegations from unrelated proceedings are not facts, and the purported truth of allegations raised in these proceedings cannot be litigated or re-litigated in this case. Each of the identified proceedings, and therefore the depositions, if any, taken in them, is irrelevant for the reasons briefly described below.

    1.   <u>The FHFA Litigation</u>. In September 2011, the Federal Housing Finance Agency ("FHFA") initiated civil litigation against HSBC and a number of HSBC-affiliated entities. The FHFA complaint alleged that HSBC Securities (USA) Inc. (as underwriter) and HSI Asset

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
May 11, 2016
Page 3

Securitization Corp. (as depositor) were responsible for misstatements or omissions in registration statements for 17 HSBC-sponsored RMBS trusts.  The FHFA complaint made no allegations against HSBC in its capacity as indenture trustee, and none of the 17 trusts at issue in the FHFA complaint are RMBS trusts for which HSBC served as indenture trustee, let alone trusts upon which Plaintiffs bring claims in the instant case.  HSBC denies the merits of the allegations in the FHFA complaint, and the parties to the matter ultimately reached a compromise settlement in which there was no admission of liability.[1]  In short, the FHFA litigation and its compromise settlement established no facts that would be relevant in this proceeding.

Additionally, the purported actions and knowledge of employees of other legal entities are irrelevant to Plaintiffs' claims in this case against HSBC.  Exhibit C to Plaintiffs' May 10 letter purports to seek deposition transcripts from 48 different people.  Upon an initial review, it appears that the vast majority of these people either were not deposed in the FHFA litigation at all or were not employed during the relevant time frame by HSBC Bank USA, N.A, the entity that is the defendant in the instant case and which serves as indenture trustee under the governing agreements.  These are additional reasons such transcripts are irrelevant here.

2. <u>The Interagency Review of Servicing</u>.  In the fourth quarter of 2010, the Office of the Comptroller of the Currency and other federal agencies charged with overseeing federally regulated financial institutions conducted on-site reviews of foreclosure processing at 14 mortgage servicers.  No depositions were taken in conjunction with this regulatory review.  The review was limited in nature and was focused on the foreclosure processes of servicers.  The review did not purport to assess the alleged actions or inactions of indenture trustees, and HSBC's corporate trust department was not involved with this review.  The federal agencies released a public report of this review that is available to Plaintiffs.  Inquiring further into the substance of the review would implicate the bank examination privilege, which belongs to the regulating agencies.  HSBC is not authorized to waive this privilege.

3. <u>The Coordinated Force Place Insurance Class Action</u>.  In 2013, retail borrowers brought a number of class actions alleging that various lenders and servicers breached common law or statutory duties in conjunction with "force-placing" insurance on borrowers who did not maintain contractually required hazard or flood insurance on their mortgaged properties.  The case against HSBC was styled as *Lopez v. HSBC Bank USA, N.A.*, *et al*.  This case also had nothing to do with HSBC's role as indenture trustee, or the trusts at issue in the instant case, and

---

[1] The settlement agreement, which is publicly available, specifically provides that it: (a) does not constitute an admission of any liability or wrongdoing whatsoever; (b) is the result of compromise within the provisions of the Federal Rules of Evidence *(i.e.*, including F.R.E. 408); and (c) shall not be used or admitted in any proceeding for any purpose including, but not limited to, as evidence of liability or wrongdoing.  HSBC Securities (USA) Inc., not HSBC, made the settlement payment under this agreement.

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
May 11, 2016
Page 4

the *Lopez* complaint makes no allegations against HSBC in its role as indenture trustee. The *Lopez* matter also was settled before trial with no admission of liability.

In short, Plaintiffs' theory that these unrelated proceedings could somehow be relevant in the instant case is simply incorrect. Discovery into these proceedings would only serve to needlessly complicate and prolong discovery in the instant matter and to confuse the issues at trial. There is already a significant trial-within-a trial aspect to this case. Before Plaintiffs may prevail on their claims against the indenture trustee, they must first establish a material breach by a responsible third party of a representation and warranty in a specific loan held in an at-issue trust, as well as actual knowledge of this breach by a responsible officer in HSBC's corporate trust department. If Plaintiffs make this showing, Plaintiffs must then prove that a hypothetical prior request by HSBC asking the allegedly breaching party to put back the breaching loan would have been successful. On top of this, Plaintiffs cannot really expect also to litigate the merits of unrelated proceedings under the theory that those proceedings established some fact of supposed relevance to the instant case. For Plaintiffs' theory of discovery to be valid, they would have to prove that some contested (and unproven) allegation from these other proceedings caused some relevant HSBC employee to know something relevant to Plaintiffs' claims in this case. This is beyond implausible and beyond attenuated.

