# WOLLMUTH MAHER & DEUTSCH LLP

500 FIFTH AVENUE
NEW YORK, NEW YORK 10110

---

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

June 20, 2016

**VIA ECF**
Hon. Sarah Netburn
Thurgood Marshall Courthouse
United States District Court
40 Foley Square, Room 430
New York, New York 10007

    Re:    *Coordinated RMBS Trustee Actions Against HSBC Bank USA, N.A.,*
            Nos. 14-cv-8175; 14-cv-9366; 14-cv-10101; 15-cv-02144; 15-cv-10032; 15-cv-10096

Dear Judge Netburn:

    On behalf of all Plaintiffs, we write in response to Defendant HSBC Bank USA, N.A.'s ("HSBC") June 15, 2016 letter motion to modify the March 11, 2016 Scheduling Order. While Plaintiffs submit that a reasonable (*i.e.*, sixty-day) extension of the discovery and pre-trial schedule is warranted, we object to HSBC's proposed schedule, which would unduly delay the adjudication of Plaintiffs' claims by almost a full year.

    Under the Federal Rules, a scheduling order "may be modified only for good cause." Fed. R. Civ. P. 16(b). Good cause is met "by demonstrating that [the moving party] could not reasonably meet its deadline despite diligent efforts." *Export-Import Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*, 233 F.R.D. 338, 342 (S.D.N.Y. 2005). In *Trilegiant Corporation*, which involved an application very similar to HSBC's, the court held the defendant could not show good cause to extend the discovery schedule by one year because, as here, the plaintiff "ha[d] already produced the majority of its responsive documents" and that a one-month extension was "sufficient for the defendant to review any additional production and request follow up." *See Trilegiant Corp v. Sitel Corp.*, 275 F.R.D. 428, 436 (S.D.N.Y. 2011). ).

    For the reasons that follow, HSBC does not, and cannot, establish good cause to extend the schedule by nearly one year. Accordingly, Plaintiffs respectfully request the Court deny HSBC's request and, instead, adopt Plaintiffs' proposed sixty-day extension.

**I.    The Court Should Reject HSBC's Request
to Extend Fact Discovery Until June 2017**

    At the Court's direction, the parties identified 24 "Bellwether" Trusts that are the subject of coordinated discovery, which commenced in April 2015. The Court and the parties understood that the Bellwether process was intended to expedite, not delay, discovery and potentially facilitate resolution of all actions.

However, despite the Court's efforts to streamline discovery, HSBC has sought to expand discovery, issuing thousands of separate document requests and demanding the production of enormous volumes of documents without limitation to the Bellwether Trusts, including documents that have nothing to do with the parties' claims or defenses. HSBC's requests encompass virtually every document concerning Plaintiffs' involvement in RMBS including, for example, all documents regarding (i) the identity of every current and former employee of Plaintiffs and their affiliates involved in RMBS (and even many who were not), and (ii) every RMBS transaction in which HSBC was or is involved, without limitation to its role.

By September 2015, before the *Commerzbank* and *Triaxx* actions had commenced, HSBC also insisted upon a comprehensive and wide-ranging search term protocol for the production of custodian emails and other sources electronically stored information. Certain of the Plaintiffs objected to the scope of HSBC's proposed search protocol, and specifically informed HSBC that many of the search terms would result in the production of millions of tangentially related or irrelevant documents. HSBC refused the majority of these Plaintiffs' good faith efforts to narrow the search protocol. By January 2016, all Plaintiffs ultimately agreed to search for and produce ESI documents responsive to over 2,000 unique terms (which, based on all of the combinations and permutations resulted in tens of thousands of searches) from 220 total custodians.

Since the inception of these actions, HSBC has agreed with Plaintiffs that a period of five to six months following the document production would allow sufficient time to complete depositions before the close of fact discovery. This was first reflected in the initial scheduling order entered by Judge Scheindlin on July 21, 2015, which approved the parties' joint proposal to build in six months between the dates for completion of document and fact discovery. *See* ECF 90 and 93. By November 2015, after document discovery was substantially underway, Judge Scheindlin allowed one additional month to complete document productions based on the parties' representations that depositions could be completed in five months and that none of the remaining deadlines in the initial scheduling order would be affected. *See* 11/16/2015 Tr. at 5-6. And, more recently, after discovery was transferred to Your Honor, the parties similarly proposed, and the Court adopted on March 11, 2016, the current scheduling order allowing for approximately five months between the document production deadline and close of fact discovery. ECF 135. Significantly, despite appearing before the Court on several occasions to resolve disputes regarding the scope of discovery and the number of depositions, among others, at no point did HSBC ever state the position, or even suggest the possibility, that it would need additional time (let alone a full year) to review Plaintiffs' documents and complete depositions.

