July 5, 2016

**VIA ECF & HAND DELIVERY**
Hon. Sarah Netburn
Thurgood Marshall Courthouse
United States District Court
40 Foley Square, Room 430
New York, New York 10007

Re:   *Coordinated RMBS Trustee Actions Against HSBC Bank USA, N.A.*,
      Nos. 14-cv-8175; 14-cv-9366; 14-cv-10101; 15-cv-02144; 15-cv-10032; 15-cv-10096

Dear Judge Netburn:

On behalf of all Plaintiffs, we write to address Defendant HSBC Bank USA, N.A.'s ("HSBC") review and production of electronically stored information ("ESI") pursuant to the parties' agreed-upon search protocol for responsive documents.[1]

During the June 29, 2016 conference before the Court, Plaintiffs expressed concerns regarding the quality and volume of HSBC's productions and, in particular, HSBC's admission that it is withholding a large number of otherwise responsive documents returned by the parties' agreed-upon search term protocol. At the conclusion of the June 29 Conference, the Court directed the parties to meet and confer so that HSBC could inform Plaintiffs as to: (i) the process by which otherwise responsive documents were being withheld through HSBC's subsequent manual "relevance" review; and (ii) the volume of such otherwise responsive material being withheld. The parties have met and conferred. However, HSBC refused to provide basic information necessary to address the manner of its review and the quantity of documents withheld, including the hit reports. Nevertheless, based on the little information HSBC provided thus far, it is clear that HSBC is improperly withholding at least *80%* of the documents that returned as responsive to the parties' agreed-upon search terms.

While HSBC was unable to quantify the total universe of documents it collected and refused to provide a list of custodians and ESI sources searched, HSBC admitted that it has collected at least 1.1 million documents using the parties' agreed-upon search protocol. Of these 1.1 million documents, HSBC is withholding at least *80 percent* (880,000 documents) based on its view of what is "responsive" to the document requests propounded by Plaintiffs. HSBC has further limited production of documents captured by agreed-upon search terms by privilege objections (approximately 7 percent). Accordingly, HSBC's second-level manual review has resulted in a production that constitutes only *13 percent* of the total documents containing one or more of the agreed-upon search terms. As the Court recognized during the June 29 conference,

---

[1] The Court set July 5, 2016 as the deadline "for a letter related to HSBC's review of the documents that it culls from the agreed-upon search terms," and specifically stated that "[t]he letter I want on July 5th is going to be about HSBC's review. That's what I want to focus on right now." 6/29/16 Tr. at 37-38.

this percentage is alarming.  6/29/16 Tr. at 38 ("If it turns out that [HSBC and its counsel] are running this through a filter that is blocking 75 percent of the hit results, I'm going to have a big issue I have to deal with.").

Further, HSBC reported that it has "outsourced" its document review to a vendor called "Consilio."  HSBC declined to provide any details about the reviewers, such as their identity, location, native language, experience, Bar admissions, or qualifications, or whether they were provided with a detailed written review protocol.  HSBC also refused to tell Plaintiffs how the reviewers were trained to determine what documents should be produced or, alternatively, the criteria by which the 80% of HSBC documents responsive to one or more search terms were deemed "non-responsive" and withheld from production.

Counsel for HSBC stated only that Consilio reviewers were provided with copies of Plaintiffs' document requests and HSBC's objections and responses thereto.  Based upon these documents alone, reviewers apparently made unilateral determinations that resulted in the vast majority of otherwise responsive documents being withheld.  According to HSBC, a document is not "responsive" even though it is covered by Plaintiffs' discovery requests if HSBC has objected to the production of such document.  HSBC's process – which was only disclosed now – is contrary to the parties' months of negotiated search terms under the Court's supervision and direction.  As the Sedona Principles and numerous other authorities and courts have recognized, the purpose of negotiated search terms is to minimize if not eliminate any secondary manual "relevance" or "responsive" review.  *See, e.g.*, *The Sedona Principles:  Best Practices Recommendations & Principles for Addressing Electronic Discovery* (2d Ed. 2007) ("The use of search terms may assist in reducing the volume of information that must be further reviewed for relevance and privilege.").  That HSBC has withheld 80% of the documents based on the reviewers' subjective (and still undisclosed) criteria confirms the impropriety of HSBC's conduct.  To make matters worse, of the remaining 20%, HSBC has withheld almost half of these documents based on privilege and waited until July 5 to notify Plaintiffs that such a large percentage of responsive documents were being withheld on this basis.

