# EXHIBIT 1

```
                                                                   Page 1
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3   NATIONAL CREDIT UNION
     ADMINISTRATION BOARD ET AL.,
 4
                  Plaintiffs,
 5
             v.                            15 CV 2144 (SN)
 6
     HSBC BANK US NATIONAL
 7   ASSOCIATION,
 8                Defendant.
 9   ------------------------------x
                                           New York, N.Y.
10                                         January 6, 2016
                                           3:00 p.m.
11
     Before:
12
                       HON. SARAH NETBURN,
13
                                           Magistrate Judge
14
                           APPEARANCES
15
     BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
16        Attorneys for Plaintiffs BLACKROCK
     BY:  BENJAMIN GALDSTON
17
     WILLIAMS & CONNELLY P.C.
18        Attorneys for Defendant HSBC
     BY:  EDWARD C. REDDINGTON KEVIN M. HODGES
19
20
21
22
23
24
25
```

Page 46

1  Mr. Galdston didn't educate Judge Scheindlin about at the
2  September 4 hearing and that I didn't have the opportunity to
3  because this issue sort of came up without any ability to know
4  was coming ahead of time. And that is that when you look at
5  the governing agreements, the governing agreements make clear
6  that the role of the trustee, whoever it is defined to be, HSBC
7  Bank USA is very limited. And when it talks about the types of
8  knowledge that the trustee has to have before the trustee has
9  duties and responsibilities to act, that same governing
10  agreement in multiple places makes very clear that what's
11  required is actual knowledge and that who has to have that
12  knowledge isn't just anybody in HSBC. It is a responsible
13  officer serving in the corporate trust department. So those
14  are very key legally important facts about these governing
15  agreements that you have to remember when you say things like
16  HSBC is the trustee.
17       Now there's another point that I want to add which is
18  the way Mr. Galdston convinced the Court that some discovery
19  into these departments should be authorized was he cited to a
20  negligence proviso in that governing agreement, okay? These
21  governing agreements are 280 pages long. There is a law,
22  there's a section in the governing agreement that talks about
23  the duties of the trustee and then after talking about the
24  duties of trustee puts all of these provisions, all of these
25  limitations on those duties. Buried within that one section is

Page 47

1  a provision that says nothing is meant to relieve the trustee
2  for liability for its own negligence, OK? Mr. Galdston seized
3  on that three words out of context and said to Judge Scheindlin
4  see their liable for their own negligence. So if these other
5  employees were negligent then we should be able to find out
6  what they knew and the whole bank is liable. But what didn't
7  explain to the judge is after those three words in that
8  section, there's three or four pages of limitations that make
9  clear that that section means very little because one of those
10  limitations is there is no duty to investigate, right, and so
11  that more or less wipes it out.
12       The other thing that's important to keep in mind is
13  under New York Law a negligence provision like that which is a
14  negligent exception within a contract does not impose duties
15  outside the contract. So they can put that, that can be in the
16  contract 25 times. To tie that provision to something that the
17  trustee the bank has to do, they have to find a duty in the
18  contract that requires that. And the contract says the people
19  that act for the trustee are the responsible officers in the
20  trustee department, not these employees in all those other
21  departments. So that's getting down the road on merits issues
22  but I think it's important to flag it now because it's an
23  important issue.
24       THE COURT: OK.
25       MR. GALDSTON: It's actually not getting down the

Page 48

1  road. It's rearguing issues that have been argued and rejected
2  by Judge Scheindlin and I will refer the Court to the hearing
3  transcript from the September 4 hearing. Judge Scheindlin
4  heard those arguments from Mr. Reddington and rejected them.
5  In particular said that the plaintiffs are entitled to
6  discovery to overriding documents that sometimes apply across
7  the board because they go to corporate knowledge. So I don't
8  know why we're rearguing these issues. They've been argued and
9  decided.
10       MR. ATTAWAY: Your Honor, may I?
11       THE COURT: Yes, briefly.
12       MR. ATTAWAY: I think what Mr. Reddington said about
13  his view of what the contracts require shows that that's an
14  issue for them at trial and we should be able to take
15  discovered based on our view of the merits.
16       And finally, Mr. Reddington is just wrong that the
17  standard is actual knowledge. The agreements are very clear
18  that upon discovery of a defective loan the trustee has a duty
19  to seek, cure or repurchase from the entity that sold the loan
20  to the trust. Discovery has a well-established meaning under
21  the case law. It means constructive knowledge and the trustee
22  in that case is the entire bank, not the corporate trust
23  department.
24       THE COURT: Thank you.
25       OK. So by the end of next week HSBC is going to

Page 49

1  provide the identity of custodians that we talked about
2  earlier. ==I'm going to direct that the search terms that we do==
3  ==reflect HSBC's proposed terms but I will allow the plaintiffs==
4  ==to select two additional search terms from their search to add==
5  ==to that mix.== If you'd prefer to modify one of the existing
6  search terms, it's fine in the alternative and then I think we
7  need to look at what we get from here. So I'll have some
8  custodians, we'll run some searches. What I'm going do with
9  this case -- I can't remember if Judge Scheindlin gave it to me
10  for the rest of its life or just for one issue.
11       MR. GALDSTON: I believe it was for all discovery.
12       THE COURT: That's what I thought. I'm going to keep
13  us in regular contact. And what I think I'm going to do is
14  provided everybody comply, am I correct that there are a lot of
15  lawyers who are not in the are or is everybody local?
16       MR. GALDSTON: Your Honor, we're in California.
17       THE COURT: That's what I thought.
18       MR. REDDINGTON: We're in Washington D.C., your Honor.
19       THE COURT: So what I'm going to do, I'm satisfied
20  that we're not local. I'm going to set up a phone call for us
21  in a couple weeks and we'll see how things are going off of
22  this first run and look at documents. But I think until we
23  start getting our hands on our adversary's documents it's going
24  to be very difficult to get a sense of whether or not we're
25  hitting the right terms and we can revise if appropriate and

