# EXHIBIT 2

```
                                                                      1
     G6trroyc

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    ROYAL PARK INVESTMENTS
     S.A./N.A., et al.
4
                 Plaintiffs,
5                                              14 CV 8175 (LGS)
            v.                                 14 CV 9366 (LGS)
6                                              15 CV 2144 (LGS)
     HSBC BANK USA NATIONAL
7    ASSOCIATION,
                                                Conference
8                Defendant.

9    ------------------------------x

10                                              New York, N.Y.
                                                June 29, 2016
11                                              4:00 p.m.

12   Before:

13            HON. SARAH NETBURN

14                                              District Judge

15

16
              APPEARANCES
17

18   ROBBINS GELLER RUDMAN & DOWD LLP
          Attorneys for Royal Park Investments plaintiffs
19   BY:  CHRISTOPHER WOOD

20
     WOLLMUTH MAHER & DEUTSCH LLP
21        Attorneys for Phoenix Light and Commerzbank plaintiffs
     BY:  STEVEN S. FITZGERALD
22        NIRAJ PAREK

23
     KOREIN TILLERY LLP
24        Attorneys for NCUA Board plaintiffs
     BY:  JOHN A. LIBRA
25        MAX GIBBONS

                     SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

G6trroyc

22

1   NCUA has been attempting to decrypt the hard drives that the
2   credit unions had.  This has taken some additional time.
3          We expect to be able to work through these issues.  We
4   have one now that we think we can open.  We have talked about
5   that with HSBC, so I don't think it will come as a surprise to
6   them that there will be some additional productions from that
7   credit union.  We have made productions from the paper
8   documents that we had from that credit union, so there is not
9   an entire absence of production there.
10         We are working through the issues.  I don't want to
11  use the term "substantial," either, but within the schedule
12  proposed by the plaintiffs, we will be able to meet that and
13  produce what we have agreed to produce.
14         There is one issue we would like to raise with the
15  Court here today that goes to some of these issues.  As other
16  plaintiffs have mentioned, some of these things haven't really
17  been raised before, so we haven't had a chance to fully discuss
18  them with HSBC.
19         I think there may be sort of a fundamental misunder-
20  standing between the parties as to how this process of
21  producing documents ought to be going.  I can speak for my
22  client NCUA Board, and I have discussed with the other
23  plaintiffs, what we have been doing to produce documents as it
24  relates to these search terms.
25         ==What we have done is collected our universe of==

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
                                                              23
     G6trroyc
1    documents and run the search terms across those, and then done
2    what I would call light review for responsiveness, and also for
3    privilege of course.  As a result, certain things do slip
4    through, recipes, other odd pieces of information.
5              Our understanding about the scope of this process and
6    what the Court was ordering us to do was that we should be
7    taking the results of those searches terms and essentially
8    presuming that those were responsive documents that ought to be
9    produced in this litigation.  Otherwise, what was the point of
10   this whole vigorous back-and-forth over what these terms were
11   going to be and who the custodians were going to be, if there
12   was then going to be some additional hardcore what I would call
13   relevance review of those documents?
14             From what we have reviewed thus far from HSBC's
15   production and from our conversations with them, we have a
16   strong suspicion that there's been a much more involved
17   responsiveness review/relevance review of those documents that
18   were the result of these search terms.  We want to raise that
19   issue with the Court.
20             We have been trying to get an answer from HSBC as to
21   what level of review they have been performing on the results
22   of these searches, and we haven't been able to get a straight
23   answer from them.  What we have heard here in court, what we
24   have seen in the documents, and what we have heard from them in
25   our back-and-forth on these issues doesn't leave us very
```

```
                                                               24
     G6trroyc
1    confident that they have been actually producing what are the
2    responsive documents that we believe are relevant.
3              What we think is happening here is that they are
4    taking the search term documents and then applying their own
5    subjective test as to what is relevant to those, and then
6    producing that smaller set of documents.  As you know, we have
7    been in here a number of times and we are obviously on
8    completely different sides of the earth as to what is relevant
9    here in these lawsuits.
10             We don't think it is appropriate for HSBC to be
11   applying that level of review to these documents.  We think as
12   a result of it, we haven't been receiving what we are entitled
13   to receive that we need in order to prove our case.  I'll give
14   you a couple of quick examples.
15             One would be a discussion of a certain servicer or a
16   certain originator that doesn't specifically refer to a bell-
17   wether trust.  We think those documents are being screened out
18   of this process, not turned over to us.  They may argue, hey,
19   that's not relevant, but in our view of these cases it is
20   extremely relevant to show that HSBC discovered problems within
21   these trusts with these originators, with these servicers.
22             Another example is documents that would speak to
23   various policies about repurchasing documents.  It is true they
24   have produced some of their formal policies, but as we
25   understand it, documents that discuss more generally, emails
```

G6trroyc
                                                                        25

