# EXHIBIT 9

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

BLACKROCK ALLOCATION TARGET
SHARES:  SERIES S PORTFOLIO, et al.,

            Plaintiffs,

         v.                            14 Civ. 9371 (RMB)(SN)

WELLS FARGO BANK, NATIONAL
ASSOCIATION, et al.,

            Defendants.

------------------------------x
                                       New York, N.Y.
                                       May 19, 2016
                                       3:00 p.m.
Before:

                    HON. SARAH NETBURN,

                                       Magistrate Judge

                         APPEARANCES

BERNSTEIN LITOWITZ BERGER & GROSSMAN, LLP
     Attorneys for Plaintiffs
BY:  BENJAMIN GALDSTON

JONES DAY
     Attorneys for Defendants
BY:  JASON JURGENS
         HOWARD FREDRICK SIDMAN
```

1  the other modifications and what your view is?  So it appears

2  that 28 of the 43 other targeted searches are now limited by

3  time, that 14 of the other targeted searches are now limited by

4  plaintiffs, 31 of the 34 plaintiff specific searches are now

5  limited by time periods.  How does that play out for you?

6           MR. GALDSTON:  Well, your Honor, I think that

7  obviously anything that is a limitation is a step in the right

8  direction.  But, again, in crafting ESI searches, it is not a

9  piecemeal approach.  These things all work together.  It is a

10 very dynamic process.

11          So what you need to look at is what the end result is,

12 and while those particular refinements we think are a step in

13 the right direction, it would have certainly been more

14 effective had the parties met and conferred and discussed those

15 and thought of ways, tested ways, or done more effort to get at

16 what is really causing this extraordinary burden from Wells

17 Fargo.

18          THE COURT:  I don't necessarily disagree, and I assume

19 that Wells Fargo is going to tell me that either it did or it

20 tried, but I am sort of less interested at this stage in the

21 process of about why the meet-and-confer process did not result

22 in agreement.

23          So I am faced with a lot of search terms, and as I

24 have said, I am inclined to allow some, but I am trying to be

25 reasonable here, given the case has been significantly narrowed

1    and there are ways in which the Wells Fargo case is different
2    than the other cases.  I am trying to come up with something
3    that is fair and appropriate, notwithstanding the fact that
4    maybe you would have preferred the process to play out
5    differently.
6              If you can tell me, Mr. Galdston, and then I'll be
7    sure to let Mr. Jurgens or Mr. Sidman speak.
8              MR. GALDSTON:  Your Honor, I think the proof is in the
9    numbers.  You know, we have been applying the search terms that
10   we did not object to using all along.  ==Thus far, we have==
11   ==reviewed millions of documents.==  ==I should say millions of==
12   ==pages.==  ==I don't know the total number of documents.==  ==It==
13   ==probably exceeds one million.==
14              ==We have produced 320-something thousand documents==, and
15   we expect by the end of the month, by the end of next month,
16   when the document discovery period closes, I don't have an
17   estimate for your Honor, but I expect it will be a very
18   significant number.  The search terms we are using are working
19   and it has proven itself out.  It has manifested those numbers.
20             We have done everything we can to try to work with
21   Wells Fargo to make some adjustments.  If there is a specific
22   issue they don't think they're getting, I am happy to hear
23   about that.  But to wholesale revise the search terms is going
24   to set this case back to square one.  We will not be able to in
25   any way, shape or form comply with the current deadline and

1   probably are going to need another, you know, year to do the
2   review and the production that they have proposed.
3       THE COURT:  So what search terms are you running if
4   Wells Fargo hasn't apparently agreed to terms?  You're running
5   what they ran?
6       MR. GALDSTON:  They are actually quite similar to the
7   proposal that Wells Fargo has given us in structure as well as
8   in content.  I don't know exactly how much detail you want me
9   to go into, but as I told the court before, they try to get at
10  the issues by including the trust names, the CUSIPs, and then
11  concepts that related to the themes of parties, claims and
12  defenses, by using words and concepts, phrases, in connection
13  with entities and the trust in the CUSIPs.
14      So that is conceptually how these search terms are
15  devised.  It is not simply a list of words that you run, you
16  know, across a database.  These are concepts and they really do
17  get at the issues in the case.  Our position is, stay the
18  course, that the search terms that we are using are very
19  effective.  They have made an enormous production.  There are
20  12 trusts in this case.  The numbers that we have produced in
21  terms of documents and the numbers that we expect to produce
22  are as large and will probably even be larger than the numbers
23  we are producing in HSBC, which is a case where discovery
24  concerns 24 trusts, twice as many trusts as the trusts here.
25      Again, this is assuming we don't even touch the