LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

EDWARD REDDINGTON
(202) 434-5063
ereddington@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

July 20, 2016

<u>Via ECF</u>

Honorable Sarah Netburn
Thurgood Marshall Courthouse
United States District Court

Re:    <u>*Coordinated RMBS Trustee Actions Against HSBC Bank USA, NA*, Nos. 14-cv-
08175; 14-cv-09366; 14-cv-10101; 15-cv-02144; 15-cv-10032; 15-cv-10096</u>

Dear Judge Netburn:

I write in response to Plaintiffs' July 15, 2016 letter.

Consistent with the adage that the best defense is a good offense, Plaintiffs continue to
advance inaccurate and misleading positions in the hope that the many deficiencies in their own
productions will go unaddressed.  To continue this charade, Plaintiffs have submitted yet another
letter under the pretense that the Court requested it.  HSBC believes the Court did not request
this submission.[1]  In any event, HSBC is willing to meet and confer with Plaintiffs about
HSBC's production.[2]  Such a meet and confer should be reciprocal.  Plaintiffs' consistent *modus
operandi* has been to ignore, downplay, or hide the many problems with their own productions,

---

[1] To support their most recent filing, Plaintiffs rely upon a comment made towards the end of the
June 29 hearing in which the Court indicated it was expecting a letter on HSBC's production on
July <u>15</u>.  June 29, 2016 Hr'g Tr. at 50:12-13.  By that point, the Court already had indicated
several times that a letter concerning HSBC's production was to be filed on July <u>5</u>, and there was
no discussion of a separate or additional letter.  HSBC believes in all likelihood that the
reference to July 15 in the transcript is either a typographical error or an intended reference to
July 5.

[2] As HSBC already has explained to Plaintiffs, most of what Plaintiffs identify in their July 15
letter either (1) has been produced or (2) was not requested.  Ex. 1 (Ltr. from E. Reddington,
dated May 13, 2016).  Plaintiffs and their counsel are sophisticated, experienced, and well-
funded serial litigants.  They cannot be heard to complain about purported unproduced
documents if they did not request those documents or if HSBC objected to producing them and
Plaintiffs failed to challenge those objections until less than 30 days before the <u>fourth</u> deadline
for the completion of party document productions.

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
July 20, 2016
Page 2

while prematurely raising baseless issues about HSBC's production without meeting and conferring.  Notwithstanding Plaintiffs' latest filing, the real issue that will continue to frustrate moving this case forward in a timely fashion, and in a manner that does not prejudice HSBC, remains the unreviewed, unorganized, unresponsive, and still incomplete document dump that Plaintiffs made on HSBC.

As background, at the June 29 conference, Plaintiffs orally raised issues with HSBC's review of electronic documents that hit on search terms; Plaintiffs did not raise other purported discovery issues.  In response, the Court directed the parties to meet and confer about HSBC's review, and then following the meet and confer, if there were unresolved issues, to file a letter about HSBC's production on July 5.  Plaintiffs' counsel took great pains to ensure that the filing on July 5 was to be a single submission with no so-called "reply" filings.  June 29, 2016 Hr'g Tr. at 36:12-21 ("Mr. Galdston:  it's just one letter . . . No replies, correct?").  That letter was filed by Plaintiffs on July 5, HSBC responded on July 8, and the Court ruled on the issues raised on July 15, finding that HSBC had engaged in best practices in conducting its review.

Hours after the Court denied Plaintiffs' unfounded complaints about HSBC's document production, Plaintiffs filed yet another letter raising additional issues about that production.  Before filing their letter, Plaintiffs did not coordinate with HSBC; nor, between June 29 and July 15, did Plaintiffs attempt to meet and confer with HSBC.  Plaintiffs should not be permitted to continue to divert attention from their own fundamental discovery violations by serially raising baseless issues concerning HSBC's production and without meeting and conferring about their concerns.

Simply put, Plaintiffs' still-incomplete document productions remain in disarray.  Plaintiffs' productions are littered with hundreds of thousands of irrelevant and non-responsive documents.[3]  They are in such disorder that HSBC is hamstrung in being able to meet and confer with Plaintiffs with respect to individual document categories, let alone being able to adequately prepare for depositions in a reasonable and organized manner.  Despite missing numerous key custodians, Plaintiffs have not produced a significant number of additional documents since the June 29, 2016 hearing.  However, since that hearing, HSBC has learned or confirmed that:

---

[3] To put the scope of this mess into perspective, collectively Plaintiffs have produced to HSBC approximately 48.1 million pages of documents.  Were these pages to be printed out, they would fill between approximately 24,000 and 32,000 banker boxes—enough to fill a warehouse.  Searching for relevant materials in this hodgepodge of nonsense is like looking for the proverbial needle in a haystack.  Notwithstanding this document dump, Plaintiffs still have not provided documents from many key custodians and still have not run all the search terms ordered by the Court.

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
July 20, 2016
Page 3

- Without telling HSBC, Plaintiffs unilaterally deviated from the search terms the Court ordered all the parties to use and outright failed to run other key terms;[4]

- Plaintiffs have failed to provide custodian-level metadata as required by the ESI Stipulation for at least 48 custodians;

- Contrary to representations made to the Court on June 29 by counsel for the *BlackRock* Plaintiffs, the number of Plaintiffs' missing custodians is far closer to 40 than 4. While *BlackRock* Plaintiffs continue to not be transparent about which custodians they have produced custodial files for and which custodians still have additional productions forthcoming,[5] HSBC believes there are at least 39 *BlackRock* Plaintiff custodians for whom Plaintiffs have not run any search terms or produced any custodial files.[6] These include every one of the 10 key PIMCO custodians for whom HSBC was required to seek Court intervention to get the Plaintiffs to include. Notwithstanding this glaring omission, the *BlackRock* Plaintiffs have implausibly and inconsistently claimed that they failed to produce certain custodians because they "prioritized productions . . . that we understood HSBC was interested in receiving first." Ex. 5 at 1.

