# Exhibit 1

LAW OFFICES
WILLIAMS & CONNOLLY LLP
725 TWELFTH STREET, N.W.
WASHINGTON, D. C. 20005-5901
(202) 434-5000
FAX (202) 434-5029

EDWARD REDDINGTON
(202) 434-5063
ereddington@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

May 13, 2016

Via Email

John A. Libra
Korein Tillery, LLC
205 North Michigan, Suite 1950
Chicago, Illinois 60601-4269
jlibra@koreintilery.com

Re: *Coordinated RMBS Trustee Litigation vs. HSBC Bank USA, N.A. (S.D.N.Y)*

Dear John:

I write to respond to your May 6, 2016 letter. Your letter raises a large number of issues, many of which will require investigation. Many of these issues could have been raised many months ago, not on the eve of the document production deadline in these coordinated actions. Additionally, many of the documents requested do not fall within Plaintiffs' document requests, subject to HSBC's objections and offers to produce, and are well outside of the scope of discovery in this case. For example, your suggestion that HSBC should produce materials relating to alleged problems in non-Bellwether trusts, on the theory that those purported events could have influenced how HSBC addressed problems in the Bellwether trusts, Ltr. at 12, would undo the Bellwether process entirely.

Despite this, HSBC is willing to meet and confer regarding the collection and production of documents identified in your letter, even though your letter seeks documents not covered by Plaintiffs' requests and which HSBC is under no obligation to produce, particularly this late in discovery. However in doing so, HSBC does not waive its right to point out that such documents are legally irrelevant to Plaintiffs' claims or HSBC's defenses. Nor is HSBC agreeing to expand the scope of Plaintiffs' document requests or discovery in this case by producing any such documents.

HSBC will follow up on specific documents identified in your letter in due course; however, I wish to address now some of the categories identified in your letter. It may be helpful to schedule a call to discuss these issues and hopefully resolve them.

**1. HSBC's Search and Production Process**

HSBC has undertaken a diligent and reasonable document collection and search process. This process was not limited to running the extensive ESI search term protocol that the parties agreed to. It also included a reasonable collection of hard copy, email, and centrally-located and electronically stored documents and information. Indeed, HSBC's document production to date contains many documents that do not contain the search terms, and which pertain to the narrow category of "general" documents that are not specific to the Bellwether trusts subject to discovery.

If Plaintiffs have concerns regarding HSBC's document search and collection process, HSBC would be willing to discuss an exchange by the parties of certain details regarding their document search and collection efforts. Any such exchange would have to be mutual, however, and all Plaintiffs would have to participate. Please let me know if you would like to discuss this further during a meet and confer.

**2. Production of General, Non-Bellwether Documents**

HSBC disagrees with your somewhat remarkable assertion that it is obligated to produce *all general material* concerning HSBC's performance of its duties as trustee. Ltr. at 2. Rather, the category of general, non-Bellwether trust-specific discovery is more limited. To the extent the scope includes the policies and procedures HSBC implemented and followed that relate to its administration of the Bellwether Trusts, HSBC has produced its general policies and procedures, as well as communications surrounding the implementation of those policies identified after a reasonable search.

Your letter references several categories of documents that, to the extent they are not specific to Bellwether trusts, are outside the scope of discovery. For example, you request all committee meeting minutes for "relevant" committees, "materials discussing and/or cataloging discretionary actions" taken by HSBC as trustee (not limited to those taken in the Bellwether trusts), lists of repurchase demands (again not limited to demands in the Bellwether trusts), and risk audits and other assessments of HSBC's procedures. Ltr. at 2. These categories of documents go well beyond Plaintiffs' document requests, HSBC's objections and offers to produce, and the scope of discovery in these cases in light of the Bellwether process. To the extent Plaintiffs have requested them, HSBC has attempted to identify documents within these categories that relate directly to the Bellwether trusts or, to the extent they contain the agreed-upon and court-imposed search terms, relate to the Bellwether Entities. HSBC incorporates its objections and responses to Plaintiffs' document requests, which articulate its long-asserted position that the categories of non-Bellwether specific documents Plaintiffs now belatedly seek are outside the scope of discovery.

**3. Documents Identified by Filepaths**

Your letter identifies a number of documents "specifically referenced in material already produced by HSBC." Ltr. at 3. HSBC is looking into your request for these documents to determine whether the documents are responsive to Plaintiffs' requests (subject to HSBC's objections). I will note, however, that HSBC has already produced certain documents you identified. For example, HSBC produced the list of "Potential Repurchase Parties," located at J:\Issrsrcs\CT_admin\Asset Backed\MBS Legal Folder\MBS Deals & RP List.xls, at HSBCCTLA0131072.

**4. Complete File Folders**

Your letter suggests HSBC should produce "ALL documents contained within" certain file folders on HSBC's shared drive. Ltr. at 10. HSBC objects to producing all documents from particular folders, with no distinction being drawn between whether the materials in that folder are responsive to document requests. HSBC is only under an obligation to produce responsive, non-privileged documents. Nor is HSBC under an obligation to justify, on a document-by-document basis, its reasons for not producing non-responsive documents; I assume Plaintiffs do not intend to provide such an analysis regarding their document production decisions. HSBC will review the folders you identify, and the documents within, and will produce (to the extent it has not already produced) any responsive, non-privileged documents.

**5. Terms of Reference**

In the interests of compromise, HSBC will produce the identified terms of reference for the DBAC, CTLA GBAC, and CTLA MANCO committees shortly. HSBC does not agree, by producing these terms of reference, that they are responsive or relevant in any way.

