**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROYAL PARK INVESTMENTS SA/NV,<br><br>        Plaintiff,<br>   v.<br><br>HSBC BANK USA, NATIONAL<br>ASSOCIATION,<br><br>        Defendant. | **Case No. 14-CV-8175-LGS-SN** |
| BLACKROCK BALANCED CAPITAL<br>PORTFOLIO (FI), *et al.*,<br><br>        Plaintiffs,<br>   v.<br><br>HSBC BANK USA, NATIONAL<br>ASSOCIATION,<br><br>        Defendant. | **Case No. 14-CV-9366-LGS-SN** |
| PHOENIX LIGHT SF LIMITED, *et al.*,<br><br>        Plaintiffs,<br>   v.<br><br>HSBC BANK USA, NATIONAL<br>ASSOCIATION,<br><br>        Defendant. | **Case No. 14-cv-10101-LGS-SN** |
| NATIONAL CREDIT UNION<br>ADMINISTRATION BOARD, *et al.*,<br><br>        Plaintiffs,<br>   v.<br><br>HSBC BANK USA, NATIONAL<br>ASSOCIATION,<br><br>        Defendant. | **Case No. 15-cv-2144-LGS-SN** |

| | |
|---|---|
| COMMERZBANK AG,<br><br>              Plaintiff,<br>    v.<br><br>HSBC BANK USA, NATIONAL<br>ASSOCIATION,<br><br>            Defendant. | **Case No. 15-cv-10032-LGS-SN** |
| TRIAXX PRIME CDO 2006-1, LTD, *et al*.,<br><br>           Plaintiffs,<br>    v.<br><br>HSBC BANK USA, NATIONAL<br>ASSOCIATION,<br><br>           Defendant. | **Case No. 15-cv-10096-LGS-SN** |

## HSBC BANK USA, N.A.'S RESPONSE TO THE
## COURT'S AUGUST 9, 2016 ORDER TO SHOW CAUSE

Defendant HSBC Bank USA, N.A. ("HSBC") respectfully submits this response to the Court's August 9, 2016 Order to Show Cause.

### PRELIMINARY STATEMENT

On July 31, Plaintiffs filed yet another discovery motion that is based upon two principal assumptions: (1) that HSBC purportedly is withholding specific categories of responsive documents based on a so-called "relevance" determination; and (2) that HSBC's responses and objections to Plaintiffs' document requests do not identify, in the manner required by the Federal Rules, the documents HSBC was willing to produce in response to Plaintiffs' overly broad, ambiguous, and otherwise objectionable requests. Both of Plaintiffs' premises are false.

First, as has now been explained to counsel for the Plaintiffs on multiple occasions, both orally and in writing, HSBC's review did <u>not</u> withhold documents based on general relevance. Instead, as HSBC set forth in its July 8, 2016 letter to the Court, HSBC's review determined

1

whether documents were <u>responsive</u> to Plaintiffs' requests based on the substance of those requests and HSBC's objections.  Dkt. 184.  This is the normal process that is followed in civil litigation.  Plaintiffs' insistence on continuing to represent to this Court that HSBC withheld documents based on general "relevance" is both inaccurate and misleading.

Second, it is equally untrue that Plaintiffs do not understand or were not told precisely which types of documents HSBC would be willing to produce in response to their requests. HSBC's responses do exactly that on a request-by-request basis.  Ex. 1 (HSBC's May 29, 2015 Responses and Objections to Plaintiffs' Requests for Production).  When responding to Plaintiffs' requests, HSBC explicitly told Plaintiffs the <u>limits</u> of its intended search and production.  This is the precise approach recommended by the Federal Rules, including the recent amendments to the Rules that are designed to ensure that objections are stated with specificity.  Fed. R. Civ. P. 34(b)(2)(C) advisory committee's note (2015) ("<u>An objection that states the limits that have controlled the search</u> for responsive and relevant materials <u>qualifies as a statement that the materials have been 'withheld.</u>'" (emphasis added)).

Last summer, the parties met and conferred regarding each side's responses.  HSBC noted that it had identified the limits of its production as required by the Rules.  Plaintiffs moved to compel as to only one of HSBC's limitations –whether HSBC would produce documents located outside its Corporate Trust and Loan Agency.  On that issue, Plaintiffs received limited relief.  Plaintiffs never sought relief on any of HSBC's remaining limitations.  As a result, at great time and expense, HSBC conducted its review in reliance on its responses, including the written limitations that HSBC disclosed to Plaintiffs more than a year ago.  After conducting its review, HSBC produced responsive, non-privileged documents.  As is also normal in civil

litigation, documents determined to be non-responsive were <u>not</u> further categorized or reviewed for relevance or privilege.

