# Exhibit 3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROYAL PARK INVESTMENTS SA/NV, | Case No. 14-cv-8175-SAS |
| Plaintiff, | **JURY DEMAND** |
| v. | |
| HSBC BANK USA, NA, AS TRUSTEE, | |
| Defendant. | |
| BLACKROCK BALANCED CAPITAL PORTFOLIO (FI), *et al.*, | Case No. 14-cv-9366-SAS |
| Plaintiffs, | **JURY DEMAND** |
| v. | |
| HSBC BANK USA, NATIONAL ASSOCIATION, | |
| Defendant, | |
| -and- | |
| The Trusts Identified in Exhibit 1, | |
| Nominal Defendants. | |
| PHOENIX LIGHT SF LIMITED, et al., | Case No. 14-cv-10101-SAS |
| Plaintiffs, | **JURY DEMAND** |
| v. | |
| HSBC BANK USA, N.A., | |
| Defendant. | |

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, et al., | Case No. 15-cv-02144-SAS |
| Plaintiffs, | **<u>JURY DEMAND</u>** |
| v. | |
| HSBC BANK USA, NATIONAL ASSOCIATION, | |
| Defendant. | |

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
<u>DOCUMENTS TO DEFENDANT HSBC BANK USA, N.A.</u>**

Pursuant to Federal Rules of Civil Procedure 26 and 34, and subject to the definitions, instructions, form, and relevant time period set forth below, Plaintiffs in the above-captioned actions request that Defendant HSBC Bank USA, N.A. produce the following documents for inspection and copying within 30 days from the date of service at a location and in a manner as the parties mutually agree.

## DEFINITIONS

Unless otherwise stated, the terms set forth below are defined as follows:

1.      HSBC, You and Your.  The terms "HSBC," "You" and "Your" mean  HSBC Bank USA, N.A. and its predecessors, successors, corporate parents, subsidiaries, affiliates, divisions or branch offices, including their directors, officers, employees, partners, agents, and any Person acting or purporting to act on behalf of the entities above.

2.      All/Any/Each.  The terms "all," "any," and "each" shall each be construed as encompassing any and all.

3.      And/Or.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4.      Assignment Agreement.  The term "Assignment Agreement" means any assignment and assumption agreement between the Sponsor and Depositor, or the Depositor and the Trustee, conveying the Loans for securitization in the Trusts.

5.      Certificateholder.  The term "Certificateholder" means any Person that has purchased mortgage pass-through certificates issued pursuant to the Trusts.

6.      Certificates.  The term "Certificates" means, collectively and disjunctively, mortgage pass-through certificates issued pursuant to the Trusts.

-1-

7.     Communication.  The term "Communication" (or any variant thereof) means the transmittal of information in the form of facts, ideas, inquiries or otherwise, including but not limited to any contact between or among two or more persons, including written contact by means such as letters, memoranda, telegrams, telecopies, telexes, email, Bloomberg message, instant message, or any other Document; the transmittal of information by any means; any oral contact such as face-to-face meetings or telephone conversations; and any writings memorializing such oral contact.

8.     Concerning.  The term "Concerning" means relating to, referring to, describing, evidencing or constituting.

9.     Custodian.  The term "Custodian" means any financial institution defined in the Governing Agreements for any Trust as a custodian, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on its behalf.

10.     Depositor.  The term "Depositor" means any financial institution defined in the Governing Agreements for any Trust as a depositor, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on its behalf.

11.     Document.  The term "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)A.  A draft or non-identical copy is a separate document within the meaning of this term.

12.     Event of Default.  The term "Event of Default" has the same meaning ascribed to it in the relevant Governing Agreements for each Trust, or, in the event not so defined, then shall

mean any event defined in the relevant Governing Agreement for any Trust as an event of default or a breach of Servicer's, Master Servicer's or Issuer's duties and obligations.

13.    Governing Agreements.    The term "Governing Agreements" means all agreements governing the Trusts and exhibits, schedules, and appendices thereto, including the PSAs, Indentures, Trust Agreements, Assignment Agreements, MLPAs, Transfer and Servicing Agreements, and Servicing Agreements.

