# Exhibit 5

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

EDWARD REDDINGTON
(202) 434-5063
ereddington@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

August 13, 2015

Benjamin Galdston
Bernstein Litowitz Berger & Grossmann
12481 High Bluff Drive, Suite 300
San Diego, California 92130

Christopher M. Wood
Robbins Geller Rudman & Dowd LLP
414 Union Street, Suite 900
Nashville, TN 37219

Niraj J. Parekh
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York 10110

John A. Libra
Korien Tillery
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601

Re:   *Blackrock Balanced Capital Portfolio (FI) et al. v. HSBC Bank USA, N.A.*, No.
1:14-cv-09366-SAS

*Phoenix Light SF Limited et al. v. HSBC Bank USA, N.A.*, No. 1: 14-cv-10101-
SAS

*Royal Park Investments SA/NA v. HSBC Bank USA N.A.,* No. 1:14-cv-08175-SAS

*National Credit Union Administration Board, et al. v. HSBC Bank USA, N.A.*, 15-
cv-02144-SAS

Dear Ben, Niraj, Chris, and John:

I write to follow up on our July 31, 2015 discussion.

As a threshold matter, our July 23, 2015 letters raise a number of issues with your clients'
productions and responses to HSBC Bank USA N.A.'s ("HSBC's") document requests. We
discussed many of these issues on July 31, but did not reach a resolution of the issues for many
of the topics. Therefore, we request that by August 24 Plaintiffs provide written responses to the
issues raised in our July 23 letters.

Additionally, Royal Park responded to a number of HSBC's document requests by stating
only that that it would be willing to "meet and confer" about them. Since we have now met and
conferred, we ask that by August 24 Royal Park provide an amended response to these document
requests that states its position with respect to them.

WILLIAMS & CONNOLLY LLP

Benjamin Galdston
Christopher M. Wood
Niraj J. Parekh
John A. Libra
August 13, 2015
Page 2

I further address below the specifics of some of the items discussed during our July 31 meet and confer.

## The Scope of the Parties' Search and Production

HSBC has agreed to produce numerous documents from its Corporate Trust and Loan Agency ("CTLA") department. You have sued HSBC in its capacity as trustee, and your claims arise from HSBC's alleged conduct as trustee.  Accordingly, CTLA is the business unit within HSBC that is most likely to have documents that would be relevant to your claims.  HSBC is not required to undertake a search for documents that is unreasonable, and Plaintiffs are not entitled to engage in a wide-ranging fishing expedition into irrelevant business units or separate legal entities.

Nonetheless, during our meet and confer on July 31 you suggested that you believed a search of the trustee department was not sufficient, and instead demanded HSBC also produce documents from other business units or from separate legal entities that sponsored RMBS or serviced loans in separate trusts that are not included in your claims against HSBC as trustee. Your purported justification for expanding the scope of discovery to these areas was that you believed it would support your conflict of interest claims or would show actual knowledge by HSBC of the issues raised in your complaints.

We disagree such documents would support your contentions.  First, as discussed in the Court's June 1 Order on HSBC's Motion to Dismiss, Plaintiffs' conflict of interest claim relates to HSBC's alleged relationship with Wells Fargo as master servicer, not HSBC's or its affiliates' separate activities as sponsor or servicer in unrelated trusts.  Accordingly, documents found in other business units or affiliates of HSBC relating to sponsoring or servicing loans in unrelated trusts would not be relevant to your conflict of interest claim.  Second, you indicated at the July 31 meet and confer that you intended to rely on so-called "pervasive problems" in the RMBS industry to meet your burden of showing actual knowledge of an Event of Default by the trustee. Your intended approach directly contradicts both the Court's June 1 Order and Second Circuit case law, which requires you to show actual knowledge of an Event of Default by a responsible officer in the trustee department on a loan-by-loan and trust-by-trust basis.  The alleged understanding or actions of persons in other business units or affiliates will not support your burden of showing actual knowledge by a trustee and is of no relevance to your claims in this case.

In any event, to the extent some relationship with Wells Fargo or some knowledge of the general RMBS industry or third parties would be relevant to your claims, those issues can be adequately explored through documents obtained from CTLA, which HSBC is agreeing to produce.

