# Exhibit 7

LAW OFFICES
# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

EDWARD REDDINGTON
(202) 434-5063
ereddington@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

August 28, 2015

Via Email

Benjamin Galston
Bernstein Litowitz Berger & Grossmann
12481 High Bluff Drive, Suite 300
San Diego, California 92130
BenG@blbglaw.com

Re: *BlackRock Balanced Capital Portfolio (FI) et al. v. HSBC Bank USA, N.A.*, No. 1:14-cv-09366-SAS

Dear Ben:

I write in response to your letters of August 24 and 27.

First, your letters ask whether HSBC is willing to meet and confer regarding discovery issues such as search terms and custodians. HSBC is and always has been willing to participate in a mutual exchange of information regarding custodians, search terms and other subjects relating to the production of documents. HSBC's May 29 responses to Plaintiffs' document requests state that HSBC's search and production would be conducted in accordance with the parties' stipulation regarding Electronically Stored Information ("ESI") and that a search for electronic documents would be based on search terms. As you may recall, HSBC first proposed the ESI stipulation and protective order to Plaintiffs on May 14. After some back and forth, Plaintiffs agreed to them on August 4, and they were entered by the Court on August 10. Thus, HSBC always has contemplated that electronic documents would be produced using search terms, and the parties would need to meet and confer about this. During our meet and confer on July 31, I raised with you the scope of your clients' searches and the identity of your clients' document custodians. HSBC was ready to discuss both then. However, at that time, you were not ready to discuss either in detail. Your August 24 letter is the first time you have requested to meet and confer to discuss items such as search terms and custodians. I am

WILLIAMS & CONNOLLY LLP

August 28, 2015
Page 2

available to discuss these items next week.  Please let me know if a time on Wednesday afternoon (EST) would work for you.[1]

Second, your letters suggest that you do not understand certain discovery requests HSBC has propounded and that you might seek a protective order because HSBC's requests regarding "general matters" call for the "production of all documents relating to Plaintiffs entire investment portfolio . . . and include securities having nothing to do with RMBS."  Your letters do not identify any specific request, but describe such requests as relating to your clients' "general knowledge of the RMBS market" and "hedging investments."  Rest assured, HSBC is not asking your clients to produce their entire investment portfolios or documents having nothing to do with RMBS.  In general, HSBC seeks discovery of documents and information regarding your clients' and their investment managers', advisors' and sub-advisors' knowledge and understanding of the same sorts of issues and problems that you identify in your complaints as the basis for your allegations against HSBC.  Additionally, we understand that your clients are very sophisticated and employ rigorous analysis and strategies to evaluate their investments and make decisions on when to buy, sell or hedge.  For example, we understand one of your clients, who has vast experience in and knowledge of the RMBS industry including from its own involvement as a contractor following the 2008 financial crisis, employs an operating system that combines sophisticated risk analytics with comprehensive portfolio management, trading and operations tools on a single platform to power informed decision-making, effective risk management, efficient trading and operational scale.  HSBC seeks discovery of documents and information regarding this system and your clients' analysis, decisions and evaluation of damages based upon it as those subjects relate to RMBS securities at issue in your complaint.  Thus, these "general requests" are not as complicated or as broad as you contend.  We are, of course, willing to meet and confer with you about these requests to discuss any specifics, but I think the above examples should give you a better sense of the types of targeted information we seek.  Please let me know if your clients intend to produce such information.

With respect to HSBC's production on general matters, as I have explained, HSBC does not intend to limit its production of documents to only bellwether trust documents.

---

[1] I appreciate your providing additional information in your recent letters about the scope of your clients' intended search and production.  I look forward to discussing this in more detail when we meet and confer.  Based on publicly available information, we have identified additional investment managers, advisors and sub-advisors of your clients than are set forth in your August 24 and 27 letters.  These additional managers, advisors and sub-advisors are listed in the enclosed attachment.  Please let me know if any of these additional managers, advisors or sub-advisors (or others that we were unable to identify) are or were involved with advising your clients or managing their RMBS investments with respect to the trusts made part of your complaint.  If so, please let me know if your clients also intend to search for and produce documents from them.  I would appreciate it if you would be able to confirm this during our meet and confer next week.

