LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

KEVIN M. HODGES
(202) 434-5221
khodges@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

August 25, 2016

Via ECF
Honorable Sarah Netburn
Thurgood Marshall Courthouse
United States District Court

Re:     *Coordinated RMBS Trustee Actions Against HSBC Bank USA, N.A.*, Nos. 14-cv-
08175; 14-cv-09366; 14-cv-10101; 15-cv-02144; 15-cv-10032; 15-cv-10096

Dear Judge Netburn:

        We write on behalf of Defendant HSBC Bank USA, N.A. ("HSBC") regarding expert
discovery in the six coordinated actions, in which Plaintiffs assert claims against HSBC in its
capacity as a trustee.

        Much of the expert discovery in these unusually large and complex coordinated actions
will be exceedingly expensive, onerous, and time-consuming, primarily due to Plaintiffs'
anticipated reunderwriting of individual loans in the Bellwether trusts.  Plaintiffs have listed over
7,000 loans, from the nearly 65,000 loans from the Bellwether trusts, for loan-file review.[1]  This
case is unlike RMBS loan repurchase cases, in which the plaintiff seeks repurchase of defective
loans by the party that allegedly breached its representations and warranties concerning the loans
that it sold.  Here, the defendant is a securitization trustee that had no role whatsoever in
originating, trading, securitizing, and/or warranting the mortgage loans at issue.

        As a result, unlike defendants in loan repurchase cases (such as sponsors or originators),
HSBC does not have preexisting access to the loan-level information needed to perform a
reunderwriting review.  If Plaintiffs submit expert re-underwriting reports and testimony, HSBC
will need to present responsive experts who have reviewed this same population of loans and

---

[1] HSBC does not believe that sampling is a valid method of proving Plaintiffs' claims concerning HSBC's
actual knowledge of specific loans, much less on a "loan-by-loan, trust-by-trust" basis as required by the
Second Circuit, *Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 775
F.3d 154, 162 (2d Cir. 2014) ("*Retirement Board*"), but all Plaintiffs, except for *Triaxx*, have indicated
that they intend to use sampling.  Moreover, information provided by Plaintiffs to date is woefully
insufficient as to Plaintiffs' sample and raises more questions and concerns, than it answers.

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
August 25, 2016
Page 2

developed their own loan-by-loan, finding-by-finding responses.  Furthermore, other experts, such as damages experts, typically incorporate reunderwriting findings in their analyses.

   ***Expert Discovery Should be Staged.***  Reunderwriting of thousands of individual loans will require large staffs of individuals and will be extremely time-consuming and expensive. Given the exorbitant costs involved, HSBC submits that expert discovery regarding sampling and re-underwriting for alleged breaches of representations and warranties and for alleged servicing failures should proceed only after threshold legal issues as to Plaintiffs' claims are resolved—such as whether reunderwriting a sample of loans is a valid method of proving claims in trustee actions.  Sampling is a highly questionable method of proof in a case against a trustee given the:

- Second Circuit's requirement that such claims be proven on a loan-by-loan and trust-by-trust basis;
- First Department's ruling that a trustee does not have a "nose to the source" duty; and
- Trust governing agreements require actual knowledge of alleged breaches.[2]

*See, e.g.*, *Wolk v. Cohen*, 1995 WL 614009, at *2 (E.D. Pa. Oct. 12, 1995) (expert discovery stayed pending the court's ruling on dispositive motions).  While HSBC reserves the right to challenge the proprietary of sampling in general, if expert discovery is not staged pending determination of such issues, HSBC submits that the following elements in an expert protocol are minimum requirements needed to allow HSBC to adequately analyze and respond to Plaintiff's expert reports within the time allotted.

