August 30, 2016

**VIA ECF & HAND DELIVERY**
Honorable Sarah Netburn
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 430
New York, NY 10007

      Re:    *Coordinated RMBS Trustee Actions Against HSBC Bank USA, N.A.*, Nos. 14-cv-08175; 14-cv-09366; 14-cv-10101; 15-cv-02144; 15-cv-10032; 15-cv-10096

Dear Judge Netburn:

      We write in response to Defendant HSBC Bank USA, N.A.'s ("HSBC") August 25, 2016 letter [ECF No. 126] proposing to stay expert loan file re-underwriting and, in the alternative, raising various issues regarding how such re-underwriting should be conducted absent a stay.[1] Plaintiffs submit that, as the Hon. Jesse M. Furman recently ruled in a similar action, the Court should deny HSBC's request to "bifurcate" discovery.[2] Instead, Plaintiffs respectfully request the Court enter Plaintiffs' proposed loan file re-underwriting protocol ("LFRP") attached as **Exhibit A**, which is modeled on the LFRP ordered by the Hon. Denise L. Cote in the FHFA litigations (the "FHFA Protocol"). While Plaintiffs are committed to continuing to meet and confer with HSBC concerning the LFRP before the September 21, 2016 conference, HSBC is apparently unwilling to do so given its decision to abandon the meet and confer process and attempt to dismantle expert discovery and the LFRP process. Accordingly, Plaintiffs respectfully submit that entry of their proposed LFRP will move this case forward in the most efficient way, consistent with Rule 1, as the Court recently counseled the parties at the August 29 conference.

      ***Background.*** On June 29, 2016, the Court instructed the parties to negotiate a LFRP that would provide a framework for expert loan file re-underwriting, including a process for determining the sample size, the sample loans, the completeness of the sample loan files, and the applicable underwriting guidelines for the sample loans. June 29, 2016 Hr'g Tr. at 48:21-49:5 (attached as **Exhibit B**). By doing so, the Court acknowledged that "HSBC will be in a much fairer position to submit its expert report along the schedule that was initially in the scheduling order." *Id.* at 49:16-18. To facilitate the parties' negotiations, the Court ordered the parties to meet and confer "to reach agreement on a protocol for sampling loans in the defendant trusts and for re-underwriting those loans." [ECF No. 110]. The Court further recognized that such

---

[1] The *Triaxx* plaintiffs join generally in the other plaintiffs' positions but, as previously discussed, because of the relatively finite nature of Triaxx's case, Triaxx will not be sampling loans but will prove its case as to all loans it considers defective.
[2] *See Fixed Income Shares: Series M, et al. v. Citibank N.A.*, No. 14-cv-9373(JMF) (S.D.N.Y. Aug. 3, 2016) (ECF No. 99) (attached hereto as **Exhibit C**). For the Court's convenience, Plaintiffs also attach Citibank's letter motion and plaintiffs' opposition letter in *Fixed Income Shares: Series M, et al. v. Citibank N.A.* as **Exhibits D** and **E**.

agreement would be without prejudice to HSBC's arguments regarding the propriety of sampling or any other objection.³

On July 24, 2016, Plaintiffs proposed a LFRP substantially in the form of Exhibit A, which was modelled on the FHFA Protocol. The parties met and conferred and, on August 1, 2016, informed the Court that (i) HSBC was reviewing the LFRP and (ii) Plaintiffs had agreed to provide additional information requested by HSBC. ECF No. 117. On August 14, 2016, Plaintiffs provided HSBC with the requested information concerning Plaintiffs' pool of potential sample loans. Thereafter, HSBC did not provide any comments or counterpropsal.  Instead, on August 19, HSBC demanded information that was irrelevant to the Court's instructions or issues to be addressed, and otherwise constituted premature expert discovery.  Then, on August 25, HSBC abandoned the meet and confer process by requesting a stay of expert loan file re-underwriting.

***HSBC's Request To Stay Loan Re-Underwriting Discovery Should Be Denied***. Although HSBC styles its request as "staging" discovery (ECF No. 126 at 2), in reality, HSBC seeks to stay expert discovery altogether. HSBC, however, has not met the high threshold required to stay loan re-underwriting. A motion to stay must demonstrate that "dismissal of the complaint is inevitable." *In re WRT Energy Sec. Litig.*, 1996 WL 580930, at *1 (S.D.N.Y. Oct. 9, 1996). In other words, the moving party must make "a strong showing that the plaintiff's claim is unmeritorious." *Guiffre v. Maxwell*, 2016 WL 254932, at *1 (S.D.N.Y. Jan. 20, 2016). Judge Furman recently considered and swiftly rejected an identical request made by another RMBS trustee defendant.  *See* Exhibit C.  Consistent with Judge Furman's recent ruling, HSBC has not and cannot meet this threshold.

