# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROYAL PARK INVESTMENTS SA/NV, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br> v.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION, as Trustee,<br><br>    Defendant. | **Civil Action No. 14-CV-8175-LGS** |
| BLACKROCK BALANCED CAPITAL PORTFOLIO (FI), et al.,<br><br>    Plaintiffs,<br><br> v.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION,<br><br>    Defendant. | **Civil Action No. 14-CV-9366-LGS** |
| PHOENIX LIGHT SF LIMITED, et al.,<br><br>    Plaintiffs,<br><br> v.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION,<br><br>    Defendant. | **Civil Action No. 14-CV-10101-LGS** |

| | |
|---|---|
| COMMERZBANK AG, et al.<br><br>                              Plaintiffs,<br><br>     v.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION,<br><br>                              Defendant. | **Civil Action No. 15-CV-10032-LGS** |

### [PROPOSED] LOAN FILE RE-UNDERWRITING PROTOCOL

HON. SARAH NETBURN, Magistrate Judge:

WHEREAS, Plaintiffs Royal Park Investments SA/NV, BlackRock Balanced Capital Portfolio (FI), et al., Phoenix Light SF Limited, et al., the National Credit Union Administration Board, and Commerzbank AG (collectively "Plaintiffs"), are pursuing the above-captioned cases (the "Actions") against Defendant HSBC Bank USA, National Association ("HSBC" or "Defendant," together with Plaintiffs, the "Parties") concerning certain residential mortgage-backed securities ("RMBS") trusts;

WHEREAS, at the Court's direction, and to conserve the resources of the Parties, non-parties and the Court, the Parties have agreed to initially litigate their claims and defenses with respect to 24 "Bellwether" trusts (the "Bellwether Trusts");

WHEREAS, Plaintiffs intend to present evidence based upon the re-underwriting of a sample of loans in the Bellwether Trusts;

2

WHEREAS, the Parties shall work cooperatively to obtain the relevant loan origination documents, loan servicing documents, and the applicable underwriting guidelines for such loans, which are necessary to re-underwrite loans in the Bellwether Trusts;

WHEREAS, the Parties shall strive to reduce the burden on third-parties of producing documents in these Actions wherever possible, including the burden of producing loan origination documents, loan servicing documents, and underwriting guidelines;

WHEREAS, on August 30, 2016, the Plaintiffs submitted this [Proposed] Loan File Re-Underwriting Protocol;

IT IS HEREBY ORDERED, for all Actions, as follows:

1. Plaintiffs have drawn a collection of 7,076 sample loans from the Bellwether Trusts (the "Sample Loan Collection"). On June 12, 2016,[1] Plaintiffs identified the Sample Loan Collection to Defendant.

2. The Sample Loan Collection contains initial sample loans ("Initial Sample Loans") and back-up sample loans ("Back-Up Sample Loans"). Plaintiffs intend to re-underwrite sample loans for each Bellwether Trust, the results of which will be the subject of expert reports and testimony (the "Final Sample Loans"). The Final Sample Loans will be comprised of the Initial Sample Loans and certain Back-Up Sample Loans. In particular, if a Loan File (defined below), Servicing File (defined below), or Guideline (defined below) for an Initial Sample Loan is either missing or incomplete, or the Parties are unable to stipulate that they are the best available representation of such Loan File, Servicing File, or Guidelines,

---

[1] Where final loan tapes or equivalent information for a specific trust have not been produced by Defendant, Plaintiffs will identify the Sampled Loans for that trust within 14 days of obtaining the relevant loan tapes.

3

Plaintiffs may replace such Initial Sample Loan with a Back-Up Sample Loan. Accordingly, a Back-Up Sample Loan will be re-underwritten only if an Initial Sample Loan is determined to be either missing or incomplete, or not the Best Available Representation (defined below) of such Loan File, Servicing File, or Guidelines.

   3. By September 23, 2016, Plaintiffs shall separately identify, for each Bellwether Trust, the Initial Sample Loans and the Back-Up Sample Loans that Plaintiffs anticipate to be used in connection with ascertaining the Final Sample Loans, and explain the sampling methodology and criteria for drawing for the Sample Loan Collection, including the methodology for identifying Initial Sample Loans, Back-Up Sample Loans and Final Sample Loans.

