LAW OFFICES
# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.
WASHINGTON, D. C. 20005-5901
(202) 434-5000
FAX (202) 434-5029

KEVIN M. HODGES
(202) 434-5221
khodges@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

September 19, 2016

<u>Via ECF</u>
Honorable Sarah Netburn
Thurgood Marshall Courthouse
United States District Court

   Re: *Coordinated RMBS Trustee Actions Against HSBC Bank USA, N.A.*, Nos. 14-cv-08175; 14-cv-09366; 14-cv-10101; 15-cv-02144; 15-cv-10032; 15-cv-10096

Dear Judge Netburn:

Consistent with HSBC's letters to the Court dated August 25 and September 2 and with the Court's prior guidance regarding a loan file re-underwriting protocol, attached is HSBC's proposed loan file re-underwriting protocol (the "HSBC Protocol") (*See* Ex. 1).[1]

HSBC continues to believe that discovery should be staged to allow for resolution of certain threshold legal issues impacting Plaintiffs' ability to recover in this case before the parties proceed to an expensive and time-consuming period of loan re-underwriting (a process that could establish, at most, whether certain *non-parties* to this litigation breached *their* obligations in connection with certain loans in the Trusts).  The case for staged discovery is even more compelling following Judge Castel's recent Memorandum and Order (discussed more fully below) in the first completed put-back trial of the type Plaintiffs contend HSBC should have been initiating against mortgage loan originators/sellers, *U.S. Bank, N.A. v. UBS Real Estate Securities, Inc.*, No. 12-cv-7322, 2016 WL 4690410 (S.D.N.Y. Sept. 6, 2016).  Without prejudice to its position, HSBC nevertheless submits the attached protocol, which is appropriately tailored to the unique aspects of this trustee litigation and will allow the parties to

---

[1] Since the August 29 hearing, HSBC has attempted to meet and confer with Plaintiffs about a loan re-underwriting protocol on multiple occasions, but Plaintiffs first refused to meet and confer further with HSBC until HSBC circulated its own proposed protocol (even though HSBC had continued questions about Plaintiffs' proposal).  HSBC did so on September 15, but, as of the filing of this letter HSBC has not received comments on its proposal.  Plaintiffs today indicated that they intend to provide comments and HSBC remains willing to meet and confer concerning a proposed protocol.  However, Plaintiffs still have not provided the information requested in HSBC's July 13, 2016 letter concerning how they selected their samples.

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
September 19, 2016
Page 2

move forward in re-underwriting at least certain of the loans within the Trusts in a fair and workable manner.

The HSBC Protocol incorporates the various points that HSBC raised in its letter to the Court dated August 25 that was discussed briefly at the hearing on August 29.  *See* August 29 Hearing Tr. at 6 (The Court: "But I do think we need to focus on some organized expert discovery, and I think the proposal that the defendants submitted makes a whole lot of sense, and I do want to spend some time talking about that.")  Among other elements necessary for HSBC to analyze and respond to Plaintiffs' expert reports in the time allotted, the HSBC Protocol provides for:

  *Plaintiffs' Submission of Joint Expert Reports*.  Consistent with Judge Scheindlin's prior guidance on this issue, *see* April 9, 2015 Hearing Tr. at 4-7, the HSBC Protocol requires Plaintiffs to coordinate expert reports among themselves so that HSBC is not forced to respond to multiple, competing expert reports on the same topics (such as sampling and re-underwriting).  *See* HSBC Protocol at ¶¶ 3, 15.

  *Plaintiffs' Early Disclosure of Their Sampling Expert Report*.  As was done in the FHFA litigation, the HSBC Protocol requires early disclosure by Plaintiffs of their sampling expert report so that HSBC and the Court can evaluate the appropriateness of the sample Plaintiffs have drawn and so that at least certain disputes concerning the sample may be resolved at an early stage.  *See* HSBC Protocol at ¶¶ 3-4.

