LAW OFFICES
# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W().
WASHINGTON, D. C. 20005-5901
(202) 434-5000
FAX (202) 434-5029

EDWARD REDDINGTON
(202) 434-5063
ereddington@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

September 19, 2016

Via ECF

Honorable Sarah Netburn
Thurgood Marshall Courthouse
United States District Court

   Re: *Coordinated RMBS Trustee Actions Against HSBC Bank USA, N.A.*, Nos. 14-cv-08175; 14-cv-09366; 14-cv-10101; 15-cv-02144; 15-cv-10032; 15-cv-10096

Dear Judge Netburn:

  I write on behalf of HSBC Bank USA, N.A. ("HSBC") to update the Court regarding discovery and to respond to Plaintiffs' September 16 letter. The manner and timing of Plaintiffs' productions continues to significantly hinder HSBC's ability to take depositions. While HSBC is still in the process of evaluating Plaintiffs' productions, I summarize the major issues below.

## I. Plaintiffs' Productions

### A. The *BlackRock* Plaintiffs

  Under the current scheduling order, the *BlackRock* Plaintiffs were supposed to have completed their document productions more than 5 weeks ago. Since the August 11 deadline, however, they have collectively produced another 18 million pages, which represents over 36 percent of the total pages produced to date.[1] Plaintiffs' late productions continue to prejudice HSBC.[2] Notwithstanding these late productions, Plaintiffs still are not finished producing—and in some cases collecting—documents from key custodians and centralized document repositories. Moreover, Plaintiffs' productions to date suffer from severe deficiencies, including: (1) failure to provide the custodian-level metadata negotiated by the parties up front and ordered by the Court, (2) failure to preserve, search, and produce attachments to emails held by agreed-upon document custodians, and (3) failure to collect and produce shared ESI and hard copy files in addition to custodial ESI.

---

[1] For TIAA, DZ Bank, and Kore, the page volume produced after August 11 exceeds 90% of their total productions.
[2] As but one example of this prejudice, Plaintiffs delayed production from the files of three PIMCO employees that HSBC noticed for deposition last April. Each of these employees is a custodian that the Court ordered PIMCO to produce from more than 7 months ago. Based on HSBC's deposition notices, Plaintiffs' counsel knew that these were priority custodians. Despite this knowledge, PIMCO waited until <u>after</u> the August 11 production deadline to produce nearly all of their documents. Such tactics have clearly affected HSBC's ability to prepare for depositions.

Honorable Sarah Netburn
September 19, 2016
Page 2

**Missing Custodians.**  HSBC has not received any documents for 11 BlackRock custodians and 1 DZ Bank custodian.  These 12 custodians are individuals that Plaintiffs held out to HSBC and the Court as the most relevant and appropriate custodians given the claims and defenses in this case.  Notwithstanding this, counsel informed HSBC for the first time last week that Plaintiffs do not intend to produce any documents for these 12 custodians.  HSBC asked but counsel refused to disclose whether Plaintiffs even collected documents for them, nor would Plaintiffs disclose when they learned or decided that they would not be producing their documents.  If Plaintiffs were unable or unwilling to locate and produce documents for these custodians, Plaintiffs should have informed HSBC of this issue long ago.  The parties negotiated and the Court ordered specific numbers of custodians for each Plaintiff group, and Plaintiffs should not have offered custodians without available documents.  HSBC asked but Plaintiffs refused to replace the missing custodians.  The Court should order 12 replacement custodians of HSBC's choosing.

**Shared and Hard Copy Files.**  The ESI Protocol requires the parties to identify sources of shared and hard copy documents not only by department but also down to the folder in which the documents were maintained in the ordinary course of business.  Accordingly, HSBC has provided Plaintiffs with specific department and folder information for its shared and hard copy documents.  Despite HSBC's repeated requests, however, Plaintiffs have failed to provide the same information for their documents.  For example, HSBC has asked whether Plaintiffs collected and produced materials maintained in centralized repositories for their respective Investment Committees.  Plaintiffs have refused to confirm this information one way or the other and have refused to identify the specific sources from which they collected any shared and hard copy documents.  Rather than providing the department and folder-specific information required by the ESI Protocol, Plaintiffs have provided only generic fields like "PIMCO" or "DZ Bank" to describe the sources of their collection.  This generic information is insufficient for HSBC to evaluate the scope of Plaintiffs' shared and hard copy collection and production.  In addition, HSBC needs department and folder information in order to prepare for depositions.  On the parties' last meet-and-confer call, HSBC requested a bilateral exchange of this information, but Plaintiffs have so far refused to do so.  The Court should order Plaintiffs to provide the department and folder information required by the ESI Protocol.

