September 21, 2016

**VIA ECF & HAND DELIVERY**
The Honorable Sarah Netburn
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 430
New York, NY 10007

Re:   *Coordinated RMBS Trustee Litigation against HSBC Bank USA, N.A.,*
      Nos. 14-cv-8175; 14-cv-9366; 14-cv-10101; 15-cv-02144; 15-cv-10032; 15-cv-10096

Dear Judge Netburn:

We write in response to Defendant HSBC Bank USA, N.A.'s ("HSBC") September 19, 2016 letter again requesting a stay of loan file re-underwriting discovery and proposing its own version of a loan file re-underwriting protocol ("HSBC's LFRP") [ECF No. 138].[1] As an initial matter, Plaintiffs proposed their loan file re-underwriting protocol to HSBC on July 24, 2016, which is substantially the same as the LFRP that Plaintiffs submitted to the Court on August 30, 2016 ("Plaintiffs' LFRP") [ECF No. 130-1]. Despite Plaintiffs' repeated requests that HSBC provide comments to Plaintiffs' LFRP, HSBC refused to do so until it proposed an entirely different LFRP last Thursday evening. Plaintiffs have coordinated their efforts to review HSBC's LFRP and provided HSBC a collective mark-up of Plaintiffs' LFRP to address various concepts in HSBC's LFRP as a compromise ("Plaintiffs' Compromise LFRP"). A clean version of Plaintiffs' Compromise LFRP is attached as **Exhibit A** and a comparison showing the changes to Plaintiffs' LFRP is attached as **Exhibit B**.

*HSBC's Request to Stay Loan Re-Underwriting Discovery Should Be Denied*

Plaintiffs responded to HSBC's previous request to stay loan re-underwriting discovery in their August 30, 2016 letter [ECF No. 130]. Judge Castel's Memorandum and Order in *U.S. Bank N.A. v. UBS Real Estate Securities, Inc.*, No. 12-cv-7322, 2016 WL 4690410 (S.D.N.Y. Sept. 6, 2016) does not provide any support for staying loan re-underwriting. Quite the contrary, the Order supports many of Plaintiffs' positions in these actions. For example, Judge Castel held: "No direct proof is required to establish that UBS discovered breaches of additional non-noticed loans; it may be proved by circumstantial evidence." *Id*. at *28. Additionally, "Plaintiffs also may rely on evidence of willful blindness on the part of UBS to prove that UBS had knowledge that the representations and warranties had been breached. Under New York law, where a party had sufficient information to impose a duty upon it to make further inquiry . . . its failure to do so constituted willful blindness." *Id*. (internal quotations and citations omitted).

---

[1] The *Triaxx* plaintiffs join generally in the other plaintiffs' positions, but, as previously discussed, because of the relatively finite nature of Triaxx's case, Triaxx will not be sampling loans but will prove its case as to all loans it considers defective.

As for sampling, HSBC omits that Judge Castel held, consistent with the Supreme Court and Southern District decisions cited in Plaintiffs' August 30, 2016 letter: "***Statistical sampling is an important tool for proving or disproving a case, particularly one involving a large pool of data***." *Id*. at *75 (emphasis added). Judge Castel simply found issues with the application of sampling to loans from one of the originators due to the facts presented at that trial. Further, Judge Castel's statement concerning the Court's inability to determine if UBS received notice or discovered a breach is unique to a putback action; specifically, the repurchase protocol set forth in a mortgage loan purchase agreement. The ruling is irrelevant to this action adjudging HSBC's duties as trustee under the Pooling and Servicing Agreements. Unlike the seller UBS, HSBC is not simply a contract party vis-à-vis certificateholders. As trustee, HSBC has express contractual duties to trust beneficiaries, and those duties must be construed in light of the fundamental purpose of a trustee to protect trust property on behalf of trusts beneficiaries. Accordingly, the case law has required an RMBS trustee, when it possess some indication of breaching loans, to "nose to the source" (i.e., investigate the nature, cause and scope of the problem). *Policemen's Annuity & Benefit Fund of City of Chicago v. Bank of Am., NA*, 907 F. Supp. 2d 536, 553 (S.D.N.Y. 2012). As the Second Circuit recently held in construing the standard for when a trustee "discovers" breaches of representations and warranties, "the law charges a party with discovery of [a representation and warranty] breach . . . after it has had a reasonable opportunity to investigate and confirm its suspicions." *The Bank of N.Y. Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 310 (2d Cir. 2016) (citation omitted). Moreover, the occurrence of Events of Default require that HSBC prudently exercise all contractual rights and remedies. *Royal Park Investments SA/NV v. HSBC Bank USA, Nat. Ass'n*, 109 F. Supp. 3d 587, 603 (S.D.N.Y. 2015). Sampling evidence will demonstrate, among other things, the number of defective loans that HSBC failed to identify and put back and the amount of Plaintiffs' losses that would have been avoided had HSBC prudently exercised such remedies.

Moreover, HSBC again requests Your Honor to decide a host of legal issues in connection with resolving its stay motion, but this is not the appropriate forum for HSBC to challenge the merits of Plaintiffs' claims or the permissibility of sampling. That is reserved for the jury and trial court.

