LAW OFFICES

## WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

EDWARD REDDINGTON
(202) 434-5063
ereddington@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

September 30, 2016

Via ECF

Honorable Sarah Netburn
Thurgood Marshall Courthouse
United States District Court

Re: *Coordinated RMBS Trustee Actions Against HSBC Bank USA, N.A.*, Nos. 14-cv-08175; 14-cv-09366; 14-cv-10101; 15-cv-02144; 15-cv-10032; 15-cv-10096

Dear Judge Netburn:

I write on behalf of HSBC Bank USA, N.A. ("HSBC") to update the Court and request relief regarding discovery issues affecting Plaintiffs' productions.

I.  **The *BlackRock* Plaintiffs**

**Sealink Assignor Documents.** On December 4, 2015, Judge Scheindlin ordered Plaintiff Royal Park to obtain documents from its assignors. On June 2, 2016, this Court found that the *BlackRock* Plaintiffs also needed to obtain documents from their prior holders, and given counsel's representations that the *BlackRock* Plaintiffs did not know the identity of these prior holders, directed the *BlackRock* Plaintiffs to subpoena brokers to ascertain their identities. Sealink is a *BlackRock* Plaintiff who does know the identities of its prior holders. Like Royal Park, Sealink is a special purpose vehicle that was created to absorb assets held by foreign banks Landesbank Baden-Wurttemberg ("Landesbank") and SaschenLB, which further created Irish and Cayman Island special purpose vehicles that transferred their portfolios to Sealink. As such, Sealink stands in the very same position as Royal Park and is obligated to obtain documents from its prior holders. Notwithstanding this, Sealink has not produced any documents from these prior holders, all of which are entities that are related to Sealink's creation. When HSBC raised this issue, counsel for Sealink first took the position that the Court's prior orders did not apply to Sealink and, therefore, Sealink had no obligation to obtain these documents. When HSBC challenged this logic, counsel for Sealink represented that they had subpoenaed Landesbank (but not the other entities), and that Landesbank represented it had no documents. Sealink's subpoena to Landesbank, however, did not ask for substantive documents, but instead only asked for documents sufficient to identify prior owners. This is both nonsensical and redundant given that Sealink already knows the identity of the prior owners. Sealink should not be able to avoid the obligation to produce documents from its assignors simply by serving an insufficient subpoena on Sealink's creator and then accepting Landesbank's boilerplate response that it lacks responsive documents. The Court should confirm that Sealink must obtain and produce relevant

Honorable Sarah Netburn
September 30, 2016
Page 2

and responsive documents from its prior holders, including Landesbank, SaschenLB, Ormond Quay, Eden Quay, Ellis Quay, Merchants Quay, Sachsen Funding, and Castleview 1-3.

**Additional Sealink Custodians.**  The two original custodians offered by Sealink, both of whom work for Sealink's asset manager Neuberger Berman, are insufficient given the claims that Sealink brings in this case.  Based on HSBC's review of Sealink's production to date (which is quite small and was produced after the document production deadline), HSBC has identified and requested four additional Sealink custodians (Alan Geraghty, Peter Blessing, Roger McGreal, and Bliss McMahon).  As members of Sealink's Board of Directors, Geraghty, Blessing, and McGreal are responsible for safeguarding Sealink's assets and monitoring Neuberger Berman's performance, among other duties.  As a member of Neuberger Berman's Sealink team, Bliss McMahon attended Investment Committee meetings and prepared Funding Compliance Certifications.  Sealink and the other *BlackRock* Plaintiffs claim HSBC's actions have caused them "billions of dollars in damages."  BR Compl. ¶ 2.  Notwithstanding these significant claims, Sealink refuses to add these four custodians, even though the documents Sealink has produced show they are highly relevant.  Adding these additional custodians would still result in Sealink only providing six total custodians, a very small number given the size of their claims.  HSBC requests the Court compel Sealink to provide these custodians.

**Shared and Hard Copy Files.**  The ESI Protocol requires the parties to identify shared and hard copy documents by the department and folder in which they were maintained in the ordinary course of business.  HSBC has provided this information for its documents, but Plaintiffs have failed to do so.  This issue affects thousands of documents, and the limited generic information that Plaintiffs have provided continues to impede HSBC's deposition preparation by failing to identify which documents are associated with which custodians or shared locations.  In addition, Plaintiffs have refused to confirm whether or not they collected and reviewed materials and minutes from their respective boards, investment committees, and investor relations departments.  Moreover, while Plaintiffs demand HSBC produce deposition transcripts from a collateral RMBS matter that is completely unrelated to the trusts and loans at issue in this case, Plaintiffs refuse to produce transcripts from RMBS cases for their own employees, even though HSBC issued a specific discovery request for such transcripts and even though these other RMBS matters involving the Plaintiffs seek recovery from some of the very same parties that Plaintiffs claim now HSBC as trustee should have unilaterally pursued.  The Court should order Plaintiffs to provide the department and folder specific information required by the ESI Protocol for the shared and hard copy documents they have produced to date.  The Court also should order Plaintiffs in each of the coordinated actions to produce deposition transcripts from other RMBS cases if those proceedings sought recovery from the same third parties that Plaintiffs now criticize HSBC for not pursuing, or if the subject matter of those proceedings involved certificates, trusts or loans at issue in this case.  Finally, to the extent that Plaintiffs have not done so, the Court should order Plaintiffs to collect and produce relevant and responsive documents from centralized repositories of: (1) board minutes and materials, (2) investment committee minutes and materials, and (3) investor complaints.

