LAW OFFICES
## WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

EDWARD REDDINGTON
(202) 434-5063
ereddington@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

October 5, 2016

Via ECF

Honorable Sarah Netburn
Thurgood Marshall Courthouse
United States District Court

   Re:   *Coordinated RMBS Trustee Actions Against HSBC Bank USA, N.A.*, Nos. 14-cv-08175; 14-cv-09366; 14-cv-10101; 15-cv-02144; 15-cv-10032; 15-cv-10096

Dear Judge Netburn:

   I write on behalf of HSBC Bank USA, N.A. ("HSBC" or "the Bank") in response to Plaintiffs' October 1 and 3 letters, which purport to raise issues with HSBC's document productions. Plaintiffs' letters have very little to do with HSBC's actual productions and instead continue to raise collateral, non-specific, and unsupported issues in order to distract from the many deficiencies in Plaintiffs' own productions. Nevertheless, I address each of the issues raised by Plaintiffs below.

**Document Collections for the Non-CTLA Custodians**

   As discussed at the September 21 hearing, HSBC is investigating potential sources of additional document collections outside of email files for the non-CTLA custodians and will produce responsive, non-privileged documents following a reasonable search. We confirmed this to counsel for Plaintiffs orally on September 28 and in writing on September 30. Accordingly, there is no dispute relating to this issue.

**Non-Specific Complaints about HSBC's Production**

   In accordance with the current scheduling order, HSBC timely produced responsive, non-privileged documents following a reasonable search. The Court already has found that HSBC's document productions "engaged in best practices," *BlackRock* Dkt. #185 at 3, and that "HSBC fully complied with Rule 34 by stating its objections with specificity," *BlackRock* Dkt. #209 at 5. With respect to the five general categories of documents identified in Plaintiffs' most recent letters to the Court—Exception Reports, Repurchase Tracking Spreadsheets, Repurchase Reports Created Pursuant to SEC Rule 15Ga-1, and Committee Minutes—Plaintiffs continue their pattern of raising non-specific and unsupported complaints. As with their prior assertions, such disputes cannot be decided in the abstract. And, once again, Plaintiffs should not be permitted to side-step their burden or the Court's prior order by demanding documents that Plaintiffs never

Honorable Sarah Netburn
October 5, 2016
Page 2

requested or that HSBC did not commit to producing in its specific objections and responses. In any event, consistent with its objections and responses, HSBC has produced documents for each of the five categories identified by Plaintiffs. Such documents already are in Plaintiffs' possession, and HSBC has responded in writing to Plaintiffs' recent inquiries about them. Plaintiffs fail to identify any specific issue in dispute with respect to these categories.

**FHFA Deposition Transcripts**

Consistent with the Court's direction on September 21, HSBC produced the FHFA deposition transcript for Mr. Mattia, who is currently HSBC's Chief Financial Officer. Also consistent with the Court's September 21 guidance, HSBC is meeting and conferring with Plaintiffs concerning persons who Plaintiffs have noticed for deposition. None of these depositions are imminent, as the earliest requested date is in early November and the latest is in mid-January. Thus, the parties are proceeding consistent with the Court's guidance at the September 21 hearing in which the Court noted HSBC would not need to produce deposition transcripts from these collateral proceedings simply because Plaintiffs noticed someone for deposition.

Notwithstanding this, Plaintiffs now demand that HSBC immediately produce "any other of its employees' deposition transcripts," Pls. Ltr. at 2, as well as transcripts for five employees of a completely separate legal entity—HSBC Securities (USA) Inc. ("HSI"). Plaintiffs, however, forget the history of this issue, including their basis for claiming this discovery is relevant and the Court's prior orders on the subject. The Court already has entertained Plaintiffs' overbroad request for all FHFA deposition transcripts and rejected it. The Court should reject their request again.

