# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

### ATTORNEYS AT LAW

#### NEW YORK • CALIFORNIA • LOUISIANA • ILLINOIS

October 7, 2016

**<u>VIA ECF & HAND DELIVERY</u>**

Honorable Sarah Netburn
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 430
New York, NY 10007

Re:     *BlackRock Balanced Capital Portfolio (FI), et al. v. HSBC Bank USA, N.A.,*
        No. 14-cv-9366-LGS-SN (S.D.N.Y)

Dear Judge Netburn:

 We write on behalf of the BlackRock Plaintiffs in response to Defendant HSBC Bank USA, N.A.'s ("HSBC") September 30, 2016 letter [ECF No. 228] concerning purported outstanding "issues" with Plaintiffs' document productions.

 At the September 21, 2016 conference, the Court directed the parties to complete their meet and confer discussions on all outstanding issues by September 30. The parties did just that, engaging in several multi-hour meet and confer sessions, and resolving all then-remaining disputes. As explained in Plaintiffs' September 30, 2016 letter [ECF No. 230], Plaintiffs have already addressed, or are addressing, all genuine production issues. Consequently, there is nothing for the Court to resolve. Indeed, the vast majority of concerns HSBC identifies are technical, non-substantive matters that have already been (or will soon be) corrected and affect only a fraction – **<u>less than 1%</u>** – of Plaintiffs' productions. These nits in no way impede HSBC's ability to access and substantively review the more than **<u>8 million</u>** documents produced by Plaintiffs.

 Nevertheless, in its September 30 letter, HSBC continues its pattern of manufacturing new and spurious issues, without ever previously raising those issues with the Court or meaningfully meeting and conferring with Plaintiffs, in violation of the Court's instructions. These matters should be ignored.

 Specifically, **<u>nine months</u>** after the Court foreclosed new document custodians, HSBC attempts to add yet more custodians that have little or no involvement in the issues relevant to the parties' claims or defenses and perpetuate inconsequential collateral disputes. Meanwhile, HSBC obstructs Plaintiffs' efforts to depose relevant HSBC fact witnesses, refusing to produce at least three witnesses for deposition without seeking a protective order. By comparison, Plaintiffs have heeded the Court's direction to meaningfully advance discovery into the deposition and expert phases, including recently noticing depositions of seven HSBC personnel.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Honorable Sarah Netburn
October 7, 2016
Page 2

Even if the Court is inclined to entertain new issues, HSBC provides no legitimate basis to expand the already grossly disproportionate discovery demands imposed on Plaintiffs. Plaintiffs have more than satisfied their Rule 26 obligations to conduct a reasonable and diligent search of sources that are likely to contain relevant and responsive information, which included both individual custodians' files and central repositories. Accordingly, Plaintiffs respectfully request the Court end HSBC's delay tactics and deny HSBC's never-ending baseless, harassing and burdensome demands.

## I.   HSBC's Request To Add New Sealink Custodians Should Be Denied

HSBC belatedly demands that Plaintiff Sealink add **four** new custodians.[1] HSBC's request – in addition to being untimely and improper – lacks any legitimate grounds and is pure harassment.

Sealink has satisfied its proportional discovery obligations. Sealink asserts claims arising from its purchase of securities over eight years ago in only **three** Bellwether Trusts: DBALT 2007-OA1, MHL 2007-1 and NHELI 2007-1. Moreover, Sealink is differently situated than other Plaintiffs. Sealink is not an active investor and does not trade in RMBS. It has no operations or employees. Its investment portfolio is managed exclusively by Terry Glomski of Neuberger Berman Europe Limited, Sealink's investment manager. Its litigation activities in connection with its RMBS holdings are managed exclusively by Paul de Francisci. Mr. Glomski and Mr. de Francisci are both Sealink custodians. Sealink has collected and applied the agreed upon search terms for the entire relevant period to these individuals' ESI, and produced all relevant, responsive and non-privileged documents.

For no legitimate reason, HSBC now seeks to re-open long-settled custodian agreements. Indeed, Plaintiffs repeatedly responded to HSBC's several prior inquiries regarding these same individuals, explaining why they should not be included as custodians. HSBC apparently was satisfied and abandoned their inquiry more than seven months ago. In fact, prior to the September 30 letter, HSBC never sought the Court's approval to add these custodians, including in February 2016 when the Court fully addressed HSBC's demand for additional Plaintiff custodians. Moreover, HSBC fails to proffer any new facts or circumstances providing a proper basis for adding any of these new custodians. Other than reciting job titles, HSBC identifies no unique or additional documents that these individuals might possess. HSBC's request to add new Sealink custodians at this late juncture must be denied. *See Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*, 2013 WL 1195545, at *4 (S.D.N.Y. Mar. 25, 2013) (denying request to add two custodians where defendant failed to show its request would not result in non-duplicative documents); *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, 2012 WL 1299379, at *9 (D.N.J. Apr. 16, 2012) (same).

