LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

KEVIN M. HODGES
(202) 434-5221
khodges@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

October 19, 2016

<u>Via ECF</u>
Honorable Sarah Netburn
Thurgood Marshall Courthouse
United States District Court

      Re:    *Coordinated RMBS Trustee Actions Against HSBC Bank USA, N.A.*, Nos. 14-cv-08175; 14-cv-09366; 14-cv-10101; 15-cv-02144; 15-cv-10032; 15-cv-10096

Dear Judge Netburn:

      In accordance with the Court's October 7, 2016 Order, and the Court's prior guidance on this subject, HSBC hereby submits its revised loan file re-underwriting protocol (the "HSBC Protocol") (*See* Ex. 1).[1]  HSBC's Protocol offers the best option for timely advancing the re-underwriting process in a fair and workable manner consistent with the current schedule.[2]  <u>First</u>, HSBC's Protocol will allow the parties and the Court at the outset of this process to meaningfully evaluate the appropriateness of the sample Plaintiffs intend to draw so that questions, concerns, and objections can be raised and addressed before significant re-underwriting begins.  <u>Second</u>, HSBC's Protocol provides a fair and efficient process for the parties to exchange their respective opinions and positions regarding the fundamental issues of "breach" and "knowledge" on a loan-by-loan basis.  <u>Third</u>, HSBC's proposal establishes reasonable yet concrete dates for Plaintiffs' rolling disclosures so that HSBC has a reasonable opportunity to respond within the time frames set forth in the current expert discovery schedule.

      In contrast, Plaintiffs' latest re-underwriting protocol, which they shared with HSBC on the evening of Monday, October 17 (hereafter "Plaintiffs' Protocol"), will not accomplish these

---

[1] HSBC's previous re-underwriting proposal was submitted to the Court on September 19, 2016. *See* Letter from K. Hodges dated September 19, 2016, *BlackRock* Dkt. #223.  HSBC's revised protocol addresses certain concerns raised by Plaintiffs in their September 21, 2016 letter to the Court as well as the Court's guidance from the hearing held on September 21, 2016.

[2] HSBC submits this protocol without prejudice to its position that loan sampling is incompatible with the governing agreements for the trusts at issue and that, for this reason among others, expert discovery should be staged.  *See, e.g.*, Letter from K. Hodges dated August 25, 2016, *BlackRock* Dkt. #207.

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
October 19, 2016
Page 2

objectives and will lead to additional disputes and delay.  Rather than addressing HSBC's concerns or the guidance from the Court, Plaintiffs' most recent proposal moves in the opposite direction, as Plaintiffs' new proposal now refuses to disclose the grounds on which Plaintiffs claim a loan is in breach.  Plaintiffs' new position is a retreat from the prior protocol *Plaintiffs* submitted to the Court on September 21, *BlackRock* Dkt. #226-1.  Plaintiffs' new proposal, which fails to include procedures for a rolling production of even the most basic of re-underwriting findings, will not provide HSBC adequate time to evaluate and address Plaintiffs' findings within the current schedule.[3]

For ease of comparison, HSBC highlights below some of the principal differences between the parties' proposed protocols:

***Upfront Disclosure of Plaintiffs' Sampling Methodology***.  Consistent with the Court's guidance, and as was done in the FHFA litigation, HSBC's protocol provides for early disclosure of a meaningful expert report on sampling.  *See* HSBC Protocol ¶¶ 3-4; *see also* Hearing Tr. dated September 21, 2016 at 7 ("But my thinking is to move forward with expert discovery, to have it very tightly coordinated from the plaintiffs' bar so that the defendant is only responding to a single expert report with a single set of loans that we can address methodology issues at the outset with, if necessary, some *Daubert* briefing in between the process").

Although Plaintiffs propose to disclose *some* information about their forthcoming sample following the entry of a protocol, *see* Plaintiffs' Protocol ¶ 5, they refuse to provide the information necessary to evaluate their sample, which HSBC has been requesting since July.  *See* Letter from K. Hodges dated September 2, 2016, Exhibit A, *BlackRock* Dkt. #214-1.  To meaningfully evaluate a sample, there must be a full disclosure of the intended use of the sample (*i.e.*, what that sample is intended to measure), including the variables that are to be estimated and the level of precision that is sought for each estimate.[4]  Plaintiffs do not intend to disclose these components of their sampling methodology on the grounds that such information is "premature" and need not be provided until expert reports are due in May 2017.  These disclosures are not premature—Plaintiffs simply are trying to delay their disclosure.  Such disclosures are particularly important here because, unlike in typical RMBS cases, Plaintiffs have

---

[3] HSBC's comments regarding Plaintiffs Protocol necessarily are based on the version Plaintiffs provided on October 17.  HSBC reserves the right to provide additional comments in the event that the protocol Plaintiffs submit to the Court today has been further amended.

[4] For example, the expert sampling report issued under the protocol entered in the FHFA litigation purported to disclose the precise uses for the sample as well as the level of precision for such estimates.  *See FHFA v. JPMorgan Chase & Co.*, 2012 WL 6000885, at *5 (S.D.N.Y. Dec. 3, 2012) (disclosing that the intended use of the sample was to estimate, with a 95% confidence level, the percentage of loans that (i) were owner-occupied, (ii) were originated in compliance with underwriting guidelines, and (iii) that had LTV values above specified amounts).

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
October 19, 2016
Page 3

indicated (without detail) that they may use their sample to re-underwrite and "*re-service*" the loans. If Plaintiffs' Protocol is adopted, neither the Court nor HSBC will have an adequate basis to identify and resolve potential problems with Plaintiffs' sample.

