# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROYAL PARK INVESTMENTS SA/NV, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>      v.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION, as Trustee,<br><br>              Defendant. | Civil Action No. 14-CV-8175-LGS |
| BLACKROCK BALANCED CAPITAL PORTFOLIO (FI), et al.,<br><br>              Plaintiffs,<br><br>      v.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION,<br><br>              Defendant. | Civil Action No. 14-CV-9366-LGS |
| PHOENIX LIGHT SF LIMITED, et al.,<br><br><br>              Plaintiffs,<br><br>      v.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION,<br><br>              Defendant. | Civil Action No. 14-CV-10101-LGS |

1

| | |
|---|---|
| COMMERZBANK AG, et al. | |
| Plaintiffs, | |
| v. | Civil Action No. 15-CV-10032-LGS |
| HSBC BANK USA, NATIONAL ASSOCIATION, | |
| Defendant. | |
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 15-CV-02144-LGS |
| HSBC BANK USA, NATIONAL ASSOCIATION, | |
| Defendant. | |
| TRIAXX PRIME CDO 2006-1, et al. | |
| Plaintiffs, | |
| v. | Civil Action No. 15-CV-10096-LGS |
| HSBC BANK USA, NATIONAL ASSOCIATION, | |
| Defendant. | |

## [PROPOSED] LOAN FILE RE-UNDERWRITING PROTOCOL

HON. SARAH NETBURN, Magistrate Judge:

WHEREAS, Plaintiffs Royal Park Investments SA/NV, BlackRock Balanced Capital Portfolio (FI), et al., Phoenix Light SF Limited, et al., the National Credit Union Administration Board, Commerzbank AG and Triaxx Prime CDO 2006-1, Ltd., et al. (collectively "Plaintiffs"),

are pursuing the above-captioned cases (the "Actions") against Defendant HSBC Bank USA, National Association ("HSBC" or "Defendant," together with Plaintiffs, the "Parties") concerning certain residential mortgage-backed securities ("RMBS") trusts;

WHEREAS, at the Court's direction, and to conserve the resources of the Parties, non-parties and the Court, the Parties have agreed to initially litigate their claims and defenses with respect to 24 "Bellwether" trusts (the "Bellwether Trusts");

WHEREAS, Plaintiffs intend to present evidence based upon the re-underwriting of loans in the Bellwether Trusts;

WHEREAS, Defendant also may present evidence based upon the re-underwriting of loans in the Bellwether Trusts, and intends to respond to the alleged evidence of defects presented by Plaintiffs;

WHEREAS, the Parties do not have possession, custody, or control of the documents necessary to re-underwrite loans (except to the extent Plaintiffs or HSBC have obtained such materials via Rule 45 subpoenas in the Actions and/or Plaintiffs have provided materials obtained via Rule 45 subpoenas to HSBC);

WHEREAS, the Parties agree to work cooperatively to obtain the relevant loan origination documents, and the applicable underwriting guidelines or other underwriting criteria for such loans;

WHEREAS, without prejudice to HSBC's right to object, among other things, to the relevance, validity or competency of sampling evidence to prove Plaintiffs' claims, or to the relevance, validity or admissibility of Plaintiffs' sample and/or re-underwriting results in any particular action, on October 19, 2016, HSBC submitted this [Proposed] Loan File Re-Underwriting Protocol;

IT IS HEREBY ORDERED, for all Actions, as follows:

1.      By letter dated October 10, 2016, Plaintiffs advised the Court and HSBC that they intend to draw a single random sample of 400 loans from each of three of the Bellwether Trusts and 150 loans from each of the remaining 21 Bellwether Trusts (the "Sample Loan Collection" or "Sample Loans") but Plaintiffs have not yet identified the specific loans or their criteria for selecting them.[1]

2.      Within 14 days of the Court's entry of this Loan File Re-Underwriting Protocol Plaintiffs will provide HSBC with list of the above-referenced Sample Loans providing, to the extent it is in their possession, information concerning all alternative loan numbers associated with the loans, borrower name and address, the identity of the loan originator and loan servicer(s), other parties that may possess materials that were necessary to underwrite the loan, the channel through which the loan was purchased by the securitizing party, and the trust into which the loan was sold.

