LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

EDWARD REDDINGTON
(202) 434-5063
ereddington@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

November 15, 2016

<u>Via ECF</u>

Honorable Sarah Netburn
United States District Court

Re:   <u>Coordinated RMBS Trustee Actions Against HSBC Bank USA, NA</u>, Nos. 14-cv-08175; 14-cv-09366; 14-cv-10101; 15-cv-02144; 15-cv-10032; 15-cv-10096

Dear Judge Netburn:

Plaintiffs' most recent discovery motion seeks to (1) force HSBC to decide whether to waive privilege or supplement its interrogatory answers prematurely and (2) compel additional answers to objectionable interrogatories that already have been adequately answered.

HSBC responded to Plaintiffs' interrogatories on May 3, 2016.  Plaintiffs' interrogatories were objectionable, and HSBC preserved its objections.  Nevertheless, in an effort to avoid disputes, HSBC provided substantive responses.  After five months of silence, Plaintiffs demanded in their October 11, 2016 letter that HSBC supplement now or "confirm that it has no additional information to provide."  Plaintiffs' demand comes six months before the close of discovery and before most Plaintiffs have offered deposition dates.

Local Rule 33.3 recognizes that depositions and requests for production are the more practical and preferred means of obtaining discovery in this district and limits the circumstances in which serving interrogatories is authorized.  Consistent with this, Plaintiffs' Rule 30(b)(6) deposition of HSBC on May 20, 2016 already has provided much of the information that Plaintiffs purportedly seek in their motion to compel.  For the reasons noted below, Plaintiffs' newest motion is more gamesmanship and should be denied.

**HSBC Should Not Be Forced to Make Premature Decisions about Defenses**

Plaintiffs' demand that HSBC supplement and make decisions about affirmative defenses now is not reasonable and should be rejected.  HSBC is entitled to develop its defenses in discovery.  Many of the Plaintiffs still have not completed their document productions, fixed the problems they said they would fix with their existing productions, provided deposition dates for their employees (despite HSBC's repeated requests that the parties confer about dates), or produced documents from their assignors.  Additionally, a number of third parties who are allied

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
November 15, 2016
Page 2

with Plaintiffs are stonewalling in providing discovery to HSBC.  These dilatory tactics hinder HSBC's ability to develop its defenses.

Plaintiffs' position with respect to the advice of counsel defense illustrates this best.  Raising this defense in an answer does not waive the attorney-client privilege.  Rather, the party asserting the defense must be afforded the opportunity to decide whether it intends to offer the defense.  *Valois of Am., Inc. v. Ridson Corp.*, 1998 WL 1661397, at *4 (D. Conn. Dec. 18, 1998).  This decision cannot be made in the abstract.  To know whether or not the defense exists, a litigant must be allowed "to take reasonable discovery" on what specific facts its adversary is relying upon to advance its claims so that it may "decide whether it will assert" the defense.  *Id.*  Only after a plaintiff identifies its specific claims can a defendant determine whether it even received advice related to those claims.

Therein lies the rub with Plaintiffs' demand that HSBC decide now whether to assert the defense.  Plaintiffs purportedly bring claims here for unidentified actions and inactions over a ten year period in hundreds of separate trusts containing more than a million loans.  Two years into this litigation, Plaintiffs are no closer to identifying specific actions in specific trusts that they claim were a breach of HSBC's obligations.  HSBC served interrogatories designed in part to help HSBC determine whether it had an advice of counsel defense.  Specifically, HSBC asked Plaintiffs to identify the loan-level breaches and specific Events of Default in the Bellwether Trusts.  *See, e.g.*, Ex. 1 (Interrogatories 1 and 2, Royal Park's Objections and Responses to HSBC's Third Set of Interrogatories) at 5-6.  Most Plaintiffs provided no substantive response.  *Id.* at 5-6.  When asked about supplementation in the face of these non-responses, Royal Park stated that it would evaluate whether to supplement *after discovery closes*.  To the extent they did respond, Plaintiffs provided only the same generalities about parties besides HSBC that Plaintiffs cited in their complaints.  *See, e.g.*, Ex. 2 (BlackRock Plaintiffs' Responses and Objections to HSBC's Third Set of Interrogatories) at 5-12.  These generic allegations are not sufficient for HSBC to assess whether it has an advice of counsel defense.  Once Plaintiffs identify with particularity what they assert *HSBC* did or should have done in connection with some specific circumstance in a particular trust, HSBC can determine whether it ever received advice with respect to that circumstance.  At the level of generality that Plaintiffs have cast their allegations, HSBC cannot determine this now.  Plaintiffs' request that HSBC decide now to waive privilege or waive the defense is a tactical maneuver that places HSBC in a catch-22.

**Plaintiffs' Interrogatories Are Overbroad and Have Been Adequately Answered**

Plaintiffs' requests with respect to specific interrogatories should be rejected for the reasons set forth below.

