LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

EDWARD REDDINGTON
(202) 434-5063
ereddington@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

November 23, 2016

Via ECF

Honorable Sarah Netburn
United States District Court

    Re:    *Coordinated RMBS Trustee Actions Against HSBC Bank USA, NA*, Nos. 14-cv-08175; 14-cv-09366; 14-cv-10101; 15-cv-02144; 15-cv-10032; 15-cv-10096

Dear Judge Netburn:

    I write in response to Plaintiffs' November 18 and 21 letters. For the last year, Plaintiffs have used discovery motions as an offensive sword and a defensive shield for tactical advantage in this litigation. They have done so while ignoring controlling law that raises serious questions about their claims, and while repeatedly mischaracterizing their own compliance with discovery obligations. Plaintiffs' latest motion continues this pattern and is timed to distract and unilaterally force HSBC to prepare for multiple depositions in December, while simultaneously preparing a response to the Court's request for briefing on the important issues of sampling and re-underwriting and while evaluating Plaintiffs' sampling expert report that is due on December 2. For the reasons set forth below, Plaintiffs' request for a conference should be denied.

**I.    Scheduling of Fact Depositions**

    Plaintiffs' characterization of the parties' efforts to schedule fact depositions is wildly inaccurate. HSBC has repeatedly asked Plaintiffs to meet and confer about deposition dates. The *BlackRock* Plaintiffs have refused to do so. The Court should direct the Plaintiffs to meet and confer with HSBC about deposition dates, including for Plaintiffs' own witnesses, so that the parties can jointly arrive at a global deposition schedule that is workable and fair.

    Plaintiffs' letter incorrectly states that HSBC "only recently noticed depositions of the BlackRock plaintiffs." Plaintiffs represent to the Court that "BlackRock plaintiffs have offered available dates," implying that the *BlackRock* Plaintiffs have cooperated in scheduling depositions. They fail to note, however, they offered these dates, for the first time, only an hour before they filed their motion. This hardly constitutes good faith cooperation. More than seven months ago, HSBC noticed the depositions of three PIMCO witnesses. Ex. 1 (Apr. 21, 2016 Notice of Depositions). These three witnesses were among the ten custodians the Court ordered PIMCO to provide in February. Feb. 18, 2016 Hr'g Tr. at 62:11-16. PIMCO did not agree to

make these witnesses available for deposition on the dates requested; nor did PIMCO offer alternative dates.[1] Moreover, between April 21 and August 11 (the cut-off date for party document productions), PIMCO failed to produce a meaningful number of documents from the custodial files of these three witnesses, as well as the other Court-ordered PIMCO custodians. Instead, PIMCO waited until long after the August deadline to make the bulk of their productions for them.[2] Even then, as HSBC has explained in prior letters, the *BlackRock* Plaintiffs produced their documents buried in a jumbled mess of non-responsive materials.

Notwithstanding these irregularities, on October 24 HSBC noticed eight of PIMCO's witnesses for deposition, in addition to six other *BlackRock* Plaintiffs' witnesses.[3] Ex. 4 (Oct. 24, 2016 Notice of Depositions). Soon after, recognizing that many more depositions would need to be scheduled by all parties, HSBC asked Plaintiffs to meet and confer about deposition dates on a global basis. Ex. 5 (Oct. 26, 2016 Email from E. Reddington to B. Middleton). HSBC repeated this request on October 31, November 4, and November 15. During this same time, PIMCO and the other *BlackRock* Plaintiffs did not agree to any of HSBC's requested deposition dates or offer any alternative dates. Ex. 6 (Nov. 8, 2016 Email from B. Galdston to E. Reddington). In contrast, HSBC confirmed deposition dates for two of the witnesses Plaintiffs had requested of HSBC. Ex. 7 (Oct. 6, 2016 Email from E. Reddington to B. Middleton); Ex. 8 (Oct. 13, 2016 Email from E. Reddington to B. Middleton).

