**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROYAL PARK INVESTMENTS SA/NV,<br><br>Plaintiff,<br><br>v.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION,<br><br>Defendant. | **Case No. 14-CV-8175-LGS-SN** |
| BLACKROCK BALANCED CAPITAL PORTFOLIO (FI), *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION,<br><br>Defendant. | **Case No. 14-CV-9366-LGS-SN** |
| PHOENIX LIGHT SF LIMITED, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION,<br><br>Defendant. | **Case No. 14-cv-10101-LGS-SN** |
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION,<br><br>Defendant. | **Case No. 15-cv-2144-LGS-SN** |

i

COMMERZBANK AG,

                  Plaintiff,

    v.

HSBC BANK USA, NATIONAL
ASSOCIATION,

                  Defendant.

**Case No. 15-cv-10032-LGS-SN**

**HSBC BANK USA, N.A.'S RESPONSE
TO THE COORDINATED PLAINTIFFS'
<u>MEMORANDUM OF LAW IN SUPPORT OF SAMPLING</u>**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

BACKGROUND .................................................................................................................2

ARGUMENT .......................................................................................................................4

I.   Overview of Plaintiffs' Claims. ..............................................................................4

    A.   Representation and Warranty Claims. ........................................................4

    B.   Event of Default Claims.............................................................................6

II.  Sampling Will Not Meet Plaintiffs' Loan-by-Loan Proof Requirement. ...........10

III. Sampling Will Not Prove Actual Knowledge or EODs.........................................11

IV.  Sampling Cannot Establish Causation, Damages or Standing..............................18

CONCLUSION...................................................................................................................20

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*Adams v. Suozzi*, 433 F.3d 220 (2d Cir. 2005)..............................................................7

*Argonaut P'ship L.P. v Bankers Tr. Co.*, 2001 WL 585519 (S.D.N.Y. May 30, 2001) ............................................................................................................................11

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475 (S.D.N.Y. 2013) ..........................................................................................................................18

*Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297 (2d Cir. 2016)..........................................................................................19

*Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, 2013 WL 3146824 (S.D.N.Y. 2013) .................................................................................18

*BlackRock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon*, 180 F. Supp. 3d 246 (S.D.N.Y. 2016)........................................................................16

*BlackRock Core Bond Portfolio v. U.S. Bank, N.A.*, 165 F. Supp. 3d 80 (S.D.N.Y. 2016) ...................................................................................................................15, 16

*CFIP Master Fund Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450 (S.D.N.Y. 2010)...................8, 18

*Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488 (S.D.N.Y. 2013) ..............................................................18

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42 (2d Cir. 2011).....................8, 9

*FHFA v. HSBC N. Am. Holdings Inc.*, 33 F. Supp. 3d 455 (S.D.N.Y. 2014)...............................16

*FHFA v. UBS Ams., Inc.*, 2013 WL 3284118 (S.D.N.Y. June 28, 2013) .....................................19

*Fixed Income Shares: Series M v. Citibank N.A.*, 130 F. Supp. 3d 842 (S.D.N.Y. 2015) ..........................................................................................................................16

*In re Lehman Brothers Holding, Inc.*, No. 08-13555 (Bkrtcy. S.D.N.Y. Dec. 12, 2014) ..........................................................................................................................15

*In re Lehman Brothers Holdings Inc.*, 2014 WL 8274868 (S.D.N.Y. Dec. 29, 2014) ..........................................................................................................................15

*LaSalle Bank N.A. v. Citicorp Real Estate, Inc.*, 2003 WL 22047891 (S.D.N.Y. Aug. 29, 2003) .......................................................................................................18

*Lazard Freres & Co. v. Protective Life Ins.*, 108 F.3d 1531 (2d Cir. 1997) ...............................24

*MASTR Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Estate Sec. Inc.*, 2015 WL 764665 (S.D.N.Y. Jan. 9, 2015) ...........................................................6, 9, 14

*MASTR Asset Backed Sec. Tr. 2006-HE3 v. WMC Mortg. Corp.*, 2012 WL 4511065 (D. Minn. Oct. 1, 2012) ......................................................................18

*Millennium Partners, L.P. v. U.S. Bank N.A.*, 2013 WL 1655990 (S.D.N.Y. Apr. 17, 2013), *aff'd sub nom. Millennium Partners, L.P. v. Wells Fargo Bank, N.A.*, 654 F. App'x 507 (2d Cir. 2016) .............................................................13, 21

*Racepoint Partners, LLC v. JP Morgan Chase Bank*, 2006 WL 3044416 (S.D.N.Y. Oct. 26, 2006) .......................................................................24

*Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154 (2d Cir. 2014), *cert. denied*, 136 S. Ct. 796 (2016) .........................5, 14, 17, 19

*Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*, 2016 WL 899320 (S.D.N.Y. Mar. 2, 2016) .....................................................................................16

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 439020 (S.D.N.Y. Feb. 3, 2016) ....................................................................16

*Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 109 F. Supp. 3d 587 (S.D.N.Y. 2015) .......................................................................... passim

*Semi-Tech Litig., LLC v. Bankers Tr. Co.*, 353 F. Supp. 2d 460 (S.D.N.Y. 2005), *aff'd per curiam*, 450 F.3d 121 (2d Cir. 2006) .......................................22

*Sterling Fed. Bank, F.S.B. v. DLJ Mortg. Capital, Inc.*, 2010 WL 3324705 (N.D. Ill. Aug. 20, 2010) .......................................................................21

*U.S. Bank, N.A. v. Citigroup Glob. Mkts. Realty Corp.*, 2015 WL 1222075 (S.D.N.Y. Mar. 13, 2015) .......................................................................9

*U.S. Bank, N.A. v. UBS Real Estate Sec., Inc.*, --- F. Supp. 3d ---, 2016 WL 4690410 (S.D.N.Y. Sept. 6, 2016) .................................................... passim

## STATE CASES

*ACE Secs. Corp. v. DB Structured Prods., Inc.*, 25 N.Y.3d 581 (2015) .......................................10

*Bear Stearns Mortg. Funding Trust 2007-AR2 v. EMC Mortg. LLC*, C.A. No. 6861-CS (Del. Ch. Nov. 8, 2012) ...........................................................15

*Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 11 A.D.3d 232 (1st Dep't 2004) .....................22

*Commerce Bank v. Bank of N.Y. Mellon*, 141 A.D.3d 413 (1st Dep't 2016) ........................ passim

*Elkind v. Chase Nat'l Bank,* 259 A.D. 661 (1st Dep't 1940), *aff'd per curiam,* 284
    N.Y. 726 (1940) .................................................................................................................13

*Knights of Columbus v. Bank of N.Y. Mellon*, 2015 WL 4501196 (N.Y. Sup. Ct.,
    N.Y. Cty. July 10, 2015) ..................................................................................................13

*Putman High Yield Tr. v. Bank of N.Y.*, 7 A.D.3d 439 (1st Dep't 2004) ...................................13

*W. & S. Life Ins. v. HSBC Bank USA, N.A.*, No. A1501580 (Ohio Ct. Com. Pl.,
    Hamilton Cty. June 27, 2016) ..........................................................................................16

## STATUTES

N.Y. Gen. Oblig. Law § 13-107.................................................................................................24

## OTHER AUTHORITIES

*Black's Law Dictionary* (10th ed. 2014)....................................................................................17

## INTRODUCTION

Plaintiffs cannot prove their case here by sampling.  For each of their claims against HSBC, Plaintiffs will first have to prove material breach by one of the other parties to the contracts that govern RMBS trusts (the "Agreements").  Then, having established an underlying breach by this third party (typically a sponsor or master servicer), Plaintiffs further will have to prove that HSBC breached its own obligations and that such breach by HSBC caused damage.  As the Second Circuit has held, such claims against an indenture trustee must be proven loan-by-loan.  *Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 162-63 (2d Cir. 2014) ("*Policemen's Annuity*"), *cert. denied*, 136 S. Ct. 796 (2016).  Here, this standard requires (1) loan-specific proof of breaches by the third parties; (2) loan-specific proof of HSBC's actual knowledge of those breaches; (3) proof that HSBC was required to act as Plaintiffs contend; (4) loan-specific proof that such efforts would have succeeded; (5) loan-specific proof of contractually determined damages; and (6) security-specific proof of standing.

Because sampling could never satisfy these requirements, Plaintiffs argue that their claims against HSBC can be based on HSBC's constructive knowledge of breaches and that HSBC had a duty to "nose to the source" when it "should have known" of other parties' breaches.  Plaintiffs' arguments already have been rejected.  In ruling on HSBC's motion to dismiss, this Court held that Plaintiffs must show HSBC's *actual knowledge* to prevail at summary judgment or trial.  *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 109 F. Supp. 3d 587, 602-03 (S.D.N.Y. 2015) ("*Royal Park*").  This conclusion has been echoed uniformly by other courts.  Moreover, Plaintiffs' "pervasive breach" theory, which posits that generalized allegations of problems in the mortgage industry establish actual knowledge or trigger a duty to investigate, also has been roundly rejected.  *See, e.g., U.S. Bank, N.A. v. UBS Real Estate Sec., Inc.*, --- F. Supp. 3d ---, 2016 WL 4690410, at *27-28 (S.D.N.Y. Sept. 6, 2016) ("*U.S. Bank*").

No court has approved of sampling in a case against a trustee, and it has even been rejected in cases against sponsors. *See MASTR Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Estate Sec. Inc.*, 2015 WL 764665, at *10-11 (S.D.N.Y. Jan. 9, 2015) ("*MASTR*") (sampling cannot be used against a sponsor because, *inter alia*, "the PSAs expressly provide[] that cure or repurchase are the 'sole remedies'" and those remedies are "loan specific"). Establishing a pool-wide estimated breach rate through sampling will not advance Plaintiffs' claims here, because a breach rate cannot establish specific material breaches on a loan-by-loan basis as required by the PSAs and controlling precedent, nor can it establish the required additional elements necessary to prove a case against a trustee. In addition, sampling now will only waste time and resources and should be rejected.

HSBC's answers to the Court's five specific questions are set forth succinctly in the Addendum hereto. The reasons for those answers are addressed below.

## BACKGROUND

An indenture trustee's duties are ministerial in nature and determined solely by contract. Here, HSBC performed an even more limited role under the Agreements—that of a "nominal" or "naked" trustee, meaning it performed no other function such as custodian (reviews Mortgage Files and holds documents), securities administrator (transmits distribution reports and other information to investors), paying agent (distributes principal and interest), servicer (interacts with borrowers regarding loans), or master servicer (oversees servicers). An indenture trustee is not charged with the duty to supervise any of these other parties. For its ministerial role, HSBC was paid a nominal fee of approximately $3,500 to $4,000 per year per trust.

The Agreements reinforce the limited role of the trustee. For example, the Agreements provide among other things that HSBC: (1) performs only such duties as are specifically set forth in the Agreements and no implied obligations shall be read into them; (2) has no obligation

to expend or risk its own funds; (3) has no pre-Event of Default duty to investigate absent direction and indemnification by investors; (4) has no duty to exercise any permissive power; (5) shall not be liable for any action taken or omitted in good faith; (6) does not monitor Servicers (as that duty is assigned to the Master Servicer); (7) may conclusively rely on any certificates or opinions provided to the trustee (which include certifications from servicers and master servicers); and (8) is not deemed to have notice or knowledge of any default or an Event of Default ("EOD") unless a Responsible Officer of the Trustee working in the corporate trust office has actual knowledge or has received written notice.  Other provisions in the Agreements must be read in light of and consistent with these limitations.[1]  *See Adams v. Suozzi*, 433 F.3d 220, 228 (2d Cir. 2005) (contract to be read as a whole and interpreted to give effect to its purpose).

These limitations were well-known to the sophisticated investors who purchased RMBS securities.  *See* Ex. 7 (Institutional Investors' Statement in Supp. of Settlement Excerpt) ¶ 15 (explaining that "[t]he PSAs significantly limit the Trustee's obligations" and listing the provisions enumerated above).[2]  The Agreements require Holders to direct and indemnify the trustee if actions beyond the trustee's limited obligations are contemplated.  And any such action

---

[1] Each of the 295 trusts at issue in these actions is governed by a separate agreement.  While there are variations in the provisions, the principle that the trustee has very limited duties and is not required to investigate or take other actions unless indemnified and directed to do so is consistent across the Agreements.  Attached are exemplar provisions from two PSAs and one Indenture governing three of the bellwether trusts, which illustrate these points.  *See* Exs. 1 (WFMBS 2006-19 PSA Chart), 2 (MLMBS 2007-2 Indenture/SSA Chart), and 3 (DBALT 2006-AR5 PSA Chart).  All citations to Exhibits are Exhibits to the Declaration of George A. Borden filed in connection with this brief.

