**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROYAL PARK INVESTMENTS SA/NV, <br><br> Plaintiff, <br><br> v. <br><br> HSBC BANK USA, N.A., <br><br> Defendant. | No. 1:14-cv-08175-LGS-SN |
| BLACKROCK BALANCED CAPITAL PORTFOLIO (FI), *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> HSBC BANK USA, N.A., <br><br> Defendant. | No. 1:14-cv-09366-LGS-SN |
| PHOENIX LIGHT SF LIMITED, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> HSBC BANK USA, N.A., <br><br> Defendant. | No. 1:14-cv-10101-LGS-SN |
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> HSBC BANK USA, N.A., <br><br> Defendant. | No. 1:15-cv-02144-LGS-SN |
| COMMERZBANK AG, <br><br> Plaintiff, <br><br> v. <br><br> HSBC BANK USA, N.A., <br><br> Defendant. | No. 1:15-cv-10032-LGS-SN |

**COORDINATED PLAINTIFFS' MEMORANDUM OF LAW**
**<u>SUPPORTING SAMPLING</u>**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

I.   Sampling Is Permissible to Prove Liability and Damages in this Case. ................................. 2

     A.  Courts have long recognized the admissibility of sampling. ....................................... 2

     B.  Responses to the Court's five questions. ................................................................ 5

II.  HSBC "Discovered" Mortgage File Deficiencies and R&W Breaches. ............................... 8

     A.  "Discovery" as used in the PSAs means "knows or should have known." ................. 8

     B.  Illustrative evidence demonstrates HSBC's "discovery" of breaching loans. ............. 9

     C.  HSBC admits that "discovery" means "knows or should have known." .................... 11

     D.  HSBC's cramped views of its PSA duties are unpersuasive. ..................................... 12

         1.  "Discovery" does not equate to "actual knowledge." ........................................... 12

         2.  Other provisions cited by HSBC do not nullify the meaning of
             "discovery." ................................................................................................. 14

III. HSBC Had "Actual Knowledge" of Events of Default and Failed to Proceed as a
     "Prudent Person" in Protecting Trust Assets. ......................................................... 15

IV.  HSBC Has Advanced No Valid Reason to Preclude Sampling Here. ................................. 19

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

## CASES

*Ambac Assurance Corp. v. EMC Mortg. LLC*, 121 A.D.3d 514 (1st Dep't 2014) ........................ 9

*Assured Guar. Mun. Corp. v. DB Structured Prods., Inc.*, No. 650705/2010, 2014 WL
3282310 (N.Y. Sup. Ct. July 3, 2014) .......................................................... 3, 5

*Assured Guar. Mun. Corp. v. Flagstar Bank*, *FSB*, 920 F. Supp. 2d 475 (S.D.N.Y.
2013) ............................................................................ 3, 5, 7, 8, 19

*Bank of N.Y. Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, No. 11
Civ. 0505 (CM) (GWG), 2013 WL 3146824 (S.D.N.Y. June 19, 2013),
*aff'd in relevant part*, 821 F.3d 297 (2d Cir. 2016).......................................... 8

*BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750 (7th Cir. 2011)................................... 2, 20

*Beck v. Manufacturers Hanover Trust Co.*, 218 A.D. 2d 1 (1st Dep't 1995).............................. 16

*Blackrock Core Bond Portfolio v. U.S. Bank N.A.*, 165 F. Supp. 3d 80 (S.D.N.Y.
2016) .................................................................................... 16

*Commerce Bank v. Bank of N.Y. Mellon*, 141 A.D.3d 413 (1st Dep't 2016) .............................. 14

*Deutsche Alt-A Secs. Mortg. Loan Trust, Series 2006-OA1 v. DB Structured Prods.,
Inc.*, 958 F. Supp. 2d 488 (S.D.N.Y. 2013) ....................................................... 8

*Deutsche Bank Nat'l Trust Co. v. WMC Mortg., LLC*, Nos. 3:12-cv-933 (CHS), *et al.*,
2014 WL 3824333 (D. Conn. Aug. 4, 2014) ....................................................... 4

*Enercomp, Inc. v. McCorhill Publ'g, Inc.*, 873 F.2d 536 (2d Cir. 1989)................................... 2

*FHFA v. JPMorgan Chase & Co.*, Nos. 11 Civ. 6188 (DLC), *et al.*, 2012 WL
6000885 (S.D.N.Y. Dec. 3, 2012)................................................................ 4

*FHFA v. Nomura Holding Am.*, 104 F. Supp. 3d 441 (S.D.N.Y. 2015)................................... 4, 7

*FMS Bonds, Inc. v. Bank of N.Y. Mellon*, No. 15 Civ 9375 (ER), 2016 WL 4059155
(S.D.N.Y. July 28, 2016) ...................................................................... 15

*Fusco v. Rome Cable Corp.*, 946 F. Supp. 171 (S.D.N.Y. 1996) ....................................... 12

*Katz v. American Mayflower Life Ins.*, 14 A.D. 3d 195 (1st Dep't 2004) ................................ 13

*LaSalle Bank N.A. v. Citicorp Real Estate, Inc.*, No. 02 Cov. 7867 (BH), 2003 WL
22047891 (S.D.N.Y. Aug. 29, 2003) .............................................................. 8

*LaSalle Bank N.A. v. Nomura Asset Capital Corp.*, 424 F.3d 195 (2d Cir. 2005) ....................... 13

*Law Debenture Trust v. WMC Mortg., LLC*, No. 3:12-cv-1538 (CSH), 2015 WL
9581729 (D. Conn. Dec. 30, 2015)...................................................................... 4

*LNC Inv., Inc. v. First Fidelity Bank, N.A.*, 935 F. Supp. 1333 (S.D.N.Y. 1996) ....................... 16

*MASTR Adjustable Rate Mortg. Trust 2006-OA2 v. UBS Real Estate Secs. Inc.*,
No. 12-cv-7322 (PKC), 2015 WL 764665 (S.D.N.Y. Jan. 9, 2015)............................... 11

*MASTR Asset Backed Sec. Trust 2006-HE3 v. WMC Mortg. Corp.*, No. 0:11-cv-
02542-JRT-TNL, 2012 WL 4511065 (D. Minn. Oct. 1, 2012) .................................. 8, 13

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, No. 602825/08, 2010 WL
5186702 (N.Y. Sup. Ct. Dec. 22, 2010)................................................................. 4

*MBIA Ins. Corp. v. Patriarch Partners VIII, LLC, LLC*, 842 F. Supp. 2d 682
(S.D.N.Y. 2012) ........................................................................................... 15

*Morgan Guar. Trust Co. v. Bay View Franchise Mortg.*, No. 00 Civ. 8613 (SAS),
2002 WL 818082 (S.D.N.Y. Apr. 30, 2002)....................................................... 8, 14

*National Basketball Ass'n v. National Basketball Players Ass'n*, No. 04 Civ. 9528
(GBD), 2005 WL 22869 (S.D.N.Y. Jan. 3, 2005) ........................................... 12

*Nomura Asset Acceptance Corp. Alt. Loan Trust v. Nomura Credit & Capital, Inc.*,
No. 653390/2012, 2014 WL 2890341 (N.Y. Sup. Ct. June 26, 2014).............................. 5

*Osborn v. Bankers Trust Co.*, 5 N.Y.S.2d 211 (N.Y. Sup. Ct. 1938) .......................................... 14

*Platek v. Town of Hamburg*, 26 N.E.3d 1167 (N.Y. 2015) ....................................................... 12

