**Robbins Geller Rudman & Dowd LLP**

| Atlanta | Chicago | Melville | Philadelphia | San Francisco |
| Boca Raton | Manhattan | Nashville | San Diego | Washington, DC |

January 12, 2017

The Honorable Sarah Netburn
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 430
New York, NY 10007

Re: *Coordinated RMBS Trustee Litigation against HSBC Bank USA, N.A.*, Nos. 14-cv-8175; 14-cv-9366; 14-cv-10101; 15-cv-02144; 15-cv-10032; 15-cv-10096

Dear Judge Netburn:

We write to update the Court and respectfully request relief regarding the failure of Defendant HSBC Bank USA, N.A. ("HSBC") to permit and provide discovery regarding highly relevant evidence that HSBC has withheld on the basis of an impermissibly broad claim of privilege. Through objections at depositions and statements during the meet and confer process, it is clear that HSBC has withheld documents and testimony regarding: (1) HSBC's ordinary administration of the Trusts, including performance of the terms of the Governing Agreements; and (2) services paid for by the Trusts that were intended to benefit the Trust and were not provided in anticipation of litigation against HSBC. Such communications, particularly when paid for by the Trust, are not privileged with respect to trust beneficiaries and should be produced immediately.

I.  **HSBC's Privilege Assertions**

HSBC has refused to provide business documents or allow testimony regarding counsel's involvement in HSBC's ordinary course of business, despite the fact that HSBC's witnesses have made it clear that counsel was involved in all aspects of ordinary day-to-day activities, including ▌.[1] Nancy Luong, one such trust specialist, left no doubt that communications with counsel were part of her routine when receiving a repurchase request: "▌." Luong Tr. at 171:20-172:20; *see also id.* at 182:20-183:9. Her involvement with counsel on routine day-to-day trust administration was so pervasive that it was incorporated into her "go-to" answer regarding all aspects of trust administration: ▌ *See, e.g.*, Luong Tr. at 40:10-15, 46:8-22, 48:14-49:4, 68:11-69:6, 70:15-22, 71:3-11, 71:22-72:18, 74:24-75:22, 94:18-95:7, 99:19-24, 119:13-23, 138:7-139:2, 164:18-25,

---

[1] For example, ▌ Excerpts of Deposition Transcript of Nancy Luong, dated December 1, 2016 ("Luong Tr.") at 229:15-231:19, attached as Ex. A (filed under seal); *see also id.* at 240:5-13.

165:13-166:8, 169:19-170:15, 171:20-172:20, 182:20-183:9, 208:8-209:5, 210:12-25, 220:18-221:17, 230:2-21, 238:7-239:12, 250:7-251:2, 255:13-25. Despite Luong's testimony regarding counsel's involvement ▮▮▮▮▮, HSBC's counsel refused to allow Plaintiffs to question Luong about counsel's involvement relating to the day-to-day management of the Trusts.[2] Luong Tr. at 70:6-14; *see also id*. at 43:23-44:23, 46:8-22, 48:2-50:6, 50:13-19, 57:14-59:19, 69:7-70:5, 211:2-10. This refusal occurred in spite of the fact that HSBC ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. at 50:20-51:11.[3]

HSBC's counsel recently conceded that, rather than seeking litigation strategy or possible litigation defenses, "to the extent HSBC obtained legal advice relating to the Trusts, HSBC predominantly did so to inform it of its own obligations under the Governing Agreements." December 16, 2016 letter from HSBC's counsel, attached as Ex. C.

