LAW OFFICES
# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.
WASHINGTON, D. C. 20005-5901
(202) 434-5000
FAX (202) 434-5029

EDWARD REDDINGTON
(202) 434-5063
ereddington@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

January 18, 2017

<u>Via e-mail</u>

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

    Re:    *Coordinated RMBS Trustee Actions Against HSBC Bank USA, NA*, Nos. 14-cv-08175; 14-cv-09366; 14-cv-10101; 15-cv-02144; 15-cv-10032; 15-cv-10096

Dear Judge Netburn:

    Plaintiffs' newest discovery motion asserts that HSBC Bank USA., N.A. ("HSBC") has withheld documents and testimony regarding "HSBC's ordinary administration of the Trusts" and "services that were paid for by the Trusts that were intended to benefit the Trust [sic]." Ltr. at 1, Jan. 12, 2017. Plaintiffs' assertions are factually inaccurate and not supported by their letter-motion. As their sole support for these assertions, Plaintiffs point to portions of testimony from one HSBC fact deponent. That testimony reveals attempts by Plaintiffs to obtain discovery into legal advice provided to HSBC by its counsel. Plaintiffs are not entitled to inquire into such privileged communications. Moreover, Plaintiffs attempt to bring this discovery motion in the abstract, rather than based on specific documents. The determination of whether a privilege applies to a particular communication, however, is a fact-specific inquiry. Plaintiffs have made no effort to identify such specifics and instead seek the equivalent of an advisory opinion that would allow them to invade all privilege.

    In reality, Plaintiffs have no need for HSBC's privileged advice. Plaintiffs are simply attempting to invade privilege for tactical advantage. Plaintiffs were permitted to ask HSBC's witnesses whether they consulted with counsel with respect to HSBC's duties as a trustee, and Plaintiffs learned that HSBC witnesses routinely did so. Plaintiffs also were permitted to ask whether counsel drafted certain letters or correspondence for HSBC, and Plaintiffs learned again that at times counsel did so. To the extent such letters were actually sent to third parties by the trustee, those letters would have been produced if they were located after a reasonable search and their production was consistent with HSBC's responses and objections to Plaintiffs' document requests. Plaintiffs do not claim to be missing such documents, which speak for themselves. Instead, Plaintiffs want to go a step further and inquire into the substance of HSBC's communications with counsel, including the advice counsel gave HSBC with respect to those

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
January 18, 2017
Page 2

documents. Such discussions, however, are exactly what the law protects from disclosure. For the reasons set forth below, Plaintiffs' motion should be denied.

## I.     Legal Advice Relating to Contractual Interpretations Is Privileged

Plaintiffs first claim that communications between HSBC and its attorneys that related to HSBC's obligations under the Governing Agreements are not privileged. Ltr. at 3-4. Plaintiffs are simply wrong. Clients are entitled to obtain privileged legal advice relating to the interpretation of contracts, including a party's potential obligations under a contract. *See JA Apparel Corp. v. Abboud*, No. 07-cv-7787 (THK), 2008 WL 111006, at *1 (S.D.N.Y. Jan. 10, 2008); *Strategem Dev. Corp. v. Heron Int'l N.V.*, No. 90-cv-6328 (SWK),1991 WL 274328, at *2 (S.D.N.Y. Dec. 6, 1991). It would be odd indeed if lawyers could not give legal advice to clients with respect to their contractual obligations. The law, of course, recognizes that they can. *Strategem*, 1991 WL 274328 at *2; *Elliot Assocs., L.P. v. Republic of Peru*, 176 F.R.D. 93, 95 (S.D.N.Y. 1997). Nor is the scope of the privilege over such advice narrow. To the contrary, advice solicited from "counsel concerning legal rights, obligations, and tactics" quintessentially is privileged. *Strategem*, 1991 WL 274328 at *2.

In an effort to avoid this obvious outcome, Plaintiffs seek to characterize such advice as relating to a "business" not a "legal" function. As a threshold matter, Plaintiffs' argument appears to attempt to incorrectly analogize to an area of the law that is not applicable here. Where in-house counsel perform both legal and business functions, courts have found that the *business advice* of such in-house lawyers does not necessarily become privileged just because that business advice came from a lawyer. But this observation does not mean that *legal advice* concerning business functions would not be privileged. To the contrary, in-house and outside counsel routinely give privileged legal advice to businesses about their business activities—that is the *purpose* of having a business law lawyer—and courts routinely uphold privilege in that context. *See, e.g.*, *JA Apparel Corp.*, 2008 WL 111006 at *1 ("That the legal advice was contained in a 'business' presentation to the client's Board of Directors does not render it 'business' rather than 'legal' in nature. Business transactions inevitably involve legal matters on which privileged advice is sought."). Plaintiffs also attempt to avoid this outcome by asserting that any advice was not in anticipation of litigation. Ltr. at 3-4. Anticipated litigation, however, is not a requirement for the attorney-client privilege.[1] *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 380, 581 N.E.2d 1055 (1991). In short, to the extent HSBC sought advice from counsel here with respect to the business activities of the trustee, that advice would be privileged.

