# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

ATTORNEYS AT LAW

NEW YORK • CALIFORNIA • LOUISIANA • ILLINOIS

BENJAMIN GALDSTON
beng@blbglaw.com
(858) 720-3188

February 15, 2017

**VIA ECF & HAND DELIVERY**

The Honorable Sarah Netburn
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 430
New York, NY 10007

      Re:    *BlackRock Balanced Capital Portfolio (FI), et al. v. HSBC Bank USA, N.A.*,
              No. 14-cv-9366-LGS-SN (S.D.N.Y.)

Dear Judge Netburn:

On behalf of Plaintiff Sealink Funding Ltd. ("Sealink"), we write in accordance with your Honor's February 10, 2017 Order [ECF No. 300] to explain how Sealink intends to measure its damages.

Sealink and the other Plaintiffs are pursuing sustained claims for breach of contract, breach of fiduciary duty and breach of the extra-contractual duty to avoid conflicts of interest against Defendant HSBC Bank USA, N.A. ("HSBC"). The claims arise from HSBC's failure to carry out its duties as Trustee since inception of the Trusts to protect the Trusts and holders; specifically, to enforce the Trusts' contractual and legal rights against the entities that sold the loans to the Trusts (the "Sellers"), as well as against the entities that serviced the loans (the "Servicers") who were typically affiliates of the Sellers. In particular, Plaintiffs allege that HSBC, as Trustee, "discovered" that the Trusts were filled with defective loans that violated Seller representations and warranties, and HSBC further had knowledge of Servicer violations, yet failed to fulfill its duties to protect the assets of the Trusts for the benefit of investors by seeking the cure or repurchase of the defective loans from the Sellers and pursuing remedies for servicing violations.

Sealink and the other Plaintiffs allege that they and other current certificateholders have suffered damages as a result of HSBC's breaches. Sealink, like the other Plaintiffs, submit that their damages as well as those of the Class can be measured by the extent to which HSBC's misconduct reduced the assets of the Trusts and, in turn, impacted the value of the securities and the cash flows to Plaintiffs and other holders by failing to: (i) remove and force the repurchase of defective loans from the Trusts' collateral pools; and (ii) address servicing deficiencies as obligated under the Trusts' Governing Agreements, statutory and common law. Due to HSBC's breaches, defective loans remained in the Trusts' loan pools that should have been replaced or repurchased, and servicing violations went unremedied that have caused increased fees and unnecessary expenses to the Trusts.



BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

The Honorable Sarah Netburn
February 17, 2017
Page 2

---

Thus, Sealink and other certificateholders intend to measure their damages through the decreased value of the securities and the cash flows due to holders under the Trusts' contractual waterfall.

While Sealink will not assert the claims of prior owners and instead asserts claims exclusively in its own right, this is because Sealink became a certificateholder in 2008 and has continued to hold to the present. As of 2008 when Sealink acquired the securities, and at all relevant times thereafter, HSBC unquestionably had the duty and right to put back every breaching loan that violated Seller representations and warranties and enforce the Trusts' rights against improper Servicing practices. HSBC failed to perform its fundamental Trustee obligations, and Sealink has been and is continuing to be damaged as a result of HSBC's contractual and legal breaches.

We trust this explanation resolves any concerns of the Court or HSBC and we thank the Court for its attention to this matter.

Respectfully submitted,

Benjamin Galdston

cc: All Counsel of Record via ECF