KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900
FACSIMILE:
(202) 326-7999

May 1, 2017

**VIA ECF**
The Honorable Sarah Netburn
United States District Court for the Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square, Room 430
New York, NY 10007

  Re: *Coordinated RMBS Trustee Litigation Against HSBC Bank USA, N.A.*, Nos. 14-cv-08175; 14-cv-09366; 14-cv-10101; 15-cv-02144; 15-cv-10032; 15-cv-10096

Dear Judge Netburn:

  On behalf of plaintiffs in the six above-referenced actions, Plaintiffs respectfully request an order requiring HSBC to cooperate with plaintiffs in resolving the exception report issues described below, following completion of the third-party custodians' productions.

  **A. Summary of the exception report issues.**

  HSBC contracted with custodians to receive and hold the documents required to be contained in "Mortgage Files" as set out in the governing Pooling and Servicing Agreements or Indentures (collectively, "PSAs"). The Mortgage Files contain critical documents necessary for the trustee and servicer to prove ownership of each mortgage loan in a trust and ensure the trusts' security interests are not impaired — typically including the Note, Mortgage, Assignment, Title Insurance Policy, and similar documents. The custodians, acting as agents for HSBC, were required to receive the Mortgage Files from loan sellers, review them for completeness, provide a certification of receipt of the documents, and log any exceptions (*i.e.*, missing or defective documents) in a series of reports to HSBC.[1] HSBC in turn was required under the PSAs to enforce seller obligations to repurchase any loans with uncured material exceptions.[2] As the

---

[1] HSBC marked the custodial agreements it produced as confidential. Plaintiffs will provide one or more exemplars upon the Court's request.

[2] *See* ACE 2005-AG1 PSA § 2.03(a) (ECF 196-2 at 2, No. 14-cv-10067) (HSBC must notify seller "[u]pon discovery or receipt of notice of any materially defective document in, or that a document is missing from, a Mortgage File," and for uncured exceptions "shall enforce" repurchase of the loan).

Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.

Honorable Sarah Netburn
May 1, 2017
Page 2

evidence at summary judgment will show, however, HSBC apparently did nothing to cure material exceptions for any of the 24 bellwether trusts.[3]

Many of the loans that HSBC should have required sellers to repurchase subsequently defaulted or otherwise caused significant losses to the trusts — losses that would have been avoided had HSBC fulfilled its trustee repurchase enforcement duties. HSBC also understood that the lack of required mortgage documentation, among other problems, prevented servicers from lawfully foreclosing on defaulted loans — a problem HSBC knew the Master Servicer was failing to address, triggering an Event of Default. Although plaintiffs have collected many such initial, interim, and final exception reports from HSBC and its third-party custodians, two general problems remain. *First*, for certain trusts there are gaps such that final, initial, or certain interim exception reports have not been found by HSBC or its custodians. *Second*, for certain trusts the status of particular documents that have been produced is either unclear or may be subject to dispute such that one party may claim a report is final or applicable to a particular trust, and the other party may claim it is non-final or applicable to a different trust.

To prove liability and damages caused by HSBC's breaches, Plaintiffs' experts need to review the final exception reports, identify loans with material uncured exceptions, and calculate losses to the trusts from HSBC's failure to enforce repurchase of such loans. To complete this expert discovery efficiently, the parties must agree on the identity of certifications and exception reports for each of the 24 bellwether trusts. Importantly, resolving those issues now should prevent or at least minimize any burden on this Court in having to adjudicate what should be unnecessary disputes about whether a party's expert used the correct exception reports.

**B. Plaintiffs' efforts to get a full set of exception reports from HSBC and its custodians.**

**1. HSBC's production.**

HSBC has not produced final exception reports for 4 of the 24 bellwether trusts.[4] And although HSBC's custodial agreements grant HSBC (but not plaintiffs) ongoing access to the custodian's documents relevant to the mortgage loans, to plaintiffs' knowledge HSBC never

---

[3] *See, e.g.*, ECF 196-12 (listing 4,763 uncured exceptions in 3,724 loans for FHLT 2006-C). HSBC witnesses have testified HSBC did nothing to seek cure or repurchase of exceptions shown in custodians' exception reports; that such reports typically were placed in a metal filing cabinet at HSBC and not further referred to; and that, incredibly, a final exception report listing hundreds or thousands of uncured exceptions is not "notice" of such uncured exceptions under the PSAs. Based on discovery to date, HSBC did not provide exception reports to investors.

