LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

EDWARD REDDINGTON
(202) 434-5063
ereddington@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

May 4, 2017

<u>Via ECF</u>

Honorable Sarah Netburn
Thurgood Marshall Courthouse
United States District Court

      Re:    *Coordinated RMBS Trustee Litigation Against HSBC Bank USA, NA*, Nos. 14-cv-08175, 14-cv-09366, 14-cv-10101, 15-cv-02144, 15-cv-10032, 15-cv-10096

Dear Judge Netburn:

      I write on behalf of HSBC Bank USA, N.A. ("HSBC") in response to Plaintiffs' May 1, 2017 letter, which Plaintiffs characterize as requesting an order requiring HSBC to cooperate with Plaintiffs in resolving so-called exception report issues stemming from third party productions. While HSBC always is willing to cooperate, Plaintiffs here did not ask HSBC to do so before filing their letter motion. Instead, Plaintiffs raise this request without meeting and conferring about it first. This is unlikely to have been a mere oversight by Plaintiffs, but is instead a tactical decision. For the reasons noted below, Plaintiffs' request should be denied.

      As a threshold matter, Plaintiffs' newest letter motion is a repackaging of the relief they recently requested as to exception reports and which this Court properly denied by Order dated March 7, 2017. *See* Order, ECF No. 315 (denying Plaintiffs' application for the Court to compel interrogatory responses). As the Court there acknowledged and Plaintiffs now concede, HSBC already has met it discovery obligations with respect to Custodian certifications and exception reports for the Bellwether Trusts, Order at 5-6, and has produced almost all of the requested certifications and reports following a reasonable search of HSBC's own documents. Ltr. at 2 (acknowledging that HSBC has produced "final" exception reports for all but four of the Bellwether Trusts). HSBC also has answered hundreds of requests for admission propounded by Plaintiffs relating to HSBC's produced documents, including RFAs relating to exception reports. In short, HSBC has complied with all of its discovery obligations relating to such documents.

      Against this backdrop, based on Plaintiffs' May 1, 2017 letter, it appears that Plaintiffs subpoenaed certain additional exception reports from the third party Custodians who, unlike HSBC, were responsible for preparing such reports in the Bellwether Trusts. It also appears (based on Plaintiffs' letter) that the Custodians already have produced some documents to Plaintiffs and that discussions between the Plaintiffs and these third parties are ongoing. Ltr. at 3 (noting the Custodians' productions so far have included some of the purportedly missing documents). Counsel for HSBC was not included in Plaintiffs' discussions with these third

Honorable Sarah Netburn
May 4, 2017
Page 2

parties, and, therefore, HSBC is unaware of what reports the Custodians offered to produce, the results of any meet and confer discussions, or what reports the Plaintiffs have received. Before filing their letter, Plaintiffs' counsel never raised any issues about these third party productions with HSBC, nor did Plaintiffs ask to meet and confer with HSBC regarding so-called "exception report issues." Accordingly, Plaintiffs' letter motion is premature. If, after the Custodians have finished responding to Plaintiffs' third party subpoenas (and Plaintiffs have produced those documents to HSBC), Plaintiffs have remaining questions or concerns regarding Custodian certifications and/or exception reports, HSBC is willing to meet and confer in good faith.[1] But there is no reason for the Court to order a unique "protocol" governing this limited set of documents or to take any other action at this time. For this reason alone, Plaintiffs' motion should be denied.

Besides being unnecessary and premature, HSBC objects to the content of the proposed "protocol" Plaintiffs suggest in their letter. Establishing a protocol to address a handful of documents that *may* not be produced by the end of third-party discovery makes no sense and is inefficient. Moreover, it remains unclear to HSBC what "admissions" Plaintiffs will seek from HSBC above and beyond the hundreds of RFAs to which HSBC already has responded. Since HSBC has not been included in Plaintiffs' ongoing discovery from the Custodians, it also is not clear that HSBC will be in a position to make further admissions or denials with respect to such third party documents, and certainly not a mere two weeks following the close of third party discovery. Even more egregiously, Plaintiffs' request that the order potentially preclude HSBC from offering any evidence (subsequently located or otherwise) at summary judgment or trial is without basis and improper. Plaintiffs' theories of liability in this case remain ill-defined and continue to change. As a result, HSBC should not be foreclosed from introducing relevant evidence in response to such claims.

Finally, it is worth noting that HSBC generally disagrees with the factual assertions Plaintiffs make in their letter regarding the Custodians' certifications and exception reports, as well as HSBC's purported obligations and practices with respect to those documents.[2] Indeed, deposition testimony obtained by Plaintiffs from fact witnesses contradicts Plaintiffs' characterizations of these documents and HSBC's obligations. Additionally, Judge Scheindlin dismissed all claims relating to document deficiencies except for claims relating to three trusts

---

[1] Plaintiffs' letter motion suggests that certain of HSBC's RFA responses may need to be supplemented based on documents produced to Plaintiffs by the Custodians. Plaintiffs have not raised any concerns with HSBC about HSBC's RFA responses, and we are surprised to hear of this issue for the first time in a letter to the Court. In any event, HSBC is willing to supplement its discovery responses if good cause exists to do so. If Plaintiffs have questions about HSBC's RFA responses, they should raise them first with counsel for HSBC.

[2] For example, HSBC disagrees with Plaintiffs' characterization of HSBC's obligations with respect to "final" exception reports. HSBC also disagrees with Plaintiffs' suggestion, Ltr. at 5, that these reports provided notice of uncured document exceptions or triggered some obligation on the part of the indenture trustee. The fact testimony that has been developed by Plaintiffs in discovery contradicts Plaintiffs' arguments.

invested in by only three Plaintiffs. *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 109 F. Supp. 3d 587, 608 (S.D.N.Y. 2015). None of those three trusts is a Bellwether Trust. In all likelihood, Plaintiffs have filed their latest letter motion without meeting and conferring about it in the hopes that they can do an end-run around these facts and somehow salvage unpled or dismissed document exception claims by requiring HSBC to participate in a protocol relating to exception reports, even though fact discovery has confirmed that Plaintiffs' position concerning those reports is inaccurate. While such merits-based disagreements do not foreclose the parties from meeting and conferring regarding the production of exception reports, they do counsel against prematurely ordering a protocol that is either unnecessary or is based on a mischaracterization of the documents or the parties' obligations.

\* \* \* \* \* \* \* \* \* \* \*

Plaintiffs' letter is a perfect example of why Rule 37(a)(1) of the Federal Rules of Civil Procedure requires a party seeking "an order compelling disclosure or discovery" to have "in good faith conferred or attempted to confer with the person or party" from whom it seeks that discovery. Plaintiffs made no attempt to meet and confer here. For the foregoing reasons, HSBC respectfully submits that Plaintiffs' request should be denied.

                                                Sincerely,

                                                Edward Reddington

cc: All counsel via ECF