### III. Plaintiffs' Request for Deposition Transcripts Seeks to Evade the Discovery Limits Previously Imposed by the Court

Finally, Plaintiffs' request for deposition transcripts from unrelated proceedings should be denied because it is yet another attempt to expand discovery beyond the limits previously set by the Court. This issue was addressed previously in discovery hearings in September and November 2015, when Plaintiffs first raised their theory that after 2010 HSBC employees in other departments allegedly learned something relevant about the Bellwether Trusts from unrelated proceedings.[2] The Court allowed the Plaintiffs the opportunity to pursue some limited

---

[2] To convince the Court that such discovery could be relevant, Plaintiffs relied upon a negligence provision in the contracts to argue that non-trust employees purportedly learning something from other proceedings could have some duty to act (as trustee) on that information. Plaintiffs' proffered basis for this discovery is and was flawed. Under New York law, a contractual provision preserving negligence liability does not impose duties separate from the contract, *BNP Paribas Mortg. Corp. v. Bank of Am.*, 949 F. Supp. 2d 486, 506–08 (S.D.N.Y. 2013), and there is no cause of action for negligent breach of contract, *Med. Research Assocs., P.C. v. Medcon Fin. Servs., Inc.*, 253 F. Supp. 2d 643, 649 (S.D.N.Y. 2003). Instead, a negligence claim can only arise from the breach of a duty "extraneous to, and not constituting elements of, the contract." *RLI Ins. Co. v. King Sha Grp.*, 598 F. Supp. 2d 438, 444 (S.D.N.Y. 2009). Here, any questions about HSBC's actions as trustee fall squarely within the scope of the governing agreements. Thus, the purported knowledge or actions of non-trustee (or any) employees cannot give rise to a separate negligence claim. Moreover, the negligence provision is limited by other contractual language including that where knowledge is relevant under the contract, the knowledge at

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
May 11, 2016
Page 5

discovery outside HSBC's corporate trust department, but in doing so placed strict limits on its scope—a couple of custodians from these other departments, which the Court explained were more than sufficient for Plaintiffs to explore their knowledge allegations.  Sept. 4 Hr'g Tr. (Ex. 1) at 32:7-16; 33:2-4.  In setting these limits, Judge Scheindlin cautioned Plaintiffs "we're not looking at the actual origination, servicing or underwriting of any of these loans," *Id.* at 33:5-6, and that HSBC does not "have to start producing irrelevant origination documents from other departments, or servicing documents from other departments, that don't relate to this case." *Id.* at 25:19-22.

       The reason for these reasonable limits is obvious.  At bottom, this is a breach of contract case.  HSBC has a trust department charged with administering the tasks HSBC agreed to undertake under the contracts.  Yet, at every turn in discovery thus far, Plaintiffs have sought to ignore the contract and the employees charged with administering it, and focus instead on irrelevant and tangential issues, including by seeking to expand discovery into unrelated HSBC departments.  By seeking discovery now into transcripts from unrelated proceedings that did not involve HSBC's corporate trust department, Plaintiffs are attempting again to do exactly what Judge Scheindlin told them they could not do:  seek discovery about irrelevant loans and trusts.

       While HSBC continues to believe Plaintiffs' discovery in the non-trust departments ultimately will prove to be factually and legally irrelevant, the Court should reject Plaintiffs' latest effort to increase the burdens of this litigation through overbroad and irrelevant discovery.

       Respectfully submitted,

       Edward Reddington

---

issue must be possessed by an officer working in the trust department.  *See, e.g.*, WFMBS 2006-19 PSA (Ex. 2) (excerpts).

       More generally, basic agency law best explains why the knowledge and actions of non-trust department employees are irrelevant.  Plaintiffs argue that the knowledge of employees having nothing to do with trustee services should be imputed to the bank as trustee, but that cannot be the case if the employee's knowledge does not arise in the scope of duties as a trustee and if they have no duty to act as a trustee.  *See Bank of New York Mellon Trust Co. v. Morgan Stanley Mortg. Capital, Inc.*, No. 14-2619, slip op. at 35 n.12 (2d Cir. Apr. 27, 2016) (noting in the corporate context that only acts within the scope of agents' authority are imputed to their principals).