Unable to identify any legitimate basis for extending the close of fact discovery and prolonging these actions by at least another year, HSBC has grossly misrepresented the discovery record claiming – for the first time – that Plaintiffs' respective document productions are purportedly untimely and deficient. Plaintiffs address HSBC's misrepresentations with regard to each of their document productions as follows:[1]

---

[1] With regard to *Commerzbank*, the Court recently approved the parties' agreement to extend the document production deadline by sixty days, consistent with the schedule proposed by Plaintiffs.

2

- ***BlackRock Plaintiffs:*** The BlackRock Plaintiffs assert claims relating to all 24 Bellwether Trusts. HSBC has demanded that BlackRock Plaintiffs run incredibly broad search terms across 148 custodians, including 20 custodians that were only recently added as a result of the Court's February 18, 2016 Order. As explained to HSBC throughout the discovery process, due to the burden associated with the collection, review and production of responsive ESI, Plaintiffs have prioritized the production of custodial files from the most relevant custodians from the largest Plaintiffs groups.[2] Moreover, consistent with the Sedona principles, Plaintiff have exercised a liberal relevance review and have agreed to produce virtually all non-privileged documents captured by HSBC's proposed search terms, together with their associated family members.[3] Accordingly, HSBC's complaint that it is being prejudiced by the fact that it is missing documents from a relatively modest number of custodians, while concurrently arguing that the BlackRock Plaintiffs' document productions are too voluminous, is without merit.

- ***NCUA:*** As the liquidating agent for five failed corporate credit unions, the NCUA Plaintiffs assert claims relating to seven of the 24 Bellwether Trusts and have substantially completed their document production. As the NCUA Plaintiffs explained to HSBC, in an effort to collect and produce relevant documents before the parties had agreed to search terms, the NCUA Plaintiffs produced certain documents that had been collected and produced in other RMBS litigation in response to HSBC's extremely broad search terms. Thus, it should come as no surprise to HSBC that some of the documents produced by the NCUA Plaintiffs are not responsive to the search terms. Later, after the parties had agreed to search terms, the NCUA Plaintiffs ran those search terms over shared drives and the email collections of 9 custodians from the NCUA and 38 from the failed corporate credit unions.

- ***Phoenix Light Plaintiffs:*** The Phoenix Light Plaintiffs assert claims relating to four of the 24 Bellwether Trusts and have substantially completed their document production. Between April and October 2015, HSBC issued nearly 800 separate document requests to the Phoenix Light Plaintiffs seeking virtually every document concerning their involvement in RMBS. The Phoenix Light Plaintiffs informed HSBC on numerous occasions that they are passive CDO entities that do not have employees and will not likely have the types of documents HSBC was demanding. In an effort to collect and produce relevant documents, the Phoenix Light Plaintiffs ran search terms over shared drives and the email collections of at least 22 current and former employees of the entity involved in structuring the CDOs and their underlying portfolios. The documents produced as a result of this process correspond to the search term protocol employed by the parties, and the results of these productions further demonstrate the passive nature of these Plaintiff entities. With respect to the five custodians HSBC characterizes as "missing custodians," the Phoenix Light Plaintiffs have in fact produced their documents

---

[2] The BlackRock Plaintiffs believe that it can substantially complete document production for all Plaintiffs within the next sixty days.

[3] The BlackRock Plaintiffs have determined that virtually all the documents that HSBC claims did not hit on a search term were family members of documents that did hit on a search term. Accordingly, HSBC's claims of a "data dump" are false.

3

as of November and December 2015. Finally, contrary to HSBC's assertion, more than 75% of Phoenix Light's documents were produced prior to May 11, 2016.[4]

- ***Royal Park:*** Royal Park Investments SA/NV asserts claims relating to three of the 24 Bellwether Trusts. To date, Royal Park has produced 69,205 documents from numerous custodians (as well as non-custodial sources) in response to HSBC's broad document requests. Indeed, Royal Park produced documents that hit on search terms regarding the trusts actually at issue in this litigation in November 2015. HSBC's assertion that Royal Park produced numerous non-responsive documents is misleading. In reality, Royal Park produced documents which hit on the parties agreed-upon search terms and their families, despite recognizing that the search terms inquired into numerous irrelevant topics, such as Royal Park's investments in RMBS generally. Of the produced documents which purportedly did not hit on the search terms, the majority of those documents are family members of documents that hit on search terms or documents that hit on search terms in the metadata. Finally, HSBC first offered to identify the purported custodians for which it claims to be missing documents today. Royal Park does not believe that there are custodians missing from its productions.