Since the inception of discovery in these cases, it has been clear that the parties disagree as to what information is relevant and discoverable.  HSBC has asserted relevancy objections (among others) to the vast majority of Plaintiffs document requests.  Accordingly, the parties engaged with HSBC for months in negotiating the search terms and custodians and appeared before Your Honor on several occasions to develop a search protocol consistent with the Sedona Principles in order to expedite the ESI production by removing the time and expense of conducting a subjective document-by-document review.  Indeed, the entire purpose and exercise of agreeing on search terms in advance was specifically intended to identify the universe of presumptively responsive documents and avoid prolonged and detailed debates over what information is or is not "relevant."  Because the search terms were crafted to return primarily documents that are responsive to Plaintiffs' document requests, Plaintiffs understood that it would be unlikely that a large percentage of the documents returned would be legitimately non-responsive.  Moreover, it makes no logical sense that Plaintiffs would agree to the kind of heavy review and screening process that HSBC has now admitted to have performed.  On the contrary, HSBC never previously disclosed to Plaintiffs that it was filtering the vast majority of documents (80%) responsive to the search terms from its productions – had it done so, Plaintiffs would have objected and, at a minimum, required HSBC to describe how the review was being performed or

engaged in further discussions to modify the search terms accordingly so as to capture legitimately responsive documents.

HSBC has refused to provide the information necessary for the Court and Plaintiffs to understand HSBC's review criteria and screening process despite being ordered to do so. Critically, in advance of the meet and confer call, Plaintiffs asked HSBC to provide hit reports that identify:  (i) the total number of documents collected from all of HSBC's custodians and shared network spaces; (ii) the total number of "hits" when the search terms were run across that universe of documents; (iii) the total number of documents HSBC has produced to plaintiffs; (iv) a breakdown of the number of responsive HSBC documents hitting on each of the agreed-upon search terms; and (v) the number of documents that HSBC actually produced with respect to each search term.  This information can be obtained from HSBC's vendor and will allow a more meaningful inquiry into whether documents that should have been produced were withheld. However, HSBC refuses to provide any hit reports.  Instead, HSBC insists that Plaintiffs accept its representations regarding the sufficiency of its productions and attempts to shift the burden to Plaintiffs to identify "missing" documents.

Plaintiffs are not required to accept HSBC's unsubstantiated assurances, particularly when the information disclosed thus far demonstrates that HSBC is wrongfully withholding hundreds of thousands of otherwise responsive documents.  Nor can HSBC shirk its discovery obligations by attempting to force Plaintiffs to "guess" at what is being withheld.  When a party is served with an ESI discovery request, it is that party's duty to "find and disclose all responsive documents or properly set forth why the documents are being withheld." *Merck Eprova AG v. Gnosis S.P.A.*, 2010 WL 1631519, at *4 (S.D.N.Y. Apr. 20, 2010).  When parties agree to a search term protocol "there is a presumption of relevancy, and defendant may remove any documents only if they are clearly and undeniably irrelevant, and of course, if they are privileged."  *Strauch v. Computer Sciences Corp.*, 2015 WL 7458506, at *3 (D. Conn. Nov. 24, 2015); *see also Federal Housing Finance Agency v. Royal Bank of Scotland Group PLC*, 2014 WL 10988157, at *3 (D. Conn. 2014) ("The court is persuaded that the searches that FHFA seeks based on the Pejorative Search Terms are reasonably tailored to locate relevant material because they would identify only documents containing both an originator search term and negative language from the Pejorative Search Terms."); *Burke v. Ability Ins. Co.*, 291 F.R.D. 343, 356 (D.S.D. 2013) ("Defendants do not get to pick and choose which documents they think are relevant to [plaintiff]'s claim" and ordering the production of all search term responsive documents).

\* \* \* \*

Accordingly, HSBC has failed to produce the vast majority of search term responsive documents and comply with its duty to disclose which documents have been withheld on the basis of its "relevance" objections.  Plaintiffs respectfully request that the Court order HSBC to provide:  (i) the hit reports requested by Plaintiffs, described above; and (ii) for each of Plaintiffs' document requests, the criteria used by HSBC and its outsourced document reviewers to withhold otherwise responsive documents based on HSBC's "relevance" objections. Alternatively, in light of the circumstances and impending discovery deadlines in these cases, HSBC should be ordered to produce all non-privileged ESI based on the agreed-upon search terms.

Respectfully submitted,

/s/ Steven S. Fitzgerald

Steven S. Fitzgerald
WOLLMUTH MAHER & DEUTSCH LLP
*Counsel for Plaintiffs*
*Phoenix Light SF Limited, et al. and*
*Commerzbank AG*

/s/ Benjamin Galdson

Benjamin Galdston
BERNSTEIN LITOWITZ BERGER &
GROSSMAN LLP
*Counsel for Plaintiffs Blackrock Balanced*
*Capital Portfolio (FI), et al.*

/s/ John A. Libra

John A. Libra
KOREIN TILLERY, LLC
*Counsel for Plaintiffs National Credit Union*
*Administration Board, et al.*

/s/ Christopher M. Wood

Christopher M. Wood
ROBBINS GELLER RUDMAN & DOWD
LLP
*Counsel for Plaintiff Royal Park Investments*
*SA/NV*

/s/ Charles R. Jacob

Charles R. Jacob
MILLER & WRUBEL PC
*Counsel for Plaintiffs Triaxx Prime CDO*
*2006-1, Ltd., et al.*

cc:  Counsel of Record