Page 50

1  try and tailor better.  It may be for example that all of the
2  custodians that HSBC is going to provide -- when you run the
3  searches it may turn out that two or three of them just really
4  have no relevant information and so maybe it's appropriate to
5  run new searches for a more narrow group of custodians.  But
6  let's see what the landscape is because until we do that I
7  think it's hard for anybody here to predict with any certainty
8  whether or not we're working in the right direction.
9         MR. GALDSTON:  Your Honor, may we have a ruling now as
10  to Judge Scheindlin's prior ruling that HSBC should apply the
11  within 50 proximity limitation?
12         THE COURT:  Yes.  I am standing by that.
13         MR. GALDSTON:  Thank you.
14         MR. REDDINGTON:  Your Honor, may I be heard?
15         THE COURT:  On that issue?
16         MR. REDDINGTON:  Well, on a couple of issues.
17         THE COURT:  Briefly.
18         MR. REDDINGTON:  Well, I guess there's a couple of
19  things I'm happy to meet and confer with plaintiffs about their
20  suggestion for their additional terms.  I think once they
21  identify those we have to have an opportunity to run them and
22  see how many documents hit and then have a further discussion
23  about them.
24         THE COURT:  We're going to talk in about three weeks
25  and if it turns out that there's seven billion documents that

Page 51

1  those new numbers hit then we'll revisit it but let's before --
2  this is the thing so difficult about E-discovery.  It's very
3  easy to sort of speak in the abstract but let's see what we're
4  actually producing.
5         MR. REDDINGTON:  That's fine, your Honor.  The other
6  issue is plaintiffs have now told us, at least the Phoenix Lake
7  and the NCUA plaintiffs, that they have problems with some of
8  these terms and are modifying themselves unilaterally.  So NCUA
9  wants to modify some of the terms that is going to be different
10  from what everybody else runs.  Phoenix Lake wants to modify
11  some of the terms.
12         THE COURT:  I thought somebody said earlier that the
13  effort to have mutual search terms fell apart a month ago.
14         MR. REDDINGTON:  No, not at all.  Our intention was
15  always to have mutual search terms.
16         THE COURT:  Best laid intentions.  It may have been
17  your intention but I thought I understand it to be the parties
18  had had a breakdown on that particular topic.
19         MR. REDDINGTON:  We have not, your Honor.  In fact we
20  have mutual search terms.  That's, the whole point was to have
21  terms that all the parties would understand they all would run.
22  The way this is set up we're happy to adopt a within 50 term
23  limitation which in my view Judge Scheindlin didn't order.  She
24  didn't order at the time.  The plaintiffs are going to get --
25         THE COURT:  Seems to me that if she didn't order 50,

Page 52

1  she certainly said that 25 was too narrow.
2         MR. REDDINGTON:  She said it might be.
3         THE COURT:  I'm happy to rule in a way that you may
4  not want me to rule.
5         MR. REDDINGTON:  I'm not looking for a change in the
6  ruling, your Honor.  I'm just pointing out that I don't think
7  she ruled that but the way this is developing is that we're
8  taking the within 50 which means more documents for us.  We're
9  taking more terms from them which means more documents for us.
10  But on the other hand, in this search term protocol which all
11  the parties are supposed to be running, sophisticated parties,
12  the plaintiffs now are unilaterally changing the terms they
13  don't want to run because they hit too many documents in their
14  documents and this is without even telling us.  We've been
15  transparent and told them how many documents are hitting in our
16  documents and they have not.  So I guess what I would ask is
17  before either side changes the terms unilaterally they ought to
18  have to share with the other side the number of hits they're
19  getting so that we can have an informed and intelligent
20  discussion about it and we might be able to reach
21  accommodations and change the terms in a way that both parties
22  can live with.
23         THE COURT:  So everybody should run the search as I
24  just ordered which means that Blackrock needs to identify which
25  two terms it wants to add.  And folks should then run their

Page 53

1  search within 50 and see what you get.  And you should all have
2  a meet and confer.  And we will all have a conference call
3  probably the week of the 25th I think is when we're going to
4  speak to see where everybody is.  And then we'll have
5  transparency.
6         MR. REDDINGTON:  That's great, your Honor.  Thank you.
7  And I know that, I sense that your time is running short.  We
8  never actually got to talk about our problems with their
9  custodians which in my view is the most important issue today
10  from our point of view and so I don't know if the Court has
11  time or not.  If you do I'd like to talk about it.
12         THE COURT:  I'm ready.  We teed it up a little bit.
13  Blackrock wants to give you 128.  You think that's not enough.
14         MR. REDDINGTON:  Because the devil's always in
15  details, your Honor, right?  One, we have to step back and
16  remember a couple things.  Blackrock is not just Blackrock.  In
17  the Blackrock side there are nine plaintiff groups, all right?
18  Those plaintiff groups are a mix of things.  They're
19  sophisticated commercial banks.  They're sophisticated
20  insurance companies and they're sophisticated mutual funds.
21  Mutual funds act through many different entities.  They are
22  kind of shell companies that are advised by advisers and
23  sub-advisers.  And sophisticated financial institutions like
24  Blackrock and PIMCO don't have one or two people running mutual
25  funds.  They have dozens and dozens and dozens of people