1    between various employees that talk about repurchase protocols,
2    that type of thing, we don't think those have been produced.
3    We think those have been screened out based on HSBC's
4    subjective view that that material isn't relevant.
5            You have heard from Mr. Reddington and HSBC about the
6    various deficiencies they see in our productions.  I think I
7    can speak for all the plaintiffs in saying that we have tried
8    to adhere to running the searches.  We are trying to weed out
9    as much junk as we can, but we have a large volume of material,
10   so certain things are going slip through and be produced.
11           Speaking personally for our client, we would rather
12   have them give us too much and we can search through it and
13   figure out what is junk and what is not, than get way too
14   little.  From what we have seen, we are getting way too little
15   here.  We would ask the Court and HSBC to clarify what kind of
16   review they are doing of these documents, and we would ask the
17   Court to give us some guidance on what we ought to be doing
18   here.
19           I am hesitant to wait until August to come in with
20   these type of issues because this is really a fundamental
21   issue.  If there has been this deeper level of review on these
22   documents and we haven't been receiving the responsive hits to
23   our search terms that we went back and forth to negotiate,
24   that's a big problem and that is going to push out the schedule
25   even further.  So, to the extent there has been this more

```
                                                                    32
     G6trroyc
1    universe of documents in this case.  We have all then applied
2    our search terms to that universe of documents, and then that
3    has resulted in the sort of universe of documents that are
4    presumptively responsive.  That's a concrete identifiable
5    universe of documents.  There is then the documents that have
6    been produced.
7              At a minimum, we need to know out of that smaller set,
8    the set that resulted from running the search terms, how many
9    of those have been produced to us.  If it's an extremely small
10   number, that is evidence to me that there is a very high level,
11   very detailed level of additional review that's going on before
12   we see any documents.
13             THE COURT:  Except that they say that half of the
14   documents you produced are Bloomberg reports or lasagna
15   recipes.
16             MR. LIBRA:  Your Honor, they have asked for
17   essentially everything having to do with our RMBS investments.
18   Those Bloomberg messages are certainly something having to do
19   with all of the plaintiffs' RMBS investments.  That's why we
20   produced them.  In fact, we had a discussion with HSBC and said
21   if you don't want them, we will try and pull them out.  But
22   they are responsive.
23             We think they are irrelevant, of course.  We think the
24   vast majority of the material that we have been producing to
25   them is irrelevant.  We think this case should be focused on
```

                                                                        33
        G6trroyc

1    what HSBC didn't do with respect to protecting investors in
2    these trusts.  We don't think what our plaintiffs did matters
3    at all.  That doesn't mean we get to withhold it all from them.
4    We still need to produce it.  It's responsive to their
5    requests, and it can form a foundation of their defenses in
6    this case.
7              We just ask for the same in return, that we get the
8    documents we think are responsive.  We can have an argument
9    later about whether or not the conduct of a servicer that
10   wasn't servicing a particular bellwether trust is relevant to
11   our case.  But we ought to be entitled to see that material and
12   attempt to use it to prove our claims here.
13             I think we are only getting a sliver of what has been
14   hit upon the search terms.  So really at a minimum what I am
15   asking for, your Honor, is to at least order HSBC to tell us
16   what that universe was of the documents that resulted from
17   running the search terms and tell us how that compares to what
18   they have produced.
19             MR. GALDSTON:  May I add just one thought?
20             THE COURT:  After your colleague.
21             MR. WOOD:  On behalf of Royal Park, in response to
22   what Mr. Reddington said, his suggestion that he had not
23   understood that we were turning over documents responsive to
24   search terms is completely contrary to the agreement that we
25   reached with his colleagues.

G6trroyc
                                                                      34

1            We specifically discussed this earlier in the year,
2    whether or not Royal Park was doing a relevancy review.  They
3    were concerned about the scope of what we think is relevant or
4    not, and we told them that the easiest way to deal with this is
5    we would just produce all the documents that were responsive to
6    the search terms and not do that relevance review, and they
7    specifically agreed to that.
8            Mr. Reddington, perhaps they are not talking on their
9    side, but I'm slightly upset that he would make a
10   representation that he hadn't understood, at least from Royal
11   Park, that that's what they were doing, because that's what
12   they agreed to.  Frankly, we expected that that's what they
13   would be doing too.  So we are a little surprised by that.
14           THE COURT:  Thank you.
15           MR. GALDSTON:  A few details to add to what Mr. Libra
16   ably addressed.  We now live in a modern technological world,
17   massive amounts of information, and most courts abide by and
18   follow the Sedona principles.  Judge Scheindlin has co-authored
19   a handbook on e-discovery that embraces this very same concept.
20   Search terms are intended to reduce the need for manual review.
21   That is a fundamental tenet.  That is what we attempted to do
22   here.
23           We did not impose our view.  While we objected to
24   objected to many of the requests that HSBC propounded and we
25   felt in our view they were not relevant to any party's claim or

G6trroyc
35

1  defense, we did not impose our view of that relevance in
2  screening out the documents that they nevertheless specifically
3  requested.
4       The Bloomberg reports, these same things they are now
5  calling junk, the very same documents they asked us for, we
6  objected to producing.  Nevertheless, we did not impose in
7  secret our screen of what we think is relevant or not relevant.
8  That's where the disconnect is.  We are entitled to know, and I
9  believe they are obligated to tell us, what documents they are
10 withholding based on their view of relevance, which we disagree
11 with.
12      THE COURT:  Here is what I'm going to do.
13      MR. FITZGERALD:  One more thing, your Honor.  You
14 raised one point that I think is interesting.  What Mr.
15 Reddington is saying is they are doing a responsiveness and a
16 relevance review.  Our position is they should be doing a
17 review for responsiveness only.  They make the subjective
18 determination on top of that with respect to relevance.  I
19 would like to hear a representation from Mr. Reddington of what
20 the review is, your Honor.
21      THE COURT:  This is an issue that seems like there may
22 be, given what counsel from Royal Park has said, maybe not full
23 information that Mr. Reddington has.  It sounds like this is an
24 issue that is new to the parties.  I want you to discuss this
25 among yourselves immediately.  It may be that a conversation