---

[4] Plaintiffs resisted disclosing their search term modifications following the June 29 hearing, initially not agreeing to exchange the terms on the date HSBC requested and telling HSBC that "now is not the time." Ex. 2 (June 30, 2016 email chain). Ultimately, Plaintiffs provided their search terms and then characterized their unilateral modifications as either inadvertent or, even less convincingly, as having been disclosed to HSBC *before the Court ordered the parties to use the same terms* on January 6 and February 18, 2016. The latter position is particularly problematic as it suggests Plaintiffs believe they are able to unilaterally ignore what has been discussed and directed in court. HSBC has requested Plaintiffs to confirm they will run the Court-ordered terms. Ex. 3 (Ltr. from E. Reddington, dated July 15, 2016).

[5] Since June 29, HSBC has requested several times that the *BlackRock* Plaintiffs provide dates that they would be available to meet and confer about the *BlackRock* productions. After first telling HSBC they would be available on a particular date, the *BlackRock* Plaintiffs reversed course and said they were unavailable. Ex. 4 (July 6, 2016 email chain). They then provided HSBC with a letter that did not address all of the open questions that HSBC had raised with them. Ex. 5 (July 9, 2016 letter).

[6] The number of custodians that HSBC believes are completely missing has dropped because, as noted above, HSBC has learned that the Plaintiffs failed to produce ESI data for many custodians. Without the Court-ordered ESI data, HSBC believed it had not received documents from these specific custodians. Notwithstanding this, it remains to be seen whether additional documents will be forthcoming for these custodians. Given the limited number of documents received for some of them, and Plaintiffs' failure to run the correct search terms, HSBC fully expects to receive additional productions.

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
July 20, 2016
Page 4

With respect to the purported issues Plaintiffs raise in their July 15 letter regarding HSBC's production, HSBC suspects it will be able to resolve many without the Court's involvement after the parties meet and confer.  This is due in large part to the many inaccuracies in Plaintiffs' statements about what HSBC has produced so far and what Plaintiffs actually have requested.

First, HSBC has produced many of the specific documents Plaintiffs identify in their letter.  For example, HSBC has produced the terms of references for the relevant committees, *e.g.* HSBCCTLA1158392, CTLA policies and procedures, relevant provisions from the Functional Instructional Manual (FIM), *e.g.* HSBCCTLA1184854, and the potential repurchase party list, HSBCCTLA0131072.

Second, as HSBC explained in its July 8, 2016 letter to the Court, HSBC has produced over 35,000 documents as a result of running search terms designed to identify documents relating to purported failures by common originators, sponsors, and servicers of the Bellwether Trusts, as well as HSBC's general trustee activities.  None of these documents contain the search terms for the Bellwether Trust names, and thus are the types of "general" documents that Plaintiffs discuss in their letter and suggest they have not received.[7]  Ltr. at 4-5.  Plaintiffs' assertion that HSBC has refused to provide discovery about documents that do not specifically refer to a Bellwether Trust is simply untrue, and Plaintiffs know this as they are in possession of such documents and they have been told this numerous times by counsel for HSBC.

Third, as HSBC explained to Plaintiffs already, the Joint Stipulation and Order Regarding the Format of Document Productions specifically contemplates that the production of data contained in databases, such as the Account Control System ("ACS"), may be done by the producing party running queries and producing the exported queries.  ESI Stipulation at ¶ 18.  The Stipulation further notes that the parties should meet and confer to determine whether and how such a data extraction will occur.  HSBC already has produced some reports from its ACS system and also has offered to meet and confer with Plaintiffs to discuss whether other reports should be run.  The parties have not yet met and conferred as contemplated under the ESI Stipulation.

\* \* \* \* \* \* \*

---

[7] Plaintiffs mischaracterize the remarks they attribute to Judge Scheindlin as purportedly being the "law of the case" that justifies their discovery position relating to "general" issues.  In fact, those comments were not in response to any "objection" by HSBC and were not a specific finding or ruling on any particular issue or category of documents.  Rather, read in context the Court was simply noting the unremarkable position that while discovery was only proceeding on selected Bellwether trusts, there would be some discovery on "general issues" that applied across the trusts.  The exact contours of this "general discovery" were left open, but, to the extent it matters here, the Court made clear on multiple occasions that the Bellwether process was a limit on discovery and, as HSBC explained in its July 8 letter, HSBC has provided substantial discovery on matters that are not specific to Bellwether trusts.  Dkt. 184 at 5.

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
July 20, 2016
Page 5

Plaintiffs' insistence on raising additional unfounded issues concerning HSBC's productions under the guise of an "update" to the Court, when their own productions are in such disarray, is the epitome of gamesmanship. For Plaintiffs to complain about HSBC's production in light of their own deficiencies borders on the Orwellian—Plaintiffs' doublespeak is the opposite of what is actually occurring. HSBC has run the Court-ordered search terms across all of its offered custodians. HSBC has provided the metadata for its custodians in accordance with the Court-ordered ESI stipulation. HSBC has produced responsive documents and substantially completed its productions on time. HSBC is prepared to meet and confer with Plaintiffs on open issues. Plaintiffs have not fully complied or reciprocated on any front. The Court should require Plaintiffs to correct their own deficiencies and meet and confer with HSBC rather than entertain now a second category of meritless issues about HSBC's production.

Sincerely,

Edward Reddington

Attachments

cc: All counsel via ECF