**6. Document Retention and Legal Hold Documents**

HSBC already has produced documents sufficient for Plaintiffs to ascertain CTLA's record retention policy. *See, e.g.* HSBCCTLA1179482. The documents you identify in your letter, for example the corporate trust retention schedule and the legal hold list, are not necessary to understand the policy, and are thus not responsive to any document request. In addition, even if these documents were responsive, some would be protected from disclosure by the attorney-client privilege or the work product doctrine.

**7. Policy and Procedure Documents**

HSBC has already produced hundreds of policy and procedure documents, comprising many different policies and procedures. HSBC further identified its policies and procedures by bates number in response to Plaintiffs' interrogatory requests. Your letter claims HSBC's

production is nonetheless incomplete because HSBC has not produced every document identified or referenced in these procedures. HSBC disagrees that any document referenced or identified in a policy need also be produced to understand the policy. The policy and procedure documents that HSBC has produced are readily understandable on their own. Additionally, several of the documents you reference, for example the HSBC North America Holdings (HNAH) Statement of Business Principles and Code of Ethics, are policies of a legal entity other than HSBC Bank USA, NA, the defendant in this case.

Notwithstanding this objection, and without narrowing or waiving any other objection HSBC has raised to Plaintiffs' document requests, HSBC will make reasonable efforts to collect and produce shortly FIM provisions identified in your letter. HSBC will investigate the GSM and RCA provisions, and the extent to which they affect the policies and procedures, if at all, and make a determination whether any such documents should be produced. By producing these documents, HSBC is not agreeing they are relevant to this case, or that they are responsive to Plaintiffs' document requests.

**8. Incomplete Excel Files**

You state in your letter that you have located over 30 documents in HSBC's productions for which you it appears the data exports failed. However, your letter only identifies two such files (HSBCCTLA0134091 and HSBCCTLA0134130). Please identify the Bates numbers for all 30 documents so we can determine whether there is additional information in these documents.

**9. Databases**

Your letter suggests that Plaintiffs seek production, or access to, several databases, including the Document Tracking Database, an Access database, and the Account Control System database. HSBC objects to producing entire databases as this is overly burdensome and would result in the production of irrelevant discovery. Instead, the ESI Protocol in this case governs discovery requests involving structured data, such as databases. The ESI Protocol contemplates that responsive data within databases could be produced by querying the databases and producing the resulting exports. ESI Protocol at 8. HSBC needs to understand what databases Plaintiffs use that might contain relevant exportable material. Please identify these for us. Then, as the ESI Protocol contemplates, the parties could meet-and-confer and hopefully determine the appropriate scope of the queries to be run against these databases. HSBC reserves the right to review the exports from these queries to ensure that any privileged material is redacted or otherwise withheld from production.

**10. Committee Minutes and Associated Materials**

Your letter suggests that "ALL meeting minutes, agendas and associated materials" for several HSBC committees should be produced. Ltr. at 9 (emphasis in original). HSBC disagrees that all such meeting minutes and associated materials for these committees are responsive or not

privileged. Moreover, just because a committee has responsibility over some aspect of HSBC's corporate trust department does not mean that every meeting of the committee included discussion related to HSBC's administration of the Bellwether trusts. In addition to the fact that many of the requested materials are not responsive to Plaintiffs' requests or relevant to Plaintiffs' claims, many of these materials also are privileged due to the heavy involvement of attorneys in these committees.

Notwithstanding these objections, HSBC is reviewing committee meeting material and will produce responsive, non-privileged documents resulting from that review.

**11. Settlement Agreement Documents**

Your assertion that HSBC has not produced responsive documents relating to its initiation and monitoring of settlements is incorrect. As an initial matter, none of the document requests you cite in your letter even mention settlements, and HSBC's offer to produce documents was appropriately limited to the Bellwether trusts. Furthermore, HSBC has produced policies and procedures relating to requests to initiate litigation, the committee of responsible officers, and trustee discretion.

**12. Rule 15 Ga-1 Reporting Documents**

Your reference to documents and communications "related to Rule 15 Ga-1 reporting" is the first time you have identified such documents. None of the Plaintiffs' document requests mention such documents. The document requests you cite are general requests for trust administration documents, in response to which HSBC agreed to produce certain files relating to the Bellwether trusts. Nowhere do any of your requests mention "Rule 15 Ga-1 reporting" or the "3 Year Lookback Period" reports you identify (for the first time) in your letter. In any event, by its terms, Rule 15 Ga-1 imposes certain disclosure obligations on a "securitzer" of loans (not a trustee).

**13. Documents Concerning HSBC's Expenses**

None of Plaintiffs' document requests include documents relating to the expenses HSBC incurred as trustee. Rather, the only document request that relates in any way to HSBC's financial compensation is request number 36, which seeks documents concerning the compensation HSBC received.

**14. Custodians**

As you know, the date to complete document production is about one month away. HSBC expects to make several productions over the next few weeks that will hopefully address your questions regarding custodian document count (as well as other issues in your letter). However, regarding your statement that some custodians have more responsive documents than

others, that may be due in part to the fact that several custodians (including some that you listed in your letter) were only working in CTLA on RMBS trusts for a portion of the relevant time period, whereas both Ms. Moy and Ms. Zheng worked on the RMBS portfolio for many years.

* * *

Please let me know if you would like to meet and confer about any of these issues, and if so, please propose dates during the week of May 30th. Please be prepared to discuss the issues raised in George Borden's May 10, 2016 letter to NCUA.

Regards,

Edward Reddington