The Court already has ruled on the general process HSBC employed to review and produce documents, noting that "HSBC has met its discovery obligations in accordance with the Federal Rules," and "engaged in best practices."  Dkt. 185 at 3-4.  In so finding, the Court denied Plaintiffs' request for "hit reports or criteria it used to withhold documents," and rejected Plaintiffs' assertions that they were entitled to non-responsive documents that hit on search terms.  Additionally, citing to the recent amendments to Rule 34, the Court directed HSBC to "identify its objections to the plaintiffs' document demands and specify which documents have been withheld based on those objections."  *Id.* at 4.

HSBC believes that its original May 29, 2015 responses to Plaintiffs' document requests do just that.  In those responses, HSBC told Plaintiffs specifically what the limitations of its search and production would be.  Under the Federal Rules, this disclosure satisfies the obligation to identify what materials would be withheld.  Plaintiffs have had those responses for more than a year.  Tellingly, in filing their motion to compel, Plaintiffs make no effort to identify specific document requests they believe are valid or specific responses that they seek to challenge. Typically, a party moving to compel is required to do this, which allows a Court to evaluate the actual merits of such a motion rather than rule in the abstract.  *See Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.p.A.*, 2009 WL 3757054, at *2 (E.D.N.Y. Nov. 9, 2009).  Plaintiffs seek to side step this burden with speculation and innuendo rather than facts and law.

In contrast to HSBC's approach, Plaintiffs' own responses to HSBC's document requests repeatedly employ the boilerplate response that Plaintiffs will produce documents "subject to" and "without waiving" Plaintiffs' objections.  *E.g.*, Ex. 2 (PIMCO's June 1, 2015 Responses and

Objections to HSBC's First Requests for Production) at *passim*.  Ironically, this is precisely the response criticized by and intended to be addressed by the recent amendments to the Federal Rules.  Fed. R. Civ. P. 34(b)(2)(C) advisory committee's note (2015) ("This amendment should end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections.").  Unlike HSBC's responses, Plaintiffs' responses do not identify the limits that would control their search.  Thus, it is Plaintiffs' approach that fails to comply with the Federal Rules and employs "hide the ball" tactics, not HSBC's approach.

Notwithstanding that HSBC's responses already identify the limits of its production as required by Rule 34, in an abundance of caution, HSBC provided additional information to Plaintiffs regarding the types of documents that might have hit on search terms and would have been non-responsive.  Dkt. 197-1 (July 25, 2016 letter from E. Reddington).  As HSBC explained in its July 8, 2016 letter to the Court, Dkt. 184, Plaintiffs' search terms were never the targeted terms that Plaintiffs claimed and there are numerous reasons why those search terms would hit mostly non-responsive documents.  In its July 25 letter, HSBC offered to discuss its objections further if Plaintiffs continued to have questions.  Plaintiffs did not take HSBC up on its offer, but instead moved to compel after demanding that HSBC inform plaintiffs of the specific documents being withheld in response to each request.

A logical fallacy, however, underlies Plaintiffs' demand.  As is again normal in civil litigation, responsiveness was determined by reference to the written limitations that HSBC disclosed to Plaintiffs, and non-responsive materials were not further characterized.  Thus, there is no cache of "responsive" documents that has been withheld for each request.  HSBC can only

do again what it already has—tell Plaintiffs the limitations that HSBC articulated more than a year ago in response to their requests.  These limitations are all set forth in writing.  If Plaintiffs wish to challenge those limitations, they should be required to do so specifically.

Finally, before ordering the re-review or production of potentially thousands of documents that are otherwise non-responsive, there should be some assessment that the documents that would be produced from that order would be relevant and proportional to this litigation.  On that point, HSBC notes that less than 24 hours after Plaintiffs filed their most recent letter motion, another plaintiff in this district filed a request to dismiss with prejudice its class action against an indenture trustee.  Plaintiffs' Memorandum of Law in Support of Unopposed Motion For Entry of Order of Dismissal Pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, *Retirement Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*, No. 11-cv-05459, Dkt. 202 (S.D.N.Y. filed Aug. 8, 2016).  Like the Plaintiffs here, that plaintiff raised similar allegations of "pervasive breach" by common third parties (*i.e.*, the equivalent of the "Bellwether Entities") to support their theory that the indenture trustee had actual knowledge of loan-level breaches and that the indenture trustee was required to act unilaterally in response.  In voluntarily dismissing its class action while taking nothing, that plaintiff noted that "many legal and factual obstacles to certifying a class and prevailing on the merits . . . have accumulated over time," *id.* at 1, including the Second Circuit's holding that "Plaintiffs' claims had to be proved 'loan by loan,' as well as 'trust by trust,'" *id.* at 4. Moreover, in dismissing its action, that plaintiff also noted the First Department recently has "narrowly construed, as a matter of New York State law . . . what constitutes an "Event of Default' that is 'known to the trustee'" within the meaning of an RMBS-trust governing agreement.  *Id.* at 5.  This same law controls Plaintiffs' claims here, and, if the parties are going

to litigate the relevance and proportionality of document requests and responses this late in the discovery process and potentially produce thousands of additional documents, HSBC believes it would make sense to do so with the benefit of informed briefing and argument on these topics.