14.    Governmental Entity.    The term "Governmental Entity" means any state or federal law enforcement or regulatory agency including, but not limited to, any state's office of attorney general, the United States Department of Justice, the United States Securities and Exchange Commission, the Federal Reserve Bank, the Federal Deposit Insurance Company, the Office of the Comptroller of the Currency, the Federal Housing Finance Agency, the United States Department of Housing and Urban Development, the Federal Bureau of Investigation, any committee of the United States Congress, any state or federal banking regulatory authority or any other state or federal agency or law enforcement authority.

15.    Identify (with respect to persons).    When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with the subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

16.    Identify (with respect to documents).    When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s).    In the alternative, the

responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

17.     Indenture.  The term "Indenture" means any indenture entered into in connection with the Trusts and the securitization of Loans therein.

18.     Insolvent Entity.  The term "Insolvent Entity" means any Seller or Sponsor for the Trusts that became insolvent, filed for bankruptcy protection or was placed into receivership.

19.     Issuer or Issuing Entity.  The term "Issuer" or "Issuing Entity" has meaning ascribed to it in the relevant Governing Agreements for any Trust.

20.     Loan or Loans.  The term "Loan" or "Loans" means any or all mortgage loans underlying or collateralizing the Certificates, including any or all mortgage loans identified on any Loan Tape provided in connection with the offer or sale of the Certificates.

21.     Loan File.  The term "Loan File" or "Loan Files" means the mortgage documents Concerning a particular Loan required to be delivered to the Trustee pursuant to the Governing Agreements.

22.     Loan Tape.  The term "Loan Tape" means any electronic spreadsheet or other Document containing a loan-by-loan description of the Loans underlying or collateralizing the Certificates (which descriptions may include information Concerning, *e.g.*, delinquencies, locations of mortgaged properties, occupancy status, collateral information, borrower income, and/or other information about the borrower or the Loan).

23.     Master Servicer.  The term "Master Servicer" means any financial institution defined in the Governing Agreements for any Trust as a master servicer, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act

on its behalf.

24.     Mortgage Loan Schedule.  The term "Mortgage Loan Schedule" has the same meaning ascribed to it in the relevant Governing Agreements for each Trust.

25.     MLPA.  The term "MLPA" means any mortgage loan purchase agreement, sale agreement or representations and warranties agreement between an Originator and a Sponsor, or an Originator and a Depositor, in which the Originator conveys Loans to the Sponsor or the Depositor for securitization in any of the Trusts.

26.     Number.  The use of the singular form of any word includes the plural and vice versa.

27.     Originator.  The term "Originator" has the same meaning ascribed to it in the relevant Governing Agreements or Prospectus Supplement for each Trust, and any other entity that originated one or more of the Mortgage Loans in the Trusts, as well as their officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on their behalf.

28.     Person.  The term "Person" is defined as any means natural person or any legal entity, including any , corporation, firm, company, sole proprietorship, partnership, joint venture, association, institute, or other business, legal, or governmental entity or association, including any directors, officers, employees, agents, successors, predecessors, assignees, or representatives thereof.

29.     Prospectus Supplement.  The term "Prospectus Supplement" means the relevant prospectus supplement for any Trust.

30.     PSA.  The term "PSA" means any pooling and servicing agreement, trust

agreement, indenture agreement, or SSA governing the Trusts and defining the rights and obligations of the parties to such PSA.

31.     Rating Agency.  The term "Rating Agency" means any Nationally Recognized Statistical Rating Organization that rated or evaluated (or was ever asked to rate or evaluate) any of the Certificates, including Moody's Corp., Standard & Poor's (a division of McGraw-Hill Companies, Inc.), and Fitch Ratings, Inc., as well as its officers, directors, employees, partners, corporate parent, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on its behalf.