WILLIAMS & CONNOLLY LLP

Benjamin Galdston
Christopher M. Wood
Niraj J. Parekh
John A. Libra
August 13, 2015
Page 3

In contrast to HSBC's approach, which has been transparent about where it intends to search for and produce relevant documents, during our call on July 31 each of you were unable to specifically articulate any particular departments or business units within your large and sophisticated clients in which you would be searching for and producing documents. Instead, each of you represented that you would be searching "everywhere" within your clients without limitation.[1]  Notwithstanding this position, at one point counsel for the BlackRock Plaintiffs suggested that HSBC should not "get its hopes up" that Plaintiffs would be producing any significant volume of documents.

The inability to articulate any specific place where your clients have been or will be searching for relevant documents, and the apparent position that your sophisticated clients would not have significant numbers of relevant documents, is concerning and unsupportable.  Your clients include some of the largest and most sophisticated financial institutions and investment entities in the world, independent federal agencies acting on behalf of sophisticated financial institutions, and private equity ventures who purchased litigation rights from other sophisticated financial institutions long after the advent of the financial crisis.  Many of your clients employ sophisticated algorithms and financial software to assess risks, make investment decisions, and manage their investment portfolios.  All of them have great knowledge of and experience with the RMBS industry and the 2008 financial crisis.  As I suggested during the July 31 meet and confer, if your clients have not identified many documents responsive to HSBC's requests, you are likely looking in the wrong places or unreasonably limiting the scope of your clients' search.  Some of your complaints have been pending now in one forum or another for more than a year, and each of your clients undoubtedly contemplated litigation for some time before filing their complaints.  It is troubling to say the least that this far into the case you cannot articulate where in your clients you are searching for and producing relevant documents.

**Therefore, we ask that you please immediately inform us as to which entities and business units you intend to search for responsive documents at your clients, and how many document custodians you have identified for preservation and review at each of your clients.  I would appreciate hearing from each of you on this by August 24.**

With regard to documents in the hands of assignors, our July 23 letter cites Southern District of New York case law holding that assignees must produce documents from their assignors.  Moreover, the assignments recently produced by certain Plaintiffs give those Plaintiffs the right to obtain any documents relevant to this litigation from their assignors.  Counsel for Phoenix Light and Royal Park suggested during the July 31 meet and confer that

---

[1] Counsel for NCUA drew a distinction between whether NCUA would search for and produce documents in its capacity as regulator, versus its capacity as conservator.  This issue is addressed more specifically below.

WILLIAMS & CONNOLLY LLP

Benjamin Galdston
Christopher M. Wood
Niraj J. Parekh
John A. Libra
August 13, 2015
Page 4

their clients would not produce documents in the possession of their clients' assignors, but did not articulate a specific basis for this position. Please review the authority we have provided in our letter, and let us know promptly whether your clients intend to adhere to the position that they will not produce documents from their assignors. Again, I would appreciate a response to this by August 24.

With regard to documents held by NCUA, counsel for NCUA stated that, for securities NCUA did *not* re-securitize, it would search for responsive documents in the files of the predecessor credit unions as well as the files of any NCUA employees working as a conservator or liquidator of those credit unions. My understanding, however, is that NCUA is declining to search for or produce any documents in credit union or NCUA employee files for securities that *were* re-securitized. Additionally, we understand that NCUA is taking the position that it does not have to search for or produce any documents that it holds in its "capacity" as regulator. I do not understand the basis for these distinctions, particularly since counsel for NCUA represented that such documents would be located in the same warehouse, and NCUA purports to sue on behalf of both securities that were re-securitized and securities that were not. Moreover, NCUA has been required in prior RMBS litigation to produce documents it holds in its capacity as regulator, even in circumstances in which it was not a party to the litigation but was instead the subject of a third party subpoena. *United States v. McGraw-Hill Companies, Inc. et al.*, Case No. CV 13-0779-DOC (JCG) (C.D. Cal. June 13, 2014). Where NCUA is an actual party to litigation, the obligation to produce documents is greater. We therefore ask that NCUA (1) explain its basis for withholding documents relating to re-securitized certificates or those held in its "capacity" as regulator, and (2) state whether it intends to log any documents it withholds on these grounds. I request that you please do so by August 24.