WILLIAMS & CONNOLLY LLP

August 28, 2015
Page 3


But, because the Court has directed, and the parties have agreed, that discovery would go forward only with respect to the bellwether trusts, general matters that are an appropriate subject of discovery must, as the Court put it, "apply to all" the trusts.  When we met and conferred, I understood you to be taking the position that HSBC was required to produce documents relating to purported events of default in all of the trusts, effectively nullifying the bellwether discovery process approved by the Court.  Accordingly, I explained in my August 13 letter that "[k]nowledge of alleged Events of Default in other trusts is not relevant to your clients' claims in the bellwether trusts."  Your August 24 letter, however, indicates that you are willing to limit your requests to HSBC's alleged "knowledge of the improper origination, securities [sic], and servicing practices *of the same originators, sponsors and servicers* as *for the bellwether trusts*" (emphasis added).  With that clarification, HSBC is willing to meet and confer with you to discuss search terms oriented towards identifying trustee documents responsive to this request.

   Third, on August 24, your clients provided supplemental responses to HSBC's requests.  We are still reviewing those responses and will let you know if we have additional questions or concerns.

   Finally, we likewise are amenable to an agreed schedule for the mutual exchange of privilege logs.  I suggest we discuss this in more detail during next week's meet and confer.

           Regards,

           Edward Reddington

Enclosure:  List of managers, advisors, and sub-advisors

cc:  Counsel in the coordinated actions (by email)

.

| Enclosure: Managers/Advisors/Sub-Advisors |
|---|
| AEGON USA Investment Management, LLC |
| AIM Capital Management, Inc. |
| AllianceBernstein L.P. |
| Allianz Global Investors Fund Management LLC |
| American Century Investment Management, Inc. |
| American Skandia Investment Services, Inc. |
| BlackRock Advisors, Inc. |
| BlackRock Financial Management, LLC |
| BlackRock International Limited |
| Brookfield Asset Management Inc. |
| Brookfield Crystal River Capital L.P. |
| Brookfield Investment Management Inc. |
| Brown Advisory, LLC |
| Calamos Asset Management, Inc. |
| ClearBridge Advisors LLC |
| CoreCommodity Management, LLC |
| Davis Advisors |
| Deutsche Asset Management Investment Services Limited |
| Deutsche Asset Management, Inc. |
| Dreman Value Management LLC |
| Eagle Asset Management |
| EARNEST Partners LLC |
| Emerald Mutual Fund Advisors Trust |
| Epoch Investment Partners, Inc. |
| GE Asset Management Incorporated |
| Goldman Sachs Asset Management, L.P. |
| Hotchkis and Wiley Capital Management LLC |
| Hyperion Brookfield Asset Management Inc. |
| Hyperion Brookfield Crystal River Capital Advisors, LLC; |
| Hyperion Capital Management, Inc. |
| J.P. Morgan Investment Management, Inc. |
| Jennison Associates LLC |
| Lazard Asset Management LLC |
| Lee Munder Capital Group, LLC |
| LSV Asset Management |
| Marsico Capital Management LLC |
| Massachusetts Financial Services Company |
| Mercator Asset Management LP |
| MFS Investment Management |
| Neuberger Berman Fixed Income LLC |
| Neuberger Berman Management LLC |
| NFJ Investment Group LLC |

| |
|---|
| PA Fund Management LLC |
| Pacholder Associates Inc. |
| PIMCO Advisors Fund Management LLC |
| Prudential Financial, Inc. |
| Prudential Insurance Company of America |
| Prudential Investment Corporation (PIC) |
| Prudential Investments Fund Management LLC |
| Prudential Real Estate Investors |
| Prudential Trust Company |
| Quantitative Management LLC |
| RS Investment Management, L.P. |
| Salomon Brothers Asset Management, Inc |
| State Street Research & Management Company |
| Sterling Capital Management LLC |
| T. Rowe Price Associates, Inc. |
| Teachers Insurance and Annuity Association -- College Retirement Equities Fund of America |
| The Dreyfus Corporation |
| Thornburg Investment Management, Inc. |
| Vaughn Nelson Investment Management, L.P. |
| Wellington Management Company, LLP |
| William Blair & Company LLC |