   ***Plaintiffs Should Submit Joint Reports.  First***, Plaintiffs should be required to coordinate expert reports among themselves, as Judge Scheindlin instructed them to do so over one year ago.  *See* April 9, 2015 Hearing Tr. at 4:10-7:11.  The limited information provided by Plaintiffs to date indicates that Plaintiffs are not proceeding with a single random sample, but several discrete samples, some of which appear to be employed by individual Plaintiffs in different ways.  This limited information also indicates apparently divergent views among Plaintiffs about even such basic issues as necessary sample size and sample selection.[3]  As

---

[2] Because these actions are not like previous large RMBS cases in which sponsors and underwriters of securities were sued, Plaintiffs here cannot simply prove alleged breaches of representations and warranties.  Critically, Plaintiffs must prove, "loan-by-loan and trust-by-trust," that HSBC had "actual knowledge" of alleged breaches of representations and warranties.  *Retirement Board*, 775 F.3d at 162. Furthermore, the First Department has recently held that "the trustee of an RMBS . . . trust does not have a duty to 'nose to the source'" as to alleged defects or issues regarding loans underlying the trust.  *See Commerce Bank v. Bank of N.Y. Mellon*, 35 N.Y.S.3d 63, 65 (1st Dep't 2016).  Similarly, Plaintiffs cannot simply prove alleged errors in the servicing of the loans in the trusts at issue.  Under the governing agreements, master servicers—not trustees—are obligated to supervise servicers.

[3] For example, Royal Park apparently believes 400 loans per trust is the appropriate sample size, whereas other plaintiffs believe it to be 100 loans per trust.  Similar disparity exists as to sample selection as well.

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
August 25, 2016
Page 3

Plaintiffs appear to be proceeding with a multiplicity of sampling plans across various securitizations, HSBC may be required to address four to six different, and competing, methodologies, if Plaintiffs are not required to coordinate as previously ordered.

   ***Information regarding Plaintiffs' Sample Selection Should be Disclosed before Reunderwriting Begins.*** *Second*, as was done in the FHFA litigation, Plaintiffs must provide early disclosure of their sampling expert reports.[4]  This disclosure should include, among other information, the precise questions that the sample was drawn to answer as well as the level of precision Plaintiffs seek to achieve with the sample.  Plaintiffs also should be required to produce all computer code and input files used to identify the populations in the sample.  HSBC has been attempting to obtain this information informally from Plaintiffs for over a month, but without success.  The apparently differing views amongst Plaintiffs, *see supra* note 3, underscores that a protocol process that *begins* with an early detailed disclosure of the sampling approach is necessary.  It is not in the interests of the parties or the Court to devote substantial resources toward discovery based upon an inherently flawed sample population of loans.

   Moreover, Plaintiffs have indicated that they intend to use their samples to re-underwrite and "re-service" the loans.  Plaintiffs' apparent election to use their sample for dual purposes adds a significant additional layer of complexity that must be addressed.  Among other things, Plaintiffs have provided no explanation concerning how the adequacy of loan servicing can be accurately addressed on the basis of sampling, or the standards against which the sample loans would be measured against.  Without these early fulsome disclosures, HSBC has no basis to identify the potential problems with Plaintiffs' sample, and could result in months of work being conducted based on a defective sample, which also impacts other expert discovery such as reunderwriting and damages.

   ***Reunderwriting Should be Conducted on a Rolling Basis.*** *Third*, after Plaintiffs' have provided a coordinated comprehensive sampling report, and the parties have had the opportunity to address and resolve any issues, Plaintiffs should reunderwrite loans on a rolling basis (as was done in the FHFA litigation).  Any expert protocol should include specific dates and time lines for the exchange of findings and rebuttal findings.  Given the sheer number of loan files to be collected, such an approach will allow HSBC to receive and begin its analysis of Plaintiffs' reunderwriting throughout the discovery period.  Otherwise, Plaintiffs will have the benefit of conducting their reunderwriting for the next nearly nine months, while HSBC will then have only six weeks to analyze and respond to reunderwriting on 7000 loans using four to six different methodologies and samples.  Under the current schedule, HSBC has a mere six weeks to review

---

For example, BlackRock selected sample loans from the population of "non-paid in full" loans, whereas NCUA and Phoenix Light included "non-performing" loans and Royal Park included "liquidated" loans.