*First*, HSBC's request to stay loan re-underwriting until "threshold legal issues as to Plaintiffs' claims are resolved," ECF No. 126 at 2, is without basis. Preliminarily, this is not the appropriate forum to challenge the merits of Plaintiffs' claims. That is reserved for the jury and trial court. Moreover, HSBC's legal assertions are wrong:

- HSBC's claim that the "Trust governing agreements require actual knowledge of alleged breaches," ECF No. 126 at 2, is wrong.  The agreements require HSBC enforce repurchase upon its "**discovery**" of representation and warranty breaches. *See*, *e.g.*, Pooling and Servicing Agreement ("PSA") for DBALT 2007-OA1 (a Bellwether Trust) (excerpt attached hereto as **Exhibit G**), § 2.3.

- The discovery standard is not demanding. The Second Circuit recently held that "the law charges a party with discovery of [a representation and warranty] breach . . . after it has had a reasonable opportunity to investigate and confirm its suspicions [of the breach]."  *See Bank of New York Mellon Trust Co. v. Morgan Stanley Mortgage Capital, Inc.*, 821 F.3d 297, 310 (2d Cir. 2016) ("*BNYM*"). The district court's decision in *BNYM*, which the Second Circuit made clear "correctly" (*id.*) stated the discovery standard, held that "[a] party 'discovers' a breach when it knows *or should*

---

³ In the coordinated RMBS Trustee Actions against Wells Fargo pending before Your Honor, the Court similarly issued an Order, dated July 22, 2016, directing the parties to submit a LFRP modeled on the FHFA Protocol. *See* **Exhibit F**.

> *know* that the breach has occurred," 2013 WL 3146824, at *19; in other words, "once a party becomes aware of the relevant facts, a duty arises . . . to pick up the scent and nose to the source . . . ." *Id.*

- The First Department's ruling in *Commerce Bank v. Bank of N.Y. Mellon*, 35 N.Y.S.3d 63 (N.Y. App. Div. 2016), does not change this well-settled Second Circuit law regarding "discovery" of representation and warranty breaches. *Commerce Bank* merely held that a trustee has no general duty to "nose to the source" of "systematic improper *servicing and administration conduct*." *Id.* at 65 (emphasis added). Servicer Events of Default generally are subject to a different "actual knowledge" standard under the governing agreements that is separate and distinct from the "discovery" standard applicable to the trustee's discovery of representation and warranty breaches. *Compare* Ex. G § 2.3 (conditioning the trustee's obligations on "discovery" of a breach), *with id.* §§ 7.1, 8.2(a)(ix) (conditioning the trustee's obligations on "actual knowledge" of an Event of Default).[4]

HSBC has not established (nor can it) its extremely high burden to show that dismissal of Plaintiffs' complaints is "inevitable" necessary to warrant a stay, let alone even a "strong showing" that Plaintiffs' claims are unmeritorious.

*Second*, it is well-settled that sampling is appropriate in the context of re-underwriting in RMBS cases to prove the incidence of defects. *See, e.g.*, *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F.Supp.2d 475, 486–87 (S.D.N.Y. 2013); *FHFA v. JPMorgan Chase*, 2012 WL 60008855, at *11 (S.D.N.Y. Dec. 3, 2012); *Syncora Guarantee Inc. v. EMC Mortg. Corp.*, 2011 WL 1135007, at *4, 6-7 (S.D.N.Y. Mar. 25, 2011). Indeed, HSBC has itself advocated for sampling in RMBS cases in this District and in New York state courts. *See, e.g.*, HSBC's opposition in *ACE 2007-WM2 by HSBC v. DB Structured Products, Inc.*, No. 13-cv-02053-AJN-GWG (S.D.N.Y. Oct. 25, 2013) at 18 (**Exhibit K**) ("New York courts routinely accept 'sampling' as a basis for extrapolating breach rates across mortgage loan pools."); *ACE 2007-HE3 v. DB Structured Products*, Case No. 1:13-cv-01869-AJN-GWG (S.D.N.Y. June 14, 2013) (ECF No. 21) at 11-12 (**Exhibit L**) (same); *ACE 2007-ASAP2 v. DB Structure Products*, Index No. 651936/2013 (N.Y. Sup. Ct. Jan. 17, 2014) (NYSCEF No. 15) at 12 (**Exhibit M**) (same). The *Policemen's Annuity* decision cited by HSBC provides no ground to stay re-underwriting because the decision addresses standing, not sampling. *See Retirement Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154 (2d Cir. 2014).[5]