   4. Without prejudice to Defendant's right to object to, among other things, the admissibility of Plaintiffs' sample in any particular action, within 14 days of receipt of Plaintiffs' identification of the Initial Sample Loans and Back-Up Sample Loans, Defendant shall stipulate in writing that, based on the information available to Defendant as of the date of the stipulation that: (i) Defendant agrees that the size and population of the Initial Sample Loans for each Bellwether Trust is statistically significant for purposes of the Parties' respective expert reports; (ii) Defendant lacks sufficient information to make such a stipulation, in which case Defendant shall identify all information it claims to be lacking; or (iii) Defendant disagrees that the stipulation in (i) would be accurate, in which case Defendant shall state all reasons for such disagreement. If Defendant stipulates as per (iii), Defendant shall inform Plaintiffs no later than October 14, 2016 whether it intends to draw loan samples or re-underwrite any loans from the Bellwether Trusts. In that event, the Parties shall meet and confer regarding an appropriate schedule of disclosures. If they are unable to agree upon a

schedule, they shall present their competing proposals to the Court.

5. The Parties shall work together to obtain and exchange the loan origination file documents (the "Loan Files"), loan servicing file documents ("Servicing Files"), and applicable underwriting guidelines, manuals, reference guides, policies, and matrices (the "Guidelines") for the Sample Loan Collection. By October 7, 2016, Defendant shall inform Plaintiffs of whether, for each loan in the Sample Loan Collection, Defendant has any Loan Files, Servicing Files, or Guidelines either within its possession, custody, or control, or it has a right to access such Loan Files, Servicing Files, or Guidelines. By making a production of Loan Files, Servicing Files, or Guidelines, Defendant does not represent that any Loan Files, Servicing Files, or Guidelines it produces are complete or relevant. The Parties shall also cooperate to minimize the scope and burden associated with non-party discovery under Rule 45.

6. Plaintiffs shall disclose to Defendant the identity each Final Sample Loan selected (and corresponding Loan File, Servicing File, and Guidelines) as soon as practicable but not later than 14 calendar days after such loan is identified by Plaintiffs. Within 21 days of receiving a request for stipulation from Plaintiffs with respect to one or more Final Sample Loan proposed by Plaintiffs, Defendant shall stipulate in writing as to each such loan that, based on the information available to Defendant as of the date of the stipulation that: (i) the corresponding Loan File, Servicing File and Guidelines are the best available representation of such Loan File, Servicing File and Guidelines existing as of the origination date or otherwise relevant underwriting date for the Final Sample Loan that the Parties have been able to locate as of the date of such stipulation ("Best Available Representation"); or (ii) Defendant lacks sufficient information to make such a stipulation; or (iii) Defendant disagrees that the

stipulation in (i) would be accurate.  If Defendant stipulates as per (iii), Defendant shall state all reasons for such disagreement or shall identify any Loan File, Servicing File or Guidelines that it believes is the Best Available Representation.  Plaintiffs shall respond within 14 days.  In the event that Defendant believes that there are documents that should be added to make the Loan File, Servicing File or Guidelines the Best Available Representation, the Parties shall cooperate to obtain such additional documents as promptly as possible.

7.  On or before the close of fact discovery in this action, the Parties shall identify by Bates number in a written joint stipulation, for each Final Sampled Loan, the applicable Guidelines and the Loan File that is the Best Available Representation.  If the Parties stipulate, as to any Final Sampled Loan, to disagree regarding which Loan File is the Best Available Representation or which Guidelines applies, each party shall identify by Bates number in the aforementioned joint stipulation which Loan File it believes is the Best Available Representation and/or which Guidelines apply. The positions of the Parties expressed in such joint stipulation shall be considered "stipulations with regard to any Loan File or Guideline" under this Order.

8.  The execution of the above-described stipulations shall not preclude any party from asserting at trial that a Loan File, Servicing File or Guidelines for a Final Sample Loan that are offered into evidence are different from the Loan File, Servicing File and Guidelines that existed at the time of the Final Sample Loan's origination or otherwise relevant underwriting date, nor limit the reasons for or rebuttals to any such assertion.

9.  If a party learns of information during the course of discovery that would change its stipulation with regard to any Loan File, Servicing File or Guidelines, it must promptly identify such new information and seek the consent of the other parties to amend its

written stipulation within 14 days.  In the event that any party wishes to alter the above-described stipulations following April 1, 2017, it shall promptly seek consent of the other Parties.  If consent is not given, the party seeking to alter its stipulation may apply to the Court for permission to do so.  Any such application must be supported by a showing of good cause.  Good cause entails, *inter alia*, a showing of diligence.

10. There is a presumption that good cause cannot be shown where the requests to alter a stipulation impact more than ten (10) percent of the Final Sample Loans for a Bellwether Trust.  In the event permission to amend a stipulation is given and any party is required as a result of the revised stipulation to repeat the re-underwriting of a Final Sample Loan, it is presumed that the party that revised its stipulation shall bear the costs of such re-underwriting, including any associated additional expert costs.

**SO ORDERED:** _____
                  HON. SARAH NETBURN