  *Re-Underwriting on a Rolling Basis*.  As was done in the FHFA litigation, the HSBC Protocol provides for loan re-underwriting on a rolling basis so that HSBC will receive Plaintiffs' re-underwriting results and provide its own analysis throughout the discovery period.  *See* HSBC Protocol at ¶¶ 14-18.  Establishing reasonable yet concrete dates for Plaintiffs' rolling production, which the HSBC Protocol accomplishes, is necessary to ensure that HSBC has a reasonable opportunity to respond to Plaintiffs' re-underwriting results consistent with the schedule currently in place.

  *Plaintiffs' Early Disclosure of Evidence Regarding HSBC's Actual Knowledge*.  Because one of the key issues in this case ultimately will be not whether certain non-parties breached their own obligations regarding the loans in the Trusts but instead whether HSBC as Trustee had actual knowledge of such breaches and failed to take some required action that resulted in damages to the Trusts, the HSBC Protocol also requires early disclosure by Plaintiffs of the evidence supporting HSBC's actual knowledge of breaches. *See* HSBC Protocol at ¶ 6.  This disclosure should promote early resolution of certain issues in the case and could streamline the re-underwriting process given that there is little value in trying to prove in 2016 the existence of loan breaches that previously were unidentified and unknown to the parties.  Since under the applicable case law the existence of knowledge by the Trustee is a loan-by-loan inquiry, requiring Plaintiffs to articulate their loan-by-loan evidence of actual knowledge is appropriate and reasonable.  Further, since Plaintiffs must link such knowledge evidence directly to the

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
September 19, 2016
Page 3

specific re-underwriting defects Plaintiffs will allege, it is appropriate that the loan re-underwriting protocol address both.

Finally, although all Plaintiffs but one apparently intend to proceed with "sampling", the law is clear in the context of a case against a securitization trustee that re-underwriting a sample of loans cannot provide a basis for establishing liability or damages as to any loan outside of that sample.[2]  Notably, Judge Castel recently rejected the use of a proposed sampling methodology in a loan "put-back" action *against a sponsor* on the ground that sampling is fundamentally incompatible with the loan-specific notice and remedial provisions found in the parties' PSA (provisions that likewise are found in the governing agreements for all of the Bellwether Trusts at issue in this litigation):

> There is a fundamental problem with statistical extrapolation from the work of [Plaintiff's re-underwriting expert] Holt.  The Court has not accepted Holt's opinions across the board in finding breaches of warranties.  Some of Holt's opinions have been accepted by the Court and some have not. . . . *Separately, the Court cannot determine whether the Trusts have proved that UBS received notice or otherwise discovered that a loan was in breach unless the loan is identified.*

*U.S. Bank, N.A.*, 2016 WL 4690410 at *74-75 (emphasis added); *see also id*. at *28 ("The parties could have, but did not, bargain for additional remedies or a notice provision that did not turn on loan-specific knowledge.  The Trusts therefore may not rely on evidence of 'constructive knowledge' or 'pervasive breach' to prove UBS's knowledge of breached warranties.").  Thus, while re-underwriting a sample of loans may provide evidence relevant to HSBC's liability for *those specific loans* (assuming Plaintiffs can prove actual knowledge, damages, etc.), the exercise can provide no further function in this case.

We appreciate the Court's consideration of the HSBC Protocol (as well as the additional points above), and we look forward to discussing them at the hearing on September 21.

---

[2] *See, e.g.*, *Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 162 (2d Cir. 2014) ("Whether [Countrywide] was obligated to repurchase a given loan requires examining which loans, in which trusts, were in breach of the representations and warranties. And whether a loan's documentation was deficient requires looking at individual loans and documents.")

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
September 19, 2016
Page 4

                                      Respectfully submitted,

                                      */s/ Kevin M. Hodges*

                                      Kevin M. Hodges

Enclosure

cc:     Counsel for all parties via ECF