**DZ Bank Failed to Produce Attachments.**  The parties agreed to a search protocol requiring email data (including email attachments) to be searched and collected using agreed-upon search terms.  This is a standard email collection practice.  Unfortunately—and unbeknownst to HSBC until only recently—DZ Bank deviated from this standard in the way that it searched, collected, and produced email attachments.  HSBC independently identified a widespread problem in DZ Bank's production of parent emails missing their attached/referenced children.  When HSBC raised this issue with counsel, they disclosed that DZ Bank stores email attachments in a "database" that is separate from the location in which it stores parent emails.  Counsel also asserted that the attachment "database" is not "reasonably accessible" for searching and collection.  HSBC has requested further information from DZ Bank (as well as a vendor-to-vendor call) regarding this "database" and its accessibility, but DZ Bank has not provided any additional information in response to these requests.  DZ Bank should have proactively brought this issue to HSBC's attention rather than leaving HSBC to discover it after DZ Bank began making significant productions near the August 11 production deadline.  HSBC reserves all

Honorable Sarah Netburn
September 19, 2016
Page 3

rights with respect to this issue if DZ Bank failed to preserve, collect, and produce relevant documents. At a minimum, the Court should compel DZ Bank now to produce missing attachments associated with the parent emails that it has produced to date.

**TIAA Failed to Produce Proper Custodial Metadata.** TIAA's document production lacks the custodial metadata required by the ESI Protocol. This is no minor issue. Without proper ESI metadata, it is impossible for HSBC to tie a particular document to an individual or shared custodian source, or organize TIAA's productions by custodian for the purpose of review. These are necessary steps for deposition preparation, especially given the size of TIAA's production (almost 230,000 documents and 3.2 million pages). TIAA recently produced a metadata overlay that purports to provide this missing custodial metadata. While HSBC is still in the process of assessing the overlay, we have already identified multiple technical problems with it and posed a list of specific questions to counsel regarding its creation. HSBC has requested a vendor-to-vendor conversation and will continue to meet and confer with TIAA regarding the overlay. If, however, TIAA or its vendor cannot or will not address HSBC's questions and concerns about the overlay and the manner in which it was generated, HSBC may need to seek judicial intervention in the near future.

### B. NCUA, Phoenix Light, Royal Park, Commerzbank, and Triaxx

**NCUA.** NCUA brings claims in its own right and on behalf of certain credit unions. Notwithstanding this status, only 1% of NCUA's production to date comes from its own files. One reason for the comparatively low volume of NCUA's production is that NCUA refuses to produce *any* documents from its files prior to March 20, 2009, the date of the first conservatorship of the credit unions. This issue is the subject of the letters submitted to the Court on September 13 (Dkt. 141) and September 16 (Dkt. 144).

In addition, on August 26, NCUA informed HSBC of its intent to "withdraw" two of the custodians that NCUA offered for one of the corporate credit unions. Counsel waited more than two weeks after the August 11 document production deadline to inform HSBC that they were unable to locate custodial files for these individuals. Once again, this is inexplicable given that the parties negotiated and the Court ordered specific numbers of custodians nearly a year ago. NCUA should never have offered to produce from custodians without documents. HSBC has asked but NCUA has refused to replace the withdrawn custodians. The Court should order two replacement custodians of HSBC's choosing. After reviewing the documents, HSBC believes that Scott Hunt and Kent Buckham, both former directors of NCUA's Office of Corporate Credit Unions, would be appropriate custodians. Finally, many documents in NCUA's productions lack the TIFF image files required by the ESI Protocol. HSBC asked NCUA to produce the missing TIFF files on August 15, but NCUA has not responded to HSBC's request.

**Phoenix Light, Royal Park, Commerzbank and Triaxx.** HSBC continues to meet and confer with these plaintiffs regarding the production of documents, the assertion of privilege over clawed back documents, search terms, custodians, and other specific discovery requests.

Honorable Sarah Netburn
September 19, 2016
Page 4

## II.     HSBC's Production

Plaintiffs' letter does not correctly characterize HSBC's position with respect to the issues they raise.  The parties were meeting and conferring when Plaintiffs decided to file their September 16 letter.  I address each issue below.

**FHFA Deposition Transcripts.**  As an initial matter, HSBC has not refused to give the Plaintiffs any FHFA transcripts.  Instead, in June the Court found "that discovery into these unrelated proceedings will have limited relevance to this case and that the plaintiffs' request [for all FHFA deposition transcripts] would exceed the limited discovery the Court has authorized beyond HSBC's corporate trust department."  Accordingly, the Court ordered "HSBC to disclose FHFA deposition transcripts from only those employees who have the authority to bind the Bank or are going to testify in a deposition or trial in this case."  *BlackRock* Dkt. No. 171.