*Plaintiffs' Compromise LFRP Should Be Entered*

Plaintiffs' LFRP is modeled on the FHFA Protocol, respects the current schedule for expert discovery and fulfills the key purposes for a LFRP identified by this Court. Nevertheless, Plaintiffs have carefully considered HSBC's LFRP and addressed HSBC's chief concerns, but appropriately rejected concepts that would hinder reaching agreements on sample size, the sample loans, the completeness of loan files, and the applicable underwriting guidelines for the sample loans, or that are otherwise unrelated to the purpose of a LFRP. Plaintiffs' Compromise LFRP adds the following key concepts:

***Early Disclosure of Sampling Methodology***. In addition to the early disclosure of sample size, sample loans, and sampling methodology, Plaintiffs' Compromise LFRP includes the early disclosure of expert sampling reports and filing of any motions challenging the expert reports. For the reasons stated in Plaintiffs' August 30, 2016 letter, the requirement that all the different

Plaintiffs submit a single sampling expert report was never ordered by Judge Scheindlin and would be inconsistent with Plaintiffs' rights to prosecute their claims as they deem appropriate.

***Rolling Exchange of Re-underwriting Findings.*** Plaintiffs' Compromise LFRP requires the rolling exchange of re-underwriting findings promptly after the parties reach agreement on the best available representation of a loan file and the applicable underwriting guidelines. HSBC's LFRP sets arbitrary dates for the exchange of re-underwriting guidelines untethered to first reaching agreement on loan files and underwriting guidelines. HSBC LFRP ¶ 18. Requiring the exchange of re-underwriting findings before agreeing on loan files and applicable underwriting guidelines undermines the very purpose of a LFRP.

***Monthly Status Reports***. Plaintiffs' Compromise LFRP also requires the parties to submit joint status reports each month notifying the Court of the parties' progress in obtaining loan files and underwriting guidelines, entering stipulations, and exchanging re-underwriting findings. These monthly status reports will provide the Court the ability to assess the parties' compliance with the LFRP and the parties the opportunity to raise any issues with the Court.

The Court should reject the following components that HSBC seeks to add to the LFRP.

***HSBC's Attempt to Dictate the Contents of Plaintiffs' Expert Reports***. Paragraph 3 of HSBC's LFRP seeks to dictate that content of Plaintiffs' sampling expert reports. Plaintiffs should be allowed to submit sampling expert reports structured however Plaintiffs and their expert see fit.

***HSBC's Attempt to Import an Impermissible Interrogatory into the LFRP***. Paragraph 6 of HSBC's LFRP essentially requests that Plaintiffs answer an interrogatory concerning HSBC's knowledge of loans breaching representations and warranties. This is a clearly impermissible interrogatory under the Local Rules (and HSBC does not demonstrate otherwise in its September 19, 2016 letter) and has nothing whatsoever to do with a LFRP. If HSBC wishes to propound that interrogatory on Plaintiffs, it has the ability to do so and Plaintiffs may object or respond as warranted. There is no basis to include this interrogatory as part of a loan re-underwriting protocol without affording Plaintiffs their rights to object and respond under the applicable rules.

***HSBC's Overly Expansive Definitions of Loan Files and Underwriting Guidelines***. In addition to the actual loan files, HSBC's LFRP seeks to sweep in over 18 categories (which themselves have their own sub-categories) of additional documents as "underwriting materials," transforming a LFRP into an "underwriting materials" protocol. HSBC LFRP ¶ 9. While the parties certainly are free to seek discovery of the additional 18 categories of material, attempting to expand a protocol to cover them will make the protocol unworkable and simply provide HSBC reasons to refuse to stipulate. HSBC's overly expansive definition of "underwriting guidelines" will have the same effect. HSBC LFRP ¶ 9.

***HSBC's Unilateral Requirements for Format of Re-underwriting Findings***. Plaintiffs' Compromise LFRP adopts the concept that the parties should agree on a common format for re-underwriting findings. However, HSBC's attempt to unilaterally dictate that format should be rejected, particularly since HSBC raised it for the first time a few days ago after having Plaintiffs' LFRP for almost two months. HSBC LFRP ¶ 15. The parties should have the opportunity to consult

with their experts as to the appropriate format for re-underwriting findings and then mutually agree upon a format.

***HSBC's Attempt to Shift Costs to Plaintiffs***. HSBC attempts to shift costs to Plaintiffs if a certain percentage of re-underwriting findings require modification even if the modifications are not due to any action by Plaintiffs. HSBC LFRP ¶ 17. The inclusion of automatic fee shifting mechanism, even if the modifications are caused by the release of additional information by a third party, is plainly inappropriate.

Accordingly, Plaintiffs respectfully request that the Court enter Plaintiffs' Compromise LFRP and reject HSBC's LFRP and HSBC's request to stay loan re-underwriting discovery for the reasons set forth above and in Plaintiffs' August 30, 2016 letter. We thank the Court for its attention and look forward to discussing these matters further at the September 21, 2016 conference.

Respectfully submitted,

*/s/ Benjamin Galdston*
Benjamin Galdston
Bernstein Litowitz Berger
    & Grossmann LLP
*Counsel for Plaintiffs BlackRock Balanced Capital Portfolio (FI), et al.*

*/s/ Christopher M. Wood*
Christopher M. Wood
Robbins Geller Rudman
    & Dowd LLP
*Counsel for Plaintiff Royal Park Investments SA/NV*

*/s/ Steven S. Fitzgerald*
Steven S. Fitzgerald
Wollmuth Maher
    & Deutsch LLP
*Counsel for Plaintiffs Phoenix Light SF Limited, et al. and Commerzbank AG*

*/s/ John A. Libra*
John A. Libra
Korein Tillery, LLC
*Counsel for Plaintiffs National Credit Union Administration Board, et al.*

*/s/ John G. Moon*
John G. Moon
Miller & Wrubel PC
*Counsel for Plaintiffs Triaxx Prime CDO 2006-1, Ltd., et al.*