**Limited Production for Key BlackRock Custodians.**  HSBC has identified major gaps in BlackRock's productions for two key custodians: Scott Amero and Kishore Yalamanchili.

Honorable Sarah Netburn
September 30, 2016
Page 3

Amero was BlackRock's Chief Investment Officer during the height of the financial crisis and was responsible for strategic oversight and management of employees responsible for RMBS-related research and modeling.  While Amero's tenure at BlackRock dates from at least 2006 to 2010, BlackRock has produced only 317 documents from him in total, and zero documents from the year 2008.  For Yalamanchili, a Portfolio Manager who reported directly to Amero, BlackRock's production is limited to documents dating from September 2009 to November 2011.  This limitation is inconsistent with the organizational charts that BlackRock's counsel provided to HSBC last October, which indicate that Yalamanchili's tenure at BlackRock began in 2007.  We have asked counsel about these discrepancies and have been told that BlackRock collected and applied the agreed upon search terms for the entire relevant period.  However, this representation does not explain why there are so few documents for individuals *proposed by BlackRock* and who were in key positions throughout the relevant time period in which they would have been directly responsible for BlackRock's investments.  If it is because BlackRock limited its search to active email files, and these particular custodians did not preserve documents in their active email files from the relevant time frames, then HSBC believes the Court should order BlackRock to investigate the availability of backup tapes and archives to fill the gaps that HSBC has identified for these two individuals.[1]

**DZ Bank's Failure to Produce Attachments.**  In reviewing DZ Bank's production in preparation for depositions, we identified a widespread problem of parent emails missing their attached/referenced children.  This issue raises two significant problems.  First, as to the emails that DZ Bank did produce, HSBC has received an incomplete production that does not include attachments.  Second, if DZ Bank's attachments were stored separately from their emails (as counsel for DZ Bank first explained), then DZ Bank's collection was incomplete if those attachments were not searched using the agreed search terms.  HSBC informed DZ Bank of this issue months ago, and we also conducted a sampling analysis with our vendor to substantiate this problem.  Despite repeated requests, DZ Bank insisted it had produced all attachments and refused to investigate or address this widespread issue unless HSBC provided an exhaustive list of specific Bates numbers that illustrated the problem.  As a consequence, HSBC had to devote significant time and resources to investigating DZ Bank's production, which detracted from HSBC's ability to prepare for depositions.  We provided DZ Bank with the Bates stamps for almost 8,000 potentially affected documents, with the caveat that these documents are illustrative rather than exhaustive.  In response, Plaintiffs finally acknowledged the problem and stated they would recollect the specific documents identified by HSBC.  However, this does not fully address the issue.  The burden should be on DZ Bank and not HSBC to fully investigate and redress this issue.  The Court should compel DZ Bank to (1) determine the full scope of the problem and (2) search, recollect and produce all missing or unsearched attachments.

**Plaintiffs' RMBS Investment Models.**  HSBC has requested but Plaintiffs have refused to provide HSBC with information regarding the RMBS investment models utilized and maintained by each Plaintiff group.  Plaintiffs used the models to analyze their purchases, monitor their performance, and value the securities at issue, and documents concerning these models are

---

[1] With regard to 12 other missing BlackRock and DZ Bank custodians, BlackRock has agreed to produce documents from these custodians from backup tapes or provide replacement custodians.

relevant to HSBC's defenses and the assessment of damages. The Court should order Plaintiffs to provide this information, including: (1) the names of the models, (2) the names of the departments and individuals responsible for building and maintaining the models, (3) the names of any third party data sources that fed into the models, and (4) the various fields, codes, and formulas underlying the models. In addition, the Court should order Plaintiffs to collect and produce any relevant and responsive documents maintained by the department and/or individuals responsible for building and maintaining the investment models.

**TIAA's Failure to Produce Proper Custodial Metadata.** HSBC is still missing the proper custodian metadata that it needs to determine which documents are associated with which custodians/witnesses. TIAA recently provided a metadata "overlay" purporting to fix the numerous problems that HSBC identified months ago, but it is deficient. For example, TIAA assigned the custodian "TIAA Shared Drive" to over 175,000 documents (over three quarters of TIAA's total documents produced), most of which appear to be email attachments that were *not* collected from a shared drive. This deficiency makes it impossible for HSBC to distinguish between email attachments and documents that were collected from centralized locations. The Court should order TIAA to comply with the ESI Protocol and provide HSBC with proper custodian metadata, including specific department and folder information for the documents that TIAA collected from centralized repositories.