In May, Plaintiffs already attempted to get all deposition transcripts from the FHFA litigation. *BlackRock* Dkt. #156. In seeking all deposition transcripts, Plaintiffs argued that a deponent's "employment is irrelevant" and that the testimony of "HSBC Bank affiliates . . . can be imputed to HSBC." May 16, 2016 Hr'g Tr. at 29:17-21. Plaintiffs' request appropriately was denied. In considering Plaintiffs' argument, the Court noted that it had only "allowed limited discovery into areas outside the trust department," Plaintiffs' request for FHFA deposition transcripts had "gone well beyond the limited scope" allowed by the Court, *id.* at 21:25, and the Court was "not going to produce all of these transcripts," *id.* at 34:21-22. Ultimately, the Court found that "discovery into these unrelated proceedings will have limited relevance to this case" and ordered HSBC "to disclose FHFA deposition transcripts from only those *employees* who have the authority to bind the Bank or are going to testify in a deposition or trial in this case." *BlackRock* Dkt. #171 at 3 (emphasis added). Thus, Plaintiffs' repeated efforts to get transcripts for persons who were not employees of the Bank is contradicted by the Court's prior order.

Honorable Sarah Netburn
October 5, 2016
Page 3

      Additionally, the law has continued to develop since Plaintiffs originally sought discovery outside HSBC's corporate trust department.[1] These developments foreclose Plaintiffs' efforts to expand the scope of this discovery. Plaintiffs' theory of relevance is based on the hypothesis that, after 2010, in conjunction with their participation in collateral proceedings such as the FHFA case against HSBC, employees of HSBC Bank USA N.A.[2] purportedly learned something relevant about the third parties who acted as originators, sponsors, sellers, or servicers in the trusts at issue in the FHFA proceeding.[3] According to Plaintiffs, if an employee of the Bank became aware of purported "pervasive and systemically abusive business practices [by these third parties] . . . it became incumbent upon HSBC to 'nose to the source' and determine the full extent of the Seller's breaches." *BlackRock* Dkt. #169 at 1.

      HSBC consistently has said that Plaintiffs' theory of discovery is foreclosed by the terms of the trust agreements, as well as controlling law in this Circuit.[4] *Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 775 F. 3d 154, 162 (2d Cir. 2014), *cert. denied*, 136 S. Ct. 796 (2016).[5] Plaintiffs steadfastly have refused to acknowledge these contractual provisions and background law. However, New York's Appellate Division, First Department, recently unambiguously held that "the trustee of an RMBS . . . trust does *not* have a duty to 'nose to the source.'" *Commerce Bank v. Bank of New York Mellon*, 141 A.D.3d 413, 415-16 (1st Dep't 2016) (emphasis added). Nor, according to the Appellate Division, do RMBS trustees have a duty to monitor third parties. *Id*. at 415.

      These new holdings are fatal to Plaintiffs' theory of relevance.[6] None of the deponents identified by Plaintiffs worked on any of the Bellwether Trusts; their departments did not

---

[1] As the Court has noted, Plaintiffs' request for FHFA deposition transcripts is a species of such discovery that "would exceed the limited discovery the Court has authorized beyond HSBC's corporate trust department." *BlackRock* Dkt. #171 at 3.

[2] HSBC Bank USA N.A. is the defendant in this case and is the entity that is defined as the trustee under the trust governing agreements. However, all of the trusts' governing agreements also contain provisions that state where notice or knowledge is relevant, it must be given to or possessed by a responsible officer working in the Bank's corporate trust department.

[3] Seventeen securitizations were at issue in the FHFA proceeding against HSBC. None of those trusts are at issue in the instant cases against HSBC. The third parties who played roles in those securitizations have some overlap with the third parties who perform roles in the Bellwether trusts. This is not surprising given that these third parties include large and sophisticated financial institutions.

[4] *BlackRock* Dkt. #158.