---

[1] Alan Geraghty, Peter Blessing, Roger McGreal, and Bliss McMahon. Each of these individuals had no (or only marginal) involvement in RMBS matters. Any potentially relevant responsive information in their files – which likely is none – would already be captured in communications with Sealink's current custodians. Tellingly, of the nearly 4,000 documents Sealink has produced in this litigation, HSBC fails to cite even one document demonstrating any relevant involvement by these new personnel in any RMBS-related matters, let alone a Bellwether Trust.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Honorable Sarah Netburn
October 7, 2016
Page 3

## II. Sealink Cannot Be Compelled To Produce Documents Maintained By Prior Owners

HSBC's repeated demand that Sealink search for and produce documents maintained by the prior owners of Sealink's certificates or purported controlling or successor entities – certain Irish and Cayman Islands special purpose vehicles (collectively, the "SPVs") used by Sachsen LB Europe PLC or the acquirer of Sachsen, Landesbank Baden-Wuerttemberg ("LBBW") – is without merit for several reasons.

As an initial matter, Sealink asserts claims against HSBC in its own right as a current holder of the three Bellwether Trusts, not as an agent or assignee of the SPVs. For this reason, HSBC's reliance on *Winnick,*[2] and Judge Scheindlin's discovery order in *Royal Park*,[3] is misplaced. *See In re Lozano*, 392 B.R. 48, 53 (Bankr. S.D.N.Y. 2008) (denying request that servicers search for records held by originator where there was no assignment or agency relationship).[4] Likewise, in connection with its holdings in the three Bellwether Trusts, Sealink does not assert the claims of the prior owners under N.Y.G.O.L. § 13-107. Rather, Sealink asserts claims exclusively in its own right. Accordingly, the Court's June 2, 2016 Order [ECF No. 170] does not apply to Sealink. HSBC has known these facts for many months, as Sealink produced the original purchase agreement wherein Sealink paid par value for the securities. HSBC is simply on a fishing expedition calculated to harass and burden Sealink and third parties. Finally, Sealink does not have the legal right to demand documents from the prior owners.

Accordingly, if HSBC wants discovery from the SPVs, Sachsen LB Europe PLC, or LBBW, it must seek it directly from these third parties.

## III. Plaintiffs Are Not Obligated To Conduct The Burdensome Search HSBC Demands

HSBC's insistence that Plaintiffs turn their entire organizations inside-out to manually search for and produce complete collections of certain categories of purportedly shared file or hard copy documents, such as unspecified board, investment committee and investor relations materials, is unwarranted, unprecedented (HSBC itself refuses to perform such an expansive search), and disproportional to the needs of the case. Plaintiffs have produced all relevant, responsive and non-privileged documents located through their search of reasonably accessible ESI, including many of

---

[2] *JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505 (S.D.N.Y. 2005) ("*Winnick*").

[3] *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, No. 14-cv-08175-SAS, ECF No. 89 (S.D.N.Y. Dec. 4, 2015).

[4] That Sealink previously attempted to assert fraud claims in other, unrelated litigation against various RMBS underwriters involving different securities as a putative assignee of the Irish and Cayman SPVs is irrelevant. Sealink brings the claims herein in its own right as a continuous certificateholder since 2008, **not** as an assignee. Notably, the First Department held that Sealink was not an assignee and could not bring the legal claims of the Irish SPVs; rather the subject Sale and Purchase Agreements memorialized the transfer of the certificates, like any conventional purchase transaction. *See Sealink Funding Ltd. v Morgan Stanley, et al.*, 19 N.Y.S.3d 282 (1st Dep't Nov. 12, 2015).

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Honorable Sarah Netburn
October 7, 2016
Page 4

the cited materials. Additionally, requiring the unlimited, institution-wide search demanded by HSBC would impose an unprecedented and disproportionate burden, which has been rejected by HSBC itself as well as numerous courts.[5] HSBC has failed to articulate why such a burdensome one-sided search is necessary or appropriate. Finally, HSBC's new demand that Plaintiffs produce transcripts of their personnel from unspecified RMBS cases is similarly without merit. Putting aside that this request has never been raised before, and that Plaintiffs expressly informed HSBC that they would not produce any such "transcripts," HSBC has failed to identify which RMBS cases it is referring to, much less explain the relevance of the transcripts it seeks.[6]

### IV.    Plaintiffs Are Not Obligated To Disclose Their Analytical Investment Systems

As yet another tardy "issue," HSBC informally demands that Plaintiffs' counsel provide highly detailed information concerning every computer-based system Plaintiffs used in connection with bond investments – not limited to RMBS or the Bellwether Trusts – over a more than ten-year period, including the systems' underlying codes and software. However, other than generically claiming this information is somehow related to damages and HSBC's defenses, HSBC fails to articulate or support the claimed relevance of this information or justify why undertaking this incredibly burdensome exercise is proportional to the needs of this case. Moreover, even if such inquiry were appropriate (and it is not), there are far more efficient discovery mechanisms available, such as deposition. Accordingly, this request should be denied.