***Meaningful Disclosure of Re-underwriting Results***. At the hearing on September 21, the Court indicated its preference that Plaintiffs disclose their re-underwriting findings on a rolling basis throughout the discovery period to allow HSBC an adequate time to assess and respond to such findings within the current expert discovery schedule. *See* Hearing Tr. dated September 21, 2016 at 6 ("And then with respect to the sort of hard work of re-underwriting, we need to come up with a way to have a rolling production of those loan files so that that information is coming out to the defendants in a way that allows them to be working in advance of the actual final plaintiffs' report productions"). HSBC's Protocol therefore provides for disclosure of re-underwriting findings on a rolling basis. *See* HSBC Protocol ¶¶ 11, 14, 16.[5] To allow HSBC to evaluate and address Plaintiffs' findings, such findings must be set forth with reasonable particularity, which is consistent with loan re-underwriting protocols entered in other cases.[6] *Plaintiffs'* September 21 proposal to the Court proposed exactly this. *BlackRock* Dkt. #226-1 at ¶ 13 ("Plaintiffs shall disclose the results of their re-underwriting of loans on a rolling basis as each loan is re-underwritten. . . . The parties shall endeavor in good faith to agree upon the format of *a chart or worksheet for disclosure and exchange of re-underwriting findings to allow for a ready comparison of each party's findings for a loan*." (emphasis added)).

In a remarkable about-face, Plaintiffs' latest proposal does *not* provide re-underwriting findings on a rolling-basis, and instead proposes to identify on a rolling basis only whether their expert believes a loan is in breach (with no explanation as to how or why such loan is in breach). *See* Plaintiffs' Protocol ¶ 9 ("No reasons or supporting explanation shall be provided [for Plaintiffs' breach opinions] during these initial disclosures."). Plaintiffs' expert will know why he or she believes a loan to be in breach, but HSBC will be left to speculate as to those reasons. In some cases, Plaintiffs' breach findings may be based on information from various third-party sources that are not even contained within the loan files. Without specific findings, HSBC's experts will not be able to begin formulating their loan-specific rebuttal to Plaintiffs' analysis until Plaintiffs' final expert report is submitted in May 2017. Plaintiffs' current proposed sample is made up of over 4,000 loans. HSBC could not address Plaintiffs' findings as to these loans

---

[5] Triaxx, which does not intend to sample, has indicated that it likely will retain its own re-underwriting expert. HSBC intends to meet and confer with Triaxx regarding a schedule for the production of Triaxx's re-underwriting findings.

[6] For example, the protocol in the FHFA litigation provided that: "If FHFA determines that such Sample Loans do not comply with the Guidelines, FHFA's Findings shall be in the form of a chart or worksheet that adequately categorizes the basis for such determination of non-compliance." *See* Dkt. #277 at 3, *FHFA v. UBS Americas, Inc., et al.*, Case No. 11-cv-5201 (S.D.N.Y. Nov. 26, 2012).

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
October 19, 2016
Page 4

within the six-week rebuttal expert timeline under the current schedule.  Thus, Plaintiffs' proposal would leave unaddressed one of the primary purposes for entering a re-underwriting protocol that provides for re-underwriting findings on a rolling basis—to allow HSBC's experts an adequate opportunity to address Plaintiffs' re-underwriting findings without the need for an extension to the current expert rebuttal schedule.

***Plaintiffs' Disclosure of HSBC's Actual Knowledge of Breaches***.  A loan review protocol is a flexible device that should be tailored to the specific needs of the case.  Unlike cases brought against non-trustees, Plaintiffs here will be required to prove HSBC's actual knowledge of representation and warranty breaches on a loan-by-loan basis.  This will be a critical issue at summary judgment or trial, and incorporating an actual knowledge disclosure as part of the loan re-underwriting protocol will help facilitate and streamline the ultimate resolution of Rule 56 motions by the Court.  For these reasons, HSBC's protocol provides for Plaintiffs to identify the evidence of HSBC's actual knowledge of breach for any loan that Plaintiffs' claim to be in breach.  *See* HSBC Protocol ¶ 13.

***A Definite Schedule for Plaintiffs' Production of Findings***.  As noted above, the Court indicated at the September 21 hearing that Plaintiffs should produce rolling re-underwriting findings to allow HSBC an adequate time to assess and respond to such findings within the current expert discovery schedule.  *See* Hearing Tr. dated September 21, 2016 at 6-7.  HSBC's Protocol provides for reasonable yet concrete deadlines that are necessary to advance the re-underwriting process consistent with this objective.  *See* HSBC Protocol ¶ 16.

Plaintiffs' Protocol, by contrast, provides no fixed dates or deadlines for the production of their findings.  *See* Plaintiffs' Protocol ¶ 9 ("[I]t is impractical to require re-underwriting results disclosures on any particular fixed dates").  Plaintiffs propose a timetable for providing "status reports."  As to the timing of its actual re-underwriting findings, however, Plaintiffs' proposal offers nothing more than the suggestion that they will be disclosed when they are ready. *See id*.  Plaintiffs' proposal virtually guarantees that HSBC will receive many findings at once, at the end of the process.  For the reasons discussed, this ignores the realities of the re-underwriting process and would not permit HSBC to accomplish its rebuttal expert analysis within the current expert schedule.  Plaintiffs' proposal would permit the re-underwriting teams (and, in particular, HSBC's re-underwriting team) to receive loans sporadically, or even receive nothing at all for long stretches of time, all of which is unworkable.

We appreciate the Court's consideration of the HSBC Protocol (as well as the additional points above), and we look forward to discussing them at the hearing on October 27.

                                            Respectfully submitted,

                                            */s/ Kevin M. Hodges*

                                            Kevin M. Hodges

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
October 19, 2016
Page 5

Enclosure

cc:     Counsel for all parties via ECF