3.      Within 30 days of the Court's entry of this Loan File Re-Underwriting Protocol, Plaintiffs will provide HSBC with an expert report consistent with Rule 26 of the Federal Rules of Civil Procedure relating to the Sample Loan Collection ("Plaintiffs' Sampling Report").  Plaintiffs shall provide a single expert report collectively addressing their loan sampling.  Plaintiffs' Sampling Report shall, among other things, define the population(s) and explain the criteria used to include and exclude loans from the population(s); explain how the Sample Loan Collection, and any supplemental loan samples, were drawn from the population (e.g., simple random sampling, stratified sampling); describe the full set of quantities that Plaintiffs intend to measure from the Sample Loan Collection; identify what groups of loans

---

[1] Triaxx has indicated that it intends to re-underwrite, but does not intend to sample.

Plaintiffs are going to use the sample to make inferences about (e.g., trust level, loan group level, originator level inferences), the level of precision sought for each inference and why Plaintiffs believe that level of precision is adequate/appropriate for each quantity being measured and the methodology pursuant to which Plaintiffs intend to make extrapolations; explain the variables used to test representativeness and the basis for selection of those variables; and describe whether the quantities being measured will be used to try to assess liability and/or damages, and if so, how.  Plaintiffs shall produce the computer code and input files used to identify the populations(s) and draw the Sample Loan Collection.  In the event that the Sample Loan Collection consists of both an  "Initial Loan Sample" (the set of primary loans Plaintiffs intend to re-underwrite assuming the records exist to do so) along with a "Back-up Loan Sample " (loans that may be used to replace primary loans if necessary but which otherwise will not be re-underwritten), Plaintiffs shall identify in Plaintiffs' Sampling Report which loans are in the Initial Loan Sample and which loans are in the Back-up Sample and describe the methodology by which a loan from the Backup Loan Sample will be selected to replace a loan in the Initial Loan Sample.  Plaintiffs shall provide with the Rule 26 report all documents and/or materials that their sampling expert/consultant used, considered, generated and/or relied upon in connection with the Sample.

4.      In the event HSBC chooses to file a Rule 26 expert report in response or rebuttal to Plaintiffs' Sampling Report, it shall provide Plaintiffs with such report ("HSBC's Sampling Report") within 45 days of its receipt of Plaintiffs' Sampling Report.  In the event that HSBC intends to offer an expert report that is based upon re-underwriting any set of loan files other than the Sample Loan Collection identified by Plaintiffs, it shall notify Plaintiffs of that intention no later than 45 days from the date of receipt of Plaintiffs' Sampling Report.  In that event, the parties shall meet and confer regarding an appropriate schedule of disclosures

consistent with this Protocol.  If they are unable to agree upon a schedule, they shall present their competing proposals to the Court.  Notwithstanding the foregoing, HSBC may seek discovery from third parties and re-underwrite non-Sample Loans to (i) draw conclusions about particular non-Sample Loans as necessary, (ii) illustrate or highlight certain discrete issues that support its defenses, (iii) make conclusions about specific Trusts or loan originators, or (iv) prepare other expert reports.

5.      HSBC, should it choose to do so, may challenge Plaintiffs' expert sampling methodology pursuant to Federal Rule of Evidence 703 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).  In the event HSBC serves an expert report identifying a sample of loans different from Plaintiffs' sample that it may re-underwrite, Plaintiffs may challenge HSBC's sampling methodology under Rule 703 and *Daubert*.  In the event both parties have identified samples, motions challenging sampling methodology shall be filed within 30 days of the date of service by HSBC on Plaintiffs of its sample in a Rule 26 expert report.  If HSBC does not draw its own sample, such motion shall be filed within 60 days of service on HSBC of Plaintiffs' Rule 26 expert sampling report.

6.      Plaintiffs shall be responsible for obtaining the materials necessary for re-underwriting the loans as set forth in detail below.  HSBC shall work jointly and cooperatively with the Plaintiffs to obtain and exchange the loan origination file documents (the "Loan Files"), other documents not included in the Loan File but that were relied upon or generated by the originator or underwriter in connection with the loan origination ("Underwriting Materials"), and applicable underwriting guidelines and matrices, manuals, reference guides, policies, bid terms, and any other related commitments and agreements (the "Guidelines") for the Sample Loan Collection (and, if applicable, for any sample identified by HSBC).  The Parties shall also cooperate to minimize the scope and burden associated with non-party

discovery under Rule 45.

7.     The parties agree that on a rolling, trust-by-trust, loan-by-loan basis, they will work together promptly in good faith to identify the Loan Files, Underwriting Materials, and Guidelines for the Sample Loan Collection, and further will re-underwrite the Sample Loan Collection in accordance with these materials on a rolling, trust-by-trust, loan-by-loan basis as set forth below.