<u>Interrogatory 1.</u>  Plaintiffs' interrogatory 1 requests HSBC identify and describe the functions of all persons engaged in connection with the administration of the Bellwether Trusts for the purposes of analyzing, evaluating, or reviewing an Originator's, Sponsor's, or Servicer's compliance with the governing agreements and any federal, state or local requirement.  As

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
November 15, 2016
Page 3

drafted, this request presumably would require HSBC to identify—for more than a ten-year period—any person who, in connection with the "administration" of the trusts, reviewed anything under the governing agreements or under unidentified federal, state or local "requirements" relating to an Originator, Sponsor or Servicer's compliance with those unstated requirements and contractual provisions.  This is hopelessly overbroad and vague, and HSBC answered it the only way it could—by noting that its duties as indenture trustee did not require it to analyze, evaluate or review the actions of these third parties.  Plaintiffs read too much into the inclusion of the word "generally" in HSBC's answer.  "Generally" was not included because HSBC "partook in the activities identified in [the interrogatory] on at least one occasion." "Generally" was included because Plaintiffs' interrogatory is so broad and non-specific that HSBC cannot reasonably identify all possible contexts that Plaintiffs might later claim are implicated by it.

Interrogatory 11.  Plaintiffs' interrogatory 11 requests HSBC identify all steps it took to evaluate any potential conflicts of interest with holders.  Plaintiffs do not adequately explain or limit what they mean by *all steps, potential conflicts*, or *with (which) holders*, leaving HSBC to guess what if anything over a ten-year time period in nearly 300 trusts Plaintiffs might have in mind.  In response to Plaintiffs' hypothetical, HSBC explained that as an indenture trustee HSBC is not even aware of the identities of all of the holders, and, in any event, HSBC is unaware of any conflicts with holders.  Moreover, HSBC's 30(b)(6) deponent explained that prior to an event of default, HSBC did not assess whether there are conflicts of interest with holders, and he also testified that he was aware of no Events of Default in the trusts.  Plaintiffs therefore have a fully responsive answer to this objectionable interrogatory.  If Plaintiffs have something more specific in mind with respect to a hypothetical conflict, including the particular factual circumstance that in their view presents such a conflict (as well as a reasonable date limitation or a specific holder contemplated by their request), they should disclose it so that HSBC has a reasonable chance to respond rather than being left to speculate.

Interrogatory 13.  Plaintiffs' interrogatory 13 requests HSBC identify by name, case number, court, status and final disposition *every* lawsuit in which it was a party or received a subpoena and which alleged some (unspecified) non-compliance with a governing agreement.  Plaintiffs complain that HSBC's response excluded foreclosure actions.  As indenture trustee, HSBC holds legal title to the loans in the trusts, and, therefore, could have been named as a nominal party or received a subpoena in conjunction with foreclosure actions, even though such foreclosures are handled by servicers, not HSBC.  There are over a million loans in the trusts and compiling a list of potentially thousands of routine foreclosure actions over the last ten years is overly burdensome.  Nevertheless, HSBC produced documents in its possession located after a reasonable search that relate to the Bellwether Trusts, and thus Plaintiffs already have numerous foreclosure-related documents.  No legitimate purpose would be served by requiring HSBC to compile a list of foreclosure actions in which it was named as a nominal party or received a subpoena.

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
November 15, 2016
Page 4

Interrogatory 14.  Plaintiffs' interrogatory 14 requests HSBC identify every governmental investigation in which it received a subpoena, civil investigation demand or "similar request for documents or information" relating to HSBC's origination, servicing and foreclosure practices. Plaintiffs complain that HSBC excluded civil investigation demands from its response.  This request, however, is patently overbroad and seeks information that is not relevant to any claim or defense or proportional to the needs of the case.  HSBC's purported practices as an originator or servicer are not at issue in this litigation, and receipt of a subpoena or other request for information is not an indication that anyone has violated the law.  Government subpoenas routinely note receipt of a subpoena is not to be construed as a reflection on any person or entity. Thus, there is no good reason to require HSBC to attempt to compile information that would be responsive to this request beyond what it already has provided.   HSBC responded by identifying by Bates number those subpoenas in HSBC's productions that were located after a reasonable search.

Interrogatory 16.  Plaintiffs' interrogatory 16 requests HSBC identify all compensation it received in connection with the Bellwether Trusts, including "annual fees," "transactional fees," "ancillary fees," and "float income."  Plaintiffs do not define these terms, but HSBC produced documents to Plaintiffs and identified them by Bates number setting forth HSBC's fee schedules in the Bellwether Trusts.  HSBC's 30(b)(6) deponent likewise explained to Plaintiffs that, in return for its services as trustee, HSBC received an upfront fee that ranged from $500 to $3,500, an annual fee in the range of $3,500 per year, and that HSBC did not earn float income as trustee because it did not hold cash for the trusts.  Thus, there is nothing evasive about HSBC's answer: as a nominal trustee, HSBC received nominal income of approximately $3,500 per year per trust.