On November 18, *BlackRock* Plaintiffs finally provided alternative dates for four of the fourteen *BlackRock* Plaintiff witnesses HSBC had noticed for deposition.[4] Ex. 9 (Nov. 18, 2016 Email from B. Galdston to E. Reddington). Approximately one hour after *BlackRock* Plaintiffs provided HSBC with dates for four of the fourteen requested witnesses, they filed their most-recent letter motion in which they asserted that "BlackRock plaintiffs have offered available

---

[1] Ultimately, the only deposition that was taken during this time period before the deadline for completion of party document productions was a deposition of *HSBC's* 30(b)(6) witness.

[2] These ten PIMCO custodians were clearly HSBC's priorities—HSBC went to Court to have them ordered, noticed three of them for HSBC's first wave of depositions, and repeatedly asked *BlackRock* Plaintiffs' counsel when he was going to produce documents for them. *See, e.g.*, Ex. 2 (July 22, 2016 Letter from E. Reddington to B. Galdston) at 2; Ex. 3 (July 28, 2016 Letter from E. Reddington to B. Galdston) at 2. Notwithstanding this, when attempting to explain away PIMCO's deficient productions, *BlackRock* Plaintiffs' counsel told the Court on numerous occasions that *BlackRock* Plaintiffs were staging their productions to first provide custodians who *HSBC* had prioritized and that documents for some of *BlackRock* Plaintiffs' custodians were produced so late because they had only "recently" been ordered. *See, e.g.*, June 29, 2016 Hr'g Tr. at 16:3-8; *BlackRock* ECF No. 205, Aug. 25, 2016 Letter from B. Galdston, at 2; *BlackRock* ECF No. 221, Sept. 16, 2016 Letter from B. Galdston, at 2. Given the February 18 Order on these PIMCO custodians and HSBC's April deposition notice, this explanation was pure sophistry.

[3] The notice requested that these depositions take place between November 22, 2016 and March 1, 2017.

[4] *BlackRock* Plaintiffs did not provide dates for the ten other witnesses requested by HSBC. Moreover, the order and timing of the witnesses proposed by PIMCO suggests that Plaintiffs continue to play games with scheduling. For example, one of the offered dates coincides with a hearing in this case before Judge Schofield that has been scheduled for months, and the first deponent offered is not one that HSBC requested be deposed in either November or December.

dates." *BlackRock* ECF No. 265, Pls.' Nov. 18, 2016 Letter Motion, at 1. Even after filing their motion, Plaintiffs' gamesmanship has continued. On November 21, *BlackRock* Plaintiffs personally served counsel for HSBC, by process server, with a "First Amended Coordinated Notice of Depositions," which purported to set depositions on December 1, 2, 7, 8, 12, 13, 14, 15, 20, 21, and 22. Ex. 10 (Pls.' First Amended Coordinated Notice of Depositions). Per the instructions of Plaintiffs' counsel, the process server would not agree to leave it with the receptionist who was authorized to accept service. Less than an hour later, Plaintiffs' counsel emailed HSBC counsel to advise that the "notice contains incorrect dates" and therefore Plaintiffs would serve "a revised amended deposition notice tomorrow." Ex. 11 (Nov. 21, 2016 Email from B. Middleton to E. Reddington). Thereafter, Plaintiffs filed with the Court, without explanation, their November 21 letter, which apparently was intended to correct footnote one of their November 18 letter. Notwithstanding the filing of Plaintiffs' motion, counsel for HSBC reached out again to the *BlackRock* Plaintiffs on November 22 to request their participation in a meet and confer about deposition dates. Ex. 12 (Nov. 22, 2016 Email from E. Reddington to B. Galdston). Plaintiffs' counsel again refused to meet and confer to coordinate deposition dates. Ex. 13 (Nov. 23, 2016 Email from B. Galdston to E. Reddington). Instead, on November 23, the *BlackRock* Plaintiffs again served a "Second Amended Coordinated Notice of Depositions," this time purporting to set depositions on December 1, 8, 12, 15, and 22, and on January 12, 17, 19, 24, 26, and 31. Ex. 14 (Pls.' Second Amended Coordinated Notice of Depositions).