[2] This brief was submitted in support of a settlement involving a sponsor that was negotiated by many of the same Plaintiffs here, including BlackRock, Kore, PIMCO, TIAA, AEGON, and Prudential.  Ex. 7 at 1-2.

or inaction of a Holder "shall bind every future Holder . . . in respect of anything done, omitted, or suffered to be done by the Trustee." *See, e.g.,* Ex. 4 (WFMBS 2006-19 PSA Excerpt) § 1.02.[3] Active involvement by Holders reflects the economics of the Agreements—because RMBS certificates are issued in tranches of differing seniority, the interests of Holders do not always align. A ministerial trustee cannot be expected to reconcile these competing interests. *See CFIP Master Fund Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450, 474-75 (S.D.N.Y. 2010).

## ARGUMENT

I.   **Overview of Plaintiffs' Claims.**

Plaintiffs' brief hypothesizes that HSBC breached its obligations in two ways. First, Plaintiffs assert that HSBC discovered breaches in the loans in the trusts and should have enforced the obligation of the sponsors to repurchase ("put back") those loans. Second, as a fallback argument, Plaintiffs assert that HSBC should have investigated and *found* breaches of representations and warranties ("R&Ws") because there was an EOD that triggered HSBC's obligation to act as a prudent person. Each theory of liability is discussed below.

A.   **Representation and Warranty Claims.**

To prevail under this theory, Plaintiffs will have to prove the elements listed below. *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 51 (2d Cir. 2011). None can be established by sampling.

1.   **Existence of an Underlying R&W Breach that Is Material.**

Plaintiffs will have to prove a material breach of the R&Ws for each loan. This will require determining the governing underwriting guidelines (which varied by originator and date)

---

[3] Relevant excerpts of the cited Agreements are attached as Exhibits 4 (WFMBS 2006-19 PSA Excerpt), 5 (MLMBS 2007-2 Indenture Excerpt), and 6 (DBALT 2006-AR5 PSA Excerpt).

in place at the time the loan was originated, re-underwriting the loan, and showing that the loan breached a specific R&W under the Agreements.  Plaintiffs also will have to show that this breach "materially and adversely" affects the value of such Loan.  *See, e.g.*, Ex. 6 (DBALT 2006-AR5 PSA Excerpt) § 2.3(a).  Sampling will not show which specific loans (other than those within the sample) contained R&W breaches or whether such breaches were material.

### 2.    HSBC's Knowledge of the Underlying R&W Breach.

The Agreements impose a duty on HSBC only upon HSBC's "discovery or receipt of written notice" of a material R&W breach with respect to a particular loan.  *Id*.  As discussed below, this requires Plaintiffs to show HSBC's actual knowledge of breaches.  Sampling will not facilitate this showing, because it will not identify which loans in the population, outside the set of sampled loans, are breaching.[4]  *See* Sections II and III below.

### 3.    HSBC Failed To Act as Required Under the Agreements.

For each material breach of which HSBC had actual knowledge, Plaintiffs will have to show that HSBC breached its contractual duty to act.  In other words, Plaintiffs must establish that HSBC was required to but failed to "notify the Seller" of the breach or (under certain Agreements only) to "enforce the obligations of the Seller" to cure the breach or repurchase the loan.  *See, e.g.*, Ex. 6 (DBALT 2006-AR5 PSA Excerpt) § 2.3(a).  As with actual knowledge,

---

[4] Plaintiffs attempt to side-step this burden through use of a pervasive breach theory or by positing an EOD occurred.  As will be shown below, neither theory supports Plaintiffs' claims, and similar assertions have been unequivocally rejected in other RMBS cases.  *See, e.g.*, *U.S. Bank*, 2016 WL 4690410, at *28 ("evidence of 'constructive knowledge' or 'pervasive breach'" may not be relied on "to prove [] knowledge of breached warranties"); *U.S. Bank, N.A. v. Citigroup Glob. Mkts. Realty Corp.*, 2015 WL 1222075, at *3 (S.D.N.Y. Mar. 13, 2015) (plaintiffs "cannot save [their] claim[s] by arguing that [Defendants were] generally aware of 'pervasive breaches' of R&Ws"); *MASTR*, 2015 WL 764665, at *10-11 ("[T]he terms of the PSAs foreclose" a "'pervasive breach' theory . . . .").

sampling will not facilitate this showing because it will not identify which loans contained breaches and will not show whether or how HSBC failed to act with respect to that loan.

### 4.   HSBC's Alleged Failure Caused Harm.

For each material breach of which HSBC had actual knowledge and failed to act, Plaintiffs also will have to show that HSBC's failure proximately caused harm.  This will require showing that the Seller either would have agreed to repurchase or cure the breach, or, if the Seller would have refused, that Holders would have directed HSBC to sue and that such lawsuit would have succeeded.  Sampling will not establish this causation.  Further, under settled law, Plaintiffs will have to show that HSBC had actual knowledge of a breach within six years of the trust closing, when the trust still had an enforceable repurchase remedy.  *See ACE Secs. Corp. v. DB Structured Prods., Inc.*, 25 N.Y.3d 581 (2015).  For some bellwether trusts, the limitations period ended by 2010.  Sampling cannot show *when* HSBC acquired knowledge of any breach.

### 5.   Damages.

Plaintiffs also must prove damages.  The sole remedy available under the Agreements for the repurchase of a loan is calculated based on the unpaid principal balance of the specific loan in question.  Sampling cannot be used to calculate damages because it will not reveal which loans were breached and, thus, what amount could be recovered through the repurchase remedy.