*Policemen's Annuity & Benefit Fund of City of Chi. v. Bank of Am., N.A.*:

    907 F. Supp. 2d 536 (S.D.N.Y. 2012)................................................................. 8

    943 F. Supp. 2d 428 (S.D.N.Y. 2013)..............................................................12-13

*Process Am., Inc. v. Cynergy Holdings, LLC*, -- F.3d --, 2016 WL 5795744
(2d Cir. Oct. 5, 2016) ..................................................................................... 4

*RCN Telecom Servs. v. 202 Centre Street Realty*, 156 F. App'x 349 (2d Cir. 2005) .................... 2

*Retirement Bd. of the Policemen's Annuity & Benefit Fund v. Bank of N.Y. Mellon*,
775 F.3d 154 (2d Cir. 2014)............................................................... 6, 11, 19, 20

*Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59 (2d Cir. 2000)................................................. 12

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, No. 14-cv-4394 (AJN),
2016 WL 439020 (S.D.N.Y. Feb. 3, 2016)........................................................ 9

*Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 109 F. Supp. 3d 587
(S.D.N.Y. 2015) ......................................................................... 12, 15, 16, 18

*Syncora Guarantee Inc. v. EMC Mortg. Corp.*, No. 09 Civ. 3106 (PAC), 2011 WL
1135007 (S.D.N.Y. Mar. 25, 2011) ........................................................... 4

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ........................... 3

*U.S. Bank, N.A. v. UBS Real Estate Sec. Inc.*, No. 12-cv-7322 (PKC) (JCF),
-- F. Supp. 3d --, 2016 WL 4690410 (S.D.N.Y. Sept. 6, 2016) ...................... 11

*U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 875 F.2d 1044 (2d Cir. 1989) .............. 14

*Zenith Radio Corp. v. Hazeltine Research Inc.*, 395 U.S. 100 (1969) ........................... 7


## OTHER AUTHORITIES

Bogert's Trusts and Trustees, § 182 (Sept. 2016 update) ........................... 14

Federal Judicial Center, *Manual for Complex Litigation*, § 11.493 (4th ed. 2004) ................. 1, 3

*Freemont Inv. & Loan Brea, Cal.*, *In re*, Order to Cease & Desist, No. 07-035b
(F.D.I.C. 2007), www.fdic.gov/bank/individual/enforcement/2007-03-00.pdf .............. 10

Paul S. Levy and Stanley Lemeshow, *Sampling of Populations:  Methods and
Applications* (4th ed. 2008) ............................................................... 1

Peter V. Marsden and James D. Wright, *Handbook of Survey Research* (2d ed. 2010) ................. 1

*Securitization of Financial Assets* § 9.03 (3d ed.) ...................................... 16

## INTRODUCTION

"Sampling" is a scientifically valid method of using a subset of a population to estimate some characteristic of that population, such as a loan breach rate, without having to examine each element of the population because the calculation of a statistic from sample data is then extrapolated to the entire population.  As recognized and well-documented in academic and business research and by courts, sampling provides objectivity because it is a scientific and replicable process, and sampling further provides efficiency and conserves resources by providing reliable and objective extrapolation of the analysis of a sample to a population without having to examine each and every element of the population — here, each loan in a trust.[1]

The Supreme Court and numerous courts within this District have endorsed sampling to prove liability and damages, including in RMBS cases.  As detailed below, plaintiffs will use scientifically valid sampling to prove both the trustee's liability and to establish and prove damages.  Specifically, plaintiffs will use sampling to (i) establish the existence of underlying breaches of representations and warranties in the loan pools; (ii) prove liability based on what a prudent person would have found had it investigated upon "discovery" of such breaches; (iii) prove liability based on what a prudent person would have found had it investigated upon gaining "actual knowledge" of events of default in proceeding as a prudent person; and (iv) establish and prove damages.

Evidence at summary judgment and trial will show that HSBC disregarded massive indications that the loans under its trust were defectively underwritten and failing at alarming rates.  Sampling on a statistically significant basis for each trust, together with loan re-

---

[1] Levy & Lemeshow, *Sampling of Populations:  Methods and Applications* at 22 (4th ed. 2008); Marsden & Wright, *Handbook of Survey Research* at 3 (2d ed. 2010); Manual for Complex Litigation § 11.493 (4th ed. 2004).

underwriting and extrapolation of the breach rates, will show with reliable statistical probability the breach rates HSBC would have found had it reasonably investigated as required under the circumstances by the trust agreements, thus proving liability by a preponderance of the evidence.

Case law uniformly has construed "discovery" to require residential mortgage-backed ("RMBS") trustees to investigate upon learning facts constituting inquiry notice of breaching loans. Moreover, upon an event of default, HSBC had a heightened fiduciary duty to act as a "prudent person" in managing her own affairs, and a prudent person would have investigated and enforced representation and warranty breaches, including as some RMBS trustees routinely did by sampling the underlying loans. As HSBC has repeatedly and successfully argued, sampling and re-underwriting are consistently recognized under New York law and in this Circuit as an appropriate method of establishing liability and damages in RMBS cases involving large pools of loans. The Court should order sampling and re-underwriting to proceed.

## ARGUMENT

**I.    Sampling Is Permissible to Prove Liability and Damages in this Case.**

**A.    Courts have long recognized the admissibility of sampling.**

As in any breach-of-contract case, plaintiffs must prove liability and damages by a "preponderance of the evidence." *Enercomp, Inc. v. McCorhill Pub.*, 873 F.2d 536, 542 (2d Cir. 1989). "[C]ausation in fact is established if the defendant's breach of duty was a substantial factor in producing the damage." *RCN Telecom Servs. v. 202 Centre Street Realty*, 156 F. App'x 349, 351 (2d Cir. 2005). "Once a plaintiff presents evidence that he suffered the sort of injury that would be the expected consequence of the defendant's wrongful conduct, he has done enough to withstand summary judgment on the ground of absence of causation.… The causal relation between a defendant's act and a plaintiff's injury … need only be probable." *BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 758-59 (7th Cir. 2011) (Posner, J.).

As the Supreme Court recently explained, "[a] representative or statistical sample, like all evidence, is a means to establish or defend against liability….  In many cases, a representative sample is 'the only practicable means to collect and present relevant data' establishing a defendant's liability."  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016) (quoting Manual for Complex Litigation § 11.493).  So too here, as re-underwriting each of the tens of thousands of loans backing the trusts would be prohibitively expensive and time consuming.  Sampling efficiently conserves resources by providing reliable and objective extrapolation of the analysis of a sample to a population without having to examine each and every element.