## II. New York's Narrow Attorney-Client Privilege and the Work Product Doctrine

New York state law governs claims of attorney-client privilege. Fed. R. Evid. 501; *Assured Guar. Mun. Corp. v. UBS Real Estate Sec., Inc.*, No. 12 Civ. 1579(HB)(JCF), 2013 WL 1195545, at *9 n.7 (S.D.N.Y. Mar. 25, 2013). Under New York law, "there shall be 'full disclosure of all evidence material and necessary in the prosecution or defense of an action.'" *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 376 (1991) (citation omitted). This attorney-client privilege does not extend to documents "made during the ordinary course of business, and not in anticipation of litigation." *Stout v. Christie, Manson & Woods Int'l, Inc.*, No. 134425/94, 1997 N.Y. Misc. LEXIS 723, at *8-*9 (N.Y. Sup. Ct. June 3, 1997). Indeed, as HSBC itself recently helped establish, because the policy of New York law "favors full disclosure, 'the burden of establishing any right to protection is on the party asserting it; the protection claimed must be narrowly construed; and its application must be consistent with the purposes underling, [sic] immunity.'" *ACE Sec. Corp. v. DB Structured Prods. Inc.*, 40 N.Y.S.3d 723, 727 (Sup. Ct. 2016) (quoting *Spectrum Sys.*, 78 N.Y.2d at 377).[4]

---

[2] During the Luong deposition, counsel met and conferred face-to-face regarding HSBC's improper assertion of privilege.

[3] In communications with counsel for HSBC, Plaintiffs identified documents confirming that the Trusts themselves paid for these services, demonstrating that the services were provided for the benefit of the Trusts and their day-to-day administration, and not in anticipation of litigation against HSBC. See Ex. B (November 30, 2016 Letter). Counsel for HSBC does not dispute that it has withheld as privileged services paid for by the Trusts. *See* Ex. C.

[4] HSBC knows this decision well, because it was the party that secured the order, contending that documents are not privileged unless specifically directed to litigation strategy and possible litigation defenses. *See generally* HSBC's Memorandum of Law in Support of Plaintiff's Motion to Compel Production of Defendant's Breach Analyses, *ACE Sec. Corp. Home Equity Loan Trust Series 2006-HE4 by HSBC Bank USA N.A. v. DB Structured Prods., Inc.*, No. 653394/2012 (N.Y. Sup. Ct., N.Y. Cty. Feb. 1, 2016) (Dkt. No. 129), attached as Ex. D.

Robbins Geller
Rudman & Dowd LLP

Honorable Sarah Netburn
January 12, 2017
Page 3

The work product doctrine shields from discovery documents prepared by an attorney that were "'specifically directed to litigation strategy or possible litigation defenses'" absent a substantial need. *Assured Guar.*, 2013 WL 1195545, at *8 (citation omitted); *see also MASTR Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Estate Sec, Inc.*, No. 12 Civ. 7322(HB)(JCF), 2013 WL 6405047, at *1 (S.D.N.Y. Dec. 6, 2013) (documents "created in accordance with a contractual obligation . . . are not protected by the work product doctrine unless [it is shown] that they were specifically directed to litigation strategy or defenses and were therefore created in a form significantly different than they otherwise would have been").

### III. No Protection Exists for Communications Regarding HSBC's Contractual Obligations

HSBC's communications related to its obligations under the Governing Agreements are not entitled to attorney-client protection. Indeed, the attorney-client privilege does not extend to "communications that relate primarily to business matters." *Assured Guar.*, 2013 WL 1195545, at *9; *see also Spectrum Sys.*, 78 N.Y.2d at 379 ("a lawyer's communication is not cloaked with privilege when the lawyer is hired for business or personal advice, or to do the work of a nonlawyer"); *Fine v. Facet Aerospace Prods. Co.*, 133 F.R.D. 439, 444 (S.D.N.Y. 1990) (the attorney-client privilege "does not extend to the provision of business and management advice"); *Stout*, 1997 N.Y. Misc. LEXIS 723, at *8-*9 (no attorney-client protection for documents "made during the ordinary course of business, and not in anticipation of litigation"). Given that there is no privilege when an attorney serves in a business function *negotiating* the terms of a business contract,[5] it makes no sense that a privilege could later be invoked merely to "*inform*" the obligations of a business contract, as HSBC suggests.

Further, no privilege exists for non-legal work conducted by attorneys. Ms. Luong, one of HSBC's trust specialists, testified that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Luong Tr. at 229:15-231:19; *see also id.* at 240:5-13. Luong also involved her counsel as part of her day-to-day activities related to trust administration. *See, e.g., supra* at 1-2. Despite that attorneys were ▬▬▬▬▬▬▬▬▬▬ and performing other trust administration activities at HSBC, the work of a trust specialist remains non-legal and is not entitled to protection. *Spectrum Sys.*, 78 N.Y.2d at 379 (no privilege when a lawyer performs the work of a non-lawyer).