---

[1] Plaintiffs additionally argue that the work product doctrine does not apply. Ltr. at 3-4. Plaintiffs' unsupported and across the board assertion, however, is again misplaced. As but one example, HSBC has been involved in several put-back cases, as well as other potential and actual litigations. Documents prepared in anticipation of or in the course of such litigations would be protected by the work product doctrine.

## II. HSBC Has Not Waived Privilege

Plaintiffs next argue that HSBC waived privilege by asserting as an affirmative defense its reliance on the advice of counsel. Once again, however, it is black-letter law that a party does not waive privilege simply by asserting an affirmative defense in its answer. *Valois of Am., Inc. v. Ridson Corp.*, 1998 WL 1661397, at *4 (D. Conn. Dec. 18, 1998). That is all HSBC has done here (and all HSBC remains able to do at this point given the generic and non-specific nature of Plaintiffs' claims). This Court already has acknowledged on at least two occasions that HSBC is entitled to raise the advice of counsel defense in its answer and that doing so does not waive the privilege. Aug. 26, 2015 Hr'g Tr. at 11:19-12:4; Nov. 17, 2016 Order (Dkt. No. 263) at 4.

## III. The Fiduciary Exception to the Attorney-Client Privilege Does Not Apply Here

Plaintiffs next argue that the undefined privileged communications they seek fall within the fiduciary exception to the privilege. Plaintiffs, once again, do not support this argument with specifics. Counsel for HSBC previously sent Plaintiffs a letter on December 16 explaining why that exception did not apply here. Plaintiffs never responded to the points HSBC identified in its letter. Plaintiffs' one-paragraph argument in their now-filed letter motion also does not address these points. The fiduciary exception to the attorney-client privilege is a narrow one. To invoke the exception, courts require a party seeking disclosure to show a number of things: first, that a fiduciary relationship exists between the trustee and the trust beneficiaries, *Riggs Nat'l Bank of Washington, D.C. v. Zimmer*, 355 A.2d 709, 714 (Del. Ch. 1976); second, that the trustee sought legal advice on behalf of the *trust* and for the benefit of the beneficiaries, *id.*; and third, that good cause exists to compel disclosure of specific documents, *see AMBAC Indem. Corp. v. Bankers Trust Co.*, 573 N.Y.S.2d 204, 208 (N.Y. Sup. Ct. 1991) (denying motion to compel specific documents for failure to establish good cause).

Plaintiffs have not satisfied these requirements. First, cases in which courts have found a "fiduciary exception" to exist generally have come up in the context of common law trustees (where a fiduciary relationship is assumed and the trustee is not the real client in interest). *See, e.g., Anderson v. Sotheby's Inc. Severance Plan*, No. 04-cv-8180 (SAS)(DFE), 2005 WL 6567123, at *9 (S.D.N.Y. May 13, 2015). As Plaintiffs concede, however, "HSBC is not a traditional fiduciary trustee," Ltr. at 4, and it is well-settled that indenture trustees are not fiduciaries. Courts have acknowledged this distinction when deciding whether to apply the fiduciary exception, in cases against RMBS trustees and otherwise. *See, e.g.*, *CFIP Master Fund, Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450, 475 n.29 (S.D.N.Y. 2010) (noting indenture trustee's duties were ministerial and fiduciary exception did not apply). Second, to the extent HSBC obtained legal advice relating to the trusts, it generally did so with respect to its own obligations under the Governing Agreements. As a result, HSBC was the real client in interest with respect to the legal advice in question.[2] *Riggs*, 355 A.2d at 714 (fiduciary exception does

---

[2] Whether HSBC sought reimbursement from trust funds for legal fees would not alter this analysis. Under the Governing Agreements, HSBC has a contractual right to indemnification

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
January 18, 2017
Page 4

not apply where "the trustee was the actual client"). Third, Plaintiffs have not shown the requisite "good cause" that would justify the application of the exception here. Where courts have found such good cause, it generally has been applied to only narrow categories of documents. Plaintiffs have not identified any specific categories here.