[4] ACE 2005-AG1, NHELI 2007-1, OPMAC 2005-1, and WFHET 2007-2. Indeed, HSBC apparently failed to fulfill even its ministerial duty to maintain exception reports it was required to receive under the Custodial Agreements. This fact alone constitutes a separate breach of trustee duties.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Honorable Sarah Netburn
May 1, 2017
Page 3

attempted to obtain them from the custodians. *See* Fed. R. Civ. P. 26(a)(1)(ii) (requiring disclosure of documents in a party's "possession, custody, *or control*" that the party "may use to support its claims or defenses"). In response to Plaintiffs' numerous requests for these documents,[5] HSBC ultimately asserted: "To the extent HSBC possesses document certifications and exception reports relating to Bellwether Trusts, those documents have been produced following a reasonable search." ECF No. 208 at 2.

Plaintiffs also were left to attempt to determine the identity of HSBC's internal documents. The task is far from simple given the manner of HSBC's production. For example, the first document in a set HSBC produced as a single family is an image of a CD labeled "NHELI 2007-1 Final Cut 7/31," followed by two Excel files (an exception report and a loan schedule). In correspondence with HSBC, Plaintiffs identified the exception report as the final report for NHELI 2007-1. HSBC responded that "the document you list as associated with NHELI 2007-1 in fact relates to NHELI 2007-2," ECF No. 91-9 at 3 n.2, without explanation and without identifying or producing a report for NHELI 2007-1. This unexplained discrepancy illustrates the simple need for agreement as to the identification of certifications and exception reports, to either foreclose or resolve any such disputes before experts begin their work.

### 2. Third-party custodians' production.

In order to resolve such irregularities and fill the gaps in HSBC's production, Plaintiffs subpoenaed the relevant third-party custodians, requesting certifications and exception reports, as well as current information on uncured exceptions. HSBC contracted with four custodians for the 24 bellwether trusts: Wells Fargo (20 trusts), Deutsche Bank (3 trusts, including 1 for which Wells Fargo is also custodian), JP Morgan (1 trust), and Sun Trust (1 trust). To date, the custodians' productions appears to include some but not all of the missing documents.[6] Plaintiffs have been meeting and conferring with those custodians for months but unresolved gaps remain. Plaintiffs also are attempting to get business records affidavits from each custodian.

### 3. Insufficiency of requests for admission and interrogatories.

*Interrogatories*. Plaintiffs served an interrogatory requesting that HSBC specifically identify each version and corresponding trust for the exception reports in its production. This Court held the interrogatory both exceeded plaintiffs' allotment of 25 interrogatories per caption and sought overly detailed information requiring "HSBC to provide information on whether

---

[5] *See, e.g.*, ECF No. 90 (March 22, 2016) at 3; ECF No. 91-5 at 3 (March 25, 2016); ECF No. 206-1 (Oct. 5, 2016); ECF No. 206 at 2 (Feb. 6, 2017).

[6] Deutsche Bank has not produced a final certification or exception report for ACE 2005-AG1. Wells Fargo has not produced an initial or final exception report for NHELI 2007-1, or an initial exception report for DBALT 2007-OA1, OPMAC 2005-1 or FHLT 2006-C. JP Morgan and Sun Trust have yet to produce exception reports, and Plaintiffs will promptly seek Court intervention if necessary.

Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.

Honorable Sarah Netburn
May 1, 2017
Page 4

document exceptions were cured, including the loan, date of cure, and the document exception that was cured." Order, ECF No. 220 at 5 (Mar. 7, 2017). The Court held that HSBC need not specify whether listed exceptions had been cured given that "HSBC represents that it has already produced document certifications and exception reports relevant to the Bellwether trusts." Accordingly, plaintiffs' requested procedure set out below in Part C provides for plaintiffs first to identify the sets of certifications and exception reports for each of the 24 bellwether trusts, and for HSBC only to state its agreement or disagreement and basis for disagreement.