- ***Triaxx:*** Triaxx, which joined these proceedings over a year after the original plaintiffs commenced their cases, produced documents to HSBC on June 17, 2016. Triaxx believes an additional sixty days to complete its document production will be sufficient. However, Triaxx's completion of production is being delayed by HSBC. HSBC's counsel, Williams & Connolly, are in possession of a hard drive of the documents of Triaxx's former collateral manager, referred to as ICP. Responsive documents are on that hard drive. Triaxx has a copy of the hard drive, but the copy lacks metadata that will facilitate a search of the hard drive. Triaxx held a meet-and-confer with HSBC's counsel on May 25, 2016 requesting a full copy the hard drive. The meet-and-confer also concerned Triaxx's request to narrow the search terms by eliminating 26 search terms (out of 63,682) that are generating huge numbers of false positives, *i.e.*, "hits" on documents that have nothing whatsoever to do with the issues in this case. Almost a month later, Triaxx is still awaiting a response from HSBC's counsel.

Having now received the significant volume of documents that it has demanded of Plaintiffs since April 2015, HSBC cannot be heard to complain that it suddenly does not have sufficient time under the current scheduling order to review Plaintiffs' productions and complete depositions. In addition, HSBC makes no attempt to explain why Plaintiffs' proposed sixty-day extension with over six months to resolve any follow-up issues and complete depositions is not sufficient.[5]

---

[4] HSBC mischaracterizes the substance of the Phoenix Light Plaintiffs' productions after May 11, 2016 by listing the number of pages, while ignoring the number of documents which accounts for less than 25% of the production.

[5] In the event that HSBC (or any other party) can truly identify good cause for modifying Plaintiffs' proposed schedule to address a particular issue, nothing would prevent it from making the proper application to the Court at the appropriate time.

4

## II. The Court Should Reject HSBC's Request for Enlarged Time for Responsive Expert Reports

HSBC's proposal also seeks substantial modification of the pre-trial schedule by extending the deadline by which it must exchange rebuttal expert reports from six weeks to just over four months following Plaintiffs' opening expert reports. In particular, HSBC now claims that the current scheduling order is no longer feasible because it does not provide sufficient time for HSBC's expert to review loan files and complete their re-underwriting analysis.

The Court has twice previously considered and rejected similar proposals to the scheduling order that would have afforded HSBC with an enlarged expert discovery period. For example, Judge Scheindlin rejected a proposal that would have provided three months between the exchange of opening and rebuttal expert reports and instead determined that a period of six weeks was sufficient. *See* ECF 90, 93. Similarly, Your Honor declined to provide five months for HSBC to exchange its rebuttal expert report and entered the current scheduling order maintaining the six week period previously set by the Court. *See* ECF 135.

HSBC does not, and cannot, offer any legitimate grounds for why the Court should now depart from its prior scheduling orders with regard to the time for responsive expert reports. On the contrary, HSBC fully understood from the outset of discovery that the subject of expert reports in these actions would center on the re-underwriting of loan samples. Indeed, in early 2015, Plaintiffs proposed – and HSBC rejected – a loan file re-underwriting protocol that would have streamlined the parties' expert analysis of sample loan files. HSBC's suggestion that Plaintiffs' experts will have many months or years to work with the voluminous documents produced in these cases and formulate their opinions is also false and disingenuous given that it knows full well the loan files are in the possession of various third parties that originated and/or serviced the loans. Accordingly, the parties are now actively engaging in third party discovery efforts to obtain the loan files and related documents necessary to re-underwriting reviews.

\* \* \* \*

For the reasons set forth above, the Court should reject HSBC's request. HSBC fails to meet its burden to show good cause for such a prolonged extension. Moreover, Plaintiffs, who first asserted these claims nearly two years ago, will be prejudiced by unnecessary delay. Plaintiffs respectfully request the Court enter an Order providing a modest sixty-day extension to the discovery deadlines, which tracks the intervals for exchanging expert reports consistent with the Court's prior scheduling orders.

Sincerely,

Steven S. Fitzgerald

cc: Counsel of Record