In summary, Plaintiffs' request that HSBC produce a random sample of unproduced documents is not supported by Plaintiffs' hyperbole and speculation and would impose a significant burden and expense on HSBC.  From the beginning, HSBC has been transparent about what it would and would not produce.  HSBC conducted its review in reliance on those stated limitations.  Had HSBC not placed limits on Plaintiffs' requests, Plaintiffs' requests would have been hopelessly overbroad.  By providing responses that complied with the rules, HSBC preserved its objections, and did so on a request-by-request basis.  Thus, any motion to compel HSBC to produce additional documents should first address whether Plaintiffs' requests are objectionable, and then should address whether Plaintiffs have satisfied their burden to show that non-objectionable materials have been withheld.  For all of the above reasons, Plaintiffs' request for non-responsive documents should be denied.

## BACKGROUND

### A.      Plaintiffs' April 29, 2015 Document Requests

On April 29, 2015, the parties exchanged requests for production of documents.  This was before the Bellwether process had been agreed upon, so Plaintiffs' requests were not tailored to the Bellwether Trusts.  Ex. 3 (Plaintiffs' April 29, 2015 Requests for Production).  Plaintiffs' requests were very broad.  For example, Plaintiffs requested:

- "All Documents and Communications Concerning the [nearly 300 trusts on which Plaintiffs sued] . . . ," (RFP 1);

- "All Documents and Communications Concerning any review, due diligence, or analysis performed on any Loan . . . ," (RFP 8);

- "All Documents and Communications Concerning any governmental inquiry, hearing, investigation, report, commentary, analysis, or study regarding the residential mortgage-backed industry . . . ," (RFP 10);

- "All Documents and Communications Concerning any litigation regarding RMBS . . . ," (RFP 11);

- "All Documents and Communications Concerning any effort, whether successful or not, to foreclose upon any property securing the Loans . . . ," (RFP 44); and

- "All Documents and Communications Concerning notices Concerning pervasive issues in RMBS trusts . . . ," (RFP 49).

In early May, the parties agreed to and the Court ordered a Bellwether process whereby discovery would proceed only as to 24 trusts. Plaintiffs' document requests did not reflect the narrowed scope of discovery under the Bellwether process, and Plaintiffs did not re-issue new document requests.

**B.     HSBC's May 29, 2015 Responses and Objections to Plaintiffs' Document Requests**

On May 29, 2015, HSBC provided its objections and responses to Plaintiffs' document request. Ex. 1. Consistent with the Court's direction concerning the Bellwether process, HSBC objected, with limited exceptions, to producing documents unrelated to the Bellwether Trusts. In response to all 56 document requests,[1] HSBC provided specific objections, and specified exactly which documents it was willing to produce in response to the request. This complies with Rule

---

[1] The *Royal Park* Plaintiffs also submitted four document requests (Nos. 53-56) separately.

34; it enabled Plaintiffs to understand what objections HSBC was raising, and what categories of documents HSBC would and would not produce in response to each request in light of those objections.[2]

For example, in response to Plaintiffs' first, extremely broad, document request, for "All Documents and Communications Concerning the Trusts, including but not limited to Your file for each Trust," HSBC reasonably offered to produce "non-privileged, responsive documents contained in HSBC's trust-specific files for the [Bellwether Trusts] as well as non-privileged responsive documents referencing the [Bellwether Trusts] located after a reasonable search of the relevant HSBC email." Ex. 1 at 8. After identifying this limitation on its offer to produce, HSBC specifically noted that "HSBC st[ood] on its objections and decline[d] to produce other documents in response to this request." *Id.* HSBC followed this same approach for each overly broad request.

### C.    The Parties' Meet-and-Confer Process

On July 31, 2015, the parties met and conferred regarding document discovery. Ex. 4 (Decl. of Eric Wiener) ¶ 2. During the meet and confer, both sides raised concerns about the scope of document collection and production. Plaintiffs asserted that HSBC had "re-written" their requests by offering to produce only a subset of what was requested in response to many of Plaintiffs' requests. *Id.* ¶ 4. HSBC explained that such a specific response was what the Federal Rules called for. *Id.* ¶ 6. Plaintiffs said during the meet and confer that they would follow up

---

[2] In contrast, Plaintiffs' responses to HSBC's document requests typically listed several broad objections and then stated that "[s]ubject to and without waiving the foregoing and the General Objections, Plaintiffs will produce responsive documents, if any, concerning the RMBS trusts at issue in this action." Ex. 2 at *passim*. Unlike HSBC's approach, Plaintiffs' responses left HSBC guessing as to what documents were being produced and which documents were being withheld based on Plaintiffs' various objections.

and identify specific requests they believed HSBC had "re-written" in an unfairly narrow fashion. *Id.* ¶ 7.  HSBC never received such a list.