32.     Regulation AB.  The term "Regulation AB" has the same meaning ascribed to it in the relevant Governing Agreements for each Trust or, in the event not so defined, then shall mean Subpart 229.1100 – Asset Backed Securities (Regulation AB), 17 C.F.R. §§ 229.1100 – 229.1123, as such may be amended from time to time, and subject to such clarification and interpretation as have been provided by the Securities and Exchange Commission in the adopting release (Asset-Backed Securities, Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (Jan. 7, 2005)) or by the staff of the Securities and Exchange Commission, or as may be provided by the Securities and Exchange Commission from time to time.

33.     Representations and Warranties.  The term "Representations and Warranties" means any representation or warranty by any Originator, Sponsor, Servicer, Master Servicer, Depositor, or Trustee Concerning the quality of the Loans underlying or collateralizing the Certificates, including the accuracy of mortgage loan schedules, compliance with local, state and federal laws, loan-to-value ratios, debt-to-income ratios, defaults and delinquencies, appraisals, FICO scores, and underwriting guidelines.

34.     RMBS.  The term "RMBS" means residential mortgage-backed security.

35.    Securities Administrator.  The term "Securities Administrator" means the entity identified as a securities administrator in the relevant Governing Agreements or Prospectus Supplement for each Trust, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on its behalf.

36.    Seller.  The term "Seller" means any Originator or Sponsor of the Loans underlying or collateralizing the Certificates.

37.    Servicer.  The term "Servicer" means the entities identified as a Servicer (or any successor Servicer), Master Servicer (or any successor Master Servicer), or Sub-servicer (or any successor Sub-servicer) in the relevant Governing Agreements for each Trust, and any other entity that services Loans and/or is responsible for any portion of the servicing functions performed, or required to be performed with respect to each of the Trusts, as well as their officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on its behalf..

38.    Servicing Agreement.  The term "Servicing Agreement" means any servicing agreement or servicing and sale agreement between a Servicer and a Sponsor, or a Servicer and a Depositor, in which the parties define the duties and obligations of the Servicer for the Loans underlying or collateralizing the Certificates.

39.    SSA.  The term "SSA" means any sale and servicing agreement or transfer and servicing agreement among a Servicer, Depositor, Issuer, Trustee, and/or Trust Administrator.

40.    Sponsor.  The term "Sponsor" has the same meaning ascribed to it in the relevant Governing Agreements for each Trust, and any other financial institution that securitized the

Loans underlying or collateralizing the Certificates, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on its behalf.

41.     Transfer and Servicing Agreement.   The term "Transfer and Servicing Agreement" means any transfer and servicing agreement entered into in connection with the Trusts and the securitization of Loans therein.

42.     Trust.   The term "Trust" or "Trusts" refers to the RMBS Trusts that are the subject of these actions.

43.     Trust Administrator.   The term "Trust Administrator" means any financial institution defined in the relevant Governing Agreements for any Trust as a trust administrator, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on its behalf.

44.     Trust Agreement.  The term "Trust Agreement" means any transfer and servicing agreement entered into in connection with the Trusts and the securitization of Loans therein.

45.     Trustee.   The term "Trustee" means any financial institution defined in the relevant Governing Agreements for any Trust as a trustee or indenture trustee, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on its behalf.

46.     Unless otherwise specified herein, the terms and phrases used in these Requests shall have the same meaning as applied to them when used in the Governing Agreements.

## INSTRUCTIONS

The following instructions apply to these Requests:

1.      You shall furnish all responsive documents, to the extent not previously produced to Plaintiffs in this litigation, that are in Your actual or constructive possession, custody or control, or in the actual or constructive possession, custody or control of Your subsidiaries, divisions, affiliates or merged and acquired predecessors and Your present or former investigators, attorneys, directors, officers, partners, employees or other agents, as well as Your present or former independent contractors and any other person acting on Your behalf.  Do not limit production to files kept by You or on Your premises.

2.      These are continuing Requests for the production of documents.  If after making Your initial production, You obtain or become aware of any further documents responsive to these Requests, You are required to produce such additional documents to Plaintiffs and shall supplement Your response whenever necessary in accordance with the Federal Rules of Civil Procedure.