**Limitation to the Bellwether Trusts:**

At the Court's direction, and to manage discovery in these cases, the parties are proceeding using a bellwether process in which discovery as to some trusts is going forward and discovery as to other trusts is not. The Court has recognized this limitation, as have counsel for Plaintiffs. Notwithstanding this, some discovery of "general matters" is appropriate. However, general matters cannot be used as a basis to dispense with the discovery limitations inherent in the bellwether process and approved by the Court.

Thus, HSBC does not intend to limit its production to only bellwether trust documents. As indicated in HSBC's responses to your clients' requests, HSBC intends to produce certain categories of general documents, even if they do not relate to the bellwether trusts. For example, HSBC has agreed to produce organizational charts and policies and procedures, even though these are not trust-specific documents. However, in response to certain requests, a limitation to the bellwether trusts is appropriate. Documents regarding HSBC's purported knowledge of

WILLIAMS & CONNOLLY LLP

Benjamin Galdston
Christopher M. Wood
Niraj J. Parekh
John A. Libra
August 13, 2015
Page 5

alleged Events of Default, for example, are necessarily trust specific, because HSBC's duties are only triggered by actual knowledge of a responsible trustee officer on a loan-by-loan and trust-by-trust basis.  Knowledge of alleged Events of Default in other trusts is not relevant to your clients' claims in the bellwether trusts and would only unnecessarily increase the discovery burden—something the bellwether process was specifically designed to avoid.

In contrast, however, your assertion at the meet and confer that discovery into your clients' knowledge and actions is not relevant is inexplicable.  Your clients and their assignors are sophisticated entities.  They and their employees have great experience and knowledge of the RMBS industry and the financial crisis.  Some of your clients were themselves sponsors of RMBS investments.  The RMBS securities your clients purchased from third parties contemplated that investors like your clients and their assignors would take an active role in directing the ministerial trustee.  Accordingly, your clients' general knowledge of the RMBS market and the issues raised in your complaints is relevant to such case-specific issues as, among other things, when time-related defenses would be triggered, whether your clients or their assignors fulfilled their duty to mitigate damages, whether actions or inactions by a ministerial trustee caused your clients' alleged loss, and whether actions taken or not taken by the trustee were reasonable and consistent with the terms of the governing agreements as understood by and which bind your clients.  And, unlike your burden under the governing agreements and binding case law to prove actual knowledge in a responsible officer on a loan by loan basis, the responsible officers within your clients are not limited to a specific department.  Moreover, many defenses are triggered by facts that fall short of actual knowledge.  Accordingly, please let me know by August 24 whether your clients will produce documents relating to their general knowledge and actions with respect to the issues raised in your complaints.

**Production "Subject to" Objections:**

Finally, in response to certain overly broad and ambiguous discovery requests, HSBC specifically set forth how it was interpreting those requests and what documents would be produced in response.  If you believe certain interpretations were too narrow, we are willing to discuss these issues with you further.  In contrast, however, Plaintiffs responses often lodge a host of objections and then state that your clients will produce responsive documents "subject to" these objections.  This approach provides HSBC with no basis for understanding what documents you will be producing and what documents you will not be producing.  However, based on our July 31 discussion , we understand now that where Plaintiffs have indicated they will be producing documents "subject to" their objections, the only limitation your clients are placing on such a response is that your clients' production will be based upon the plain or ordinary meaning of the request.  Accordingly, where this response was lodged, your clients will be producing all non-privileged documents and will log any documents withheld on the basis of privilege.  We appreciate this clarification.  If you later interpret a specific request in a way that

WILLIAMS & CONNOLLY LLP

Benjamin Galdston
Christopher M. Wood
Niraj J. Parekh
John A. Libra
August 13, 2015
Page 6

excludes from production what would otherwise be responsive documents, please promptly inform us of that interpretation and what documents would be implicated by it.

Sincerely,

Edward C. Reddington