[4] *See FHFA v. HSBC N. Am. Holdings, Inc.*, Case No. 11-cv-6189 (S.D.N.Y. Oct. 11, 2012), Dkt. No. 105 at 7.

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
August 25, 2016
Page 4

Plaintiffs' reports and prepare responsive reports.[5]  Requiring HSBC to conduct its own expert analysis, in just six weeks, to respond to even one reunderwriting expert report (let alone six reports) would be extremely prejudicial to HSBC.

HSBC does not agree that it should be put in the position of reunderwriting loans from Plaintiffs' sample prior to receiving Plaintiffs' alleged defect findings.  Independent of whether HSBC undertakes to address the loans in Plaintiffs' sample prior to receiving alleged defect findings from Plaintiffs, or to reunderwrite additional loans identified in a sample of its own, such an effort would not, in any event, obviate the need to provide a rebuttal to the findings that Plaintiffs' experts do make, which cannot fairly occur under the time presently allotted. Plaintiffs' experts are or will be reunderwriting loans on a rolling basis, and there is no prejudice to Plaintiffs in providing the reunderwriting results to HSBC at set intervals rather than all at once at the expert report deadline.

The parties should also meet-and-confer on a rolling basis with respect to the guidelines applicable to sample loans.  These meet and confers should be held as relevant loan files and related materials are produced.  Many of the trusts contain numerous loans that were originated by many different entities using their own individual guidelines.  HSBC, as trustee, was not involved in originating any loans, does not have access to the guidelines that were used, and will need to investigate which guidelines apply based on the loans selected in the samples.  It is not realistic for parties to meet-and-confer all at once, in advance, on this subject.  Rolling re-underwriting would facilitate raising and resolving disputes concerning guidelines or underwriting criteria that are applicable to specific loans in the sample prior to final expert reports.

*   *   *

Given the significant threshold legal issues facing Plaintiffs' claims in these trustee actions against HSBC, the most efficient and fair way to proceed is to allow for resolution of those issues prior to the commencement of extremely expensive expert discovery.  Nevertheless, HSBC remains committed to working cooperatively with Plaintiffs to arrive at a fair and workable re-underwriting protocol that is appropriately tailored to these trustee cases and that could be employed at the appropriate time.  The full details of an appropriate protocol are beyond the scope of this letter, and require additional information from, and discussion with, Plaintiffs.  However, for the reasons stated above, we believe that any expert protocol must

---

[5] Because of the unique scale and logistical issues associated with re-underwriting, courts frequently allow an extended discovery period for re-underwriting experts.  *See, e.g., Federal Housing Finance Agency v. Royal Bank of Scotland Group PLC*, No. 3:11-cv-1383 (AWT) (D. Conn) (providing approximately 6 months for rebuttal re-underwriting reports); *In re Part 60 RMBS Put-Back Litig.*, Index Nos. 777000/2015, 779000/2015 (MSF) (N.Y. Sup. Ct.) (providing 4 months for rebuttal re-underwriting reports).

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
August 25, 2016
Page 5

include, at a minimum, coordination amongst Plaintiffs, early and full disclosure of Plaintiffs' sampling reports, and rolling re-underwriting.[6]

Respectfully submitted,

/s/ Kevin M. Hodges

Kevin M. Hodges

cc:      Counsel for all parties via ECF

---

[6] Wells Fargo has also submitted letters to the Court regarding expert issues, including sampling and reunderwriting, in its trustee cases. *RMBS Trustee Actions Against Wells Fargo*, Dkt Nos. 190, 198, Case No. 14-cv-9371; Dkt Nos. 137, 142, Case No. 14-cv-9764; Dkt Nos. 143, 148, Case No. 14-cv-10067; Dkt Nos. 127, 132, Case No. 14-cv-10102; Dkt Nos. 79, 84. Case No. 15-cv-10033.  HSBC shares Wells Fargo's concerns and also joins in the points raised in Wells Fargo's letters to the Court.