---

[4] Moreover, *Commerce Bank* does not otherwise present any ground for a stay. *Commerce Bank* cited as persuasive authority the many decisions by courts in this District denying RMBS trustees' motions to dismiss. The limited claims that *Commerce Bank* dismissed were based on specific allegations in the complaint in that action. Significantly, in the one RMBS trustee case to reach the summary judgment stage, the court denied the RMBS trustee's motion for summary judgment in its entirety finding that "there is more than enough in the record to warrant overruling the motion." *Western & Southern Life Ins. Co., et al. v. Bank of New York Mellon*, No. A1302490 (Hamilton C.P. June 20, 2016) (**Exhibit I**).

[5] Notably, sampling has been expressly approved by the U.S. Supreme Court. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016) ("A representative or statistical sample, like all evidence, is a means to establish or defend against liability.")

3

There is nothing unique about RMBS trustee claims that renders sampling impermissible. Sampling serves a similar purpose in both repurchase actions (where HSBC is a plaintiff and advocate for sampling) and the RMBS trustee actions (where HSBC is defendant and asserts sampling is improper), namely to provide statistical proof concerning the level of defective loans in pools and reduce the amount of loan re-underwriting which HSBC acknowledges is "exceedingly expensive, onerous, and time-consuming." ECF No. 126 at 1.

*Third*, HSBC's assertion that it somehow has a greater re-underwriting burden than that of defendants in other RMBS cases because it does not have "preexisting access" to the loan files is baseless. HSBC has the ability to obtain all the loan files for the mortgage loans, which are trust property. For example, Section 3.20 of the FHLT 2006-C PSA (one of the Bellwether trusts) (excerpt attached hereto as **Exhibit N**) provides: "All Mortgage Files . . . shall be held by the Servicer for and on behalf of the Trustee and shall be and remain the sole and exclusive property of the Trustee, subject to the applicable provisions of this Agreement." Similarly, HSBC has the right to "access to information and documentation regarding the related Mortgage Loans . . . at any time upon reasonable request and during normal business hours . . . ." *See*, *e.g.*, NHELI 2007-1 PSA § 4.06 (excerpt attached hereto as **Exhibit O**). HSBC simply refuses to exercise its right to obtain the mortgage loan files in order to obstruct discovery. Moreover, HSBC is free to subpoena any information it sees fit from the Sellers, as Plaintiffs have done.

*Fourth,* HSBC's request to stay re-underwriting discovery is also untimely. Discovery has been ongoing for many months. The Court instructed the parties to enter a loan re-underwriting protocol to avoid unnecessarily protracted expert discovery. HSBC seeks the exact opposite—an indefinite stay of loan re-underwriting discovery. For the sake of expediency and in order to comply with the expert discovery deadlines, Plaintiffs intend to undertake loan re-underwriting in advance of expert discovery with or without the cooperation of HSBC.[6]

***There Is No Requirement For Plaintiffs To Submit "Joint Reports"***. Judge Scheindlin never ordered Plaintiffs to file "joint" expert reports. Rather, Judge Scheindlin instructed Plaintiffs to coordinate expert reports on identical issues, such as background on the "US residential mortgage loan industry." *See* **Exhibit H** (Apr. 9, 2015 Hearing Tr.) at 5:11-14. Indeed, Judge Scheindlin stated that Plaintiffs may utilize **different** experts where there is a "unique issue." *Id*. at 7:6-8. Judge Scheindlin did not even address the issue of sampling experts at the April 9, 2015 hearing. Nevertheless, Plaintiffs that are utilizing sampling have coordinated and retained a single sampling expert. The fact that a Plaintiff, for example, may elect to re-underwrite more loans from a trust than another Plaintiff is consistent with the Plaintiffs exercising their right to prosecute their claims as they see fit, not a lack of coordination.