With respect to the first prong of the Court's order—employees who have the authority to bind the Bank—the specific circumstances in which any person could bind an entity are often situationally dependent.  Here, HSBC is sued for actions it purportedly took or did not take as trustee.  And, while the precise language varies somewhat by trust, the governing agreements for every single trust at issue in this case contain provisions that make clear that where knowledge is relevant, the knowledge at issue must be possessed by an officer of the corporate trust department.  Accordingly, the most pertinent inquiry here would be whether an individual could bind HSBC as trustee.  With respect to the second prong of the Court's order—employees who are going to testify at deposition or trial—Plaintiffs just recently issued deposition notices to HSBC.[3]  First, on September 9, Plaintiffs noticed two persons who were deposed in the FHFA case—Jon Voigtman and Christina Carr.  Neither Mr. Voigtman nor Ms. Carr were employees of HSBC Bank USA during the relevant time period, and neither worked in HSBC's corporate trust department or had responsibility for administering the trusts in this case.  Additionally, neither works currently for any HSBC entity.  Moreover, Mr. Voigtman resides overseas.  All of these facts are known to Plaintiffs' counsel.  In light of these and other issues calling into question their relevance, counsel for HSBC informed Plaintiffs that HSBC would like to meet and confer regarding these notices.

During these same discussions, Plaintiffs demanded HSBC provide them with the FHFA deposition transcript of a third individual—Gerard Mattia.  Mr. Mattia is the current Chief Financial Officer ("CFO") of HSBC.  Mr. Mattia also has never worked in HSBC's corporate trust department and was not responsible for administering the trusts in this case.  Nevertheless, in light of Mr. Mattia's position as CFO, and the Court's order referencing employees with authority to bind the Bank, HSBC informed Plaintiffs that it was considering their request and would get back to them.  Plaintiffs then filed their September 16 letter with the Court. Apparently uncertain of their position, on September 19 Plaintiffs noticed Mr. Mattia for deposition.  It should not be a foregone conclusion that any of these individuals will or should testify in this case, and Plaintiffs should not be able to so easily avoid the limits of the Court's

---

[3] In February and March 2016, Plaintiffs issued deposition notices to HSBC for five proposed witnesses, but later withdrew those notices in May.  No deposition notices were then pending from Plaintiffs until they issued new notices this month on September 9 and 19.  Plaintiffs' September notices are not identical to their earlier notices.

Honorable Sarah Netburn
September 19, 2016
Page 5

order by noticing irrelevant deponents, including persons who did not work for the Bank and senior officials who had nothing to do with the at-issue trusts, and then demanding their deposition transcripts. Given these individuals' lack of involvement in the trusts and loans at issue in this case, HSBC respectfully submits that the Court should allow the meet and confer process to conclude so that HSBC may evaluate Plaintiffs claims of relevance and seek relief as needed.

**Plaintiffs' Request to Expand Discovery Outside of CTLA.**  HSBC has fully complied with the Court's instructions with respect to the six non-CTLA custodians by applying the parties' search terms to their email files. *See, e.g.*, Sep't 4, 2015 Hr'g Tr. at 25:5-10 ("MR. REDDINGTON: And what we decided, your Honor, is we would meet and confer and come up with search terms that could be applied to custodians. THE COURT: Correct. And you can do that just by going to the other departments and taking the same search design and applying it. That's all I'm trying to say."). Plaintiffs now ask the Court to expand this limited discovery outside of HSBC's corporate trust department ("CTLA") by searching sources of documents not specifically associated with the six non-CTLA custodians.[4]

Plaintiffs' new request is inconsistent with the Court's prior guidance. In ordering limited discovery outside of CTLA, the Court noted it did not want to dispense with the already-ordered Bellwether process and that HSBC did not need to produce documents about loans and trusts not in this case. *See, e.g.*, June 24, 2015 Hr'g Tr. at 5:8-21; Sep't 4, 2015 Hr'g Tr. at 25:19-22. Plaintiffs' request indirectly seeks what the Court already said HSBC did not have to produce. Plaintiffs do not identify any specific documents outside CTLA that they believe HSBC needs to search for and produce; nor do they explain how such documents would be relevant.

**Allegedly Missing Document Categories.**  Plaintiffs seek no relief and identify no concrete issues with respect to Plaintiffs' claim that HSBC has refused to produce 20 categories of documents requested by Plaintiffs. Although HSBC's investigation of Plaintiffs' claims is ongoing, it is already apparent that HSBC has produced many of the documents that Plaintiffs claim are missing. HSBC will continue to meet with Plaintiffs, but, consistent with the Court's August 25, 2016 order, *BlackRock* Dkt. No. 209, Plaintiffs should provide specific reason to believe documents were requested, are missing, or were improperly withheld when raising these issues with HSBC.

\*    \*    \*

HSBC looks forward to discussing these issues on September 21.

---

[4] Notably, HSBC already has conducted a reasonable search and produced documents from hard copy and shared files related to the Bellwether trusts and its corporate trust department. In contrast, however, as discussed above, many of the Plaintiffs, refuse to explain anything they have done with respect to hard copy and shared file collections.

Honorable Sarah Netburn
September 19, 2016
Page 6

                                            Sincerely,

                                            Edward Reddington

Attachment

cc: All counsel via ECF