**Missing Custodians for TIAA.** Based on the deficient custodian overlay recently provided by Plaintiffs, it appears that TIAA has failed to produce a single document for eight custodians whom HSBC accepted and the Court ordered based on TIAA's representation that they were relevant and appropriate selections. If these custodians have no relevant and responsive documents, then TIAA (who should know which of its employees are relevant to the claims and defenses in this case) should not have offered them as custodians. If instead there is an issue with their documents not being accessible in current email files (similar to the missing BlackRock custodians), then HSBC believes that their importance justifies pulling backup tapes. Marcus Dugaw and Shirley Cho, for example, were responsible for monitoring, trading, and analyzing TIAA's RMBS investments as members of the Global Public Markets—Fixed Income department. In the event that backup tapes do not exist for these individuals, or if it turns out that TIAA offered HSBC irrelevant custodians, the Court should order TIAA to provide replacement custodians of HSBC's choosing.

**II.      NCUA, Phoenix Light, Royal Park, Commerzbank, and Triaxx**

**NCUA.** HSBC has met and conferred with NCUA and awaits NCUA's production of certain categories of missing documents and responses to interrogatories. HSBC reserves the right to seek relief from the Court if NCUA fails to meet these commitments.

HSBC already raised with the Court the discovery dispute concerning NCUA's refusal to replace two withdrawn custodians and its deficient production of its own files. In short, NCUA has produced very few documents from its own files. One of NCUA's selected custodians (Rendell Jones) has just 71 documents, and another (Michael Barton) has only 633 documents. Again, these are custodians that NCUA offered based on its assessment that they would be

Honorable Sarah Netburn
September 30, 2016
Page 5

relevant.  Months before NCUA belatedly announced its withdrawal of two custodians, HSBC had already met and conferred with NCUA regarding the need to add more NCUA custodians.  NCUA refused.  The Court should order NCUA to produce the documents of Scott Hunt and Kent Buckham, whom HSBC believes would be appropriate custodians.  Both Hunt and Buckham are former directors of NCUA's Office of Corporate Credit Unions; they oversaw the examinations of the credit unions' RMBS investments and the review of the credit unions' investment action plans when those investments dropped below a threshold credit rating.  The investment action plans sought NCUA's approval to take action on the underperforming investments, e.g., to retain the investments or to sell them.  The Office of the Corporate Credit Unions would review and respond to those plans, by either approving the plan or directing some other course of action on the underperforming investments.  Documents concerning this oversight role of the Office of the Corporate Credit Unions are highly relevant to HSBC's defenses concerning NCUA's or the credit unions' failure to satisfy contractual duties, failure to mitigate damages, and causation.  The remaining dispute between the parties is covered in the briefing on NCUA's motion for a protective order.

**Phoenix Light.**  HSBC continues to meet and confer with the *Phoenix Light* Plaintiffs regarding the production of documents from EAA, the entity that owns Plaintiff Phoenix Light SF, Ltd.  Phoenix Light SF, Ltd. has no employees and conducts all of its business through third parties.  As Phoenix Light's 100% owner, EAA made key decisions regarding those business activities and retains relevant records.  Moreover, because the Phoenix Light entity is the majority noteholder of the other plaintiff entities in this case, EAA is likely to have records relevant to them as well.  Phoenix Light has produced a small number of documents from EAA and is considering HSBC's request for additional documents.

**Royal Park.**  HSBC continues to meet and confer with Royal Park concerning Royal Park's assertions of privilege over clawed back documents.  HSBC also has continued concerns about Royal Park's failure to comply with the Court's order to produce documents from its assignor, BNP Paribas, and expects to seek relief from the Court at the appropriate time.

**Commerzbank.**  HSBC continues to meet and confer with Commerzbank regarding search terms.  However, Commerzbank has refused HSBC's request to produce documents from additional relevant custodians.  Commerzbank has agreed to produce documents from only five custodians, fewer than almost every other plaintiff.  HSBC has identified at least six other individuals that are likely to have responsive documents by virtue of their positions in Commerzbank's Portfolio Restructuring Unit ("PRU"), the department responsible for managing Commerzbank's RMBS investments:  Graham Bruce (Trading, Structured Credit, PRU), Marco Grimaldi (Structuring, Structured Credit, PRU), Ben Johns (Portfolio Monitoring and Analysis, PRU), Vijay Radhakishun (Group Head, PRU), Edward Selby (Credit Trading, PRU), Ian Smith (CFO International and General Manager, Group Management).  Commerzbank's productions to date also indicate that these proposed custodians have responsive, relevant documents.  The Court should compel Commerzbank to produce documents from these additional custodians.

**Triaxx.**  HSBC continues to meet and confer with Triaxx regarding search terms.

Honorable Sarah Netburn
September 30, 2016
Page 6

                              Sincerely,

                              Edward Reddington

cc: All counsel via ECF