[5] In *Policemen's Annuity and Benefit Fund*, the Second Circuit held that claims against an indenture trustee must be proven with loan-by-loan and trust-by-trust proof, even where Plaintiffs assert the trustee *always* failed to act in the face of so-called "pervasive" breaches.

[6] Whether an RMBS trustee has a duty to "nose to the source" is a question of state law. Thus, the Appellate Division's holding is binding on federal courts unless there is persuasive evidence

sponsor any of the Bellwether Trusts, nor did they originate or service any of the loans in the Bellwether Trusts. For their knowledge about the supposed general practices of these third parties to be relevant under Plaintiffs' theory, they would have had to "pick up the scent" and "nosed to the source," as Plaintiffs argued when they sought this discovery. This theory is not viable in light of *Commerce Bank*. Plaintiffs' requested discovery can only serve to harass persons who have nothing to do with the loans, trusts, and contracts in this case and to prolong this litigation. Accordingly, the Court should decline Plaintiffs' invitation to yet again expand this discovery.

Finally, Plaintiffs' latest request for all deposition transcripts seeks to gloss over the issue of which entity employed a deponent and intentionally tries to obscure the distinction between HSBC Bank USA, N.A. (the defendant in this case) and other HSBC affiliates. Plaintiffs even half-heartedly suggest that the Court should disregard the legal status of the corporate entities because, according to Plaintiffs, one corporate HSBC entity was a "mere appendage" of the other. Plaintiffs are wrong.

First, it is black-letter law that corporate entities are presumed to be distinct. *Emeraldian Ltd. P'ship v. Wellmix Shipping Ltd.*, 2009 WL 3076094, at *2 (S.D.N.Y. Sept. 28, 2009). As such, one corporate entity is not responsible for the actions of another unless the affiliate has "so dominated and disregarded the corporate form's entity that the entity primarily transacted the [affiliate]'s business rather than its own." *Kola Shipping Ltd. v. Shakti Bhog Foods Ltd.*, 2009 WL 464202, at *1 (S.D.N.Y. Feb. 24, 2009). Here, the Bank and HSI are not even in a parent-subsidiary relationship with each other. Plaintiffs have provided no justification or authority for disregarding the corporate form of either.

Second, with respect to the five specific deponents identified in Plaintiffs' latest letter—Martin Priest, Jon Voigtman, Neal Leonard, Mark Wirth and Todd White—each was employed by HSI, not the Bank. And, of course, none worked in HSBC's corporate trust department or administered the Bellwether trusts. Since they were not employees of the Bank, they are not covered by the scope of the Court's prior order.[7] Moreover, Plaintiffs' theory of relevance for these individuals presumes they learned something *after 2010* based on their participation in the FHFA proceeding. However, four of these individuals—Priest, Voigtman, Leonard, and White—left HSI between 2007 and 2008. After 2008, they did not continue to work at any HSBC affiliate. Their hypothetical knowledge after 2010, therefore, could not be imputed to any HSBC entity. The one remaining individual—Mark Wirth—also was not an employee of the Bank or a responsible officer of HSBC's corporate trust department. He is and has since 2010

---

that the New York Court of Appeals would reach a different conclusion. *Zaretsky v. William Goldberg Diamond Corp.*, 820 F.3d 513, 521 (2d Cir. 2016). No such evidence exists here.

[7] That some could have had limited authority in a non-employee capacity does not mean that they could bind the Bank generally and certainly not do so in any relevant sense. Nor would the fact that they had some overlapping functions come close to meeting the showing needed to disregard the corporate form. *See United States v. Bestfoods*, 524 U.S. 51, 69-70 (1998).

Honorable Sarah Netburn
October 5, 2016
Page 5

been an employee of HSI.  HSI is not the trustee under the governing agreements, and therefore, his knowledge could not be imputed to HSBC.

      For all of the above reasons, Plaintiffs' attempt to again expand discovery into issues that have nothing to do with this case should be denied.

                                  Sincerely,

                                  Edward Reddington

cc: All counsel via ECF