### V.    HSBC's Unsupported Claims Concerning Plaintiffs' Productions

***BlackRock Plaintiffs***: Without any factual support, HSBC questions the completeness of two BlackRock custodians' productions (Amero; Yalamanchili). HSBC's complaint boils down to speculation that there "must be" more. However, Plaintiffs have repeatedly confirmed that they collected and applied the agreed upon search terms for the entire relevant period to these individuals' ESI – including the periods for which HSBC claims there are purported gaps – and produced all relevant, responsive and non-privileged documents. Tellingly, HSBC has not identified a single document or category of documents it believes are being improperly withheld (let alone any factual basis for such belief).[7] Accordingly, there is **no dispute** for the Court to resolve.

---

[5] *See, e.g.*, *Telecom Asset Mgmt., LLC v. Cellco P'ship*, 2016 WL 796858, at *3 (S.D.N.Y. Feb. 24, 2016) (denying discovery of "all" contracts on proportionality grounds where party did not have a central database of all such documents); Fed. R. Civ. P. 26(b)(2)(B).

[6] HSBC's belated demand appears to be the kind of "tit-for-tat" reflexive request that the Court has previously denied. Jan. 6, 2016 Hr'g Tr. at 62:7-8. While HSBC may be disappointed that the Court has repeatedly ordered it to produce FHFA transcripts, those rulings are based on Plaintiffs' robust demonstration through admissible facts that such HSBC testimony is highly relevant to show, among other things, HSBC's knowledge of improper servicing practices and origination misconduct both industry-wide and by common servicers and sellers to the Bellwether Trusts.

[7] *See* ECF No. 209, at 4 ("courts will rely on a party's averment that production is complete unless its adversary can cite 'specific evidence impugning' that assertion."); *see also*, *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 2010 WL 3036947, at *3 (E.D.N.Y. Aug. 3, 2010) (denying defendant's motion to compel where

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Honorable Sarah Netburn
October 7, 2016
Page 5

---

*TIAA*:  As noted in HSBC's letter, TIAA – despite having no obligation to do so under the ESI protocol – carried out an overlay of its previous ESI productions to provide custodial metadata associated with these records.  After HSBC informed Plaintiffs of an error in the overlay process pertaining to certain email attachments, Plaintiffs promptly committed to address the problem.  Plaintiffs' vendor is in the process of correcting this issue.  Plaintiffs expect to re-produce the subject email attachments with the correct corresponding custodian metadata shortly.  Similarly, HSBC's complaints concerning the purported dearth of documents produced from certain TIAA custodians' files are unfounded.  Again, TIAA collected all available ESI for these individuals, and has produced all relevant, responsive and non-privileged documents.   Nevertheless, additional documents associated with these individuals may be provided to HSBC after TIAA completes its custodian overlay and secondary privilege review.  Accordingly, there is **no dispute** for the Court to resolve.

*DZ Bank*:  DZ Bank has produced well over 200,000 documents in this action.  A relatively small portion of this production includes unreadable email attachments.  HSBC notified Plaintiffs of this issue, claiming its vendor had an analysis showing these unreadable attachments were purportedly in DZ Bank's productions.  Plaintiffs immediately asked HSBC to identify example documents or to share its vendor's analysis so that Plaintiffs could promptly address the issue.  HSBC, however, failed to provide this information to Plaintiffs until the evening of September 29, 2016, hours before filing the September 30 letter.  Having independently investigated the issues, Plaintiffs determined these "stub" attachments are the product of DZ Bank's document retention policy, which calls for the automatic archive of attachments of a certain size or vintage.  Apart from conducting a document-by-document review, there is no way to readily identify such stub email attachments.  Nevertheless, Plaintiffs have given their vendor the information provided by HSBC on September 29, and are now in the process of searching for, re-collecting and producing the stub attachment documents.  Based on the review thus far, the problem is far from "systemic" as HSBC claimed and is limited to a small subset of DZ Bank's production.  Moreover, the missing attachments are typically large spreadsheets that have little or no relevance to the action.  Plaintiffs anticipate producing in short order the missing attachments, together with any previously unsearched attachments that are relevant, responsive and non-privileged.  Accordingly, there is **no dispute** for the Court to resolve.

*Shared And Hard Copy Productions*:  Finally, HSBC has identified a limited number of shared and hard copy documents that were produced without departmental or full file-path information.  As discussed at the September 21 hearing, Plaintiffs are investigating this matter and have committed to provide an overlay of these documents to include this information to the extent possible.  Again, this issue concerns only a fraction of Plaintiffs' **8 million document** production and in no way impedes HSBC's substantive review of the documents or its ability to prepare for depositions.  Accordingly, there is **no dispute** for the Court to resolve.

---

defendant "[s]imply argu[ed] that [p]laintiff's production is incomplete" without "identif[ing] specific documents that are missing"); *Trilegiant Corp. v. Sitel Corp.,* 272 F.R.D. 360, 368 (S.D.N.Y. 2010) (where requesting party could not specify documents opposing party failed to produce, "no basis for ordering [opposing party] to respond more fully to these requests").

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Honorable Sarah Netburn
October 7, 2016
Page 6

Respectfully submitted,

Benjamin Galdston

cc:  Counsel of Record via ECF