8.     Within 21 days of the parties' receipt of available documents purporting to constitute the Loan Files, Underwriting Materials, and Guidelines for the Sample Loans within any given Bellwether Trust (a "Trust Sample"), Plaintiffs shall request agreement by HSBC by way of a draft Stipulation that such Loan Files, Underwriting Materials, and Guidelines are, respectively, the best now available representation of the Loan File, Underwriting Materials, and Guidelines that were existing at the time of the loan's origination and that the parties have been able to obtain and reconstruct as of the time of such agreement.  HSBC will consider such proposed stipulation in good faith and the parties shall meet and confer and endeavor to reach agreement by stipulation where possible.  The parties understand that because they did not originate any of the Sample Loans and because they had no role in creating the Loan Files, Underwriting Materials, and/or Guidelines, such a stipulation may not be possible within the time period contemplated by this Protocol or at all.  Such a stipulation shall not preclude any party from asserting at trial that the Loan Files, Underwriting Materials, and Guidelines, as stipulated, are different from the Loan Files, Underwriting Materials, and Guidelines that existed at the time of the loan's origination, nor limit the reasons for or rebuttals to any assertion, including that such materials are not sufficiently complete or accurate to permit credible re-underwriting of the loan, or that guideline underwriting criteria was modified, such as by underwriting exceptions or negotiated variances.

9.     In the event that, for any loan within a Trust Sample, the parties are unable to reach a stipulation Pursuant to Paragraph 8, Plaintiffs may elect either (a) to retain that loan within the Trust Sample, or (b) to replace that loan with another loan randomly selected from that Bellwether trust (from the Back-up Loan Sample that has been identified), in which event the parties shall endeavor to identify and stipulate to the applicable Loan Files, Underwriting Materials, and/or Guidelines pursuant to Paragraph 8.

10.     Within seven (7) days of providing HSBC with a proposed stipulation or the holding of the meet-and-confer described in Paragraph 8, Plaintiffs' will identify their "Final Trust Sample" of loans they intend to underwrite for that Bellwether Trust and shall commence their re-underwriting review of such loans.

11.     Plaintiffs shall disclose the results of their re-underwriting of loans on a rolling basis as each loan is re-underwritten.  Within 28 days of disclosing the Final Trust Sample for a given Bellwether Trust, Plaintiffs shall disclose their findings from such re-underwriting review ("Findings").  If Plaintiffs opine that a Final Trust Sample loan breaches an applicable representation or warranty, Plaintiffs' Findings shall be in the form of a chart or worksheet that adequately characterizes the bases for such breach determination.  For any finding premised in whole or part on documents or information other than the applicable Loan Files, Underwriting Materials, and/or Guidelines, Plaintiffs shall provide such materials to HSBC at the time of the disclosure of their Findings in a manner that makes clear the loans with which such materials are associated.

12.     The parties shall endeavor in good faith to agree upon the format of a chart or worksheet for disclosure and exchange of Plaintiffs' Findings and Defendants' Rebuttal Disclosures (as defined below) in order to allow a ready comparison of Findings against Rebuttal Disclosures.  At a minimum, Plaintiffs' Findings disclosure shall, on a loan-by-loan

basis, (i) identify whether each loan re-underwritten breaches representations and warranties, (ii) identify the particular representation(s) and warranty(ies) allegedly breached and, if Plaintiffs contend the original underwriting of the loan breached an underwriting guideline, the specific guideline Plaintiffs contend are applicable to the loan and have been breached, and (iii) provide a description of the documents referenced in or used to support the Finding sufficient for HSBC to identify and access the documents.  Plaintiffs will use a single loan re-underwriting expert and all Findings concerning any single loan shall be consolidated into a single chart or worksheet.[2]  Where Plaintiffs assert multiple alleged defect Findings for a single loan, each Finding shall be identified in a separate row or otherwise set forth in a manner that facilitates HSBC responding on a finding-by-finding basis.

13.     For each Final Trust Sample loan that Plaintiffs opine breaches an applicable representation or warranty, Plaintiffs' Findings disclosure shall identify the evidence that demonstrates, according to Plaintiffs, HSBC's actual knowledge of the breaches of representations or warranties, including the date(s) on which HSBC gained actual knowledge of such breaches.  Plaintiffs' disclosure shall identify by Bates stamp or, for documents that are not Bates stamped, by reasonably specific description, all documents that support Plaintiffs' opinions regarding HSBC's actual knowledge.  Plaintiffs may modify their findings regarding HSBC's actual knowledge for good cause within 30 days of the close of fact discovery.