Interrogatory 17.  Plaintiffs' interrogatory 17 asks HSBC to identify the "banking institutions" and "accounts" that HSBC used to deposit or hold funds for the Bellwether Trusts. Once again, Plaintiffs made no effort to identify a specific focus of this request (or explain how it would be relevant), leaving HSBC to speculate as to what accounts or institutions might hypothetically be implicated in numerous trusts over a ten-year period.  HSBC's response explains (again) that as a nominal trustee it did not play any other role in the Bellwether Trusts and therefore would not receive or hold funds.  Additionally, HSBC's 30(b)(6) deponent confirmed that HSBC did not hold funds collected from borrowers or other deal parties. Although Plaintiffs now claim to take issue with the word "routinely" in HSBC's interrogatory response, they once again read too much into this word, which was included because of the vagueness of Plaintiffs' request.

Interrogatory 18.  Plaintiffs' interrogatory 18 asks HSBC to identify all tolling "or similar agreements" that HSBC entered into with any Originator, Servicer or Sponsor.  Plaintiffs' request was not limited by date, trust, subject matter, or even by a particular party to the agreement.  In response to this interrogatory, HSBC provided Plaintiffs with a list of tolling agreements related to the Bellwether Trusts (and which already have been produced).

Interrogatory 22.  Plaintiffs' interrogatory 22 asks HSBC to prepare a list (with numerous subcategories) of *all* HSBC personnel *involved in* several collateral proceedings.  Despite

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
November 15, 2016
Page 5

multiple rulings from the Court that these proceedings are of questionable relevance, Plaintiffs continue to seek discovery about these matters beyond the limited discovery that has been authorized. The Court already has rejected several times Plaintiffs' efforts to widen this discovery. Plaintiffs' complaint with respect to HSBC's interrogatory response again seeks to re-litigate these issues. Plaintiffs' interrogatory 22 is not limited to a specific time. Because Plaintiffs told the Court that the time period that was relevant for discovery about these collateral proceedings was after 2010, and that their theory of relevance was predicated on employees of HSBC Bank USA, N.A. purportedly learning something relevant about the Bellwether Trusts from these proceedings during that time frame, HSBC responded by providing a list of bank employees who HSBC understood were principally involved in these collateral actions after 2010. As Plaintiffs are well aware, the FHFA litigation commenced in 2011, the Interagency Review of Servicing took place in the fourth quarter of 2010,[1] and the Force-Placed Insurance Class Actions began in 2013. Therefore, Plaintiffs' demand that HSBC identify personnel involved in these collateral proceedings back to 2006 is nonsensical.

Interrogatory 23. Plaintiffs' interrogatory 23 demands HSBC identify all policies and procedures governing HSBC's "trusteeship," including every person who was responsible for drafting, revising, or implementing these procedures. HSBC produced dozens of policies and procedures (many of which identified the persons at HSBC who were the designated owner and preparer of the policy). Separately, HSBC's 30(b)(6) deponent testified at length about these policies and procedures. Accordingly, HSBC responded to this interrogatory by identifying by Bates number the produced policies and procedures, as HSBC is allowed to do under Rule 33(d). Plaintiffs' complaint that HSBC's response did not further identify the individuals who "implemented" these procedures can only be designed to harass. Plaintiffs do not explain why such information would be relevant. The procedures are voluminous and detailed, and no litigant could possibly identify every individual in a large entity who "implemented" a procedure over a ten-year period.

**Conclusion**

The Court should deny Plaintiffs' request for a conference. Discovery is still ongoing, and HSBC will supplement its responses in accordance with the Federal and Local Rules. Plaintiffs' request for a one-sided supplementation is unworkable and unfair.

---

[1] Although HSBC answered interrogatory 22 by identifying bank personnel who principally participated in this review, further discovery relating to this review implicates the bank examiner's privilege. Before information potentially subject to this privilege could be produced, the relevant regulating agency would need to be given notice. *Wultz v. Bank of China, Ltd.*, 61 F. Supp. 3d 272, 282 (S.D.N.Y. 2013) ("The banking agency must be allowed the opportunity to assert the privilege and the opportunity to defend its assertion."); *see also* 12 C.F.R. § 4.33 (setting forth procedures for requesting potentially privileged OCC information). Before starting down this road, which inevitably will lead to more delay, more cost, and additional disputes over collateral matters, there should be a determination that such discovery would actually be relevant and proportional.

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
November 15, 2016
Page 6

                                          Sincerely,

                                          Edward Reddington

Attachments

cc: All counsel via ECF