   It would be a lot easier for everyone if the *Blackrock* Plaintiffs would cease their gamesmanship and instead meet and confer in good faith with counsel for HSBC about global deposition dates. Much like how Plaintiffs delayed their document productions and created extra work and time pressure for HSBC, the *BlackRock* Plaintiffs now are attempting to shield their witnesses from early deposition discovery and instead front only HSBC witnesses for deposition. This is no small issue. Although careful scrutiny of all Plaintiffs' claims is warranted, the *BlackRock* Plaintiffs, and in particular the PIMCO Plaintiffs, invested in far more trusts than any other Plaintiffs in these coordinated actions. While HSBC disagrees that any of the Plaintiffs' claims have merit, the PIMCO Plaintiffs' claims potentially dwarf the claims of all other Plaintiffs. Thus, there is good reason for HSBC to be concerned that the *BlackRock* Plaintiffs, and PIMCO in particular, are attempting to frustrate HSBC's ability to obtain and easily utilize document discovery and now intends to continue the same pattern with respect to deposition discovery. The risks to HSBC of such tactics can be mitigated by directing Plaintiffs to stop filing serial discovery motions[5] and instead meet and confer. In their letter to the Court, *BlackRock* Plaintiffs represented that they had "committed to coordinate depositions with HSBC and provide available dates for the remaining BlackRock Plaintiffs promptly." The Court should hold Plaintiffs to this representation rather than entertain this motion.

---

[5] There are many discovery motions HSBC could have filed against Plaintiffs in the last several months, but HSBC has exercised restraint.

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
November 23, 2016
Page 4

## II.  HSBC's Document Productions

As the Court is aware, Plaintiffs previously raised on multiple occasions and fully litigated their purported criticisms of HSBC's document productions.  In response, the Court found that HSBC's document review complied with "best practices," *BlackRock* ECF No. 185, July 15, 2016 Order, at 3, and that HSBC's responses to Plaintiffs' document requests "fully complied with Rule 34 by stating its objections with specificity," *BlackRock* ECF No. 209, Aug. 26, 2016 Order, at 5.  The Court also rejected Plaintiffs' prior attempt to rely on a low responsiveness rate as a basis to challenge HSBC's production, *BlackRock* ECF No. 185 at 4, and, consistent with the Federal Rules, the Court made clear that any complaints Plaintiffs had with HSBC's productions must be based on specifics, not generalities.  *Id*.  Finally, the Court noted that "plaintiffs have had more than a year to challenge [HSBC's] objections," but did not do so.  *BlackRock* ECF No. 209, at 5.

Nevertheless, Plaintiffs ask the Court, yet again, to require HSBC to provide information regarding its document production.  Plaintiffs still do not point (as the law requires) to anything specific supporting their view that responsive documents have been improperly withheld.  Nor do Plaintiffs provide any justification for re-visiting the Court's August 26, 2016 Order.  Instead, Plaintiffs base their request for a seriatim third bite[6] at this apple on an order from the *Wells Fargo* case.  Moreover, apparently with no sense of irony, Plaintiffs claim that because *Plaintiffs* were ordered to provide more information about *Plaintiffs'* own document productions in the *Wells Fargo* case, HSBC should be required to do so here.  This argument is frivolous.  Whatever the grounds for Wells Fargo's complaints about Plaintiffs' document productions, such grounds provide no basis for the Plaintiffs to re-raise issues with HSBC's productions.

## III.  Non-CTLA Custodians

Plaintiffs' final basis to request a discovery conference is based, yet again, on another purported complaint concerning discovery outside HSBC's corporate trust department.  The Court has explained many times that Plaintiffs are only entitled to limited discovery from non-CTLA sources and that such discovery ultimately is of limited relevance to this case.  *See, e.g.* Sept. 21, 2016 Hr'g Tr. at 22:13-15 (non-CTLA discovery was an area that "both Judge Scheindlin and [Judge Netburn] thought was getting a bit removed from the relevance of the case"); *BlackRock* ECF No. 171, June 7, 2016 Order, at 3 ("The Court finds that discovery into these unrelated proceedings will have limited relevance to this case . . . .").  Nevertheless, Plaintiffs continue to indirectly attack these rulings by serially raising issues concerning non-CTLA discovery.  The most-recent iteration of Plaintiffs' antics on this issue is predicated solely on Plaintiffs' belief that the volume of non-CTLA custodians' documents is insufficient.  The Court, however, has already explained that a lower than expected responsiveness rate, especially given the overbreadth of the search terms that Plaintiffs insisted upon, is not sufficient to challenge HSBC's document production.  That same reasoning applies now.