### B.   Event of Default Claims.

Aware that they cannot show HSBC's actual knowledge of R&W breaches, Plaintiffs advance a circular and illogical theory to evade that requirement by invoking the Agreements' EOD provisions.  Plaintiffs hypothesize that even if HSBC did not discover breaches of R&Ws, the servicers must have done so.  Then, since under some (but not all) Agreements servicers have an obligation to give notice of R&W breaches they discover, Plaintiffs further speculate that this failure by servicers triggered an EOD in every trust in the case.  Finally, based on this theoretical

EOD, Plaintiffs argue that HSBC should have investigated the trusts, and, if it had, it would have discovered breaches and, according to Plaintiffs, successfully put them back.

Plaintiffs' EOD theory is beyond attenuated, but ultimately does not assist them with their claims or their arguments for sampling. Plaintiffs' theory requires them to prove additional elements—not fewer—to prevail. To prevail under such a theory, Plaintiffs would have to show each of the elements below.

### 1. Specific Loans Had Material Breaches of R&Ws and Specific Servicers Had Actual Knowledge of Such Breaches.

Because Plaintiffs' EOD theory is itself predicated upon servicers' alleged failure to give notices of R&W breaches, Plaintiffs will have to show that there were specific R&W breaches in specific loans, that those breaches were material, and that the servicers had actual knowledge of those material breaches. Sampling will not satisfy this showing for the same reasons discussed above with respect to the trustee.

### 2. A Servicer's Failure to Give Notice of R&W Breaches Resulted in an EOD in a Particular Trust.

Plaintiffs also would have to show that an EOD occurred as a result of the servicers' failure to provide notice of material R&W breaches. The Agreements, however, generally do *not* contemplate that servicers' actions or inactions result in an EOD triggering the trustee's duty to act as a prudent person. Instead, such EODs are tied to the actions of other parties. Specifically, in the trusts governed by Indentures, only the actions of the *Issuer* (the trust itself) can trigger an EOD (such as by failing to make interest or principal payments), *not* the actions of a servicer. *See, e.g.*, Ex. 5 (MLMBS 2007-2 Indenture Excerpt) App'x A Definitions. Similarly, in the vast majority of the PSA trusts, an EOD requiring the trustee to act as a prudent person can be triggered only by conduct of the *master servicer*. *See, e.g.*, Ex. 6 (DBALT 2006-AR5 PSA Excerpt) § 9.1.

7

Further, EODs were intended to be significant events that have identifiable beginnings and ends, so that the trustee would know whether the standard under which it is to exercise its powers has changed. *See Argonaut P'ship L.P. v Bankers Tr. Co.*, 2001 WL 585519, at *2 (S.D.N.Y. May 30, 2001) ("It is reasonable for the Indenture to specify a particular single act . . . which must occur before [the trustee] is . . . obliged to exercise any remedies, rather than leaving questions of the timing . . . of its . . . obligation to act[] to the uncertainties of later litigation . . . ."). None of the Agreements specifically define any parties' alleged failure to give notice of R&W breaches as an EOD. Accordingly, Plaintiffs cannot satisfy this element by sampling.

### 3.    HSBC Had Actual Knowledge or Written Notice of the EOD.

The trustee's duties under an EOD are not triggered merely because an EOD occurs but instead only when a Responsible Officer in the Trustee's corporate trust office has actual knowledge or receives written notice of an event, *which is in fact an EOD*. *See, e.g.*, Ex. 4 (WFMBS 2006-19 PSA Excerpt) § 8.01(iv). Otherwise, the trustee may conclusively assume there is no EOD. *See, e.g.*, *id.* Thus, Plaintiffs must prove not only that servicers had actual knowledge of loan-specific R&W breaches, failed to give notice of those violations, and that such failure was an EOD, but also that the trustee had actual knowledge of all of these things. This cannot be shown by sampling.

### 4.    Written Notice of the Specific EOD Was Provided To the Breaching Party and the Required Cure Period Passed.

An EOD entails certain procedural requirements. Sampling cannot be used to evade these requirements. In their absence, there is no EOD and thus no post-EOD duties. These requirements include (1) written notice of the EOD to the breaching party, and (2) expiration of a cure period (typically 30 or 60 days) without the breaching party curing the purported EOD. *See, e.g.*, Ex. 6 (DBALT 2006-AR5 PSA Excerpt) § 8.1(a). These procedural requirements ensure

that an actual EOD has occurred, and that the trustee has actual knowledge of that particular

event.  Courts have strictly construed the Agreements' EOD-notice requirements, which prevent

exactly what Plaintiffs are attempting to do here— *i.e.*, retroactively imposing purported post-

EOD duties based on subjective assessments and 20-20 hindsight.[5]

> **5.      HSBC Would Have Been Required to Undertake the Wide-Scale Re-Underwriting Plaintiffs Now Assert Should Have Been Done.**

"Even after [an] Event of Default, '[t]he scope of the trustee's obligation . . . is still

circumscribed by the indenture . . . .  The trustee is not required to act beyond his contractually

conferred rights and powers.'"  *Royal Park*, 109 F. Supp. 3d at 597.  Moreover, even during an

EOD, a trustee is still not required to expend, advance, or risk its own funds, or incur financial

liability without an indemnity satisfactory to it.  *See, e.g.*, Ex. 6 (DBALT 2006-AR5 PSA

Excerpt) § 9.2(a)(xii).  Thus, even if Plaintiffs can show all of the other elements of an EOD,

Plaintiffs also would have to show the EOD required the trustee to act as they suggest.

---

[5] *Commerce Bank v. Bank of New York Mellon*, 141 A.D.3d 413, 414-15 (1st Dep't 2016) (affirming dismissal of claims against RMBS trustee because written notice provisions not satisfied); *Millennium Partners, L.P. v. U.S. Bank N.A.*, 2013 WL 1655990, at *6 (S.D.N.Y. Apr. 17, 2013) (holding plaintiffs "d[id] not plead that the requisite written notice was given to trigger an Event of Default" because the trustee never received written notice of an Event of Default from investors with the requisite voting rights), *aff'd sub nom. Millennium Partners, L.P. v. Wells Fargo Bank, N.A.*, 654 F. App'x 507 (2d Cir. 2016); *Knights of Columbus v. Bank of N.Y. Mellon*, 2015 WL 4501196, at *4 (N.Y. Sup. Ct., N.Y. Cty. July 10, 2015) (dismissing claims against RMBS trustee where plaintiff failed to plead trustee's receipt of a written notice of an EOD); *Putman High Yield Tr. v. Bank of N.Y.*, 7 A.D.3d 439, 439 (1st Dep't 2004) ("With regard to defendant's alleged failure to act prudently upon occurrence of a default, no such duty was ever triggered in the absence of written notification of default."); *Elkind v. Chase Nat'l Bank*, 259 A.D. 661, 666 (1st Dep't 1940) (enforcing provision "that unless the trustee receives written notice from the holders of not less than ten per cent of bonds outstanding, the trustee may *conclusively assume that no default has occurred*" (emphasis added)), *aff'd per curiam*, 284 N.Y. 726 (1940).