Sampling has been widely accepted in this District (and elsewhere) to prove a defendant was probably liable and caused the asserted quantum of damages.  *E.g.*, *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475, 512 (S.D.N.Y. 2013) ("Sampling is a widely accepted method of proof in cases brought under New York law, including in cases relating to RMBS and involving repurchase claims.").  Judge Rakoff, presiding over a bench trial in *Flagstar*, "accept[ed] sampling as an appropriate method of proof in this case and … largely adopt[ed] [the re-underwriter's] findings of material defects," thus "find[ing] that the loans underlying the Trusts here at issue pervasively breached Flagstar's contractual representations and warranties."  *Id.*  The court held that "the evidence proffered by [plaintiff's sampling and damages experts] is clear, credible, and convincing ….  [T]he sample size suggested by [plaintiff's sampling expert] provided an adequate basis for assessing whether the Trusts as a whole complied with or breached Flagstar's representations and warranties, and [plaintiff's damages expert] provided a solid basis for calculating the damages occasioned by any such breaches".  *Id.* at 501.  The clear majority of courts are in accord.[2]

---

[2] *See, e.g.*, *Assured Guar. Mun. Corp. v. DB Structured Prods., Inc.*, 2014 WL 3282310, at *6, *8 (N.Y. Sup. Ct. 2014) ("sampling and expert evidence may be used" at trial; forcing parties "to re-

In RMBS cases, the process entails an expert drawing a sample of loans capable of yielding statistically significant conclusions about each relevant loan pool. A re-underwriting expert next determines how many loans in the sample breach one or more R&Ws. The sampling expert then extrapolates the breach rate to the entire loan pool based on statistically accepted methodologies that typically provide a confidence level of 95% with a margin of error.[3]

Plaintiffs' damages experts then uses the extrapolated breach rate, together with the loan values and waterfall structure of the trust, to calculate damages. Where a plaintiff "has proven the fact of damages by a preponderance of the evidence, the burden of uncertainty as to the amount of damage is upon the wrongdoer…. Therefore, a plaintiff need only show a stable foundation for a reasonable estimate of the damages incurred as a result of the breach … [, and] the burden of any uncertainty as to the amount of damages is on the breaching party." *Process Am., Inc. v. Cynergy Holdings, LLC*, -- F.3d --, 2016 WL 5795744, at *12 (2d Cir. 2016).

---

underwrite all of the loans is commercially unreasonable;" "sampling may be used to compute damages"); Ex. C, at 16-17, *SACO I v. EMC Mortg. LLC* (N.Y. Sup. Ct. 2015) (ruling that "the use of statistical sampling to prove liability and damages on their claims is consistent with the terms of the contract governing the transactions, including but not limited to the PSAs"); *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 2010 WL 5186702, at *1 (N.Y. Sup. Ct. 2010) ("[s]tatistical sampling is a widely used method [in legal proceedings] to present evidence from a large population of data" and "[i]t is undisputed that the use of statistical sampling is generally accepted in the scientific community"); Ex. D, at 1, *Home Equity Mortg. Trust 2006-1 v. DLJ Mortg. Capital, Inc.* (N.Y. Sup. Ct. 2013) ("ORDERED that plaintiffs may use a statistical sampling to prove liability and damages on all of their claims"); *FHFA v. JPMorgan Chase & Co.*, 2012 WL 6000885, at *1 (S.D.N.Y. 2012) (similar); Ex. E, at 1-2, *NCUA v. Morgan Stanley & Co.* (S.D.N.Y. 2014); *Syncora Guarantee Inc. v. EMC Mortg. Corp.*, 2011 WL 1135007, at *6 n.4 (S.D.N.Y. 2011) (approving sampling and holding that the defendant "cannot reasonably expect the Court to examine each of the 9,871 [mortgage] transactions to determine whether there has been a breach, with the sole remedy of putting them back one by one"); *Law Debenture Trust v. WMC Mortg., LLC*, 2015 WL 9581729, at *7 (D. Conn. 2015); *Deutsche Bank Nat'l Trust Co. v. WMC Mortg., LLC*, 2014 WL 3824333, at *9 (D. Conn. 2014) ("statistical evidence is an accepted and useful way of proving liability (and by extension, damages) in an RMBS case.").

[3] Thus, a breach rate of 50% in the sample extrapolated statistically to the entire pool at a confidence level of 95% plus or minus 10% means that the breach rate in the entire pool has a 95% probability of falling between 40% and 60%, which provides a rational basis for a jury to find liability on that amount of loans. *See FHFA v. Nomura Holding Am.*, 104 F. Supp. 3d 441, 494 (S.D.N.Y. 2015) (Cote, J., presiding over an RMBS bench trial) ("A sample of 100 loans … permits results to be stated with a 95% confidence level, *i.e.*, with maximum margins of error of +/10 percent.").

Nothing alters those standard burdens and methods of proof here.  Indeed, HSBC successfully has advocated in repurchase cases it has brought against loan sellers that "New York courts routinely accept 'sampling' to extrapolate breach rates across mortgage loan pools," asserting that "under New York law, there is no requirement that a Plaintiff specifically identify each breaching Mortgage Loan to assert a claim for damages thereon."[4]  And New York and federal "[c]ourts have generally held that the contractual notice requirement that triggers the seller's repurchase obligation is satisfied by a plaintiff's breach notice that refers to specific allegedly defective loans identified by a *statistical sampling of the loan pool*, or other loan-level investigation, at least where the notice also demands repurchase of all other defective loans."[5]

## B.  Responses to the Court's five questions.

**1.**  HSBC breached its contractual duties under pooling and servicing agreements or indentures (collectively "PSAs") in three overarching ways.[6]  *First*, HSBC "discover[ed]" that the "Mortgage File[s]" necessary to enforce foreclosures on defaulted loans contained material deficiencies."  Ex. A (typically PSA § 2.3(a)).[7]  *Second*, HSBC "discover[ed]" breaches of the loan sellers' representations and warranties ("R&Ws") that materially and adversely affected

---

[4] Ex. F, HSBC Br. at 10 n.10, *Ace 2006-HE4 by HSBC as Trustee v. DB Structured Prods.* (N.Y. Sup. Ct. June 4, 2013).  *See* Ex. G, Opinion at 9, *Ace 2006-HE4 by HSBC as Trustee v. DB Structured Prods.* (N.Y. Sup. Ct. 2014) (agreeing with HSBC's position on sampling and denying "motion to dismiss all loans beyond the 912 loans identified in the Trustee's Summons"); Ex. H, HSBC Br. at 10-11, *Ace HELT 2007-HE1 v. DB Structured Prods., Inc.* (N.Y. Sup. Ct. June 6, 2013) (similar brief from HSBC).

[5] *Nomura Asset Acceptance Corp. Alt. Loan Trust v. Nomura Credit*, 2014 WL 2890341, at *16 (N.Y. Sup. Ct. 2014) (emphasis added; collecting numerous cases); *see also Flagstar*, 920 F. Supp. 2d at 513 ("Court finds that Flagstar was made aware of Assured's claim of pervasive and material breaches of the representations and warranties"); *Assured Guaranty*, 2014 WL 3282310, at *6 (at summary judgment, "Assured's notification to Deutsche Bank of 'pervasive breaches' affecting the loans was sufficient to render the defendant constructively aware — or, at minimum put [it] on inquiry notice of the substantial likelihood that these breaches extended beyond the specified loans into the broader loan portfolio").

[6] "1. What is the substance of the Plaintiffs' breach of contract claims and how will the sampling results be used to support those claims?"  "Order" at 3, 15-cv-02144 (Nov. 15, 2016), ECF No. 180.

[7] Exhibit A charts pertinent contractual provisions for the 24 Bellwether trusts.  *See* Order at 4.

certificateholders' interests. *Id.* *Third*, HSBC gained "actual knowledge" of Events of Default ("EoDs"), triggering HSBC's duty to act as a prudent person to protect certificateholders' interests. *Id.* (typically PSA §§ 8.1 or 9.1). In each instance, HSBC failed to enforce its obligations under the PSAs to make the loan sellers (or other responsible parties) cure or repurchase breaching loans. *See infra* Parts II & III. Sampling and loan re-underwriting are relevant to prove each breach of duty, as well as damages. *See supra* Part I.A.

**2.** Evidence of R&W breaches frequently identifies widespread problems with an originator, sponsor, or entire trust, sometimes without identifying specific loans. Such aggregate evidence can establish "discovery" for each particular loan in a trust.[8] *See infra* Part II.B. Even absent "discovery," upon actual knowledge of EoDs, HSBC, acting as a prudent person, would have found the breaching loans that sampling and re-underwriting will show. *See infra* Part III.