Work product protection also does not apply here. With regard to the Trusts, HSBC's ordinary course of business was clear: it had to perform its contractual obligations under the Governing Agreements. HSBC has not claimed that it sought legal advice in anticipation of litigation. To the contrary, HSBC admitted that it sought legal advice "predominately . . . to *inform* it of its own obligations under the Governing Agreements." Ex. C at 2 (emphasis added). Consistent with this admission, HSBC's low-level trust specialists repeatedly testified that they contacted counsel with questions regarding the PSAs. Put

---

[5] *U.S. Bank N.A. v. Lightstone Holdings LLC*, No. 651951/2010, 2016 N.Y. Misc. LEXIS 1356, at *8 (N.Y. Sup. Ct. Apr. 12, 2016).

1224548_2

simply, irrespective of litigation, HSBC was contractually obligated to perform its duties under the Governing Agreements as its trust-related business. Any activities to be informed of its pre-existing contractual duties were merely for business purposes, and therefore do not qualify for work product protection. *See RLS Assocs., LLC v. United Bank of Kuwait, PLC*, No. 01 Civ. 1290(CSH)(DF), 2003 WL 1563330, at *5 (S.D.N.Y. Mar. 26, 2003) (analysis of contract terms for the purpose of determining whether there was a contractual duty to perform obligations is not given protection as work product if created irrespective of any anticipated litigation); *see also MASTR*, 2013 WL 6405047, at *1; *Assured Guar.*, 2013 WL 1195545, at *6-*7. Because HSBC sought advice for business purposes, it is not entitled to work product protection.

### IV. Any Privilege that May Have Existed Was Lost

Even if HSBC could show that some documents met the stringent standard to be privileged, HSBC waived that privilege by asserting as an affirmative defense its reliance upon the advice of counsel. Under New York law, "[w]here a party asserts as an affirmative defense the reliance upon the advice of counsel, the party waives the attorney-client privilege with respect to all communications to or from counsel concerning the transactions for which counsel's advice was sought." *Village Bd. of Pleasantville v. Rattner*, 130 A.D.2d 654, 655 (2d Dep't 1987).[6]

### V. The Fiduciary Exception Applies and Good Cause Exists to Require HSBC to Disclose Communications Provided for the Benefit of the Trusts as Part of Ordinary Business

Even if the information is subject to the attorney-client privilege, Plaintiffs can satisfy the requirements of the fiduciary exception, which other courts have applied in the RMBS context. *See, e.g.*, *In re Bank of N.Y. Mellon*, 977 N.Y.S.2d 560, 566 (Sup. Ct. 2013). Although HSBC is not a traditional fiduciary trustee, the fiduciary exception to the attorney-client privilege nonetheless applies, particularly upon a showing of "good cause." *See id.* Here, Plaintiffs meet all the "good cause" requirements for the fiduciary exception to apply. *See Hoopes v. Carota*, 142 A.D.2d 906, 907 (3d Dept 1988), *aff'd*, 74 N.Y.2d 716 (1989). Plaintiffs are all beneficiaries and have a common interest in favor of disclosure of the trustee's interpretation of its obligations under the Governing Agreements. Plaintiffs were directly affected by the trustee's decisions made on its attorney's advice. The information is highly relevant to Plaintiffs' claims because the scope of the trustee's obligations under the Governing Agreements is a central issue in this case. The information concerns only what counsel instructed trust administrators to do on a prospective basis. And Plaintiffs' claims are colorable, to say the least. Further, as HSBC concedes, *see* Ex. C, the fact that the Trusts paid for the legal fees at issue is also a factor that cuts in favor of applying the fiduciary exception. Because good cause is shown, the information should be disclosed regardless of whether the attorney-client privilege attaches to the communications.