## IV. Plaintiffs' Purported "Substantial Need" Does Not Support Their Attempts to Invade Privilege

Plaintiffs next argue that Plaintiffs are entitled to obtain privileged documents because they have a "substantial need" for them. An adversary's need for privileged documents, however, does not negate the privilege. *See Deutsche Bank Trust Co. of Am. v. Tri-Links Inv. Trust*, 43 A.D.3d 56, 64 (1st Dep't 2007). In making this argument, Plaintiffs apparently attempt to rely on an exception to the work product doctrine. This exception, however, has no application to the attorney-client privilege and would not permit Plaintiffs to obtain an adversary's privileged legal advice. Moreover, this exception too is a narrow one, and Plaintiffs have not shown that it applies to work product here. *See Gucci America, Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74 (S.D.N.Y. 2010) (noting that a party seeking work product must show both a substantial need and that they cannot obtain the equivalent without undue hardship); *E.E.O.C. v. Carrols Corp.*, 215 F.R.D. 46, 52 (N.D.N.Y. 2003) ("Substantial need is not evaluated in a vacuum, and in order to overcome work product protection, [a party] must demonstrate that it cannot obtain the substantial equivalent of the information it seeks.").

Plaintiffs likewise somewhat bizarrely claim that they have a "common interest" with HSBC and that this common interest would support their invasion of privilege. Whatever Plaintiffs mean by common interest, it is clear there is no common interest between Plaintiffs and HSBC in the context of this litigation. While it is possible for an indenture trustee to share a common interest with certificateholders in specific contexts (such as where certificate holders take advantage of the mechanisms afforded to them under the Governing Agreements to direct and indemnify the trustee to act), such circumstances do not exist here. Nor would such circumstances entitle these Plaintiffs to invade HSBC's privilege generally in this lawsuit.

---

from the trusts for its legal fees. HSBC is entitled to this indemnification regardless of whether the legal advice was sought for its own benefit or for the benefit of the trust. Because there is a contractual right to indemnification, Plaintiffs are incorrect, Ltr. at 5, that such reimbursement would be evidence of either a "common interest" with Plaintiffs or a breach of duty to the trusts. *See Bank of New York Mellon*, 977 N.Y.S.2d at 568, n.3 (rejecting claim that an indenture trustee's assessment of its own risk and efforts to obtain indemnification stated a colorable claim of conflict of interest or self-dealing). Plaintiffs' cite *AMBAC,* 573 N.Y.S.2d at 208, for their assertion of such a conflict, but unlike the facts here, there is no indication that the trustee in that case had the same right to indemnification.

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
January 18, 2017
Page 5

### V.     Plaintiffs' Motion is Premature

Finally, Plaintiffs' motion is premature for two separate reasons.  *First*, the parties never met and conferred on this topic.  On December 16, HSBC sent a letter to Plaintiffs explaining its position on the fiduciary exception in which it offered to meet and confer with Plaintiffs regarding any specific document Plaintiffs believe should have been produced, and making it clear that HSBC's attorneys would be "available if [Plaintiffs] would like to discuss these issues further."  Ex. C to Plaintiffs' Mot. at 2.  Plaintiffs never responded to that letter, and failed their obligation under Fed. R. Civ. P. 37(a)(1) and Local Rule 37.3 to meet and confer with HSBC regarding this motion.

*Second*, Plaintiffs' request also is premature before the exchange of privilege logs.  It has always been the parties' intention to exchange privilege logs on a mutually agreed date.  Ex. 1 (Aug. 28, 2015 letter from E. Reddington to B. Galdston) at 3.  Despite HSBC's request months ago to agree on a schedule for exchanging privilege logs, the parties have not yet done so.  In fact, despite clawing back thousands of documents in November and December of last year, the PIMCO Plaintiffs have not even provided a log of those recalled documents.  Similarly, the Phoenix Light Plaintiffs have yet to provide a privilege log for documents they clawed back in September 2016, nearly four months ago, despite regular requests from HSBC to provide such a log.  Months ago, HSBC suggested to Plaintiffs that the parties agree upon a date to exchange privilege logs, *see, e.g.*, Ex. 2 (Aug. 11, 2016 Letter from N. Weiss to Plaintiffs) at 2.  Plaintiffs have never responded to that request.  As a result, Plaintiffs raise their motion in the abstract and do not identify any specific document (or even readily identifiable category of documents) they claim is not subject to privilege.  This tactic is unfair to both HSBC and the Court, because "whether a particular document is or is not protected is necessarily a fact-specific determination."  *Spectrum Sys.*, 78 N.Y.2d at 378.

* * * * * * * *

For the foregoing reasons, Plaintiffs' motion should be denied.

Respectfully submitted,

Edward Reddington

cc: All counsel via e-mail