*Requests for admission.* Plaintiffs also served requests for admission seeking to confirm the correct sets of exception reports for each of the 24 bellwether trusts. HSBC has confirmed the identity of certain certifications and exception reports in response to requests for admission ("RFAs"), but HSBC's responses necessarily will require certain supplementation and correction, particularly in view of subsequent productions from the custodians. For example, the document HSBC admitted was an initial certification and exception report summary for ACE 2005-AG1 (RFA #1) is dated October 28, 2005 on the first page but contains an exception report summary dated December 26, 2006, more than a year later. The custodian's subsequent production confirms that an initial certification and exception report summary — all dated October 27, 2005, and not October 28, 2005 — was sent to HSBC. Similarly, what appeared to be the final exception report for MHL 2007-1 based on HSBC's production alone (RFA #23), was actually followed a month later by a final report sent to HSBC containing different exceptions that the custodian has produced. Thus, HSBC's RFA responses, which were based on its production alone, must now be supplemented based on the custodians' productions. This Court recently allowed plaintiffs to serve additional RFAs addressing the trustee's failure to locate and produce exception reports in the similar *Wells Fargo* RMBS trustee actions. *See Wells Fargo*, 4/4/2017 Hr'g Tr. at 11.[7]

### C. Party cooperation is necessary to resolve gaps and disputes about exception reports.

In view of these gaps and HSBC's ability subsequently to access the Custodian's files, plaintiffs seek to prevent a situation in which they direct their experts to use documents appearing to be (and potentially admitted by HSBC as being) certifications and exception reports, only to have HSBC later challenge plaintiffs' expert reports on the basis of as yet unidentified issues with the documents or as yet unproduced exception reports. To allow expert discovery to proceed as efficiently as possible, the parties should reach agreement on the identity of these documents before experts begin analyzing them. To that end, plaintiffs respectfully request that the Court order HSBC to enter an efficient, cooperative process for identifying and agreeing on the 24 sets of exception reports, including identifying any documentation gaps that may exist despite best efforts to find missing exception reports or identify the trust to which any arguably ambiguous reports relate.

---

[7] To keep for a concise submission, plaintiffs have not submitted exhibits showing the requests for admission and related documents discussed in this paragraph but will do so upon the Court's request.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Honorable Sarah Netburn
May 1, 2017
Page 5

      Specifically, by June 16, 2017, two weeks after the deadline for completion of third-party discovery (including depositions of the custodians, if necessary), plaintiffs propose to identify the set of documents they believe to be initial and final certifications and exception reports for each bellwether trust to the extent they have been produced by HSBC or the custodians.  Within two weeks or at the Court's designation of an appropriate time, HSBC should then either admit that plaintiffs have correctly identified the documents, identify an alternative document, or state that HSBC is unaware of the correct document.  To the extent HSBC is unable to identify the documents plaintiffs believe to be missing from the productions, HSBC should be precluded from later relying upon any such subsequently located document.  To the extent final exception reports cannot be found, plaintiffs reserve their right to argue that the best evidence of any uncured exceptions is an initial or interim report, particularly given the apparent absence of any evidence HSBC ever sought to require sellers to cure such exceptions or repurchase the loans.  This process will ensure that expert reports need only be prepared once and should obviate any need for the District Court to resolve disputes whether at summary judgment, on motions in limine, or at trial concerning the identity of initial and final certifications and exception reports.

      Good cause exists for this request.  *First*, plaintiffs expect that the gaps and disputes remaining should likely be few in number and focused on a handful of the 24 bellwether trusts, and the meet-and-confer process may resolve all or nearly all potential disputes.  *Second*, the information sought here from HSBC is more modest than plaintiffs' previous interrogatory and follows plaintiffs' own best efforts to identify the correct set of certifications and exception reports in the first instance.  *Third*, because HSBC was required to receive such documents and enforce seller cure or repurchase obligations, it is in a vastly superior position to determine whether a set of such documents is correct than plaintiff-investors who never received these documents and had no ability to use them to demand repurchase.  *Fourth*, fairness and efficiency require that the parties resolve any disputes concerning certifications and exceptions reports before their experts start to work with them.  *Fifth*, the Court will be spared from having to adjudicate such unnecessary disputes down the line, after expert reports are submitted.

      Plaintiffs respectfully request that the Court order the parties cooperatively to identify the correct sets of certifications and exception reports for the 24 bellwether trusts as proposed above.

                                Respectfully submitted,

                                  Scott K. Attaway
                                *Counsel for the NCUA Board, as Liquidating Agent*
                                *Submitted on behalf of coordinated plaintiffs*

Cc: All counsel of record via ECF