On August 13, 2015, HSBC sent Plaintiffs a letter in part summarizing what had been discussed during the July 31, 2015 meet and confer call.  Ex. 5 (August 13, 2015 letter from E. Reddington).  In that letter, HSBC reiterated what it said during the meet and confer:  "in response to certain overly broad and ambiguous discovery requests, HSBC specifically set forth how it was interpreting those requests and what documents would be produced in response.  If you believe certain interpretations were too narrow, we are willing to discuss those issues with your further."  *Id.* at 5.  Plaintiffs never raised any specific requests in response to this letter.

During the meet and confer process, Plaintiffs took issue with two limitations HSBC had placed on its document production.  Ex. 6 (August 24, 2015 letter from B. Galdston).  Plaintiffs first argued that HSBC should produce documents evidencing HSBC's knowledge of certain alleged failures by common originators, sponsors, and servicers to the Bellwether Trusts, even if not in the context of a Bellwether Trust.  Without agreeing that such documents ultimately would be relevant, on August 28, 2015, HSBC confirmed that it would accommodate Plaintiffs' position by meeting and conferring in order to reach agreement on search terms that could identify documents showing HSBC's alleged "knowledge of the improper origination, securities [sic], and servicing practices <u>of the same originators, sponsors and servicers for the bellwether trusts</u>."  Ex. 7 (August 28, 2015 letter from E. Reddington) (emphasis added).  The parties ultimately were ordered by the Court to employ a protocol that included search terms oriented on these so-called "Bellwether Entities."

Plaintiffs moved to compel documents regarding the second issue, *i.e.* documents located outside CTLA, and the Court granted limited relief at a September 4, 2015 hearing by requiring

HSBC to provide a number of non-CTLA custodians against whose documents the parties'
search protocol would be run.  In granting this limited relief, the Court required the Plaintiffs to
articulate specifically their purported basis for asserting such non-CTLA documents would be
relevant, and explicitly noted HSBC would not need to produce origination or servicing
documents related to trusts not in this case.  Sept. 4, 2015 Hr'g Tr. at 25:19-22, 32:15-16, 33:2-6.
Any other position would have undone the Bellwether process.

    **D.**    **HSBC's Review Process**

    Against this backdrop, and consistent with the specific limitations HSBC disclosed in its
responses, HSBC implemented its review.  HSBC began by reviewing documents not identified
through search terms (for example, certain centrally located hard copy files), and then reviewed
ESI documents containing search terms as the parties came to agreement on those terms.  HSBC
was not obligated to, nor did it, attempt to track or otherwise categorize or log documents that
were determined to be non-responsive.

    During the course of its review, and as HSBC explained in its July 8, 2016 letter to the
Court, where HSBC identified documents that were related to potential failures by the
Bellwether Entities, it produced those documents even where such documents were not
specifically linked to a Bellwether Trust.  Dkt. 184.  These include tens of thousands of
documents that hit on the search terms related to the Bellwether Entities.  However, as HSBC
also explained in its July 8 letter to the Court, the search terms also predominately hit on routine
administration documents relating to non-Bellwether Trusts or non-RMBS.  *Id.*  Consistent with
HSBC's responses, these documents were not produced.  HSBC did not conduct an additional
screen for "relevance" to withhold otherwise responsive, non-privileged documents.

**ARGUMENT**

HSBC complied with its obligation under the Federal Rules of Civil Procedure to provide specific objections to Plaintiffs' document requests.  Plaintiffs have had those limitations for more than a year.  HSBC conducted its review in reliance on those unchallenged limitations. Now, more than a year after those meet and confer discussions, Plaintiffs seek to challenge HSBC's review process, and they do so without citing any specific document request to support their assertions that they are purportedly missing documents or to any specific document response that they assert is invalid.  HSBC respectfully submits that Plaintiffs' allegations should not be assessed at a high level of generality and in a vacuum.  They have not sustained their burden to show that their document requests are unobjectionable or that HSBC has failed to produce responsive documents.  As HSBC explained in its July 8, 2016 letter to the Court, the fact that Plaintiffs' overly broad search terms hit on many non-responsive documents is not surprising given (1) how broad the terms were, (2) that the bank serves as trustee for many trusts not at issue in this litigation, including non-RMBS trusts, and (3) the so-called "Bellwether Entities" include some of the most prominent financial institutions in the world (and thus routinely take part or are referenced in routine financial transactions).  There is no good cause for requiring HSBC to further review documents or produce non-responsive ones, and Plaintiffs' motion should be denied.