3.      You shall produce the original of each document described below, or if the original is not in its custody, then a copy thereof, and in any event, all non-identical copies which differ from the original or other copies produced for any reason, including by reason of marginalia or other notation on the front or back of the document.

4.      If any otherwise responsive document was, but is no longer, in existence or in Your possession, custody or control, identify the type of information contained in the document, its current or last known custodian, the location/address of such document, the identity of all persons having knowledge or who had knowledge of the document and describe in full the circumstances surrounding its disposition from Your possession or control.

5.      Pursuant to Fed. R. Civ. P. 34(b), documents produced pursuant to these Requests shall be produced *as kept in the regular course of business,* together with the original folders, binders, boxes or other containers in which they were maintained.

6.      Documents attached to each other should not be separated.

7.      Documents not otherwise responsive to this Request shall be produced if such documents mention, discuss, refer to, or explain the documents which are called for by these Requests, or if such documents are attached to documents called for by these Requests and constitute routing slips, transmittal memoranda, or letters, comments, evaluations or similar materials.

8.      Documents shall be produced in such fashion as to identify the department, branch or office in whose possession they were located and, where applicable, the natural person in whose possession they were found and the business address of each document's custodian(s).

9.      If You claim any form of privilege, whether based on statute or otherwise, as a ground for not producing any document, state the following:

(a)      the date of the document;

(b)      the name, the present or last known home and business address, the telephone numbers, the title (or position), and the occupation of those individuals who prepared, produced, reproduced, or who were recipients of said document;

(c)      a description of the document sufficient to identify it without revealing the information for which the privilege is claimed;

(d)      each and every fact or basis upon which You claim any such privilege;

(e)      the location of the document;

(f)      the custodian of the document; and

(g)      for electronic files, a printout of the metadata associated with that document.

10.      To the extent You object, You must provide specific responses (not general objections or pat responses) as to what portion of the requests You object to and state expressly why You will not respond to such requests.

11.      Notwithstanding the assertion of any objection, any requested document that You object to furnishing, but that nevertheless contains non-objectionable information that is responsive to any request, must be produced; but that portion of the document for which the objection is asserted may be withheld provided that information in Instruction No. 9 (a)-(g), above, is furnished.

12.      Each document requested herein is to be produced in its entirety and without deletion or excision, regardless of whether You consider the entire document to be relevant or responsive to these Requests.  If You have removed, excised or deleted any portion of a document, stamp the word "REDACTED" on each page of the document that You have redacted.  Redactions should be included on the privilege log described in Instruction No. 9 above and conform to the Court's Suggested Rules of Discovery Practice.

13.      For each document produced, identify the source of the document by identifying: (a) the person(s) who possessed the document; (b) the position or title of any such individuals; and (c) the division and department where each document was located.  If You are unable to determine the individual(s) who possessed the document, identify the department and division where the document was located when produced.

## FORM FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION

In accordance with Rule 34(b)(1)(C) of the Federal Rules of Civil Procedure, Plaintiffs specify the forms in which electronically stored information is to be produced:

(a)    Email, instant messaging, calendar, and word-processing files must be derived from the original electronic media and converted to single-page .tiff images with accompanying system metadata (*e.g.*, author, recipient(s), "cc" recipient(s) date and time of creation and receipt, date and time of modification, etc.), and substantive metadata (*e.g.*, the substance of changes), with all attachments for production to Plaintiffs.

(b)    Dynamic files (*e.g.*, databases) must be produced in original, native format with all accompanying metadata, along with all software necessary to interpret the produced information if such software is not readily commercially available.

(c)    For all electronically stored information not specified above, production must be made in native format with all accompanying metadata unless Plaintiffs specifically agree to a different form for production.

## RELEVANT TIME PERIOD

The relevant period, unless otherwise indicated, is January 1, 2004 to the present (the "Relevant Period"), and shall include all documents and information which relate in whole, or in part, to the Relevant Period, or to events or circumstances during such period, even though dated, prepared, generated, created, edited, revised or received prior to or subsequent to that period.