***Plaintiffs' Proposed LFRP Provides For Disclosure Of Sampling Methodology.*** Plaintiffs have already voluntarily exchanged sampling information with HSBC. *See* **Exhibit J**. Further, Plaintiffs' LFRP includes a requirement to disclose sampling methodology to HSBC.

---

[6] HSBC states that it "joins" in the points raised by Wells Fargo in certain letters in *RMBS Trustee Actions Against Wells Fargo*. ECF No. 126 at 5 n.6. To the extent that the Court permits HSBC to join issues raised in letters filed in a different case, Plaintiffs refer the Court to their response to Wells Fargo's initial letter. (Wells Fargo Dkt. No 83).

*See* Exhibit A at ¶ 3. However, in order for this early disclosure to be productive, HSBC must commit to analyzing the sampling methodology and either agree to the methodology or state its reasons for disagreement. *See id.* at ¶ 4. It is only through such a process that the parties can agree on "loan size, what loans are in that loan sampling, and whether or not each loan file is complete," as ordered by the Court. *See* Exhibit B at 48:22-23. Plaintiffs' LFRP does exactly this without prejudicing any party's rights.[7]

***HSBC's Request For Rolling Exchange Of Re-underwriting Results.*** Plaintiffs are open to negotiating a schedule for Plaintiffs and HSBC to exchange re-underwriting results and any rebuttals to those results. HSBC's request for the exchange of rolling re-underwriting results is at most a scheduling issue that can be resolved within the framework and spirit of Plaintiffs' proposed LFRP.

***Plaintiffs' Proposed LFRP Should Be Entered***. In accordance with the Court's guidance, Plaintiffs' LFRP is modeled on the FHFA Protocol, respects the current schedule for expert discovery, and fulfills the key purposes identified by this Court. In particular, Plaintiffs' LFRP (i) provides for meaningful interim disclosures and stipulations, which will allow the parties to agree on sample loan size, sample loans, and sample loan files and applicable underwriting guidelines, and further allow HSBC to begin loan re-underwriting before the expert discovery period without prejudice to any party's litigation positions, and (ii) promotes judicial economy and minimizes the burdens on third parties and the jury that ultimately will hear these actions. Additionally, the only two concerns raised by HSBC—early disclosure of sampling methodology and rolling exchange of re-underwriting results—are already addressed in Plaintiffs' LFRP and constitute a scheduling issue that can be resolved in the framework of Plaintiffs' LFRP respectively.[8]

\*   \*   \*   \*   \*

In sum, Plaintiffs respectfully request that the Court (i) deny HSBC's request to stay or otherwise defer expert re-underwriting discovery; and (ii) enter Plaintiffs' LFRP attached as Exhibit A hereto.

---

[7] Further, a LFRP is helpful to the Court by allowing the parties to work out disputes over which loan files and underwriting guidelines are applicable and thus minimize the number of such disputes that this Court subsequently may be asked to resolve. At the same time, resolution of many if not all such procedural matters in advance will allow for expert reports to focus on the merits of the re-underwriting analysis and for motions in limine or pursuant to *Daubert* to focus on admissibility of the expert's substantive analysis—not whether the expert used the correct loan files or guidelines.

[8] Plaintiffs remain committed to negotiating a LFRP with HSBC. To the extent that HSBC decides to re-engage in meet and confer efforts, Plaintiffs are willing to consider any appropriate modifications to the proposed LFRP consistent with the Court's guidance concerning the requirements and purpose of a LFRP.

Respectfully Submitted,

/s *Benjamin Galdston*  
Benjamin Galdston  
Bernstein Litowitz Berger & Grossmann LLP  
*Counsel for Plaintiffs Blackrock Balanced Capital Portfolio (FI), et al.*

/s *Christopher M. Wood*  
Christopher M. Wood  
Robbins Geller Rudman & Dowd LLP  
*Counsel for Plaintiff Royal Park Investments SA/NV*

/s *John A. Libra*  
John A. Libra  
Korein Tillery, LLC  
*Counsel for Plaintiffs National Credit Union Administration Board, et al.*

/s *Ryan A. Kane*  
Ryan A. Kane  
Wollmuth Maher & Deutsch LLP  
*Counsel for Plaintiffs Phoenix Light SF Limited, et al. and Commerzbank AG*

*/s/ John G. Moon*  
John G. Moon  
Miller & Wrubel PC  
*Counsel for Plaintiffs Triaxx Prime CDO 2006-1, Ltd., et al.*

cc: All Counsel of Record (Via CM/ECF)