14.     Within 45 days of the receipt of Plaintiffs' Findings for a given Bellwether Trust, HSBC shall disclose any rebuttal disclosure ("Rebuttal Disclosure") based upon

---

[2] Triaxx, which does not intend to sample, has indicated that it likely will retain its own re-underwriting expert.  HSBC intends to meet and confer with Triaxx regarding a schedule for the production of Triaxx's re-underwriting findings.

HSBC's re-underwriting review of the Final Trust Sample loans re-underwritten by Plaintiffs and its assessment of Plaintiffs' alleged evidence that HSBC had actual knowledge of the breaches identified. HSBC's Rebuttal Disclosures shall be in the form of a chart or worksheet that adequately characterizes the bases for such rebuttal disclosures. At a minimum, HSBC's Rebuttal Disclosure shall, on a loan-by-loan basis, (i) identify, for each loan for which Plaintiffs contend the original underwriting of the loan breached an underwriting guideline, the specific guideline HSBC contends are applicable to the loans and used by HSBC to respond to Plaintiffs' Finding, and (ii) a description of the documents used to support the HSBC's Rebuttal finding sufficient for Plaintiffs to identify and access the documents.

15. Plaintiffs and HSBC may modify any of their Findings and Rebuttal Disclosures, respectively, without prejudice so long as that modification is made for good cause and reasonably promptly (within 28 days) of receipt of information providing grounds for the modification. Good cause includes (a) a party's determination of an inadvertent error in its Findings or Rebuttal Disclosures, or (b) the discovery of additional documents that may constitute, in whole or in part, the Loan File, Underwriting Materials, or Guidelines underlying those Findings or Rebuttal Disclosures. In the event that the parties disagree about what constitutes good cause, such dispute shall be presented to the Court for resolution. There is a presumption that good cause cannot be shown where such additional documents impact more than ten (10) percent of the Final Trust Sample for any given Bellwether Trust. Any modification of Findings or Rebuttal Disclosures shall be without prejudice to the opposing party to modify its Findings or Rebuttal Disclosures, as applicable, in response to such modification.

16. Beginning December 15, 2016, Plaintiffs shall commence providing Findings disclosures for all loans in the Final Trust Sample for five (5) Bellwether trusts. Thereafter

10

Plaintiffs will continue to provide Findings by the 15th of each month for all loans in the Final

Trust Sample for five (5) additional Bellwether trusts, such that Plaintiffs interim disclosures

can be completed for all Bellwether trusts by April 15, 2017.  If the number of loans in the

initial or subsequent sets of five Bellwether trusts exceeds 1,000 loans, HSBC has the right to

seek additional time to provide its Rebuttal Disclosures to Plaintiffs, and Plaintiffs will not

unreasonably withhold consent to such request by HSBC.

17.     Plaintiffs' Findings and Defendants' Rebuttal Findings shall be treated as

Confidential pursuant to the Protective Order entered in these actions.


Dated: _____                           Respectfully submitted,

| | |
|---|---|
| BERNSTEIN LITOWITZ BERGER<br>    & GROSSMANN LLP<br><br>*/s/ DRAFT*<br>TIMOTHY A. DeLANGE<br><br>Blair A. Nicholas (admitted *pro hac vice*)<br>Timothy A. DeLange (admitted *pro hac vice*)<br>Benjamin Galdston (admitted *pro hac vice*)<br>Lucas E. Gilmore (admitted *pro hac vice*)<br>12481 High Bluff Drive, Suite 300<br>San Diego, CA 92130<br>Tel: (858) 793-0070<br>Fax: (858) 793-0323<br><br>*Counsel for BlackRock Plaintiffs*<br><br><br>WOLLMUTH MAHER & DEUTSCH LLP<br><br>*/s/ DRAFT*<br>STEVEN S. FITZGERALD<br><br>David H. Wollmuth<br>Randall R. Rainer<br>Michael C. Ledley<br>Steven S. Fitzgerald<br>Niraj J. Parekh<br>500 Fifth Avenue<br>New York, New York 10110<br>Phone: (212) 382-3300 | WILLIAMS & CONNOLLY LLP<br><br>*/s/ DRAFT*<br>George A. Borden<br><br>George A. Borden<br>Kevin M. Hodges (*pro hac vice*)<br>Andrew W. Rudge  (*pro hac vice*)<br>Edward C. Reddington (*pro hac vice*)<br>Vidya Atre Mirmira (*pro hac vice*)<br>725 Twelfth Street, N.W.<br>Washington, DC 20005<br>Telephone: (202) 434-5000<br>Facsimile: (202) 434-5029<br>gborden@wc.com<br>khodges@wc.com<br>arudge@wc.com<br>ereddington@wc.com<br>vmirmira@wc.com |