---

[6] *See BlackRock* ECF Nos. 181, July 5, 2016 Letter from Plaintiffs & 197, Aug. 8, 2016 Letter from Plaintiffs.

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
November 23, 2016
Page 5

Additionally, HSBC has explained multiple times that the non-CTLA custodians are unlikely to possess much relevant discovery because they did not work on the trusts at issue in this case, and they did not perform duties under the relevant governing agreements. *See, e.g.*, *BlackRock* ECF No. 102, Aug. 31, 2015 Letter from E. Reddington, at 1 (the non-CTLA departments "do not overlap with CTLA, do not share personnel or facilities with CTLA, do not perform trustee services, and do not perform any role in the at-issue trusts"). Indeed, in originally authorizing only limited discovery outside HSBC's corporate trust department, Judge Scheindlin expressly noted that HSBC did not need to produce documents concerning the administration of trusts or the origination or servicing of loans that are not in this case. Sept. 2, 2015 Hr'g Tr. at 25:19-22 ("You don't have to start producing irrelevant origination documents from other departments, or servicing documents from other departments, that don't relate to this case."). Moreover, when raising their repeated issues with respect to non-CTLA discovery, Plaintiffs invariably fail to remind the Court that they represented on the record on multiple occasions that their basis for requesting discovery from non-CTLA sources arose only *after* 2010. Sept. 4, 2015 Hr'g Tr. at 10:14-15 (timeframe "spans 2012 to the present"); Nov. 16, 2015 Hr'g Tr. at 12:24-25 ("Our [Plaintiffs'] position is that the relevant time period should be 2010 to the present."). Therefore, the Court only authorized non-CTLA discovery from after that time period. *Id.* at 24:13. Finally, with respect to non-email documents, HSBC has made an additional collection and will produce responsive documents per the Court's order.

To the extent Plaintiffs' letter suggests that HSBC produced too few documents for Mark Wirth, the one-time head of Whole Loan Trading, Plaintiffs are wrong. Mr. Wirth is not an employee of the bank, and most of his work would have been for a separate legal entity. Additionally, HSBC-affiliated entities did not sponsor new RMBS securitizations after approximately 2007, three years *before* the time authorized by the Court for non-CTLA discovery. Moreover, as Plaintiffs have acknowledged, Sept. 4, 2015 Hr'g Tr. at 16:24-25, HSBC did not sponsor or service loans in the Bellwether Trusts. Thus, there would be no reason to expect overlap between loans Mr. Wirth was dealing with and the loans in the trusts in the instant case. Accordingly, there is nothing unexpected about the volume of documents produced for any non-CTLA custodian.[7]

### IV. Conclusion

For all of the above reasons, the Court should deny Plaintiffs' request for a conference and instead instruct Plaintiffs to meet and confer with HSBC about depositions. During that meet and confer, both sides should come prepared to discuss proposed deposition dates in January and February.

---

[7] Indeed, *Plaintiffs* have produced a very small number of documents for a number of their custodians. And, unlike the non-CTLA custodians, Plaintiffs' custodians were responsible for investments in the Bellwether Trusts. For example, BlackRock produced only 317 documents from Scott Amero, who was BlackRock's Chief Investment Officer during the height of the financial crisis and was responsible for managing employees performing RMBS-related research and modeling. *See BlackRock* ECF No. 228, Sept. 30, 2016 Letter from E. Reddington, at 2-3. Similarly, there are 8 additional custodians for whom BlackRock has produced less than 600 documents.

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
November 23, 2016
Page 6

                                                  Sincerely,

                                                  Edward Reddington

Attachments

cc: All counsel via ECF