### 6.   HSBC's Investigation and Wide-Scale Re-underwriting Would Have Shown Specific Breaches, Enabling the Successful Put Back of Loans.

Finally, Plaintiffs will have to show the actions they now say HSBC should have taken years ago would have (1) uncovered the evidence they say exists and (2) caused servicers to provide additional notice of R&W breaches and sponsors ultimately to repurchase additional loans.  This is beyond speculative and cannot be demonstrated via sampling.

## II.   Sampling Will Not Meet Plaintiffs' Loan-by-Loan Proof Requirement.

Regardless of how Plaintiffs characterize their claims, those claims must be proven on a "loan-by-loan and trust-by-trust" basis.  *Policemen's Annuity*, 775 F.3d at 162.  Whether an RMBS trustee's duty to act has been triggered depends on whether the Seller "was obligated to repurchase a given loan," which "requires examining which loans, in which trusts, were in breach of the representations and warranties."  *Id.*  This Court already has held that "at trial or summary judgment, plaintiffs must prove their claims loan-by-loan and trust-by-trust."  *Royal Park*, 109 F. Supp. 3d at 601.  This is mandated by the Agreements, which provide for a "loan-specific repurchase remedy" and apply to "breaches on an individualized, loan-by-loan basis."  *U.S. Bank*, 2016 WL 4690410, at *27.

Re-underwriting a sample of loans and extrapolating a "breach rate" is fundamentally incompatible with Plaintiffs' burden to prove their case loan-by-loan.  Even in put back actions against sponsors, where the theory of liability is far less attenuated than Plaintiffs' claims against HSBC here, courts have rejected sampling as a method for establishing liability.  In *MASTR*, Judge Castel rejected sampling because "the terms of the PSAs foreclose such a broad and improvised remedy."  2015 WL 764665, at *10.  In particular, sampling cannot prove liability for breaches of R&Ws because (1) "not all breaches trigger a cure or repurchase obligation"; (2) "the repurchase remedy negotiated by the parties is *loan specific*"; and (3) "the PSAs

expressly provide[] that cure or repurchase are the 'sole remedies,' and, thus, they foreclose the 'pervasive breach' theory." *Id.* at *10-11 (emphasis added); *see also U.S. Bank*, 2016 WL 4690410, at *75 (rejecting sampling because "the Court cannot determine whether the [plaintiffs] have proved that [defendant] received notice or otherwise discovered that a loan was in breach *unless the loan is identified*" (emphasis added)).[6]  The same reasoning applies here.

### III.   Sampling Will Not Prove Actual Knowledge or EODs.

Re-underwriting a sample of loans from the trusts also will not address the fundamental question of whether HSBC had actual knowledge of specific breaches.  Under the Agreements, HSBC must have actual knowledge of a material breach of an R&W with respect to a specific loan in order to trigger HSBC's duty to seek cure, repurchase or substitution of that loan. Plaintiffs attempt to re-litigate this issue as if it has not already been decided.[7]  As held by this Court, "[i]f, after discovery, plaintiffs cannot prove that HSBC had *actual knowledge* regarding

---

[6] Other courts also have questioned or rejected the use of sampling to prove liability for R&W breaches.  In *In re Lehman Brothers Holding, Inc.*, No. 08-13555 (Bkrtcy. S.D.N.Y. Dec. 12, 2014), the court expressed serious concerns about the viability of sampling to prove liability in a repurchase case in light of the repurchase language in the contract and the need to calculate a repurchase price.  Ex. 8 (*Lehman Brothers* Dec. 10, 2014 Hr'g Tr. at 354:10-355:17).  The court subsequently established a protocol for re-underwriting *all* of the more than 200,000 loans at issue.  *See generally In re Lehman Brothers Holdings Inc.,* 2014 WL 8274868 (S.D.N.Y. Dec. 29, 2014).  Similarly, in *Bear Stearns Mortg. Funding Trust 2007-AR2 v. EMC Mortg. LLC*, C.A. No. 6861-CS (Del. Ch. Nov. 8, 2012), the court rejected the use of sampling to prove repurchase liability, commenting that "it's really nifty for a plaintiff to accuse someone of breaching their obligations over a thousand loan contracts and not wish to try all of them.  It's not going to happen here."  Ex. 9 (*Bear Stearns* Nov. 8, 2012 Hr'g Tr. at 3:13-17).

[7] Plaintiffs themselves acknowledged that they must prove actual knowledge in opposing HSBC's 12(b)(6) motion to dismiss, arguing that their generalized allegations of pervasive breach were sufficient to survive the pleadings stage because they "raise a plausible inference of HSBC's *actual knowledge* of breaches of representations and warranties."  *BlackRock* ECF No. 59, Pls.' Opp'n to HSBC's 12(b)(6) Mot. to Dismiss at 14-15 (emphasis added); *see also id.* at 13 n.8 ("To establish liability, Plaintiffs must only prove that HSBC was chargeable with *actual knowledge* of . . . defective loans, thereby triggering HSBC's duty to act." (emphasis added)).

the loans at issue here, HSBC may move for summary judgment." *Royal Park*, 109 F. Supp. 3d at 603 (emphasis added).