**3.** Sampling will not be used to establish a duty to investigate.[9] That duty arises upon inquiry notice of breaching loans under the settled meaning of "discovery," *see infra* Part II, and upon "actual knowledge" of EoDs, triggering a "prudent person" standard, *see infra* Part III. As the Second Circuit held in *Retirement Bd. of the Policemen's Annuity & Benefit Fund v. Bank of N.Y. Mellon*, 775 F.3d 154, 162 (2d Cir. 2014), proof of liability requires plaintiffs to "show which trusts actually had deficiencies that required [the trustee] to act in the first place." Sampling will establish those predicate breaches for purposes of liability. Moreover, the information in the trustee's files (to which investors did not have access), together with the

---

[8] "2. If there is no evidence with respect to a particular loan that the Trustee was on notice of or discovered any breach of the underlying Representations and Warranties, what role will sampling play to support Plaintiffs' claim with respect to the particular loan?" *Id.* at 3.

[9] "3. Do Plaintiffs intend to use sampling evidence to prove that HSBC had a duty to investigate loans in the pool (that is, that such evidence implicates an inquiry notice)? If so, what is the legal authority for HSBC's duty?" *Id.*

nature and quantities of the breaches, evidence of the poor performance of the loans, severe credit ratings downgrades, publicly-known facts regarding the originators' systemic violations of representations and warranties, and the trustee's own allegations and proof in certain repurchase cases concerning the same loan originators confirming that systemic breaches infected entire loan pools, will weigh in the jury's decision whether HSBC "discovered" R&W breaches or should have found them under a prudent-trustee duty.  Indeed, the rate of such breaches will be "enormous," as Judge Cote found in a bench trial based on sampling, re-underwriting, and extrapolation of breach rates to the loan pools for each trust.  *Nomura*, 104 F. Supp. 3d at 453.

   **4.**  Plaintiffs need not prove HSBC would have sampled the *same* loans and found the same "exact defects," only that it would have uncovered similar breach rates in the loans at issue.[10]  Thus, Plaintiffs will show by a preponderance of the evidence the effects of the failure to undertake that necessary investigation.  *See supra* Part I.A.; *infra* Part IV.[11]

   **5.**  Expert re-underwriting will show sampled loans with "a defect [that] had a material and adverse effect."[12]  Plaintiffs' experts will then extrapolate breach rates to the relevant pool.[13]

---

   [10] "4. Assuming that Plaintiffs establish a duty to investigate with respect to each loan in the pool, do Plaintiffs have to show that a diligent investigation would have uncovered the exact defect on which they are relying to support their argument that HSBC had a duty to seek repurchase or cure the defect?  If so, how will sampling establish both the duty to investigate and the effects of the failure to undertake that investigation?"  *Id.*

   [11] Indeed, "[t]he very purpose of creating a representative sample of sufficient size is so that, despite the unique characteristics of the individual members populating the underlying pool, the sample is nonetheless reflective of the proportion of the individual members in the entire pool exhibiting any given characteristic."  *Flagstar*, 920 F. Supp. 2d at 512.  Analogously, an antitrust plaintiff need not prove the exact sales lost to defendant's anticompetitive conduct, only that it probably caused a certain quantum of lost sales.  *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 124 (1969).

   [12] "5. Do Plaintiffs have the burden of showing that a precise defect for a particular loan materially and adversely affected the value of the loan and therefore required cure or repurchase?  If so, how will sampling be used to show that a defect had a material and adverse effect?"  Order at 4.

   [13] The Court further asked (at 4) "whether using Bellwether loans is an appropriate alternative mechanism to sampling, and how Bellwether loans could or could not further any claims or defenses."  Plaintiffs believe that sampling is the better approach.  A "bellwether" approach would not have the statistical reliability of sampling and could not be extrapolated to the broader pool of loans, thus leading

## II.    HSBC "Discovereds" Mortgage File Deficiencies and R&W Breaches.

### A.    "Discovery" as used in the PSAs means "knows or should have known."

"As several courts have observed in cases involving securitized mortgage loans, 'A party "discovers" a breach when it knows or should know that the breach has occurred.'"  *Bank of N.Y. Mellon Trust Co. v. Morgan Stanley Mortg. Capital, Inc.*, 2013 WL 3146824, at \*19 (S.D.N.Y. 2013), *aff'd in relevant part*, 821 F.3d 297 (2d Cir. 2016) ("*BNYM*").  Indeed, it has been held since at least 2002 that "discovery" as used in a PSA means that, "once a party becomes aware of the relevant facts, a duty arises … to pick up the scent and nose to the source.  If the quest confirms this suspicion, then [it] must" act on its rights "with reasonable dispatch."  *Id.*  The Second Circuit in *BNYM* held that "the district court correctly observed [that] the law charges a party with discovery of [an R&W] breach … after it has had a reasonable opportunity to investigate and confirm its suspicions [of the breach]."  821 F.3d at 310.  Thus, the Second Circuit affirmed the district-court interpretations of RMBS trust agreement language pertaining to "discovery" by trustees of R&W breaches made by sellers.[14]

Holding the trustee to this discovery standard makes perfect under PSA § 2.3 (typically),

---

to further delays in resolution of these actions.

[14] *See Deutsche Alt-A Secs. Mortg. Loan Trust, Series 2006-OA1 v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488, 494 (S.D.N.Y. 2013) (construing "discovery" in a PSA to mean "knew, or should have been aware" of R&W breaches); *Flagstar*, 920 F. Supp. 2d at 512-13 (interpreting similar PSA language to mean "constructively aware" or "inquiry notice"); *Policemen's Annuity & Benefit Fund of City of Chi. v. Bank of Am., N.A.*, 907 F. Supp. 2d 536, 553-54 (S.D.N.Y. 2012) (holding that a trustee aware of "facts 'suggestive of a breach … was required to 'pick up the scent and nose to the source' — *i.e.*, to investigate any suspicions about the loans … in the Trusts," and "had no right to" proceed as though "living under a rock … given its role and responsibilities"); *MASTR Asset Backed Sec. Trust 2006-HE3 v. WMC Mortg. Corp.*, 2012 WL 4511065, at \*6-7 (D. Minn. 2012) (upon "[l]earning of facts … suggestive of a breach … it becomes incumbent [upon a party subject to obligations triggered by discovery] to pick up the scent and nose to the source"; holding that the Trustee "was duty-bound to investigate its suspicions" and was "constructively aware of the breaches"); *LaSalle Bank N.A. v. Citicorp Real Estate, Inc.*, 2003 WL 22047891, at \*6 (S.D.N.Y. 2003) ("[a] party 'discovers' a breach when it knows or should know [based on awareness of 'red flags'] that the breach has occurred"); *Morgan Guar. Trust Co. v. Bay View Franchise Mortg.*, 2002 WL 818082, at \*5 (S.D.N.Y. 2002).

which "confers upon the trustee full responsibility for enforcing the repurchase protocol upon [certificateholders'] behalf." *Ambac Assurance Corp. v. EMC Mortg. LLC*, 121 A.D.3d 514, 519 (1st Dep't 2014); *see also Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, 2016 WL 439020, *4-6 (S.D.N.Y. 2016) (rejecting assertion that the "PSA grants [the trustee] the *right* to enforce breaches of R&Ws … [but] that it has no *obligation* to do so" and finding that the trustee has "an obligation to enforce breaches of R&Ws").