---

[6] Despite HSBC's later assertion that its general conduct as Trustee was not guided by legal advice, HSBC's deponents made it clear that attorneys were involved in routine day-to-day trust administration. *See supra* at 1-2.

### VI. Plaintiffs Have a "Substantial Need" for the Withheld Information for Which it Shares a "Common Interest" with HSBC

Even if work product is established as to documents relating to HSBC's obligations under the Governing Agreements, Plaintiffs are entitled to discovery of those documents upon a showing of a substantial need. *See Assured Guar.*, 2013 WL 1195545, at *6. "[S]ubstantial need is shown where the work product material at issue is central to the substantive claims in litigation." *Madanes v. Madanes*, 199 F.R.D. 135, 150 (S.D.N.Y. 2001). At the core of this litigation is the issue of whether HSBC breached its duties under the Governing Agreements. *See, e.g.*, Complaint, No. 1:14-cv-08175-SAS, Count II, ¶¶183-190 (Dkt. No. 1). HSBC admits that it sought legal advice relating to the Trust "predominantly . . . to inform it of its own obligations under the Governing Agreements." Ex. C at 2; *see also supra* at 1-2. Nevertheless, Plaintiffs were precluded from exploring HSBC's understanding of its obligations by repeated objections and instructions for the witness not to answer questions. *See, e.g.*, Luong Tr. at 43:23-44:23, 46:8-22, 48:2-50:6, 50:13-19, 69:7-70:14, 211:2-10. Due to HSBC inexorably intertwining its counsel with the day-to-day activities of the trust administration, there is no way of determining HSBC's understanding of its obligations under the Governing Agreements than through the work product that HSBC has withheld from discovery and deposition testimony.

Finally, [REDACTED] Luong Tr. at 50:20-51:11. Those legal bills were either for services made for the benefit of the certificateholders or for services that were not made for the benefit the certificateholders. If the former, then HSBC and Plaintiffs share a common interest in the services. *See ACE*, 40 N.Y.S.3d at 735-36; HSBC's Memorandum of Law in Opposition to Defendant's Motion to Compel Production of Documents Withheld as Privileged, *ACE Sec. Corp. Home Equity Loan Trust Series 2006-HE4, by HSBC Bank, USA, N.A. v. DB Structured Prods.*, No. 653394/2012 (N.Y. Sup. Ct., N.Y. Cty. Feb. 22, 2016) (Dkt. No. 154) at 4, 6, 13, attached as Ex. E (arguing that "HSBC and the certificateholders shared a common legal interest in seeking to protect the legal rights of the Trust"). If the latter, however, then HSBC has breached its duties to the Trust. *AMBAC Indem. Corp. v. Bankers Trust Co.*, 573 N.Y.S.2d 204, 208 (Sup. Ct. 1991) (indenture trustee who invades trust funds for its own use has breached fiduciary duties even in advance of a default).

Respectfully submitted,

| s/ CHRISTOPHER M. WOOD | s/ BENJAMIN GALDSTON | s/ STEVEN S. FITZGERALD |
|---|---|---|
| Christopher M. Wood | Benjamin Galdston | Steven S. Fitzgerald |
| Robbins Geller Rudman & Dowd LLP | Bernstein Litowitz Berger & Grossmann LLP | Wollmuth Maher & Deutsch LLP |
| *Counsel for Plaintiff Royal Park Investments SA/NV* | *Counsel for Plaintiffs BlackRock Balanced Capital Portfolio (FI), et al.* | *Counsel for Plaintiffs Phoenix Light SF Limited, et al. and Commerzbank AG* |

**Robbins Geller Rudman & Dowd LLP**

Honorable Sarah Netburn
January 12, 2017
Page 6

s/ JOHN A. LIBRA
John A. Libra
Korein Tillery, LLC
*Counsel for Plaintiffs National Credit Union Administration Board, et al.*

s/ JOHN G. MOON
John G. Moon
Miller & Wrubel PC
*Counsel for Plaintiffs Triaxx Prime CDO 2006-1, Ltd., et al.*

cc:   All counsel of record (via ECF)

1224548_2