**I.      HSBC Complied with Rule 34 and the Court's July 15, 2016 Order.**

Although Plaintiffs' August 8 letter claims that "HSBC's responses fail to state as to each request and objection whether it is withholding responsive documents," and that "Plaintiffs are left to guess at what is being withheld and the corresponding objection," Dkt. 196 at 3, these statements are simply untrue.  The Court should not accept Plaintiffs' brazen mischaracterization of the record as a basis for ordering HSBC to produce a sample of documents.  Where HSBC

11

objected to Plaintiffs' requests, HSBC identified which documents HSBC was willing to produce in response to that request.  This approach provides transparency and enables a litigant to challenge a response, because the litigant knows what documents will be produced and how the responding party intends to limit its production.  This is precisely what the Federal Rules, and courts interpreting the Rules, require.

Rule 34 notes that responses to document requests "must state whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a request must specify the part and permit inspection of the rest."  Fed. R. Civ. P. 34(b)(2)(C).  The 2015 Advisory Committee Note further elaborates on the meaning of this obligation:

> The producing party does not need to provide a detailed description or log of all documents withheld, but does need to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection. An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been "withheld."

Fed. R. Civ. P. 34(b)(2)(C) advisory committee's note (2015).  Thus, consistent with the Advisory Committee's Note, courts have held that objections that articulate the limits of how documents would be located or produced in response to a request meet the requirements of Rule 34.  *E.g.*, *Rowan v. Sunflower Elec. Power Corp.*, 2016 WL 3743102, at *5–6 (D. Kan. July 13, 2016) ("[T]he Advisory Committee's note makes clear that PCI's responses are sufficient to put Plaintiff on notice that PCI withheld documents in connection with its objection.  Rule 34 does not require PCI to provide a detailed description or log of the documents withheld.").

HSBC's responses and objections comply with Rule 34 and specifically inform Plaintiffs of the limits that have controlled HSBC's search for responsive documents.  In response to each request, after including specific objections to that request, HSBC articulated which documents it would produce in response to that request.  In addition to articulating these limits in its formal responses, HSBC identified them again in its correspondence with counsel and orally during

meet and confers.  This allowed Plaintiffs to understand what objections HSBC was asserting,

the scope of the search it would conduct, and the documents it would produce in response to each

request.

      For example, in response to Plaintiffs' first document request, for "All Documents and

Communications Concerning the Trusts, including but not limited to Your file for each Trust,"

HSBC objected and responded as follows:

> **RESPONSE:** HSBC objects to this Request as vague and ambiguous, overbroad,
> irrelevant, and unduly burdensome.  HSBC further objects to the extent this Request
> seeks information protected by the attorney-client privilege, the work product
> doctrine, or any other applicable privilege or protection.
>
> Subject to its General and Specific Objections, HSBC will produce, to the extent
> they can be located by a reasonable search, non-privileged, responsive documents
> contained in HSBC's trust-specific files for the [Bellwether Trusts] as well as non-
> privileged responsive documents referencing the Selected Trusts located after a
> reasonable search of the relevant HSBC email.  HSBC stands on its objections and
> declines to produce other documents in response to this request.

Ex. 1 at 8.

      HSBC's responses made clear that HSBC was only agreeing to produce a narrower

category of responsive documents in response to Plaintiffs' broad requests.  Without such a

narrowing, the requests would have been hopelessly overbroad and ambiguous.  During the July

31, 2015 meet and confer call, and again in its August 13, 2015 letter to Plaintiffs, HSBC noted

that if Plaintiffs took issue with any of HSBC's limitations, they should identify them.  Ex. 5 at 5

("[I]n response to certain overly broad and ambiguous discovery requests, HSBC specifically set

forth how it was interpreting those requests and what documents would be produced in response.

If you believe certain interpretations were too narrow, we are willing to discuss those issues with

your further.").  Plaintiffs never followed up on any of their requests, and HSBC thus reviewed

documents subject to its articulated objections (as modified by the Court's eventual order on the

one issue for which Plaintiffs chose to seek relief – HSBC's general objection to producing documents outside of its corporate trust department).

Finally, the volume of non-responsive documents does not indicate a flawed review process or provide a basis for ordering the re-review of documents or the production of a sample of documents.  As explained in HSBC's July 8, 2016 letter to the Court, Dkt. 184, the volume of non-responsive documents is not a surprise, and is a direct result of overly broad search terms advocated by Plaintiffs.  HSBC advocated, at every possible opportunity, for narrower search terms, noting that the terms Plaintiffs proposed (many of which HSBC agreed to run as a compromise) were overly broad and would hit routine transactional documents unrelated to potential failures by Bellwether Entities or problems in the Bellwether Trusts.