## DOCUMENTS REQUESTED

1.    All Documents and Communications Concerning the Trusts, including but not limited to Your file for each Trust.

2.    All indexes or file directories of Your Documents for each Trust.

3.      The Governing Agreements for the Trusts.

4.      All Documents and Communications Concerning Your policies or procedures with respect to Your administration of the Trusts, including but not limited to any policy statements, manuals, memoranda or notes, and all minutes of any internal HSBC committee, group, or department responsible for overseeing HSBC's trusteeship of the Trusts.

5.      All Documents and Communications Concerning the formation of each Trust and Your responsibilities and role as Trustee for each Trust, and commencement of Your position as, Trustee for the Trusts, including but not limited to, business acceptance forms and evaluations concerning Your acceptance of the position of Trustee of the Trusts.

6.      All marketing or promotional materials Concerning Your services as Trustee for the Trusts and as an RMBS Trustee generally, including but not limited to Your responses to requests for proposal for the Trusts.

7.      All Documents and Communications Concerning the standard of care for your service as Trustee, including without limitation any white paper, analysis, audit, review, publication, study, commentary, law review article, industry statement, industry commentary, or regulatory statement or commentary.

8.      All Documents and Communications Concerning any review, due diligence, or analysis performed on any Loan, including loan level exception reports and quality control reports.

9.      All Documents and Communications Concerning the performance or the quality of the Loans in the Trusts, including Documents reflecting delinquencies, defaults, modifications, foreclosures, recognized losses, expected losses, or credit downgrades.

10.     All Documents and Communications Concerning any governmental inquiry, hearing, investigation, report, commentary, analysis, or study regarding the residential mortgage-backed securities industry, including Concerning origination, underwriting, securitization and servicing standards and practices.

11.     All Documents and Communications Concerning any litigation regarding RMBS, including Concerning origination, underwriting, securitization and servicing standards and practices.

12.     All Documents and Communications Concerning the origination and underwriting practices of the Originators, including but not limited to public and private investigations, inquiries, litigation, enforcement actions, and commentary Concerning the quality and compliance of such practices.

13.     All Documents and Communications Concerning the securitization and due diligence practices of the Sponsors, including but not limited to public and private investigations, inquiries, litigation, enforcement actions, and commentary Concerning the quality and compliance of such practices.

14.     All Documents and Communications Concerning the loan servicing and loan administration practices of the Servicers, including but not limited to public and private investigations, inquiries, litigation, enforcement actions, and commentary Concerning the quality and compliance of such practices.

15.     All Documents and Communications Concerning any actual or suspected documentation deficiencies or breaches of representations and warranties related to the Loans, including all certifications by You, any Securities Administrator, or any Custodian, and any other reports of such deficiencies by any other party to the Governing Agreements.

16.     All Documents and Communications Concerning all efforts made by You to enforce the Trusts' or the Certificateholders' rights to require any other entity to cure or repurchase any Loan or otherwise preserve the assets or value of any Trust, including but not limited to any request or demand You made to any Originator, Sponsor or Servicer Concerning (i) any breach of any representation or warranty for any loan or (ii) any defect in the loan file for any Loan.

17.     All Documents and Communications Concerning any curing, substitution or repurchase of Loans, including Communications between You and any party and repurchase tracking sheets.

18.     All Documents and Communications Concerning any assertion by any Person that a Loan failed to comply with any of the representations and warranties in the Governing Agreements, including any notices of breaches, any response to such notices, and any re-underwriting analysis or investigation into any Loan identified as breaching such representations and warranties.

19.     All Documents and Communications Concerning any investigation or litigation involving the Originators, Sponsors or Servicers and You Concerning any alleged deficient origination, securitization or servicing of residential mortgage loans, including without limitation any forensic review or analysis of loan files.

20.     All Documents and Communications Concerning any investigation or litigation brought or threatened by an insurer relating to any Originator, Sponsor or Servicer.

21.     All Documents and Communications Concerning insurance and mortgage pool insurance claims and coverage for the Trusts, including claims submitted, insurer's responses, and Communications related to the rescission or contemplated rescission of any such insurance.