Fax: (212) 382-0050
dwollmuth@wmd-law.com
rrainer@wmd-law.com
mledley@wmd-law.com
sfitzgerald@wmd-law.com
nparekh@wmd-law.com


KOREIN TILLERY LLC

George A. Zelcs
John A. Libra
Matthew C. Davies
Max C. Gibbons
205 N. Michigan Avenue, Suite 1950
Chicago, IL 60601
Tel: (312) 961-6112
Fax: (314) 241-3525
gzelcs@koreintillery.com
jlibra@koreintillery.com
mdavies@koreintillery.com
mgibbons@koreintillery.com
cstuart@koreintillery.com
cbell@koreintillery.com
   -and-

Stephen M. Tillery
505 North Seventh Street, Suite 3600
St. Louis, MO 63101-1625
Tel: (314) 241-4844
Fax: (314) 241-3525
stillery@koreintillery.com

*Attorneys for Phoenix Light Plaintiffs*


KOREIN TILLERY LLC

*/s/* **DRAFT**
JOHN A. LIBRA

George A. Zelcs
John A. Libra
Matthew C. Davies
Max C. Gibbons
205 North Michigan Plaza, Suite 1950
Chicago, Illinois 60601
Phone: (312) 641-9750
Fax: (312) 641-9760
gzelcs@koreintillery.com
jlibra@koreintillery.com
mdavies@koreintillery.com
mgibbons@koreintillery.com

-and-

Stephen M. Tillery
KOREIN TILLERY LLC
505 North Seventh Street, Suite 3600
St. Louis, Missouri 63101-1625
Phone: (314) 241-4844
Fax: (314) 241-3525
stillery@koreintillery.com

KELLOG, HUBER, HANSEN, TODD,
EVANS & FIGEL, PLLC

DAVID C. FREDERICK
WAN J. KIM
GREGORY G. RAPAWY
SCOTT K. ATTAWAY
BENJAMIN P. TAIBLESON
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7951
Fax: (202) 326-7999
dfrederick@khhte.com
wkim@khhte.com
grapawy@khhte.com
sattaway@khhte.com
btaibleson@khhte.com

WOLLMUTH MAHER & DEUTSCH LLP

DAVID H. WOLLMUTH
WILLIAM A. MAHER
NIRAJ J. PAREKH
RANDALL R. RAINER
STEVEN S. FITZGERALD
RYAN A. KANE
DANIEL A. D'AQUILA
500 Fifth Avenue
New York, NY 10110
Tel: (212) 382-3300
Fax: (212) 382-0050
DWollmuth@wmd-law.com
wmaher@wmd-law.com
nparekh@wmd-law.com
RRainer@wmd-law.com
sfitzgerald@wmd-law.com
rkane@wmd-law.com
ddaquila@wmd-law.com

Michael J. McKenna, General Counsel
John K. Ianno, Associate General Counsel

NATIONAL CREDIT UNION
ADMINISTRATION
1775 Duke Street
Alexandrai, VA 22314
mikem@ncua.gov
johni@ncua.gov

*Counsel for Plaintiffs National Credit Union*
*Administration Board, et al.*


ROBBINS GELLER RUDMAN
   & DOWD LLP

<u>s/ *DRAFT*</u>
CHRISTOPHER M. WOOD

Christopher M. Wood
414 Union Street, Suite 900
Nashville, TN 37219
Tel: (615) 244-2203
Fax: (615) 252-3798

Steven W. Pepich
Jennifer N. Caringal
Arthur C. Leahy
Cody R. Lejeune
Ashley M. Robinson
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel: (619) 231-1058
Fax: (619) 231-7423

Samuel H. Rudman
58 South Service Road, Suite 200
Melville, NY 11747
Tel: (631) 367-7100
Fax: (631) 367-1173

*Counsel for Plaintiff Royal Park Investments*
*SA/NV*


MILLER & WRUBEL P.C.

<u>s/ *DRAFT*</u>
JOHN G. MOON

John. G. Moon
Charles R. Jacob III
Kerrin T. Klein
570 Lexington Avenue

| New York, New York 10022<br>Tel: (212) 336-3500<br><br>*Counsel for Plaintiffs Triaxx Prime CDO*<br>*2006-1, Ltd., et al.* | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October [xx], 2016, I electronically filed the foregoing document

with the Clerk of the Court using the CM/ECF system which will send notification of such filing

to all counsel of record in this matter who are on the CM/ECF system.


<u>/s/   DRAFT                                        </u>