This holding has been consistently echoed in other cases against indenture trustees. *See, e.g.*, *Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*, 2016 WL 899320, at *4 (S.D.N.Y. Mar. 2, 2016) (plaintiff must offer "proof of *actual knowledge*" (emphases added)); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 439020, at *6 (S.D.N.Y. Feb. 3, 2016) ("Without *actual knowledge* of non-conforming loans, Defendant [trustee] would have no obligation . . . ." (emphasis added)); *Fixed Income Shares: Series M v. Citibank N.A.*, 130 F. Supp. 3d 842, 851, 854 (S.D.N.Y. 2015) (plaintiffs must "present loan-specific evidence to prevail at trial or on summary judgement" regarding "Citibank's *knowledge of deficiencies with respect to . . . particular loan[s]*" (emphasis added)); *BlackRock Core Bond Portfolio v. U.S. Bank, N.A.*, 165 F. Supp. 3d 80, 100 (S.D.N.Y. 2016) (plaintiffs' reliance on "public data for breaches of representations and warranties . . . to plead [the trustee's] requisite knowledge" is insufficient to prove their case at trial); *BlackRock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon*, 180 F. Supp. 3d 246, 259 (S.D.N.Y. 2016) (plaintiffs must prove the "trustee's *actual knowledge* of breaches of representations and warranties" (emphasis added)); Ex. 10 (*W. & S. Life Ins. v. HSBC Bank USA, N.A.*, No. A1501580 (Ohio Ct. Com. Pl., Hamilton Cty. June 27, 2016) at 4 ("HSBC's obligation to act with respect to breaches of representations and warranties arise[s] when HSBC has *actual knowledge* of the breaches." (emphasis added))).[8]

---

[8] *See also FHFA v. HSBC N. Am. Holdings Inc.*, 33 F. Supp. 3d 455, 480 (S.D.N.Y. 2014) (general "knowledge of problems with an Originator will not establish . . . actual knowledge" because "knowledge about a general population [of loans] . . . cannot be conflated with knowledge concerning a specific subset of that population").

Recent Second Circuit and New York state court precedent also underscores that an indenture trustee must have actual knowledge of breaches in specific loans before there is any duty to act.  In *Commerce Bank v. Bank of New York Mellon*, 141 A.D.3d 413 (1st Dep't 2016), the plaintiffs alleged that the trustee was generally aware of and should have investigated breaches as a result of prior lawsuits, settlements, defaults in the trust, and other publicly-available information.  The First Department rejected this theory, holding that "the trustee of an RMBS . . . trust does not have a duty to 'nose to the source'" and investigate allegations of breaches.  *Commerce Bank*, 141 A.D.3d at 415-16.  The court therefore dismissed this claim because Plaintiffs failed to "allege that defendant discovered breaches of such representations and warranties."  *Id.* at 414.  Likewise, in rejecting a Holder's reliance on allegations of "systemic and pervasive" breaches, the Second Circuit held that the trustee's "alleged misconduct must be proved *loan-by-loan*" by "examining *which loans*, in which trusts, were in breach of the [R&Ws]."  *Policemen's Annuity*, 775 F.3d at 162 (emphases added).[9]

That "discovery" means "actual knowledge" is consistent with the indenture trustee's limited responsibilities and duties under the Agreements.  Indeed, Plaintiffs' theory that "discovery" means "known or should have known" cannot be reconciled with the Agreements' many provisions that reinforce these limited duties, including the provision that "the Trustee . . . shall not be bound to make any investigation into the facts or matters stated in any [document], unless requested in writing to do so by the Holders of Certificates evidencing, in aggregate, not

---

[9] Plaintiffs argue that "inquiry notice" will have particular relevance "when the evidence pertains to a single originator."  Pls.' Mem. at 11.  *Policemen's Annuity*, however, involved a single originator (Countrywide) and rejected such reasoning.  775 F.3d at 162 (noting that "even proof that [the trustee] *always* failed to act when it was required to do so would not prove [plaintiffs'] case").

less than 25% of the Trust Fund."[10]  *See, e.g.*, Ex. 6 (DBALT 2006-AR5 PSA Excerpt)
§ 9.2(a)(v).  Other significant provisions also reinforce that the trustee is not required to
undertake additional or investigative duties.  *See, e.g., id.* § 9.2(a)(ix) ("The Trustee shall not be
deemed to have notice of any default or Master Servicer Event of Default unless a Responsible
Officer of the Trustee has actual knowledge thereof or unless written notice of any event which
is in fact such a default is received by the Trustee . . . ."); *id.* § 9.2(a) (trustee not required to risk
its own funds absent reasonable assurance of adequate indemnity); *id.* § 9.1 ("Any permissive
right of the Trustee enumerated in this Agreement shall not be construed as a duty."); *id.* § 9.1(i)
(trustee "may conclusively rely . . . upon any certificates or opinions furnished to the Trustee");
*id.* ("[N]o implied covenants or obligations shall be read into this Agreement against the Trustee
. . . .").  These provisions reflect HSBC's limited role in the trusts and the contract parties'
agreed division of responsibility.  Retroactively imposing a "should have known" standard
would increase HSBC's duties beyond what was agreed (and beyond what HSBC was
compensated for).  *See CFIP Master Fund*, 738 F. Supp. 2d at 474 (declining to ascribe broad
duties to the trustee when it was "compensated . . . in an amount that was pocket change in
comparison to all other economic aspects of this transaction").

Plaintiffs' reliance on *Bank of New York Mellon Trust Co., N.A. v. Morgan Stanley
Mortgage Capital, Inc.*, 2013 WL 3146824, at *20 (S.D.N.Y. 2013), for the proposition that
"discovery" means "known or should have known" is misplaced.[11]  In vacating and remanding

---

[10] Plaintiffs' interpretation of "discovery" to mean "known or should have known" also cannot
be reconciled with the term's plain-meaning.  *Black's Law Dictionary* defines "discovery" in
relevant part as "[t]he act or process of . . . *learning something that was previously unknown*,"
Discovery, *Black's Law Dictionary* at 564 (10th ed. 2014) (emphasis added), *i.e.*, gaining actual
knowledge about something.