### B. Illustrative evidence demonstrates HSBC's "discovery" of breaching loans.

Although fact depositions have yet to begin, documents produced by HSBC illustrate how plaintiffs will meet their burden to show "discovery" of breaching loans at summary judgment, and how sampling will thereafter be used to prove liability and damages.

For example, on March 7, 2007, as the financial crisis began to unfold, Goldman Sachs, as securities underwriter, wrote HSBC's Corporate Trust and Loan Agency ("CTLA") to provide a "Notice of Breaches of Representations":

> Goldman Sachs … believes that the well-publicized recent developments in the subprime and Alt-A mortgage market call for a heightened level of attention to our securitizations of [such] mortgage loans by the trustees for these transactions. This will serve as *notice that our review* has indicated that there may exist *breaches of the originators' representations and warranties* with respect to the mortgage loans in the transactions listed on the attached page, for which you are the trustee or securities administrator. *We ask that you undertake a review* of the loans in these [RMBS] to identify instances of breach that may be known to you. In this regard, *we would be happy to work with you to identify specific loans that may be affected* and to discuss an appropriate course of action. We believe that *action by you may be necessary to avoid potential losses*.[15]

Goldman's Notice listed 14 trusts (including one in the Bellwether, FHLT 2006-C) backed by loans from the same originator, Fremont Investment & Loan.[16]  On March 15, 2007,

---

[15] Ex. I (HSBCCLTA0630718) (emphases added).

[16] The FDIC at that time recently had ordered Fremont to "cease and desist" unsafe practices, including "operating the Bank without effective risk management policies and procedures [for] subprime

HSBC CTLA Vice President Thomas Musarra emailed Wells Fargo, the custodian for all 14 of the listed Fremont deals, explaining that, "[b]efore we respond to Goldman, we would like to see current exception reports for the deals in question." Ex. J (HSBCCTLA0630713).

Exception reports were created to identify deficiencies in the Mortgage Files, such as a deficient or missing note, deed, assignments, etc. The exception report for FHLT 2006-C shows 4,763 exceptions across 3,274 loans — nearly half of the 7,806 loans in the trust. *See* Ex. K (HSBCCTLA0000577). By asking for the exception report, Musarra indicated his understanding that loans with Mortgage File deficiencies were more likely to breach R&Ws as well.

Nevertheless, Musarra responded to Goldman saying HSBC had no duty to act:

[HSBC as Trustee], has limited and expressly detailed responsibilities in connection with an originator's breach of its [R&Ws]. These responsibilities do not include reviewing the mortgage loan files in connection with a prospective breach. Furthermore, the responsibilities of the Trustee are not triggered until the Trustee receives written notice of a specific instance of [a R&W] breach.

Therefore, as there is no express requirement under the terms of the [PSAs], the Trustee can not perform the review requested in the March 7 Notice. In addition, because the March 7 Notice fails to reference any specific breach by an originator of its [R&Ws], the Trustee is unable to perform any of its relevant responsibilities under the [PSAs] at this time.[17]

This evidence plainly illustrates how a reasonable jury could infer HSBC's "discovery" of material defects in the Mortgage Files and breaches of R&Ws, which is all plaintiffs need show to prevail at trial. HSBC cannot avoid "discovery" by its conscious disregard and attempt to circumvent its trustee obligations. Evidence like the Goldman Notice establishes HSBC's inquiry notice of breaches in the underlying loan collateral, triggering a duty to investigate those

---

mortgage lending." www.fdic.gov/bank/individual/enforcement/2007-03-00.pdf.

[17] Ex. L (HSBCCTLA1001660). A multitude of evidence concerning other Bellwether trusts similarly indicates that HSBC discovered both specific breaching loans in the trusts at issue and facts showing that other originators, like Fremont, had pervasively supplied loans in breach of R&Ws.

loans, *see supra* Part II.A., thereby satisfying *Policemen's Annuity*'s "loan-by-loan, trust-by-trust" requirement.  775 F.3d at 162.  This is particularly true when the evidence pertains to a single originator that supplied numerous loans to the trust.  Sampling and loan re-underwriting will be used in addition to this evidence to prove liability by proving the nature and scope of the breaches HSBC would have found, and the damages its failure to take action caused Plaintiffs.[18]

### C.  HSBC admits that "discovery" means "knows or should have known."

HSBC repeatedly has argued that a party to a PSA (*including* an RMBS trustee) "discovers" a breach "when it knew *or should have known* that a breach had occurred."[19] Indeed, when RMBS trustee Deutsche Bank sued HSBC seeking repurchase of breaching loans HSBC had sold to the trust at issue, HSBC (represented by the same counsel as here) argued that

---

[18] In *MASTR Adjustable Rate Mortgage Trust 2006-OA2 v. UBS Real Estate Securities Inc.*, 2015 WL 764665, at *12 (S.D.N.Y. 2015), Judge Castel rejected the plaintiff trustee's pervasive breach theory in a repurchase case in part because its notices to the loan seller "did not assert a pervasive breach across the … trusts."  The trustee's failure to provide the proper notice in that case in no way impacts plaintiffs' claims here that evidence of pervasive breaches establishes "discovery" by the trustee (*i.e.*, inquiry notice and thus a duty to investigate) with respect to every loan in a trust.  Judge Castel did not construe the "discovery" standard in the PSA before him, and to the extent the court's decision may be read to indicate that "discovery" cannot apply to pervasive breaches, it is out of step with the weight of New York case law repeatedly authorizing a trustee plaintiff to pursue repurchase of every breaching loan in a trust by using sampling to avoid the commercially unreasonable proposition of re-underwriting tens of thousands of loans, so long as it provided notice of a pervasive breach to the loan seller.  *See supra* p. 5 & n.5.  In any event, this case is not about what a trustee must prove or how it must do so, but rather about HSBC's utter failure to do anything to protect the trusts upon "discovery" of massive R&W breaches.

Plaintiffs also may establish "discovery" by circumstantial evidence of HSBC's reckless indifference.  *U.S. Bank N.A. v. UBS Real Estate Sec.*, 2016 WL 4690410, at *28 (S.D.N.Y. 2016).

[19] *See* Ex. H, HSBC Br. at 9-10 & n.10, *Ace HELT 2007-HE1* (arguing that DBSP "discovered the breaches when it knew or should have known that a breach had occurred").  *See also* Ex. M, HSBC Br. at 11 n.18, *Ace HELT 2007-ASAP2 v. DB Structured Prods., Inc.* (N.Y. Sup. Ct. Jan. 17, 2014) (quoting *Morgan Guaranty* for proposition that "a party 'discovers' a breach when it knows or *should know* that the breach has occurred"); Ex. N, HSBC Br. at 14 n.19, *Ace 2007-WM1 v. DB Structured Prods., Inc.* (NY Sup. Ct. Sept. 27, 2013) (same); Ex. O, HSBC Br. at 11 n.11, *Ace 2007-HE3 v. DB Structured Prods., Inc.* (S.D.N.Y. June 14, 2013) (same); Ex. P, HSBC Br. at 18 n.15, *Ace 2007-WM2, -HE4, -HE5 v. DB Structured Prods., Inc.* (S.D.N.Y. Oct. 25, 2013) (same); Ex. Q, HSBC Br. at 10 n.5, *Deutsche Alt-A Secs. Mortg. Loan Trust, 2006-OA1 v. DB Structured Prods., Inc.* (S.D.N.Y. Apr. 15, 2013) (same); Ex. R, HSBC Br. at 22, *Deutsche Bank Nat'l Trust Co. v. HSBC* (N.Y. Sup. Ct. Jan. 13, 2014) (same HSBC counsel as here) (citing *Morgan Guaranty* and arguing that prompt notice requirement not satisfied because trustee "knew or should have known of [the] alleged breaches").

the claim should be dismissed for failure to provide "prompt written notice" "[u]pon discovery" once the trustee "knew or should have known of those alleged breaches."  Ex. R, at 21-22.