For example, the search terms required HSBC to review any document that included the words (1) "government" or "regulatory"; and (2) "report" or "action," so long as one of those words was within 50 words of any of 63 well-known financial institutions listed in Exhibit C, including Wells Fargo, which served as Master Servicer in almost all of the approximately 450 trusts for which HSBC serves as indenture trustee.  In the same vein, the final terms required HSBC to review any document that included the word "mortgage" within 25 words of the word "claim," so long as one of those words was within 50 words of the Exhibit C terms.  Similarly, the terms required HSBC to review any document that included the words (1) "servicer," "originator," or "underwriter,"; (2) "know" or "knew"; and (3) "discover," "learn" or "find," so long as one of those words was within 50 words of the Exhibit C terms.  As HSBC said throughout the search term negotiation process, the terms were not narrowly tailored.  Imprecise search terms lead to "potentially huge" and sometimes "enormous numbers of files" that are false positives and that must be searched to find responsive documents.  *The Sedona Conference Best*

*Practices Commentary on the Use of Search & Information Retrieval Methods in E-Discovery*,

15 Sedona Conf. J. 217, 233 (2014) (eds. Jason R. Baron & Maura R. Grossman).  HSBC's

prediction about these terms has now been vindicated.  This simply is no cause to grant

Plaintiffs' requested motion to compel, which is based on mere conjecture and

mischaracterization of the record.

## II.   Plaintiffs Do Not Meet their Burden for Compelling HSBC to Produce Additional Documents, Including Their Alternative Request for a Sample of Unproduced Documents.

Plaintiffs rely upon speculation, innuendo, and generalities to support their assertion that

HSBC has not produced responsive documents.  The law requires more.  Plaintiffs are only

entitled to documents that are relevant to their claims and defenses and proportional to the needs

of the case.  Fed. R. Civ. P. 26(b)(1).  As this Court has noted, the Plaintiffs are not entitled to

non-responsive documents.  Dkt. 185 at 3.  Nor can Plaintiffs compel the production of

documents that they have not requested or that are based upon objectionable requests.  Instead, if

a responding party objects to a discovery request, the party moving to compel bears the burden

of demonstrating why the objections are not justified.  *Taylor v. O'Hanneson*, 2014 WL

2696585, at *2 (E.D. Cal. June 13, 2014) (collecting cases).  This requires the moving party to

inform the Court which discovery requests are the subject of the motion to compel, and, for each

disputed response, why the information sought is relevant and why the responding party's

objections are not meritorious.  *Id.*

Here, Plaintiffs seek to avoid this burden entirely.   Plaintiffs make no effort to identify

the specific document requests they rely upon to support their claims that HSBC failed to

produce documents.  This is a glaring omission—many of Plaintiffs' requests are objectionable

and Plaintiffs should not be allowed to rely upon a defective request to compel the production of

hypothetical documents.

Plaintiffs similarly make no effort to identify a specific response by HSBC that Plaintiffs' assert was impermissible.  Plaintiffs' request should not be assessed in the abstract—HSBC is entitled under the rules to rely on its objections and responses until such time as Plaintiffs have made a showing that those objections and responses are not sufficient.  *Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386, at *15-16 (S.D.N.Y. Feb. 16, 2016).  Plaintiffs have been in the possession of HSBC's document responses for more than 14 months.  There simply is no good reason Plaintiffs should not be required to identify the specific requests and specific responses that they rely upon for their challenge, so that their claims can be evaluated with particularity rather than in the abstract.

Plaintiffs likewise identify no categories of documents that they believe should have been produced but were not.  Plaintiffs cannot do so.  As HSBC explained in its July 8 letter to the Court, during the Court-ordered meet and confer on July 5, counsel for Plaintiffs identified approximately ten categories of hypothetical documents and asked whether HSBC's review would have excluded those categories.  Plaintiffs' counsel learned during that meet and confer that such categories would not have been excluded.   Unable to point to any categories of documents that were not produced, Plaintiffs reference (for the first time in their August 8 letter) documents HSBC did produce to argue that there are four other documents that should have been produced but were not.  Dkt. 196 at 4-5.  Plaintiffs do not cite to any specific document request to support their assertion that these four documents were requested and would be responsive.

Plaintiffs, of course, did not seek to meet and confer with HSBC about these four documents.  But, in any event, Plaintiffs' cherry-picking does not justify Plaintiffs' motion to compel or their extraordinary request that HSBC be required to produce a large sample of unproduced documents.  There are many objective and non-controversial reasons why four

documents referenced in a production of over 133,000 documents (and constituting more than 2.2 million pages) may not have been produced.  As but a few examples, the documents:  (1) may no longer exist; (2) may not hit on the search terms; (3) may be privileged; (4) may not be responsive to a document request; (5) may not be within the limitations identified in HSBC's response to a document request; (6) may be located outside the scope of a reasonable search; or (7) may have been inadvertently coded as non-responsive.  HSBC cannot say which one of these examples, or another, might apply to the four hypothetical documents Plaintiffs rely upon in their August 8 letter, because the Plaintiffs never identified the produced documents to HSBC, nor do they do so in their letter to the Court.