22.     All Documents and Communications between You and any Certificateholder Concerning any Originator, Sponsor or Servicer.

23.     All Documents and Communications between You and any Securities Administrator, Custodian, Master Servicer, Servicer, Sponsor, Depositor, or Originator Concerning the Trusts' performance, the quality of the Loans, the servicing of the Loans, or any Sponsors' or Originators' origination and securitization practices.

24.     All Documents and Communications Concerning reports submitted by any Servicer pursuant to the Governing Agreements Concerning modifications, losses, write-downs, and credit quality of the Loans, including but not limited to monthly or other periodic aggregate and loan-level servicing reports and/or all officer certificates/certifications Concerning the Loans.

25.     All Documents and Communications Concerning any audits or evaluations of the Servicers' performance in connection with the Trusts, including any statements of compliance, assessments of compliance, attestation reports, officer certificates/certifications, and audit inspections or reports under the Governing Agreements.

26.     All Documents and Communications Concerning any actual or alleged failure on the part of any Servicer to service and administer loans in accordance with the Governing Agreements, applicable law, or customary and usual servicing standards and practices.

27.     All Documents and Communications You provided to or received from, any state or Governmental Entity Concerning any inquiry, investigation or litigation relating to Your performance as a servicer of an RMBS trust.

28.     All Documents and Communications Concerning any actual or alleged Event of Default under the Governing Agreements, including but not limited to Communications with any Master Servicer, Servicer, and/or Certificateholders.

29.     All Documents and Communications Concerning Your evaluation of potential claims against Sellers or Sponsors responsible for breach of representations and warranties made on Loans sold by an Insolvent Entity, or against Servicers for Loans in the Trusts that were sold by the Insolvent Entity, including any analyses, investigations, audits, reports, or memoranda.

30.     All Documents and Communications reflecting or Concerning Your evaluation of any assertion by any Person of any actual or alleged breach of a contractual obligation by a Seller, Sponsor or Servicer, including any analyses, investigations, audits, reports, or memoranda.

31.     All Documents and Communications You provided to or received from, any Governmental Entity Concerning any inquiry, investigation or litigation relating to Your performance as trustee of an RMBS trust.

32.     The Loan Files and Loan Tapes for the Loans.

33.     All Documents and Communications Concerning tolling, forbearance, or other agreements entered into on behalf of the Trusts purporting to toll or otherwise address the statute of limitations for any mortgage loan repurchase claims or servicing claims of the Trusts.

34.     Communications with any party to the Governing Agreements Concerning these actions, including any demand for defense or indemnity of this action.

35.     All Documents and Communications You provided to or received from, any Governmental Entity Concerning any inquiry, investigation or litigation relating to Your performance as an originator or sponsor of an RMBS trust.

36.     All Documents and Communications Concerning any compensation You received for administering the Trusts, including annual fees, transactional fees, advance fees, and ancillary fees for performing additional corporate services for the Trusts, including audits, annual reports, and accounting.

37.     Documents sufficient to show the identity, job title, dates of tenure and reporting structure of Your current or former employees with responsibility for administrating the Trusts.

38.     All Documents relating to HSBC's retention of documents created or received by HSBC during the course of HSBC's trusteeship of the Trusts.

39.     All Documents relating to any trust receipts or certifications or other Documents that (i) acknowledge your receipt and/or review of the Loan Files for the Loans, (ii) acknowledge that such Loan Files are complete, or (iii) identify any incomplete, deficient, or defective Loan Files for the Loans.

40.     All Mortgage Loan Schedules, including all amended or supplemental Mortgage Loan Schedules and all Documents and Communications relating to such Loan Schedules.

41.     All Documents and Communications relating to any defaults and/or breaches of provisions under the Governing Agreements, including, but not limited to, any Documents or Communications relating to notices concerning such defaults and/or breaches.

42.     All Documents and Communications relating to suspected or apparent mortgage fraud committed with respect to any Loan.