[11] Plaintiffs' other authority, Pls.' Mem. at 8 n.14, also does not support their argument because
it either does not involve the duties of an indenture trustee, *see Deutsche Alt-A Sec. Mortg. Loan*

another decision by the district court in that case, the Second Circuit explained that New York law "charges a party with discovery of breach only . . . when it effectively becomes aware, *rather than simply suspicious,* of breach." *Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 310 (2d Cir. 2016) (emphasis added). Because an indenture trustee has no duty to "nose to the source" or otherwise investigate absent Holder direction and indemnification, it cannot be charged with "discovery" of a breach absent evidence that it was actually "aware," *i.e.*, had actual knowledge, of a specific breach with respect to a specific loan. *See also FHFA v. UBS Ams., Inc.*, 2013 WL 3284118, at *15 (S.D.N.Y. June 28, 2013) ("[T]here is no authority for the proposition that evidence of generalized knowledge necessarily qualifies as circumstantial evidence of particularized, actual knowledge.").

Even assuming *arguendo* that the standard was "known or should have known," re-underwriting a sample of loans after the fact will do nothing to advance Plaintiffs' theory of liability against HSBC, which must still be proven "loan-by-loan." *Policemen's Annuity*, 775 F.3d at 162. Sampling will not determine whether HSBC "should have known" of breaches on a loan-by-loan basis.

Plaintiffs' attempt to support their position with "illustrative evidence" only reinforces that sampling cannot be used to prove Plaintiffs' case. Plaintiffs first point to a letter from Goldman Sachs to HSBC. Pls.' Mem. at 9-10. This letter does not identify any actual breaches in the handful of trusts listed. Rather, it is merely a request from a trust underwriter (not a

---

*Tr., Series 2006-OA1 v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488, 494 (S.D.N.Y. 2013) (action against sponsor); *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475, 512-13 (S.D.N.Y. 2013) (action against sponsor and originator); *MASTR Asset Backed Sec. Tr. 2006-HE3 v. WMC Mortg. Corp.*, 2012 WL 4511065, at *6-7 (D. Minn. Oct. 1, 2012) (action against originator); *LaSalle Bank N.A. v. Citicorp Real Estate, Inc.*, 2003 WL 22047891, at *6 (S.D.N.Y. Aug. 29, 2003) (action against sponsor), or else it is inconsistent with current controlling precedent as set forth in *Commerce Bank* and *Policemen's Annuity*.

Holder with the requisite direction and indemnification) that HSBC investigate *potential*

breaches.  Plaintiffs do not suggest that HSBC in fact investigated and discovered any such

breaches.  Rather, Plaintiffs posit that if HSBC had gathered information it did not possess (loan

files, re-underwriting guidelines, etc.) and begun a re-underwriting investigation that it was not

required to undertake, HSBC *may* have found some breaches.  *See id.* at 10-11.  This theory is

incompatible with the Agreements and recently was rejected by Judge Castel in *U.S. Bank*.  2016

WL 4690410, at *27-28 (rejecting plaintiffs' theory that the *sponsor* had the ability and duty to

investigate its suspicions of R&W breaches and holding that constructive knowledge was

incompatible with the Agreements' provision of "'sole remedies' that apply to breaches on an

individualized loan-by-loan basis.").  This same reasoning requires rejection of Plaintiffs' theory

of liability here.

Even assuming a generalized request to investigate *potential* breaches triggered some

duty to act (it does not), re-underwriting a sample of loans now will not identify which loans in

which trusts HSBC might have found to have been in breach if it had engaged in this

hypothetical investigation.   Such information is not susceptible to proof through sampling, but

instead would need to be proven directly on a loan-by-loan basis.

Plaintiffs' reliance on exception reports to justify sampling fares no better.  Once again,

any claims based on exception reports would need to be proven on a loan-by-loan basis.  Re-

underwriting a sample of loans would not identify which particular loans had missing or

defective documents (or that such circumstances would support a claim against

HSBC).  Additionally, rather than relating to R&Ws (which are representations made by

sponsors concerning the characteristics of the loans in the trust), exception reports are prepared

by the custodian based on documents purportedly missing from the Mortgage Files held by the

custodian after trust closing.  Such exception reports do not establish that there are underlying R&W breaches with respect to the loans in the trusts and would not be an indication that such loans should be re-underwritten.  Also, under the Agreements, HSBC typically had no obligation with respect to exceptions unless and until it received written notice that a defect had not been cured.  *See, e.g.*, Ex. 4 (WFMBS 2006-19 PSA Excerpt) § 2.02 (trustee duties arise only "[i]f the Trustee receives written notice from the Custodians or the Master Servicer that the defect is not cured . . . within 60 days after the Trustee's notice").  Sampling cannot be used to make this showing.  Moreover, the Court already has dismissed the vast majority of Plaintiffs' document claims because either (1) the Agreements assigned these duties to the custodian, not HSBC; and/or (2) such claims are time-barred.  *Royal Park*, 109 F. Supp. 3d at 607-08.[12]

Finally, Plaintiffs also cannot use sampling to prove HSBC's actual knowledge of purported EODs.  Plaintiffs do not dispute they must prove HSBC's "actual knowledge" of an EOD.  Pls.' Mem. at 14 (servicer EODs subject to "standard of 'actual knowledge'").  Plaintiffs' EOD claim is based on the theory that *servicers were failing to provide notice to HSBC* of R&W breaches.  Plaintiffs' theory ignores the Agreements' definition of an EOD.  As defined by the vast majority of the Agreements, an EOD (that triggers the prudent person standard for the trustee) occurs only when (i) the *master* servicer materially breaches its obligations; (ii) the master servicer receives written notice of the breach from certain parties, thereby triggering a 30- or 60-day cure period; and (iii) the breach remains uncured.  *See, e.g.*, Ex. 6 (DBALT 2006-AR5 PSA) § 8.1(a)(ii).[13]  Sampling will not provide any evidence regarding whether notice of a

---

[12] In any event, Plaintiffs' Rule 26 expert report that was provided on December 2 does *not* even identify anything relating to document exceptions as a goal of Plaintiffs' sampling methodology.

[13] The First Department confirmed the requirements of an EOD in *Commerce Bank*.  There, investors sent a letter to the trustee alleging servicing and re-underwriting breaches and threatened that an EOD would occur if the breaches were not cured in 60 days.  The First

material breach was sent or whether such breach was cured.  Moreover, even if a servicer's

failure to provide notice of R&W breaches could constitute an EOD, the critical issues of proof

on such a claim would be whether HSBC (i) had actual knowledge of R&W breaches, (ii) of

which the servicers had knowledge, and (iii) as to which the servicers failed to provide notice.