### D.  HSBC's cramped views of its PSA duties are unpersuasive.

In these cases, however, HSBC inconsistently has asserted that "discovery" equates to "actual knowledge" and in effect should be understood to mean the trustee had no duty to investigate even after receiving substantial evidence of R&W breaches or Mortgage File exceptions.  HSBC's positions on PSA construction are erroneous.  Even if there were ambiguity, such disputes are for the jury to resolve at trial.  *See*, *e.g.*, *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000).

#### 1.  "Discovery" does not equate to "actual knowledge."

Here, HSBC claims that "discovery" in PSA § 2.3 should be understood to mean "actual knowledge," which is a term used elsewhere, such as in PSA §§ 7.1, 8.1, or 9.1 with respect to EoDs, *see* Ex. A.  HSBC is wrong for at least five reasons.

*First*, such "use of different terms in the same agreement … implies that they are to be afforded different meanings."[20]  If the parties to the PSAs intended to condition HSBC's repurchase obligations on actual knowledge of R&W breaches, they would have said so.[21]

---

[20] *Platek v. Town of Hamburg*, 26 N.E.3d 1167, 1173 (N.Y. 2015); *see also National Basketball Ass'n v. National Basketball Players Ass'n*, 2005 WL 22869, at *8 (S.D.N.Y. 2005) ("parties did not intend … for these different terms to have exactly the same meaning.").

[21] Judge Scheindlin's opinion denying HSBC's motion to dismiss did use the phrase "actual knowledge" in connection with R&W breaches in response to an argument by "HSBC … that all of plaintiffs' allegations amount only to constructive knowledge of breaches, and not actual knowledge, as required by the Agreements," and "that it had no obligation to undertake an investigation."  *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 109 F. Supp. 3d 587, 602-03 & n.84 (S.D.N.Y. 2015).  But the Court never ruled that "discovery" means "actual knowledge," and merely held, "assuming *arguendo* that [HSBC] had no duty to investigate," "it is plausible to infer that HSBC in some way gained actual knowledge of breaches based on plaintiffs' allegations."  *Id.* at 603 n.84.  *See Fusco v. Rome Cable Corp.*, 946 F. Supp. 171, 175-76 (N.D.N.Y. 1996) (no law of the case for an issue the "court did not expressly decide" and that "was not necessary for the court to determine").  Other PSAs not at issue here, by contrast, use "actual knowledge" (and uniquely apply that standard to trustees) in the equivalent to § 2.3(a) of their respective agreements.  *See Policemen's Annuity & Benefit Fund of City of Chi. v. Bank*

*Second*, HSBC entered into the PSAs *after* courts had already construed "discovery" in a PSA to mean "knows or should know."  *See supra* n.14 (citing *LaSalle* and *Morgan Guaranty*).  The PSA drafters were sophisticated parties, represented by counsel, who knew the definition of "discovery."  That judicially construed meaning is ordinarily "preferred" and controls here.  *Katz v. American Mayflower Life Ins.*, 14 A.D. 3d 195, 206 (1st Dep't 2004).

*Third*, some courts have dismissed repurchase actions for lack of "prompt notice" by the trustee, *see* PSA § 2.3(a), after being placed on inquiry or constructive notice.  *See e.g.*, *MASTR Trust 2006-HE3*, 2012 WL 4511065, at *7 (holding trustee "constructively aware of," and thus "duty-bound to investigate," potential breaches more promptly).  Indeed, HSBC has successfully used this defense against an RMBS trustee that sued HSBC as a loan seller.  *Supra* pp.11-12.  To accept that HSBC as trustee had no obligation to act with respect to R&W breaches or Mortgage File deficiencies until it receives actual knowledge, when any repurchase action under the *same* PSA language could be deemed untimely if HSBC failed to act upon "discovery," would render the repurchase remedy meaningless and leave investors unprotected based on inconsistent and irreconcilable interpretations of the *same* term in the *same* PSA provisions.[22]

*Fourth*, the PSAs must be interpreted in light of their purpose for a trustee to oversee the trust to ensure that investors received their cash flow payments and properly manage and preserve trust property.  Notably, unlike HSBC, investors — the trust beneficiaries — are not signatories to the PSAs and did not negotiate its terms.  Any "uncertainty or ambiguity of meaning must be construed in favor of the beneficiary [investors] ... and against the [trustee] who

---

*of Am., N.A.*, 943 F. Supp. 2d 428, 433, 442 (S.D.N.Y. 2013) (cited in *Royal Park*, 109 F.3d at 602).

[22] *See LaSalle Bank N.A. v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (if possible, courts should avoid any reading "rendering at least one clause superfluous or meaningless").

prepared the instrument."[23]

*Fifth*, HSBC erroneously has asserted that "discovery" in a PSA cannot be construed to require a trustee, upon inquiry notice, to nose to the source of the problem, citing *Commerce Bank v. Bank of N.Y. Mellon*, 141 A.D.3d 413, 415 (1st Dep't 2016). But the court's discussion there was limited to servicer EoDs, which in that case (as here) were subject to a different standard of "actual knowledge," not "discovery." *See id.* ("nose to the source of the systematic improper *servicing* and administration conduct" (emphasis added; alteration omitted)). The court, moreover, rejected only an "*extra-contractual*" duty to "nose to the source" in discussing the appellant's *tort* claim. It did not limit or distinguish any of the extensive authorities from the Second Circuit and this District (*see supra* Part II.A) construing the word "discovery" to impose a *contractual* duty to "nose to the source" upon inquiry notice of R&W breaches.

### 2.   Other provisions cited by HSBC do not nullify the meaning of "discovery."

In repurchase cases, HSBC has sought preemptively to assert that, although the loan sellers are subject to the standard that "[a] party 'discovers' a breach when it knows or should know that the breach has occurred" (citing *Morgan Guaranty*, 2002 WL 818082, at *5), "[t]he Trustee is not held to the same 'discovery' standard under the agreements." Ex. H, at 10 n.10. But the two PSA provisions do not support construing "discovery" one way for the loan seller and differently for the trustee. Both provisions concern the "actual knowledge" standard for EoDs in PSA §§ 7 & 8 — not "discovery" of R&W breaches and Mortgage File deficiencies discussed separately in the PSA § 2.3(a).[24]

---

[23] *Osborn v. Bankers Trust Co.*, 5 N.Y.S.2d 211, 215 (N.Y. Sup. Ct. 1938); *see* Bogert's Trusts and Trustees, § 182 n.7 (same); *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 875 F.2d 1044, 1050 (2d Cir. 1989) (construing ambiguous terms in favor of non-drafter in dispute involving sophisticated parties).