But, in any event, these four hypothetical documents are inconsequential.  "The rules of discovery do not demand perfection, clairvoyance, or miracle workings in the production of documents."  *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 615 (C.D. Cal. 2013).  Even assuming the existence, relevance, and responsiveness of these four hypothetical documents, they do not justify the relief the Plaintiffs seek.  As this Court has noted during discovery hearings, the parties will never obtain every conceivable relevant document.  Jan. 6, 2016 Hr'g Tr. at 39:12-15.  The law does not require that standard; nor is it a standard that any party could meet.  Rather, HSBC has the obligation to conduct a reasonable search for responsive documents.  *In re Porsche Cars N. Am.*, 2012 WL 4361430, at *8-9 (S.D. Ohio Sept. 25, 2012) ("[T]he Rules require only that Defendants and their clients engage in searches that are reasonable . . . .").  HSBC has done that.  To the extent Plaintiffs believe, based on documents HSBC produces, there are additional specific responsive documents that HSBC has not produced, it can request that HSBC produce those documents.  HSBC will of course meet and confer with Plaintiffs in response to such requests.

Courts have denied requests similar to Plaintiffs' here, in which the moving party has not identified "specific evidence impugning [the producing party's] assertions that their production is complete." *Margel v. E.G.L. Gem Lab Ltd.*, 2008 WL 2224288, at *3 (S.D.N.Y. May 29, 2008). In *Margel*, the moving party claimed that the plaintiff's production was deficient based on deposition testimony indicating certain unproduced data existed. *Id.* at *2. However, the moving party failed to cite "any document request that would be implicated by [the deposition] testimony," and the court concluded the plaintiff was not under an obligation to produce the documents. *Id.* at *3. *See also Klunzinger v. I.R.S.*, 27 F. Supp. 2d 1015, 1028 (W.D. Mich. 1998) (declining in the Freedom of Information Act context to require production of a sample of withheld documents because the producing party's objections were "sufficiently detailed to provide a factual basis for evaluating the claimed exemptions"). Like in *Margel*, Plaintiffs' request here is unsupported by specific evidence suggesting HSBC has withheld non-privileged, responsive documents. Plaintiffs' unsubstantiated assertions regarding the purported existence of withheld responsive documents, untethered to specific examples or citations to specific requests for production, cannot serve as a basis to require HSBC to produce a sample of withheld documents. To prevail on a motion to compel, "it is incumbent upon the moving party to provide the necessary linkage between the discovery sought and the claims brought and/or defenses asserted in the case." *Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.p.A.*, 2009 WL 3757054, at *2 (E.D.N.Y. Nov. 9, 2009). Plaintiffs have made no attempt to meet that burden here. They have not identified any category of documents which HSBC has failed to produce, nor have they articulated why they are entitled to such documents. "Since the party seeking discovery bears the burden of initially showing relevance, [Plaintiffs'] failure to explain the relevance of this information is fatal to their motion to compel." *See Zanowic v. Reno*, 2000 WL

1376251, at *6 (S.D.N.Y. Sept. 25, 2000) (citation omitted).  Indeed, at this late stage, over a

year after HSBC made its objections, and after HSBC has invested significant resources in its

review, it is far too late for Plaintiffs to bring such a motion.

## III.    Plaintiffs' Requests Are Untimely and Unduly Burdensome.

Despite the fact that Plaintiffs have been on notice for over a year of exactly which

documents HSBC would produce in response to each of their requests for production, Plaintiffs

only now complain about HSBC's document production and move to compel production of

documents.  Having waited until the very eve of the document production deadline, Plaintiffs

bring these complaints well after HSBC expended significant resources reviewing and producing

documents based on a scope of responsiveness determined last year.  Plaintiffs' motion to

compel HSBC to produce a sample of non-responsive documents thus is untimely and would

impose undue burden on HSBC.

It is axiomatic that "if a moving party has unduly delayed filing a motion for an order

compelling discovery, a court may conclude that the motion is untimely." *Banks v. CBOCS

West, Inc.*, 2004 WL 723767, at *1 (N.D. Ill. Apr. 1, 2004).  Here, Plaintiffs received HSBC's

RFP responses on May 29, 2015 and acknowledged during the meet and confer process in the

weeks thereafter that HSBC had narrowed the scope of their requests.  Ex. 4 ¶ 4.  Plaintiffs said

they would identify which requests HSBC had overly narrowed and why.  *Id.* ¶ 7.  Having not

received the promised information, HSBC requested Plaintiffs to identify which document

requests they believe HSBC had impermissibly narrowed in its objections.  Ex. 5 at 5.  Plaintiffs

never followed up on any of their requests.  As a result, HSBC reviewed documents subject to its

articulated objections, the modifications reached in the meet and confer process, and the Court's

eventual order on the one issue for which Plaintiffs chose to seek relief—HSBC's general

objection to producing documents outside of its corporate trust department.