43.     All Documents and Communications Concerning the servicing practices, policies and procedures of any Servicer relating to delinquent or defaulted Loans and/or delinquent or defaulted loans generally, loss mitigation procedures and the processing of loan modifications

for loans at imminent risk of default and the foreclosure of defaulted Loans and/or defaulted loans generally, including, but not limited to:

      a.   Any "robo-signing" practices of any Servicer;

      b.   Any late fee practices or procedures of any Servicer;

      c.   Any appraisals in connection with any delinquent Loans;

      d.   Any force-placed insurance in connection with any Loans;

      e.   Any historical data concerning foreclosure timelines and loss severities for any Loans;

      f.   Any foreclosure or modification concerning any Loans;

      g.   Any reconciliation reports for defaulted Loans; and

      h.   Any relationships between any Servicer and any entities performing services for such Servicer with respect to defaulted Loans.

44. All Documents and Communications Concerning any effort, whether successful or not, to foreclose upon any property securing the Loans, including but not limited to any delays in foreclosure resulting from incomplete delivery of documentation in the Loan File for any of the Loans in the Trusts.

45. All Documents and Communications Concerning the duties and responsibilities of the Securities Administrator and/or Trust Administrator for the Trusts.

46. All Documents and Communications Concerning the requirements of and compliance with Regulation AB in connection with the Trusts or Loans.

47. All presentations to Your board of directors or any other management committee Concerning Your RMBS trustee procedures or policies.

48.   Documents sufficient to show any vendors, technology, or other tools used to monitor or manage the Trusts.

49.   All Documents and Communications Concerning notices Concerning pervasive issues in RMBS trusts, particularly the July 21, 2011 letter from the Association of Mortgage Investors to You.

50.   All Documents and Communications Concerning repurchase requests submitted, or considered for submission, to Originators and/or Sponsors, including, but not limited to, any policies or procedures regarding:

   a.   Investigating or evaluating possible breaches of representations and warranties;

   b.   Asserting or not asserting repurchase requests or demands;

   c.   Evaluating the materiality of possible breaches of representations and warranties;

   d.   Complying with any notification requirements; and

   e.   Initiating or not initiating litigation regarding any repurchase requests.

51.   All analyses performed by You (or any third party on Your behalf, including experts and servicers), Documents received by You, Documents You provided to another, or communications of which You are aware regarding the Loans within each Trust that have or will have deficiencies, were the subject of repurchase or substitution requests, or are or will be subject to repurchase, including but not limited to all Documents concerning actual and/or potential damages from: (i) breaches of representations and warranties, (ii) document exceptions, and/or (iii) servicing- related liability, including any Event of Default in each and all of the Trusts, and (iv) loan defects identified in foreclosure proceedings and correspondence with mortgage insurers.

52.     All Documents and Communications supporting Your answers, defenses, affirmative defenses or counter-claims to the allegations set forth in any Plaintiffs' operative Complaint.

Dated: April 29, 2015                          BERNSTEIN LITOWITZ BERGER
                                                   & GROSSMANN LLP

                                               */s/ Benjamin Galdston*
                                               BENJAMIN GALDSTON

                                               BLAIR A. NICHOLAS
                                               TIMOTHY A. DELANGE
                                               BENJAMIN GALDSTON
                                               LUCAS E. GILMORE
                                               12481 High Bluff Drive, Suite 300
                                               San Diego, CA 92130
                                               Tel:   (858) 793-0070
                                               Fax:   (858) 793-0323

                                               *Counsel for Plaintiffs BlackRock Balanced Capital
                                               Portfolio (FI), et al.*

                                               ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
                                               CHRISTOPHER M. WOOD

                                               */s/ Christopher M. Wood*
                                               CHRISTOPHER M. WOOD

                                               414 Union Street, Suite 900
                                               Nashville, TN 37219
                                               Tel:    (615) 244-2203
                                               Fax:    (615) 252-3798
                                               cwood@rgrdlaw.com

                                               ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
                                               ARTHUR C. LEAHY
                                               STEVEN W. PEPICH
                                               ASHLEY M. ROBINSON
                                               JENNIFER N. CARINGAL
                                               655 West Broadway, Suite 1900
                                               San Diego, CA 92101-8498