Sampling cannot supply this evidence.

## IV.    Sampling Cannot Establish Causation, Damages or Standing.

Sampling cannot establish damages because it also cannot establish causation, a

necessary element of Plaintiffs' damages claim.  Nor can it prove Plaintiffs' standing to claim

damages incurred by prior owners, which entails a transaction-specific choice-of-law analysis.

Sampling also cannot prove the amount of any damages, which is a loan-specific inquiry.

*Causation*.  Plaintiffs must show but-for and proximate causation.  Because the sole

remedy for breach of R&Ws is to enforce the repurchase of the specific breaching loan, to prove

causation Plaintiffs must show that enforcement efforts would have been directed by Holders and

would have succeeded, either through the warrantor's agreement to repurchase the loan or by

litigation.  *See, e.g.*, *Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 11 A.D.3d 232, 234 (1st

Dep't 2004) (claim against an indenture trustee is akin to a legal malpractice claim in which

plaintiff must prove the trustee "would have prevailed in the underlying action").  Moreover,

even if litigation to enforce breaches would have been meritorious, Plaintiffs must prove that any

---

Department held that this letter "was not a notice of an [EOD]; rather, it was a notice of events
that, with time might ripen into [EODs]."  *Commerce Bank*, 141 A.D.3d at 415; *see also*
*Millennium Partners, L.P. v. U.S. Bank, N.A.*, 2013 WL 1655990, at *4 (S.D.N.Y. Apr. 17,
2013), *aff'd sub nom. Millennium Partners, L.P. v. Wells Fargo Bank, N.A.*, 654 F. App'x 507
(2d Cir. 2016) (dismissing claim because plaintiffs "d[id] not plead that the requisite written
notice was given to trigger an [EOD]"); *Sterling Fed. Bank, F.S.B. v. DLJ Mortg. Capital, Inc.*,
2010 WL 3324705, at *8 (N.D. Ill. Aug. 20, 2010) (dismissing post-default claim against trustee
because plaintiff "has not alleged that [servicer]'s alleged failings remained unremedied for 60
days after it received notice in the manner prescribed by the PSAs").

judgment would have been collected.  *See, e.g.*, *Semi-Tech Litig., LLC v. Bankers Tr. Co.*, 353 F. Supp. 2d 460, 482-87 (S.D.N.Y. 2005) (but-for cause requires that "the complained-of loss would not have occurred had the defendant not committed the relevant breach"), *aff'd per curiam*, 450 F.3d 121 (2d Cir. 2006).  Finally, each Plaintiff also will have to prove how much it would have received based on its place in the trust waterfall at the time the funds would have been recovered.

Sampling is fundamentally inconsistent with Plaintiffs' burdens on causation.  Whether any specific enforcement action as to any specific loan would have produced a benefit cannot be established statistically.  Plaintiffs must prove, for each breaching loan, that the warranting party would have repurchased the loan, taking into account the financial position of the warranting party, the state of the economy at the time, and many other relevant factors, or, if the warranting party would not have agreed, that:  (1) the requisite percentage of Holders in the affected trust would have directed and indemnified HSBC to take action; (2) the enforcement action would have succeeded; and (3) any judgment could have been collected.  Sampling to establish a "breach rate" cannot achieve any of these things.  One must know *which loans* included breaches in order to prove causation.

*Damages*.  Because repurchase is the sole remedy under the Agreements, damages must be based on loan-specific amounts that would have been recovered if a repurchase was successful.  Under the Agreements, those amounts would be the unpaid principal balance of each specific loan at the time it should have been repurchased.  Those amounts cannot be determined by sampling.  Nor could sampling establish what a particular Plaintiff would recover after any repurchase proceeds were poured over the relevant waterfall at the relevant time.

*Standing*.  Because Plaintiffs claim damages incurred by prior owners, they must establish their standing to recover.  They must prove either that they received an express assignment of claims from the party who held the security when the claim accrued, or that they succeeded to such claims, based on a choice-of-law analysis.  This requires a fact-specific, security-by-security inquiry.  New York law is unique in providing that claims of prior owners transfer automatically to bond purchasers.  *See* N.Y. Gen. Oblig. Law § 13-107; *Racepoint Partners, LLC v. JP Morgan Chase Bank*, 2006 WL 3044416, at *4 (S.D.N.Y. Oct. 26, 2006).  But whether New York law applies depends on application of choice-of-law factors, which consider a spectrum of significant contacts.  *Lazard Freres & Co. v. Protective Life Ins.*, 108 F.3d 1531, 1538-39 (2d Cir. 1997).  Here, Plaintiffs are located in various states and countries and purchased securities not on any exchange but through a variety of regional, national, and international brokers, in transactions with anonymous selling parties.  Accordingly, sampling would be inconsistent with Plaintiffs' burden to prove standing.  Even if one knows that a certain percentage of loans in a trust included breaches, that fact will not enable any Plaintiff to show that it succeeded to claims of prior owners of the specific security backed by breaching loans.

## CONCLUSION

For the foregoing reasons, the Court should stay expert sampling and re-underwriting of loans, and the parties should focus fact discovery on those issues that are central to a case against a trustee.

20

Dated: December 12, 2016          By:     /s/ *Kevin M. Hodges*
                                          George A. Borden
                                          Kevin M. Hodges (*pro hac vice*)
                                          Andrew W. Rudge  (*pro hac vice*)
                                          Edward C. Reddington (*pro hac vice*)
                                          Vidya Atre Mirmira (*pro hac vice*)
                                          Eric C. Wiener (*pro hac vice*)
                                          WILLIAMS & CONNOLLY LLP
                                          725 Twelfth Street, N.W.
                                          Washington, DC 20005
                                          Telephone: (202) 434-5000
                                          Facsimile: (202) 434-5029
                                          gborden@wc.com
                                          khodges@wc.com
                                          arudge@wc.com
                                          ereddington@wc.com
                                          vmirmira@wc.com
                                          ewiener@wc.com


                                          *Counsel for HSBC Bank USA, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 12, 2016, I electronically filed the foregoing document

with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

all counsel of record in this matter who are on the CM/ECF system.

/s/ *Jeffrey R. Hoops*
Jeffrey R. Hoops