[24] *See* Ex. A, PSA § 7, 8, or 9 ("Trustee shall not be deemed to have notice of any default … unless a Responsible Officer of the Trustee has actual knowledge thereof."); *see, e.g.*, No. 14-8175, ECF No. 28-4 (PSA §§ 9.2(a)(v), 9.1(i)) ("[P]rior to the occurrence of a Master Servicer Event of Default,"

Even assuming those provisions in PSA §§ 7, 8, or 9 could be interpreted as generally applicable beyond the servicer EoD context (they cannot), they easily coexist with the well-established definition of "discovery" requiring HSBC to "nose to the source" of an R&W breach *after* it is placed on inquiry notice of a potential breach.  Specifically, the provisions indicate that HSBC would have no duty to investigate *before* it comes into possession of facts constituting inquiry notice of breaching loans.  Accordingly, those non-investigatory provisions cannot be read to nullify the settled construction of "discovery" to mean "know or should have known," or to produce the absurd result that "discovery" means different things for different parties (and different things for HSBC depending upon the role it is serving).

## III.   HSBC Had "Actual Knowledge" of Events of Default and Failed to Proceed as a "Prudent Person" in Protecting Trust Assets.

The PSAs additionally impose heightened duties following an EoD requiring HSBC to exercise its rights and powers using the same degree of care and skill as a prudent person under the circumstances in the conduct of his or her own affairs.  Ex. A (typically §§ 8.1 or 9.1).

As Judge Scheindlin held, following an EoD, HSBC's "obligations come more closely to resemble those of an ordinary fiduciary, regardless of any limitation or exculpatory provisions contained in the indenture," and "it now must, as prudence dictates, exercise those singularly conferred prerogatives in order to secure the basic purpose of any indenture, the repayment of the underlying obligation."  *Royal Park*, 109 F. Supp. 3d at 597; *see also FMS Bonds, Inc. v. Bank of N.Y. Mellon*, 2016 WL 4059155, at *14 (S.D.N.Y. 2016) ("After an event of default, the indenture trustee's fiduciary duties expand by operation of New York common law … and the

---

HSBC (1) "shall [not] be bound to make any investigation into the facts [and] matters stated in any [document]," and (2) "may conclusively rely … upon any certificates or opinions furnished to [the trustee].").  The specific language in § 2.3, moreover, controls the meaning of that more general language in § 7.1.  *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 842 F. Supp. 2d 682 (S.D.N.Y. 2012).

indenture trustee's obligations come more closely to resemble those of an ordinary fiduciary.");
*Blackrock Core Bond Portfolio v. U.S. Bank N.A.*, 165 F. Supp. 3d 80, 102-03 (S.D.N.Y. 2016)
(holding that "the Indentures contain a clear and unmistakable post-default prudent person
obligation" and noting "the putback obligation as an example of a breach leading to damages").
Post-EoD, HSBC must "secure the trust."  *Royal Park*, 109 F. Supp. 3d at 609; *see also Beck v.
Manufacturers Hanover Trust Co.*, 218 A.D. 2d 1, 11, 13 (1st Dep't 1995) (finding trustee has a
"fiduciary duty of undivided loyalty" and a "postdefault obligation of prudence in the exercise of
the rights and powers accorded by the indenture"); *Securitization of Financial Assets* § 9.03 (3d
ed.) ("Should there be a default under the securitization agreements, the trustee will become a
frontline player and the stakeholder in enforcing agreements and the rights of investors.").

An indenture trustee's heightened post-EoD duties to protect certificateholders apply
broadly to all of the trustee's obligations:  "*Beck* requires an indenture trustee to perform
prudently even the more general obligations in the indenture, *and applies to any conduct not
specifically prohibited by the indenture which would enable the investors to secure repayment of
the trust certificates.*"  *LNC Inv., Inc. v. First Fidelity Bank, N.A.*, 935 F. Supp. 1333, 1348
(S.D.N.Y. 1996) (emphasis added).  New York law places broad post-EoD duties on trustees to
take all steps not prohibited by the indenture to secure repayment of the trust certificates because
"[a]fter an event of default, 'it is … only the trustee who is able to act swiftly and effectively to
assure … that the rights of the bondholders to recover what they are owed will ultimately be
vindicated.'"  *Id.* at 1347 (quoting *Beck*, 218 A.D. 2d at 12).  Indeed, Judge Scheindlin already
has held that "plaintiffs have sufficiently alleged that, by failing to enforce these repurchase
obligations, HSBC failed to act as a prudent person and breached the contract."  *Royal Park*, 109
F. Supp. 3d at 604.  Any limitation on HSBC's duty to investigate is expressly removed after an

EoD.  *See, e.g.*, No. 14-8175, ECF No. 28-4 (PSA § 9.2(a)(v)).

The evidence is clear regarding what a prudent person would have done.  Indeed, in hundreds of cases filed in the aftermath of the financial crisis, RMBS trustees have sought to enforce repurchase obligations with respect to all loans breaching R&Ws through the use of sampling.  *See supra* p.5 & n.4 (HSBC's successful advocacy for sampling in RMBS cases).

Here, Plaintiffs will first prove the existence of EoDs.  Under the PSAs, EoDs include servicer breaches, including, for example, a servicer's failure to (i) act in accordance with the normal and usual standards of practice of prudent mortgage servicers; (ii) ensure that loans are serviced legally; and (iii) promptly send notice to HSBC and the other parties upon discovery of mortgage loan representation and warranty breaches.  Ex. A (typically PSA §§ 7.01 or 8.01).

Plaintiffs will next prove HSBC's "actual knowledge" of such EoDs, triggering the prudent person duties described above.  Ex. A (typically PSA §§ 7, 8, or 9).  Evidence to date confirms HSBC's knowledge of widespread EoDs in the Bellwether Trusts.  For example, in September 2012, investors sent HSBC notice of "an ongoing Event of Default" for six of the Bellwether Trusts "caused by Wells Fargo Bank, N.A.'s … failure to observe and perform, in material respects, the covenants and agreements imposed on it as Master Servicer by the PSAs."  Ex. S, at HSBCCTLA 1940459.  The letter notified HSBC of numerous EoDs caused by Master Servicer breaches, including, (i) failure to report R&W breaches, (ii) engagement in mortgage servicing and foreclosure activities that constituted unsafe or unsound banking practices as shown by Wells Fargo's Consent Order with the OCC, and (iii) engagement in other servicing and foreclosure abuses for the purposes of maximizing the servicer's own fees at the expense of certificateholders.  *Id*. at HSBCCTLA 1940459-63.

Wells Fargo's servicing breaches were well-known to HSBC.  For example, a year earlier

HSBC itself notified Wells Fargo that servicing at properties securing mortgages in numerous

trusts, including five Bellwether Trusts, did not comply with applicable law and applicable

agreements.  Ex. T (HSBCCTLA0129234-43).  EoDs remain uncured today.  In June 2015,

HSBC expressly acknowledged the existence of EoDs in a number of at-issue trusts, including

the Bellwether Trust ACE 2005-AG1, through written notice of EoDs due to the Servicer's

failure to maintain required ratings.  Ex. U.

      The evidence confirms that HSBC failed to investigate or enforce repurchase obligations.

In addition to the evidence of high delinquency rates, rating downgrades, and publicly available

information that Judge Scheindlin already found sufficient to support plaintiffs' breach claims,

discovery has revealed that HSBC received notices of breaches of mortgage loan R&Ws for

numerous loans in the at-issue trusts.  For example, Freddie Mac sent HSBC a notice that 1,077

loans in MHL 2007-1 breached R&Ws.  Ex. V (HSBCCTLA0095198-200).  Another investor

notified HSBC that numerous loans in DBALT 2006-OA1 breached R&Ws, providing a CD-

ROM of supporting evidence, and HSBC acknowledged the breaches in correspondence with

Deutsche Bank and the Master Servicer.  Ex. W (HSBCCTLA1112990-039).  At a minimum,

such evidence creates a triable issue of fact as to the imprudence of HSBC's conduct.