Plaintiffs' 15-month delay in moving to compel with respect to HSBC's objections is clearly untimely, and courts have routinely rejected similar motions. *See, e.g.*, *In re Health Mgmt., Inc., Secs. Litig.*, 1999 WL 33594423, at *2 (E.D.N.Y. Apr. 15, 1999) (denying motion to compel production of documents as untimely after plaintiffs waited 16 months to move after receiving objections); *Davidson v. Citizens Gas & Coke Utility*, 238 F.R.D. 234 (S.D. Ind. 2006) (denying motion to compel regarding "allegedly insufficient discovery responses" as untimely on the basis that the 14-month "delay in filing the motion to compel, alone, was sufficient reason for its denial"). It is particularly egregious—and telling—that Plaintiffs have waited to bring this motion until the eve of the current document production deadline. Two previous document production deadlines (November 20, 2015 and June 11, 2016) already have passed without any complaint from Plaintiffs about HSBC's document responses. "Where a party has waited to bring a motion to compel until the eve of a discovery deadline, the court is justified in denying the motion." *Everett v. Aldi, Inc.*, 2009 WL 940379, at *2–3 (N.D. Ind. Apr. 6, 2009). Plaintiffs' undue delay here, and HSBC's justifiable reliance on its written document responses, warrant denying Plaintiffs' request.

The burden of producing a sample of 3% of the non-responsive documents would be significant. When reviewing its documents, HSBC did not conduct a privilege review of non-responsive documents. As a result, it would have to review tens of thousands of documents for privilege. This alone would take several weeks and cost tens of thousands of dollars. In addition, HSBC would have to process these documents for production, at significant cost given the size of the production. Finally, HSBC would endure the inherent burden of disclosing confidential, business-sensitive documents that are unrelated to the claims and defenses in this action.

This burden is a direct result of Plaintiffs' delay.  Had Plaintiffs diligently raised any issues with HSBC's objections, the parties could have met and conferred, sought Court assistance if necessary, and resolved those issues before HSBC invested the time and resources necessary to complete the large document review in this case.  Instead, Plaintiffs did nothing, and HSBC reviewed documents based on the written scope limitations it specifically articulated in May 2015.

Plaintiffs' belated motion to compel is nothing more than an impermissible attempt to excuse Plaintiffs' prior lack of diligence and get a second bite at the apple in shaping the contours of HSBC's production.  Given the significant delay and undue burden inherent in their request, the Court should reject Plaintiffs' invitation to "extend the discovery period through the artifice of filing a motion to compel on the eve of the close of discovery." *Everett*, 2009 WL 940379, at *4.

## CONCLUSION

Unfortunately, Plaintiffs' gamesmanship when it comes to document discovery has become transparent with the benefit of hindsight.  On the one hand, Plaintiffs have done a document dump of unreviewed and unresponsive documents on HSBC, while holding back documents for key custodians including those ordered by the Court.  As of today—the latest deadline for the completion of document productions—HSBC is still missing documents from these key custodians, even though Plaintiffs have told the Court and counsel for HSBC for months that Plaintiffs are searching everywhere for documents and have substantially completed their productions.  At the same time, Plaintiffs have demanded HSBC run overly broad search terms, drafted to hit large numbers of documents in HSBC's files and drive up the costs of this litigation, while simultaneously pushing for ever more attenuated discovery unrelated to the

trusts at issue in this litigation or HSBC's role as trustee.  Their approach, in short, has been a poster child for bad behavior.

That behavior should not be rewarded.  Rule 26 entitles a party to "only any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Plaintiffs have not met their burden to show that relevant documents have been requested and not produced.  HSBC complied with Rule 34 and the Court's July 15, 2016 Order by providing Plaintiffs with specific objections to their document requests and by telling Plaintiffs what HSBC would produce in response to each request.  Plaintiffs failed to challenge HSBC's limitations until long after HSBC had substantially completed its review.  Plaintiffs are now using the volume of non-responsive documents caused by their own broad search terms as an excuse to belatedly raise issues they waived.  For all of the foregoing reasons, the Court should deny Plaintiffs' request for HSBC to produce additional documents or a sample of documents.  If the Court does not deny Plaintiffs' request, HSBC respectfully requests the opportunity to address these issues at oral argument.

Dated: August 11, 2016      By:    /s/ *Edward C. Reddington*
                                            George A. Borden
                                            Kevin M. Hodges (*pro hac vice*)
                                            Andrew W. Rudge  (*pro hac vice*)
                                            Edward C. Reddington (*pro hac vice*)
                                            Vidya Atre Mirmira (*pro hac vice*)
                                            Eric C. Wiener (*pro hac vice*)
                                            WILLIAMS & CONNOLLY LLP
                                            725 Twelfth Street, N.W.
                                            Washington, DC 20005
                                            Telephone: (202) 434-5000
                                            Facsimile: (202) 434-5029
                                            gborden@wc.com
                                            khodges@wc.com
                                            arudge@wc.com
                                            ereddington@wc.com
                                            vmirmira@wc.com
                                            ewiener@wc.com

                                            *Counsel for HSBC Bank USA, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 11, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this matter who are on the CM/ECF system.

*/s/ Edward C. Reddington*
Edward C. Reddington