Tel:     (619) 231-1058
Fax:     (619) 231-7423
artl@rgrdlaw.com
stevep@rgrdlaw.com
ashleyr@rgrdlaw.com
jcaringal@rgrdlaw.com
ROBBINS GELLER RUDMAN
    & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Tel:     (631) 367-7100
Fax:     (631) 367-1173
srudman@rgrdlaw.com

*Counsel for Plaintiff Royal Park Investments SA/NV*


WOLLMUTH MAHER & DEUTSCH LLP

*/s/ Niraj J. Parekh*
NIRAJ J. PAREKH

DAVID H. WOLLMUTH
RANDALL R. RAINER
MICHAEL C. LEDLEY
STEVEN S. FITZGERALD
NIRAJ J. PAREKH
500 Fifth Avenue
New York, NY 10110
Tel:     (212) 382-3300
Fax:     (212) 382-0050
dwollmuth@wmd-law.com
rrainer@wmd-law.com
mledley@wmd-law.com
sfitzgerald@wmd-law.com
nparekh@wmd-law.com

KOREIN TILLERY
GEORGE A. ZELCS
JOHN A. LIBRA
MATTHEW C. DAVIES
MAX C. GIBBONS
205 North Michigan Plaza, Suite 1950
Chicago, IL 60601
Tel:     (312) 641-9750

Fax:     (312) 641-9760
gzelcs@koreintillery.com
jlibra@koreintillery.com
mdavies@koreintillery.com
mgibbons@koreintillery.com
-and-
STEPHEN M. TILLERY
505 North Seventh Street, Suite 3600
St. Louis, MO 63101-1625
Tel:     (314) 241-4844
Fax:     (314) 241-3525

*Counsel for Plaintiffs Phoenix Light SF Limited, et al., Blue Heron Funding II, Ltd., Blue Heron Funding V Ltd., Kleros Preferred Funding V PLC, Silver Elms CDO PLC and Silver Elms CDO II Limited*


KOREIN TILLERY LLC

*/s/ John A. Libra*
JOHN A. LIBRA

GEORGE A. ZELCS
JOHN A. LIBRA
MATTHEW C. DAVIES
MAX C. GIBBONS
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Tel:     (312) 641-9760
Fax:     (312) 641-9751
gzelcs@koreintillery.com
jlibra@koreintillery.com
mdavies@koreintillery.com
mgibbons@koreintillery.com

STEPHEN M. TILLERY
505 North Seventh Street, Suite 3600
St. Louis, MO 63101-1625
Tel:     (314) 241-4844
Fax:     (314) 241-3525
stillery@koreintillery.com

*Counsel for Plaintiff the National Credit Union Administration Board*

KELLOGG, HUBER, HANSEN, TODD
  EVANS & FIGEL, P.L.L.C.
DAVID C. FREDERICK
WAN J. KIM
GREGORY G. RAPAWY
Sumner Square
1615 M. Street, N.W., Suite 400
Washington, D.C. 20036
Tel:     (202) 326-7900
Fax:     (202) 326-7999
dfrederick@khhte.com
wkim@khhte.com
grapawy@khhte.com

WOLLMUTH MAHER & DEUTSCH LLP
DAVID H. WOLLMUTH
RANDALL R. RAINER
MICHAEL C. LEDLEY
STEVEN S. FITZGERALD
MELISSA A. FINKELSTEIN
500 Fifth Avenue
New York, NY 10110
Tel:     (212) 382-3300
Fax:     (212) 382-0050

*Counsel for Plaintiff the National Credit Union
Administration Board*

Of Counsel:
Michael J. McKenna, General Counsel
John K. Ianno, Senior Associate General Counsel
NATIONAL CREDIT UNION
ADMINISTRATION BOARD
1775 Duke Street
Alexandria, VA 23314
johni@ncua.gov
mikem@ncua.gov

*Counsel for Plaintiff the National Credit Union
Administration Board*