      Re-underwriting a sample of loans for each bellwether trust will prove the existence and

rate of defective loans HSBC would have found had it acted as a prudent person.  The sampling

and re-underwriting will also prove the damages HSBC's breaches caused to plaintiffs.

      Significantly, there is no requirement that HSBC had notice, whether actual or

constructive, of any individual breaching loan, as HSBC is charged post-EoD with a general duty

to prudently "secure the basic purpose of any trust indenture, the repayment of the underlying

obligation." *Royal Park*, 109 F. Supp. 3d at 597.  The Court therefore should reject any proposal

to bifurcate discovery to first fsocus on HSBC's knowledge of mortgage loan breaches, as such

proof is not required.  And post-EoD, plaintiffs' burden of proof is even more streamlined than in

repurchase actions; plaintiffs need only offer proof of the general magnitude of HSBC's failure

to investigate and enforce repurchase as prudence would require.  It is well-settled that Plaintiffs

may meet this burden through sampling and re-underwriting loans.  *See supra* Part I.A.

## IV. HSBC Has Advanced No Valid Reason to Preclude Sampling Here.

Despite successfully using sampling to prove repurchase claims it has brought as trustee,

*supra* Part II.C., HSBC asserts that sampling is not a permissible means of proof when the

trustee *fails* to act, citing the Second Circuit's decision in *Policemen's Annuity* denying class

standing to a lead plaintiff who invested in one RMBS trust but not other trusts sought to be

included within the class.  In denying standing, the court reasoned that even proof the trustee

"*always* failed to act when it was required to do so would not prove [the putative plaintiff

class's] case, because they would still have to show which trusts actually had deficiencies that

required [the trustee] to act in the first place," given that the "alleged misconduct must be proved

loan-by-loan and trust-by-trust."  *Policemen's Annuity*, 775 F.3d at 162-63.  Importantly, the

court did *not* preclude sampling "to establish that [the trustee] breached its duties to

certificateholders" for trusts in which the plaintiffs invested.  *Id.* at 162.  Consistent with the

numerous authorities cited above, the Second Circuit noted without hint of disapproval that

courts have "permitted plaintiffs to use statistical sampling to prove the incidence of defects

within individual trusts."  *Id.* at 162 & n.6 (citing *Flagstar*, 920 F. Supp. at 486-87).[25]

Here too, plaintiffs may "show which trusts actually had deficiencies that required [the

---

[25] The court took issue only with the putative lead plaintiffs' plan to use "a single sample of loans taken from hundreds of trusts … to prove a defendant's liability with respect to each of those trusts."  *Id.* Plaintiffs have drawn 24 *separate* samples for each bellwether trust to prove trust-by-trust breach rates.

trustee] to act in the first place" by submitting evidence based on sampling and re-underwriting of the loans in each trust — that is, on a "loan-by-loan and trust-by-trust" basis — showing that a certain percentage of the loans, more likely than not, violated the representations and warranties made by the loan sellers to the trusts. *Id.* at 162-63. The Second Circuit did not establish a rule that plaintiffs must submit proof showing discrete trails of evidence for each of many thousands of breaching loans, nor did it cast doubt on the numerous RMBS cases affirmatively rejecting such a rule by authorized sampling, re-underwriting, and extrapolation of breach rates to prove liability and damages for the entire loan pool. *See supra* nn.2, 5).

As Judge Posner held in *BCS*, the usual preponderance of the evidence standard does not become inapplicable in cases merely because a given chain of causation for liability or damages is not proved with mathematical certainty:

> Otherwise how could a person obtain a judgment for medical malpractice based on a failure to diagnose a disease that proved fatal but had it been diagnosed earlier might have been cured? And how could four equally qualified employees who were discriminated against when a company made a single promotion obtain any relief? Yet we've held that the plaintiff in such a discrimination case is entitled to damages equal to 25 percent of the pay he would have received had he gotten the promotion. That is the nature of the relief — statistical, probabilistic — sought by the plaintiffs in this case.

*BCS*, 637 F.3d at 758 (citations omitted).

## CONCLUSION

The Court should order that sampling and loan re-underwriting shall proceed.

Dated: November 18, 2016                    Respectfully submitted,

BERNSTEIN LITOWITZ BERGER                   ROBBINS GELLER RUDMAN
  & GROSSMANN LLP                             & DOWD LLP

*/s/ Timothy A. DeLange*                     */s/ Christopher M. Wood*

BLAIR A. NICHOLAS                           CHRISTOPHER M. WOOD
TIMOTHY A. DeLANGE                            414 Union Street, Suite 900
BENJAMIN GALDSTON                             Nashville, TN 37219
RICHARD D. GLUCK                              Tel:   (615) 244-2203
BRETT M. MIDDLETON                            Fax:   (615) 252-3798
NIKI L. MENDOZA
LUCAS E. GILMORE                            *Counsel for Plaintiff Royal Park Investments*
ROBERT S. TRISOTTO                          *SA/NV*
  12481 High Bluff Drive, Suite 300
  San Diego, CA  92130
  Tel:   (858) 793-0070
  Fax:   (858) 793-0323

*Counsel for Plaintiffs BlackRock Balanced*
*Capital Portfolio (Fl), et al.*


WOLLMUTH MAHER & DEUTSCH LLP                 WOLLMUTH MAHER & DEUTSCH LLP

*/s/ Steven S. Fitzgerald*                   */s/ Ryan A. Kane*

DAVID H. WOLLMUTH                           DAVID H. WOLLMUTH
STEVEN S. FITZGERALD                        RYAN A. KANE
RANDALL R. RAINER                           NIRAJ J. PAREKH
NIRAJ J. PAREKH                               500 Fifth Avenue
  500 Fifth Avenue                            New York, NY 10110
  New York, NY 10110                          Tel:   (212) 382-3300
  Tel:   (212) 382-3300                       Fax:   (212) 382-0050
  Fax:   (212) 382-0050
                                            *Counsel for Plaintiff Commerzbank AG*
*Counsel for Plaintiffs Phoenix Light SF*
*Limited, et al.*

KOREIN TILLERY LLC

KELLOGG HUBER HANSEN TODD
EVANS & FIGEL, P.L.L.C.

*/s/ Scott K. Attaway*

GEORGE A. ZELCS
JOHN A. LIBRA
MATTHEW C. DAVIES
MAX C. GIBBONS
  205 North Michigan Plaza, Suite 1950
  Chicago, IL 60601
  Tel:  (312) 641-9750
  Fax:  (312) 641-9760
-and-
STEPHEN M. TILLERY
  505 North Seventh Street, Suite 3600
  St. Louis, MO 63101-1625
  Tel:     (314) 241-4844
  Fax:    (314) 241-3525
-and-

DAVID C. FREDERICK
SCOTT K. ATTAWAY
MATTHEW M. DUFFY
FREDERICK GASTON HALL
KELLOGG HUBER HANSEN TODD
  EVANS & FIGEL PLLC
  Sumner Square
  1615 M Street, N.W.
  Suite 400
  Washington, DC 20036
  Tel:     (202) 326-7900
  Fax:    (202) 326-7999

*Counsel for Plaintiff NCUA Board, as*
*Liquidating Agent*

Pursuant to this Court's ECF Rule 8.5(b),
counsel for NCUA represents that counsel
for these Coordinated Plaintiffs have
consented to the placement of their
electronic signatures on this document.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2016, I served the Coordinated Plaintiffs'

Memorandum of Law Supporting Sampling via electronic mail upon all counsel of record.


*/s/ Scott K. Attaway*

Scott K. Attaway