**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROYAL PARK INVESTMENTS SA/NV,<br><br>               Plaintiff,<br>    v.<br><br>HSBC BANK USA, NATIONAL<br>ASSOCIATION,<br><br>               Defendant. | **Case No. 14-CV-8175-LGS-SN** |
| BLACKROCK BALANCED CAPITAL<br>PORTFOLIO (FI), *et al.*,<br><br>               Plaintiffs,<br>    v.<br><br>HSBC BANK USA, NATIONAL<br>ASSOCIATION,<br><br>               Defendant. | **Case No. 14-CV-9366-LGS-SN** |
| PHOENIX LIGHT SF LIMITED, *et al.*,<br><br>               Plaintiffs,<br>    v.<br><br>HSBC BANK USA, NATIONAL<br>ASSOCIATION,<br><br>               Defendant. | **Case No. 14-cv-10101-LGS-SN** |
| NATIONAL CREDIT UNION<br>ADMINISTRATION BOARD, *et al.*,<br><br>               Plaintiffs,<br>    v.<br><br>HSBC BANK USA, NATIONAL<br>ASSOCIATION,<br><br>               Defendant. | **Case No. 15-cv-2144-LGS-SN** |

| | |
|---|---|
| COMMERZBANK AG,<br><br>                    Plaintiff,<br>         v.<br><br>HSBC BANK USA, NATIONAL<br>ASSOCIATION,<br><br>                    Defendant. | **Case No. 15-cv-10032-LGS-SN** |
| TRIAXX PRIME CDO 2006-1, *et al.*,<br><br>                    Plaintiffs,<br>         v.<br><br>HSBC BANK USA, NATIONAL<br>ASSOCIATION,<br><br>                    Defendant. | **Case No. 15-cv-10096-LGS-SN** |

**HSBC BANK USA, N.A.'S RESPONSE
TO THE COORDINATED PLAINTIFFS'
RULE 72 OBJECTIONS AND MOTION TO VACATE
THE MAGISTRATE JUDGE'S OPINION AND ORDER CONCERNING SAMPLING**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND ...............................................................................................................3

    A.    The Role of the Trustee.............................................................................3

    B.    Plaintiffs' Claims .......................................................................................5

    C.    Procedural History .....................................................................................7

    D.    The Ruling Under Review .........................................................................7

ARGUMENT ....................................................................................................................9

II.    The Sampling Order Is Subject to the Clearly Erroneous Standard of Review.................9

III.    Sampling Will Not Meet Plaintiffs' Loan-by-Loan Proof Requirement. ..........................11

    A.    Sampling Cannot Establish Material Breaches on a Loan-by-Loan Basis. ..........12

    B.    Sampling Will Not Prove Actual Knowledge or EODs........................................15

        1.    Actual knowledge of breaches of R&Ws is required................................15

        2.    Sampling cannot establish actual knowledge of R&W breaches..............21

    C.    Sampling cannot establish EODs or actual knowledge of EODs. ........................22

    D.    Sampling Cannot Establish Causation, Damages or Standing.............................23

        1.    Causation....................................................................................23

        2.    Damages.....................................................................................24

        3.    Standing. ....................................................................................24

CONCLUSION....................................................................................................................25

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Adams v. Suozzi*, 433 F.3d 220 (2d Cir. 2005).................................................................4

*Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, 301 F.R.D. 47 (S.D.N.Y. 2014) ...............................................................................................................10

*Argonaut P'ship L.P. v. Bankers Tr. Co.*, 2001 WL 585519 (S.D.N.Y. May 30, 2001) ..............................................................................................................22

*Arista Records LLC v. Doe*, 604 F.3d 110 (2d Cir. 2010) ...........................................10

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 2011 WL 5335566 (S.D.N.Y. Oct. 31, 2011) ...................................................................................................14

*Assured Guaranty Municipal Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475 (S.D.N.Y. 2013)...................................................................................................14, 18

*Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297 (2d Cir. 2016)..................................................................................19, 20

*Bank of New York Mellon Trust Co., N.A. v. Morgan Stanley Mortgage Capital, Inc.*, 2013 WL 3146824 (S.D.N.Y. June 19, 2013) .................................................18

*BlackRock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon*, 180 F. Supp. 3d 246, 259 (S.D.N.Y. 2016)...............................................................16

*BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, N.A.*, --- F. Supp. 3d ---, 2017 WL 1194683 (S.D.N.Y. Mar. 30, 2017).................................19

*BlackRock Core Bond Portfolio v. U.S. Bank N.A.*, 165 F. Supp. 3d 80, 100 (S.D.N.Y. 2016).................................................................................................15, 16

*Brown v. Mermaid Plaza Assocs.*, 2016 WL 5716414 (E.D.N.Y. Sept. 30, 2016) ......................10

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78 (S.D.N.Y. 2002) .......................9

*CFIP Master Fund Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450 (S.D.N.Y. 2010)...................3, 18

*Cullen v. Village of Pelham Manor*, 2009 WL 1507686 (S.D.N.Y. May 28, 2009) ...................10

*DeJesus v. Comm'r of Soc. Sec.*, 2014 WL 5040874 (S.D.N.Y. Sept. 29, 2014)..........................9

*Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488 (S.D.N.Y. 2013) ...........................................................18

*Elliott Assocs. v. J. Henry Schroder Bank & Tr. Co.*, 838 F.2d 66 (2d Cir. 1988)........................3

*FHFA v. HSBC N. Am. Holdings Inc.*, 33 F. Supp. 3d 455, 480 (S.D.N.Y. 2014) ....................... 16

*FHFA v. UBS Ams., Inc.*, 2013 WL 3284118 (S.D.N.Y. June 28, 2013) ............................... 19, 21

*Fixed Income Shares: Series M v. Citibank N.A.*, 130 F. Supp. 3d 842, 851, 854 (S.D.N.Y. 2015) ................................................................................................................. 16

*In re Lehman Bros. Holding, Inc.*, No. 08-13555 (Bankr. S.D.N.Y. Dec. 12, 2014) ................... 12

*In re Lehman Bros. Holdings Inc.*, 2014 WL 8274868 (Bankr. S.D.N.Y. Dec. 29, 2014) ........................................................................................................................................ 12

*LaSalle Bank N.A. v. Citicorp Real Estate, Inc.*, 2003 WL 22047891 (S.D.N.Y. Aug. 29, 2003) ...................................................................................................................... 18

*Lazard Freres & Co. v. Protective Life Ins.*, 108 F.3d 1531 (2d Cir. 1997) ............................... 25

*Lynch v. Inter-Cty. Bldg. Materials Corp.*, 2013 WL 5652524 (E.D.N.Y. Oct. 15, 2013). ........................................................................................................................................ 11

*MASTR Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Estate Sec. Inc.*, 2015 WL 764665 (S.D.N.Y. Jan. 9, 2015) .............................................................................. passim

*MASTR Asset Backed Sec. Tr. 2006-HE3 ex rel. U.S. Bank N.A. v. WMC Mortg. Corp.*, 2012 WL 4511065 (D. Minn. Oct. 1, 2012) .................................................................. 18

*McCulloch v. Town of Milan*, 2009 WL 4857994 (S.D.N.Y. Dec. 11, 2009) ............................... 9

*Meckel v. Cont'l Res. Co.*, 758 F.2d 811 (2d Cir. 1985) ............................................................. 3

*Millennium Partners, L.P. v. U.S. Bank, N.A.*, 2013 WL 1655990 (S.D.N.Y. Apr. 17, 2013), *aff'd sub nom. Millennium Partners, L.P. v. Wells Fargo Bank, N.A.*, 654 F. App'x 507 (2d Cir. 2016) ............................................................................... 23

*MPI Tech A/S v. IBM Corp.*, 2017 WL 481444 (S.D.N.Y. Feb. 6, 2017) (Schofield, J.) ......................................................................................................................... 10

*Peak Partners, LP v. Republic Bank*, 191 F. App'x 118 (3d Cir. 2006) ......................................... 3

*Policemen's Annuity & Benefit Fund of Chi. v. Bank of Am., N.A.*, 943 F. Supp. 2d 428 (S.D.N.Y. 2013), *abrogated on other grounds*, 775 F.3d 154 (2d Cir. 2014) ........................................................................................................................................ 20

*Policemen's Annuity & Benefit Fund of Chicago v. Bank of America, N.A.*, 907 F. Supp. 2d 536 (S.D.N.Y. 2012) .................................................................................. 19

*Racepoint Partners, LLC v. JP Morgan Chase Bank*, 2006 WL 3044416 (S.D.N.Y. Oct. 26, 2006) ................................................................................................... 25

*Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*,
775 F.3d 154 (2d Cir. 2014), *cert. denied*, 136 S. Ct. 796 (2016) ..........................1, 11, 12, 21

*Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*, 2016 WL 899320 (S.D.N.Y. Mar.
2, 2016) .............................................................................................................................15

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 439020
(S.D.N.Y. Feb. 3, 2016) ....................................................................................................15

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-cv-4394(AJN)
(S.D.N.Y. Apr. 4, 2017).....................................................................................................25

*Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 109 F. Supp. 3d 587, 602-03
(S.D.N.Y. 2015)...........................................................................................................2, 6, 15

*Sansalone v. Bon Secours Charity Health Sys.*, 2009 WL 1649597 (S.D.N.Y. June
11, 2009) ...........................................................................................................................10

*Seena Int'l, Inc. v. One Step Up, Ltd.*, 2016 WL 2865350 (S.D.N.Y. May 11,
2016) .................................................................................................................................10

*Semi-Tech Litig., LLC v. Bankers Tr. Co.*, 353 F. Supp. 2d 460 (S.D.N.Y. 2005),
*aff'd per curiam*, 450 F.3d 121 (2d Cir. 2006) ...............................................................24

*Sterling Fed. Bank, F.S.B. v. DLJ Mortg. Capital, Inc.*, 2010 WL 3324705 (N.D.
Ill. Aug. 20, 2010)............................................................................................................23

*U.S. Bank, N.A. v. UBS Real Estate Sec. Inc.*, 205 F. Supp. 3d 386, 424 (S.D.N.Y.
2016) .........................................................................................................................7, 11, 12

## STATE CASES

*Aquavella v. Viola*, 79 A.D.3d 1590 (4th Dep't 2010) .........................................................17, 20

*Bear Stearns Mortg. Funding Tr. 2007-AR2 v. EMC Mortg. LLC*, No. 6861-CS
(Del. Ch. Nov. 8, 2012).................................................................................................2, 12

*Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 11 A.D.3d 232 (1st Dep't 2004) .....................24

*Commerce Bank v. Bank of New York Mellon*, 141 A.D.3d 413 (1st Dep't 2016)............16, 17, 23

*Racepoint Partners, LLC v. JPMorgan Chase Bank, N.A.*, 14 N.Y.3d 419 (2010).......................3

*W. & S. Life Ins. v. HSBC Bank USA, N.A.*, No. A1501580 (Ohio Ct. Com. Pl.,
Hamilton Cty. June 27, 2016) ..........................................................................................16

## OTHER AUTHORITIES

*Black's Law Dictionary* (10th ed. 2014)..................................................................................17

12 Charles Allen Wright et al., *Federal Practice and Procedure* § 3068.2 (2d ed. 2017) ............................................................................................................... 10

14 James Wm. Moore et al., *Moore's Federal Practice* § 72.08[1] (MB 3rd ed. 2017) ............................................................................................................... 11

N.Y. Gen. Oblig. Law § 13-107 (McKinney 2017) ..................................................... 25

Restatement (Second) of Judgments § 36 cmt. a ......................................................... 14

*Webster's Third New International Dictionary* 647 (2002) ................................... 17, 20

**INTRODUCTION**

In resolving a dispute about the utility of costly sampling-based discovery, Magistrate Judge Netburn correctly concluded that Plaintiffs cannot prove their case by sampling. Plaintiffs propose to use sampling to prove that third parties committed thousands of breaches of the contracts that govern the RMBS trusts in these cases and that HSBC thereafter breached its own contractual obligations. But HSBC's (carefully limited) duties under those contracts are specific to individual loans in each trust. For this reason, the Second Circuit has held that claims against an RMBS trustee must be proved loan-by-loan. *Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 162–63 (2d Cir. 2014) ("*Policemen's Annuity*"), *cert. denied*, 136 S. Ct. 796 (2016). Here, this standard requires *loan-specific* proof of (1) material breaches by the third parties; (2) HSBC's actual knowledge of those specific breaches; (3) causation; and (4) damages for each loan, as well as security-specific proof of standing. Sampling never could satisfy the Second Circuit's standard, because it never could prove these loan-specific facts for any loans other than the ones actually sampled and re-underwritten.

No court has approved of sampling in a case against a trustee, and it even has been rejected in cases against sponsors. *See MASTR Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Estate Sec. Inc.*, 2015 WL 764665, at *10–11 (S.D.N.Y. Jan. 9, 2015) ("*MASTR*"). Indeed, as another judge commented when he considered a plaintiff's proposal to prove breaches by sampling in a case against a sponsor, "it's really nifty for a plaintiff to accuse someone of breaching their obligations over a thousand loan contracts and not wish to try all of them," but

1

"the justice system ha[sn't] gotten there yet, where probabilities are used to determine things" in a breach-of-contract case.[1]

The additional elements Plaintiffs must prove for a claim against a trustee make Plaintiffs' proposed approach all the more untenable here. Although the actual knowledge requirement is only one of these additional insurmountable obstacles, Plaintiffs devote special attention to it. They argue that their claims can be based on HSBC's constructive knowledge and that HSBC had a duty to "nose to the source" when it "should have known" of other parties' breaches. Plaintiffs' arguments already have been rejected. In ruling on HSBC's motion to dismiss, this Court held that Plaintiffs must show HSBC's *actual knowledge* to prevail at summary judgment or trial. *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 109 F. Supp. 3d 587, 602–03 (S.D.N.Y. 2015) ("*Royal Park*"). Since then, both New York and federal courts have echoed Plaintiffs' burden to show actual knowledge, as well as confirmed rejection of the "nose to the source" theory. An indenture trustee, such as HSBC here, has strictly limited duties under the governing agreements; it does not have a free-standing duty to investigate the loans in the trusts or police the actions of other parties.

In addition, although Magistrate Judge Netburn did not expressly rely on them, Plaintiffs' burdens to prove proximate cause (*i.e.*, that the actions Plaintiffs assert HSBC should have taken would have succeeded), damages (based on the loan-specific repurchase price defined in the Agreements), and standing further preclude the use of sampling. Each of these points requires loan-specific or security-specific proof that cannot be established through statistical extrapolation.

---

[1] Exhibit 1 of the Borden Decl. ("Ex.") (Transcript of Status Conference at 3, 6, *Bear Stearns Mortg. Funding Tr. 2007-AR2 v. EMC Mortg. LLC*, No. 6861-CS (Del. Ch. Nov. 8, 2012) (Strine, Ch.)).

For these reasons, and as more fully explained below, this Court should affirm and adopt Magistrate Judge Netburn's Sampling Order in its entirety.

## BACKGROUND

### A.    The Role of the Trustee

An indenture trustee is a "different legal animal" than an ordinary trustee. *Peak Partners, LP v. Republic Bank*, 191 F. App'x 118, 122 (3d Cir. 2006). "Unlike the ordinary trustee, who has historic common-law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement." *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 816 (2d Cir. 1985); *see also Elliott Assocs. v. J. Henry Schroder Bank & Tr. Co.*, 838 F.2d 66, 71 (2d Cir. 1988) (an indenture trustee's duties are ministerial in nature and "are strictly defined and limited to the terms of the indenture"). New York courts have repeatedly rejected efforts to "expand[] indenture trustees' recognized administrative duties . . . beyond anything found in the contract." *Racepoint Partners, LLC v. JPMorgan Chase Bank, N.A.*, 14 N.Y.3d 419, 425 (2010).

Here, HSBC performed an even more limited role under the Agreements—that of a "nominal" or "naked" trustee, meaning it performed no other trust function such as holding or reviewing mortgage files, creating or transmitting remittance reports to investors, distributing principal and interest payments, or servicing loans.[2] For its ministerial role, HSBC was paid a nominal fee of approximately $3,500 to $4,000 per year per trust, reflecting its limited duties. *CFIP Master Fund Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450, 474 (S.D.N.Y. 2010) (finding implausible plaintiff's contention that it was relying on an indenture trustee to protect its rights).

---

[2] Under the Agreements, other entities, such as the custodian, securities administrator, paying agent, and servicers, were responsible for these functions.

The relevant Agreements provide among other things that HSBC:  (1) performs only duties specifically set forth and no implied obligations shall be read into the Agreements; (2) has no obligation to expend or risk its own funds; (3) has no pre-Event of Default duty to investigate absent direction and indemnity from investors; (4) has no duty to exercise any permissive power; (5) shall not be liable for any action taken or omitted in good faith; (6) does not monitor Servicers (as that duty is assigned to the Master Servicer); (7) may conclusively rely on any certificates or opinions provided to the trustee (which include certifications from servicers and master servicers); and (8) is not deemed to have notice or knowledge of any default or Event of Default ("EOD") unless a Responsible Officer of the Trustee working in the corporate trust office has actual knowledge or has received written notice.  *See* ECF Nos. 268-3 (WFMBS 2006-19 PSA), 268-4 (MLMBS 2007-2 Indenture), and 268-5 (DBALT 2006-AR5 PSA).  Other provisions in the Agreements must be read in light of and consistent with these limitations.  *See Adams v. Suozzi*, 433 F.3d 220, 228 (2d Cir. 2005) (contract to be read as a whole).[3]

---

[3] These limitations were well-known to the sophisticated investors who purchased RMBS securities.  In fact, many of the same Plaintiffs here, including BlackRock, Kore, PIMCO, TIAA, AEGON, and Prudential, expressly recognized these exact limitations in a brief they submitted in another case.  ECF No. 268-9 (Institutional Investors' Statement in Supp. of Settlement Excerpt) ¶ 1 (noting that the trustee "is not required to investigate" or "expend its own funds"); ¶ 15 (explaining that the trustee "is not obligated to investigate any fact" or "to institute, conduct or defend any litigation" unless directed and indemnified by Holders). Plaintiffs also were well aware that "the trustee is not required to review loan files for breaches of [representations and warranties]," Ex. 2 (NCUA Dep. Ex. 146 at 19), and that the trustee "basically had a reporting function more than an action function," Ex. 3 (Eberhardt Dep. Tr. at 121:1-6). Plaintiffs knew that R&W breach claims must be pursued "loan by loan," Ex. 4 (Smith Dep. Tr. at 173), and to do so, investors "needed the loan files to assess whether any given loan could be the subject of a putback or repurchase claim," Ex. 5 (Fox Dep. Tr. at 189). Moreover, Plaintiffs understood that a discretionary loan file review would be subjective, costly, time-consuming, and uncertain to result in recovery.  Ex. 4 (Smith Dep. Tr. at 163:14-23; 165:4-170:6; 172:3-18); Ex. 6 (Smith Dep. Ex. 7 at 554:8-555:4). Even sophisticated Plaintiffs could not agree internally on how to accomplish the re-underwriting of loans or determine a breach rate.  Ex. 4 (Smith Dep. Tr. at 173:6-174:24).  For these reasons, such a review is not something that a ministerial trustee would undertake unilaterally and is not required by the Agreements.  *See* ECF No. 268-9 (Institutional Investors' Statement in Supp. of Settlement Excerpt) ¶¶ 15–16.

Importantly, in the limited circumstances in which a trustee is required to act, its duties are on a loan-by-loan basis. Although the exact words of the PSAs differ slightly,[4] the effect is the same under all Agreements: If HSBC actually discovers a breach of a representation and warranty made by another party "in respect of any *Loan*," and that breach "materially and adversely affects the value of *such Loan* or the interest therein of the Certificateholders," HSBC's obligation (if one is provided at all)[5] is to enforce the warranting party's obligation to cure or repurchase "*such Loan*" from the trust. ECF 268-8 (DBALT 2006-AR5 PSA § 2.3) (emphasis added). The repurchase price—the amount Plaintiffs claim should have been recovered—is defined based on the unpaid principal balance of "such Loan." *Id.* Similarly, with respect to defective or missing documents in mortgage files, HSBC's duty, if it exists at all,[6] is limited to circumstances in which HSBC has received notice that particular, material documents in a "Mortgage File" have not been cured after a defined period. *Id.*

## B.   Plaintiffs' Claims[7]

Plaintiffs' brief hypothesizes that HSBC breached its obligations in three ways:

First, Plaintiffs assert that HSBC discovered breaches of representations and warranties ("R&Ws") and should have enforced other parties' obligation to repurchase ("put back") those loans. This claim requires that Plaintiffs prove that a warranting party did in fact breach an

---

[4] Each of the 295 trusts at issue in these actions is governed by a separate set of agreements. With its brief to Magistrate Judge Netburn, HSBC submitted exemplar provisions from two PSAs and one Indenture governing three of the bellwether trusts. *See* ECF Nos. 268-3, 268-6 (WFMBS 2006-19), 268-4, 268-7 (MLMBS 2007-2), and 268-5, 268-8 (DBALT 2006-AR5).

[5] Some PSAs do not provide that the trustee has a duty to enforce repurchase obligations.

[6] Some PSAs do not impose any obligation on the trustee to seek repurchase in cases of defective or missing documents. *See, e.g.*, ECF 268-3, section 2.03.

[7] The elements of Plaintiffs' claims are set forth more specifically in HSBC's Response to the Coordinated Plaintiffs' Memorandum of Law in Support of Sampling. ECF No. 268 at 4-10.

R&W with respect to a specific loan; that the breach was material to the loan in question; that HSBC gained actual knowledge of the breach; proximate cause, *i.e.*, that HSBC's actions would have succeeded; and damages based on the repurchase price of the specific loan.

Second, as a fallback argument, Plaintiffs assert that HSBC should have investigated and *found* breaches of R&Ws because there was an EOD that triggered HSBC's prudent person standard of care. This claim requires Plaintiffs to prove all the elements mentioned above, plus the existence of an EOD; HSBC's actual knowledge of that EOD; and that a prudent person with HSBC's knowledge would have undertaken a costly investigation at the trusts' expense, discovered a specific R&W breach as to a specific loan, and taken the enforcement actions that Plaintiffs now hypothesize.

Third, Plaintiffs contend that HSBC gained knowledge of document deficiencies from so-called Exception Reports, and that these reports triggered a duty to put back the loans in question. Judge Scheindlin, however, dismissed these document-deficiency claims as untimely except for a small minority of trusts, none of which are Bellwether Trusts, *Royal Park*, 109 F. Supp. 3d at 607–08, so at most, Plaintiffs may attempt to cite the Exception Reports as (insufficient) evidence of discovery of breaches in support of their R&W claim. Exception Reports, however, do not provide information about R&W breaches.[8]

---

[8] Exception reports are prepared by the Custodian based on documents purportedly missing from the Mortgage Files held by the custodian. Shortly after trust closing, the Custodian provides a certification that the Mortgage File for the trust in question contains the required documents, and the Custodian also provides a "final" exception report listing any exceptions to the certification. *See, e.g.*, ECF No. 268-6 (WFMBS 2006-19 PSA Excerpt) § 2.02. The Depositor or Seller (depending on the trust) then has a period of time (generally 60 days) to work with the Custodian to cure material deficiencies, if any, listed in the exception report. *Id.* The trustee's duty relating to document deficiencies arises only if the trustee later receives notice that the Sponsor or Depositor failed to cure material exceptions. Plaintiffs attempt to connect the unrelated concepts of document deficiencies existing before the Depositor's cure period, and breaches of R&Ws by pointing to an email in HSBC's production. However, the author of that email confirmed that "Exception Reports don't have anything to do with the breaches of the reps and warrants." Ex. 7 (Musarra Tr. at 115:19-21).

## C.     Procedural History

The Sampling Order was the result of Plaintiffs' repeated requests that Magistrate Judge Netburn enter a "loan file reunderwriting protocol" as a facet of the discovery schedule in these cases.  At a hearing on October 27, 2016, the Magistrate Judge requested briefing on whether sampling is "an appropriate discovery tool" in these cases.  Oct. 27, 2016 Hr'g Tr. at 40.  Plaintiffs did not respond that Magistrate Judge Netburn lacked authority to address that topic.  To the contrary, after she described in detail the specific questions she wanted addressed, Plaintiffs affirmatively stated, "We're happy to provide that briefing."  *See id.* at 41 (Mr. DeLange).  Nor did the brief Plaintiffs subsequently filed contend that Magistrate Judge Netburn lacked the authority to decide the issues.  In fact, Plaintiffs' brief raised all of the points they now contend she lacked authority to consider, and it concluded with a request that she "order that sampling . . . shall proceed."  ECF 276 at 20.

## D.     The Ruling Under Review

In the Sampling Order, Magistrate Judge Netburn carefully reviewed the key provisions of the governing Agreements and the relevant case law and declined "to authorize costly expert discovery that will not satisfy the plaintiffs' burden of proof required by the Court of Appeals and the terms of the PSAs."  Sampling Order at 13.  She began her analysis with the Second Circuit's holding in *Policemen's Annuity* that claims against a trustee must be proved "loan-by-loan and trust-by-trust," *id.* at 8, as well as other cases in this district that have recognized the need for Plaintiffs to show "'breaches on an individualized loan-by-loan basis.'"  *Id.* at 8–9 (citing *MASTR*, 2015 WL 764665, at *11; quoting *U.S. Bank, N.A. v. UBS Real Estate Sec. Inc.*, 205 F. Supp. 3d 386, 424 (S.D.N.Y. 2016)).  The Sampling Order cataloged the many loan-specific provisions of the Agreements, including that HSBC's duty to seek repurchase could be triggered only upon discovery of a breach of an R&W "in respect of *any Loan*" or of a document

7

defect in "*a Mortgage File*"; that the breach must be material as to "*such Loan*"; and that the repurchase must be of "*such* Loan," at a price that is specific to that particular loan. Sampling Order at 9–11 (internal quotation marks omitted). The Order therefore reasoned that Plaintiffs must adduce "loan-specific proof related to a particular defect, that [the] defect was material to the value of the loan, that HSBC failed to act with respect to the loan-specific remedies available for a particular defect, and that such failure caused the plaintiffs harm." *Id.* at 9. Magistrate Judge Netburn concluded that sampling cannot supply the "loan-by-loan" proof of breaches required by the Second Circuit and the governing Agreements. *Id.* at 9.

The Sampling Order went on to find that the term "discovery" in the governing Agreements connotes actual knowledge. This conclusion was based principally on the text of the Agreements themselves, which do not impose on HSBC any general duty to investigate and, when they do require action by HSBC, limit those duties to "undertak[ing] defined, concrete measures (*i.e.*, enforce the originator's or the seller's repurchase obligation) with respect to a specific defect, in a specific loan, in a specific trust"—something that can be done only if the trustee actually knows of the specific defect. Sampling Order at 13–15. Magistrate Judge Netburn also found that the case law concerning an indenture trustee's limited duties supported her rejection of a "should have known" standard. *Id.* at 15–16. The Sampling Order concluded that sampling cannot establish actual knowledge. *Id.* at 16.

The Sampling Order also found that Plaintiffs' EOD-related claims are not susceptible to proof by sampling. First, because Plaintiffs' principal theory is that EODs should have led HSBC to investigate and discover breaches of R&Ws, all of the insurmountable obstacles to proving R&W breaches by sampling apply equally to their EOD claims. Sampling Order at 17–18. Second, because it is indisputable that HSBC must have actual knowledge of an EOD before

a post-EOD duty can arise, the impossibility of proving actual knowledge by sampling also applies equally to EOD claims. *Id.* at 18. Finally, Magistrate Judge Netburn reasoned that even if HSBC had actual knowledge of an EOD and in response would have investigated loans, sampling cannot establish the "specific breaching loans outside the sample," which would be required in order to bring about repurchase of a specific loan as provided in the governing Agreements. *Id.* at 19–20.

## ARGUMENT

**I.    The Sampling Order Is Subject to the Clearly Erroneous Standard of Review.**

This Court should review Magistrate Judge Netburn's Sampling Order under the "highly deferential"[9] clearly-erroneous-or-contrary-to-law standard of review. That standard applies because the Sampling Order was a non-dispositive order. Rule 72(a), not Rule 72(b), therefore supplies the governing standard of review. A "party seeking to overturn a magistrate judge's decision carries a heavy burden." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002).

As a threshold matter, the Court should reject Plaintiffs' request to vacate the Sampling Order as exceeding Magistrate Judge Netburn's authority to decide discovery issues. Plaintiffs waived this argument by not raising it before her. *See, e.g.*, *DeJesus v. Comm'r of Soc. Sec.*, 2014 WL 5040874, at *1 (S.D.N.Y. Sept. 29, 2014). Plaintiffs' argument also is incorrect. The Sampling Order was a discovery order. It enforced the proportionality standard of Rule 26 and held that "'the burden or expense of the proposed discovery outweighs its likely benefit.'" Sampling Order at 7 (quoting Rule 26(b)(1)). The Order expressly stated that because its conclusions concerning Plaintiffs' burden of proof were solely "intended to guide the Court's

---

[9] *McCulloch v. Town of Milan*, 2009 WL 4857994, at *1 (S.D.N.Y. Dec. 11, 2009).

proportionality analysis," those conclusions "should not be deemed to have law-of-the-case

effect." *Id.* at 8.  Discovery orders are considered non-dispositive under Rule 72, and, therefore,

the deferential Rule 72(a) standard of review applies.  *Arista Records LLC v. Doe*, 604 F.3d 110,

116 (2d Cir. 2010); 12 Charles Allen Wright et al., *Federal Practice and Procedure* § 3068.2 (2d

ed. 2017).

Moreover, Magistrate Judge rulings may be non-dispositive even if they impact the

outcome of the case.  *See, e.g., MPI Tech A/S v. IBM Corp.*, 2017 WL 481444, at *3 (S.D.N.Y.

Feb. 6, 2017) (Schofield, J.) (applying the clearly erroneous standard to denial of leave to amend,

"regardless of whether the denial foreclosed potential claims").  *See also Seena Int'l, Inc. v. One

Step Up, Ltd.*, 2016 WL 2865350, at *10 (S.D.N.Y. May 11, 2016) (Moses, M. J.) (order not

dispositive even if "[a]s a practical matter, such an order may bar a party from pursuing certain

theories of liability or seeking certain items of damage").  "As long as the order does not wholly

dispose of a party's claim or defense . . . it falls within the grant of Rule 72(a)."  *Seena*, 2016 WL

2865350, at *10.  For example, courts in this Circuit treat Magistrate Judge decisions excluding

expert testimony to be non-dispositive, despite the consequences for the case's outcome.  *Brown

v. Mermaid Plaza Assocs.*, 2016 WL 5716414 (E.D.N.Y. Sept. 30, 2016); *Advanced Analytics,

Inc. v. Citigroup Glob. Mkts., Inc.*, 301 F.R.D. 47, 50 n.3 (S.D.N.Y. 2014); *Cullen v. Village of

Pelham Manor*, 2009 WL 1507686 (S.D.N.Y. May 28, 2009); *Sansalone v. Bon Secours Charity

Health Sys.*, 2009 WL 1649597 (S.D.N.Y. June 11, 2009).  Thus, even if the Sampling Opinion

could be construed as an order "bar[ring] [Plaintiffs] from developing  . . . expert testimony,"

Obj. at 6, that would provide no basis for deeming it dispositive within the meaning of Rule 72.

Significantly, Plaintiffs do not say—because they cannot—that the Sampling Order

actually disposes of their claims.  In fact, one of the Coordinated Plaintiffs (Triaxx) has stated

that it does not intend to use sampling to attempt to prove its claims.  That Plaintiffs hoped to evade the requirements of the Agreements and binding precedent through the use of sampling does not make the Sampling Order dispositive.

Finally, even if the Court were inclined to view the Sampling Order as a dispositive order, it may simply treat it as a report and recommendation.  *See* 14 James Wm. Moore et al., *Moore's Federal Practice* § 72.08[1] (MB 3rd ed. 2017) ("If a magistrate judge erroneously enters an order purporting to determine a dispositive matter, a district judge reviewing the order may ignore the form of the decision and treat it as a recommendation."); *Lynch v. Inter-Cty. Bldg. Materials Corp.*, 2013 WL 5652524, at *5 n.2 (E.D.N.Y. Oct. 15, 2013).  Because the Sampling Order was thorough, well-reasoned, and correct in all respects (as explained in detail below), this Court should adopt it no matter the standard of review.

## II.    Sampling Will Not Meet Plaintiffs' Loan-by-Loan Proof Requirement.

Regardless of how Plaintiffs characterize their claims, those claims must be proved on a "loan-by-loan and trust-by-trust" basis.  *Policemen's Annuity*, 775 F.3d at 162.  This burden of proof is mandated by the Agreements, which provide for a "loan-specific repurchase remedy" and apply to "breaches on an individualized[,] loan-by-loan basis."  *U.S. Bank*, 205 F. Supp. 3d at 424.  Sampling cannot establish numerous elements of the loan-by-loan proof that Plaintiffs must demonstrate.

Even in put-back actions against sponsors, where the theory of liability against the parties who securitized the loans is far less attenuated than Plaintiffs' claims against HSBC here, courts have rejected sampling.  In *MASTR*, Judge Castel rejected sampling because "the terms of the PSAs foreclose such a broad and improvised remedy."  2015 WL 764665, at *10.  In particular, sampling cannot prove liability for breaches of R&Ws because (1) "not all breaches trigger a cure or repurchase obligation"; (2) "the repurchase remedy negotiated by the parties is *loan*

*specific*"; and (3) "the PSAs expressly provide[] that cure or repurchase are the 'sole remedies,'

and, thus, they foreclose the 'pervasive breach' theory." *Id.* at *10-11 (emphasis added) (citation

omitted); *see also U.S. Bank*, 205 F. Supp. 3d at 476 (rejecting sampling because "the Court

cannot determine whether the [plaintiffs] have proved that [defendant] received notice or

otherwise discovered that a loan was in breach *unless the loan is identified*" (emphasis added)).[10]

The same reasoning applies here.

### A.     Sampling Cannot Establish Material Breaches on a Loan-by-Loan Basis.

Re-underwriting a sample of loans and extrapolating a "breach rate" is fundamentally

incompatible with Plaintiffs' burden to prove the existence of material breaches loan by loan.  As

the Sampling Order correctly concluded, "replacing loan-specific proof with extrapolated pool-

or trust-wide breach rates ignores the Court of Appeals' requirement that breaches be proven on

a loan-by-loan basis."  Sampling Order at 9.

Whether an RMBS trustee's duty to act has been triggered depends on whether the Seller

"was obligated to repurchase a given loan," which "requires examining which loans, in which

trusts, were in breach of the representations and warranties."  *Policemen's Annuity*, 775 F.3d at

162.  Thus, as Magistrate Judge Netburn accurately reasoned, "Plaintiffs must first show which

specific loans were in breach because any defect that would be cured by repurchase is loan-

specific."  Sampling Order at 10 (citing PSA provisions relating to HSBC's discovery of "'any

---

[10] Other courts also have rejected the use of sampling to prove liability for R&W breaches.  In *In re Lehman Bros. Holding, Inc.*, No. 08-13555 (Bankr. S.D.N.Y. Dec. 12, 2014), the court expressed serious concerns about the viability of sampling to prove liability, even in a repurchase case in light of the repurchase language in the contract and the need to calculate a repurchase price.  ECF No. 268-10 (*Lehman Bros.* Dec. 10, 2014 Hr'g Tr. at 354:10-355:17).  The court subsequently established a protocol for re-underwriting all of the more than 200,000 loans at issue.  *See generally In re Lehman Bros. Holdings Inc.*, 2014 WL 8274868 (Bankr. S.D.N.Y. Dec. 29, 2014). Similarly, in *Bear Stearns Mortgage Funding Trust 2007-AR2 v. EMC Mortgage LLC*, No. 6861-CS (Del. Ch. Nov. 8, 2012), the court rejected the use of sampling to prove repurchase liability over a thousand loan contracts.  ECF No. 268–11 (*Bear Stearns* Nov. 8, 2012 Hr'g Tr. at 3:13–17).

materially defective document in, or that *a document* is missing from, *a Mortgage File*'" or that there was "'a breach by the Seller of any representation, warranty or covenant . . . in respect of *any Loan* . . . .'") (alterations in original); *id.* at 11 (citing PSA section providing for repurchase of "'*such* Loan'" at a loan-specific amount) (emphasis added).  The repurchase remedy "rests on the ability of an RMBS trustee to undertake defined, concrete measures (*i.e.*, enforce the originator's or the seller's repurchase obligation) with respect to a specific defect, in a specific loan, in a specific trust."  Sampling Order at 13.  Sampling cannot establish this loan-specific proof of breaches.

Nor can sampling establish materiality.  Materiality also must be shown loan-by-loan because, as the Sampling Order noted, "only those breaches that 'materially and adversely affects the value of *such Loan* or the interest therein of the Certificateholders' trigger a cure or repurchase obligation."  Sampling Order at 10 (quoting ECF 268-5, § 2.3).  The Sampling Order correctly recognized that sampling cannot "'adequately distinguish between breaches that are material and adverse as to a particular loan and those that are not.'"  Sampling Order at 10 (quoting *MASTR*, 2015 WL 764665, at *10).

Plaintiffs' reliance on the principle that wrongdoers must bear the risk of uncertainty as to damages, Obj. at 7, misses the point.  Plaintiffs do not seek to use sampling only for damages (though, as explained below, sampling cannot establish damages either), but also to establish the fact of breach in thousands of loans.  Similarly, the preponderance-of-evidence standard does not help Plaintiffs, because they hope to establish thousands of breaches without presenting a shred of *evidence* as to *any* of them.  Like the Plaintiffs in *Bear Stearns*, Plaintiffs may see this as a "nifty idea," but the law requires actual evidence to prove breaches of contract.

Plaintiffs also draw no support from *Assured Guaranty Municipal Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475 (S.D.N.Y. 2013).  The plaintiff in that case was a monoline insurer, and Judge Rakoff had held in an earlier opinion that the relevant contract did not require loan-specific notice or discovery because it permitted the insurer to "take whatever action at law or in equity that may appear necessary or desirable in its judgment to enforce performance" by the defendant.  *See Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 2011 WL 5335566, at *3, *7 (S.D.N.Y. Oct. 31, 2011) (internal quotation marks omitted).  The Agreements here contain no such provision.  *Flagstar* is distinguishable for the additional reason that the remedy there did not depend on identifying which specific loans were in breach.  The insurer was seeking reimbursement for the claims it paid out, and Judge Rakoff determined it would be entitled to full reimbursement under a "wide range of defect rates."  920 F. Supp. 2d at 515.  Accordingly, it was not necessary for the insurer to show which specific loans were in breach and what their specific repurchase prices would have been.  Here, by contrast, Plaintiffs must prove both.

Finally, that HSBC in its capacity solely as trustee has advocated at times for sampling when being directed to sue sponsors, Obj. at 11, is not relevant here.  As a plaintiff in those cases, HSBC acted as a representative of, and at the direction of, investors.  Consequently, any positions it has taken do not bind it.  *See, e.g.*, Restatement (Second) of Judgments § 36 cmt. a (Am. Law Inst. 1982).  In addition, the elements of a claim against a sponsor differ from those against a trustee.  For example, there is no issue of proximate cause in a case against a sponsor because a sponsor is obligated to repurchase a loan if there is a material breach of an R&W.  Moreover, no breach of contract case brought by a trustee against a sponsor that relied on sampling has proceeded to trial (unlike the *MASTR* case, in which Judge Castel rejected

14

sampling), and therefore no sponsor has ever been found liable based on sampling in such a case.[11]

### B.   Sampling Will Not Prove Actual Knowledge or EODs.

#### 1.   Actual knowledge of breaches of R&Ws is required.

The Agreements require that HSBC must have actual knowledge of a material breach of an R&W with respect to a specific loan in order to trigger HSBC's duty to seek cure, repurchase, or substitution of that loan.  Plaintiffs attempt to re-litigate this issue as if it has not already been decided.  As held by this Court, "[i]f, after discovery, plaintiffs cannot prove that HSBC had *actual knowledge* regarding the loans at issue here, HSBC may move for summary judgment." *Royal Park*, 109 F. Supp. 3d at 603 (emphasis added).  And, as the Sampling Order recognized, a trustee is not required to act under the Agreements "without knowing the specific missing document or the specific breach."  Sampling Order at 14.  Therefore, like numerous other courts, Magistrate Judge Netburn was correct that Plaintiffs must prove actual knowledge.[12]

This holding follows many other decisions in cases against indenture trustees.  *See, e.g.*, *Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*, 2016 WL 899320, at *4 (S.D.N.Y. Mar. 2, 2016) (plaintiff must offer "proof of *actual knowledge*" (emphases added)); *Royal Park Invs.*

---

[11] Contrary to Plaintiffs' erroneous assertion, Obj. at 25, a separate HSBC affiliate—non-party HSBC Securities, Inc. ("HSI")—did not use "sampling methods" to investigate R&W breaches or make repurchase demands.  Rather, consistent with its PSAs for trusts not at issue here, HSI as a securitizer from time to time requested the repurchase of specific loans at specific repurchase prices based upon HSI's loan-by-loan re-underwriting efforts.  *See, e.g.*, Ex. 8 (Wirth Dep. Tr. at 172 ("It wasn't so much statistics.  It was the actual re-underwriting findings for a specific loan.  So it wasn't statistically driven, it was someone re-underwrote the loan.  They looked at it, and if they saw a problem, they documented that item and provided supporting evidence to that effect.")).

[12] In opposing HSBC's 12(b)(6) motion to dismiss, Plaintiffs admitted that they must prove actual knowledge, arguing that their generalized allegations of pervasive breach were sufficient to survive the pleadings stage because they "raise a plausible inference of HSBC's *actual knowledge* of breaches of representations and warranties." *BlackRock* ECF No. 59, Pls.' Opp'n to HSBC's 12(b)(6) Mot. to Dismiss at 14–15 (emphasis added); *see also id.* at 13 n.8 ("To establish liability, Plaintiffs must only prove that HSBC was chargeable with *actual knowledge* of . . . defective loans, thereby triggering HSBC's duty to act." (emphasis added)).

*SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 439020, at *6 (S.D.N.Y. Feb. 3, 2016)

("Without *actual knowledge* of non-conforming loans, Defendant [trustee] would have no

obligation . . . ." (emphasis added)); *Fixed Income Shares: Series M v. Citibank N.A.*, 130 F.

Supp. 3d 842, 851, 854 (S.D.N.Y. 2015) (plaintiffs must "present loan-specific evidence to

prevail at trial or on summary judgement" regarding "Citibank's *knowledge of deficiencies with*

*respect to . . . particular loan*[*s*]" (emphasis added)); *BlackRock Core Bond Portfolio v. U.S.*

*Bank N.A.*, 165 F. Supp. 3d 80, 100 (S.D.N.Y. 2016) (plaintiffs' reliance on "public data for

breaches of representations and warranties . . . to plead [the trustee's] requisite knowledge" is

insufficient to prove their case at trial); *BlackRock Allocation Target Shares: Series S Portfolio*

*v. Bank of N.Y. Mellon*, 180 F. Supp. 3d 246, 259 (S.D.N.Y. 2016) (plaintiffs must prove the

"trustee's *actual knowledge* of breaches of representations and warranties" (emphasis added));

ECF. No. 268-12 (*W. & S. Life Ins. v. HSBC Bank USA, N.A.*, No. A1501580 (Ohio Ct. Com. Pl.,

Hamilton Cty. June 27, 2016)) at 4 ("HSBC's obligation to act with respect to breaches of

representations and warranties arise[s] when HSBC has *actual knowledge* of the breaches."

(emphasis added)).[13]

Recent New York state court precedent also underscores that an indenture trustee must

have actual knowledge of breaches in specific loans before there is any duty to act.  In

*Commerce Bank v. Bank of New York Mellon*, 141 A.D.3d 413 (1st Dep't 2016), the plaintiffs

alleged that the trustee was generally aware of and should have investigated breaches as a result

of prior lawsuits, settlements, defaults in the trust, and other publicly-available information.  The

---

[13] *See also FHFA v. HSBC N. Am. Holdings Inc.*, 33 F. Supp. 3d 455, 480 (S.D.N.Y. 2014) (general "knowledge of problems with an Originator will not establish . . . actual knowledge" because "knowledge about a general population [of loans] . . . cannot be conflated with knowledge concerning a specific subset of that population" (alteration and internal quotation marks omitted)).

First Department rejected this theory, holding that "the trustee of an RMBS . . . trust does not have a duty to 'nose to the source'" and investigate allegations of breaches. *Id.* at 415–16 (citation omitted).  The court therefore dismissed this claim because Plaintiffs failed to "allege that defendant discovered breaches of such representations and warranties."  *Id.* at 414.[14]

Plaintiffs' argument that "discovery" means less than "actual knowledge" is inconsistent with the loan-specific remedy and the indenture trustee's limited responsibilities under the Agreements, as Magistrate Judge Netburn correctly recognized.  Sampling Order at 14–15. Defining "discovery" to mean "known or should have known" cannot be reconciled with the Agreements' many provisions that reinforce these limited duties, including the provision that "the Trustee . . . shall not be bound to make any investigation into the facts or matters stated in any [document], unless requested in writing to do so by the Holders of Certificates evidencing, in aggregate, not less than 25% of the Trust Fund."  *See, e.g.*, ECF No. 268-8 (DBALT 2006-AR5 PSA Excerpt) § 9.2(a)(v). [15]  Plaintiffs' proposed interpretation therefore violates "the well-settled rule that a contract must be read as a whole to determine its purpose and intent and it should be interpreted in a way that reconciles all its provisions, if possible . . . and reasonable effort must be made to harmonize all of its terms."  *Aquavella v. Viola*, 79 A.D.3d 1590, 1595 (4th Dep't 2010) (alterations, citations, and internal quotation marks omitted).

---

[14] Plaintiffs' attempt to distinguish *Commerce Bank* is not persuasive. Plaintiffs' response, Obj. at 20, is that the claim at issue in that case sounded in tort and that the authority cited in *Commerce Bank* focused on "extra-contractual" duties.  Plaintiffs fail to mention that regardless of the underlying claim, the question in *Commerce Bank* was whether the trustee had a duty (either under the contract or otherwise) to "nose to the source" to find breaches.  141 A.D.3d at 415–16 (internal quotation marks omitted).  The court's decision could not have been clearer that an indenture trustee "does not have a duty to 'nose to the source.'"  *Id.*

[15] Plaintiffs' interpretation of "discovery" to mean "known or should have known" also cannot be reconciled with the word's plain-meaning.  *Black's Law Dictionary* defines "discovery" in relevant part as "[t]he act or process of . . . *learning something that was previously unknown*," *Black's Law Dictionary* at 564 (10th ed. 2014) (emphasis added), *i.e.*, gaining actual knowledge about something.  *See also Webster's Third New International Dictionary* 647 (2002) (defining "discover" as "to obtain for the first time sight or knowledge of").

17

Other significant provisions also reinforce that the trustee is not required to undertake investigative duties. *See, e.g.*, ECF No. 268-8 § 9.2(a)(ix) ("The Trustee shall not be deemed to have notice of any default or Master Servicer Event of Default unless a Responsible Officer of the Trustee has actual knowledge thereof or unless written notice of any event which is in fact such a default is received by the Trustee . . . ."); *id.* § 9.2(a) (trustee not required to risk its own funds absent reasonable assurance of adequate indemnity); *id.* § 9.1 ("Any permissive right of the Trustee enumerated in this Agreement shall not be construed as a duty."); *id.* § 9.1(i) (trustee "may conclusively rely . . . upon any certificates or opinions furnished to the Trustee"); *id.* ("[N]o implied covenants or obligations shall be read into this Agreement against the Trustee . . . ."). These provisions reflect HSBC's limited role in the trusts and the contract parties' agreed division of responsibility. Retroactively imposing a "should have known" standard would increase HSBC's duties beyond what was agreed (and beyond what HSBC was compensated for). *See CFIP Master Fund, Ltd.* 738 F. Supp. 2d at 474 (declining to ascribe broad duties to a trustee and noting that "no reasonable investment fund in the plaintiff's position would have permitted its interests . . . to be protected only by a Trustee, of which it asked no questions prior to closing, and which was being compensated . . . in an amount that was pocket change in comparison to all other economic aspects of this transaction").

Plaintiffs' reliance on *Bank of New York Mellon Trust Co., N.A. v. Morgan Stanley Mortgage Capital, Inc.*, 2013 WL 3146824, at *20 (S.D.N.Y. June 19, 2013), for the proposition that "discovery" means "knew or should have known" is misplaced.[16] In that case, which did not

---

[16] Plaintiffs' other authorities, Obj. at 8 n.14, also do not support their argument because they either do not involve an indenture trustee, *see Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488, 494 (S.D.N.Y. 2013) (action against sponsor); *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475, 512–13 (S.D.N.Y. 2013) (action against sponsor and originator); *MASTR Asset Backed Sec. Tr. 2006-HE3 ex rel. U.S. Bank N.A. v. WMC Mortg. Corp.*, 2012 WL 4511065, at *6–7 (D. Minn. Oct. 1, 2012) (action against originator); *LaSalle Bank N.A. v. Citicorp Real Estate, Inc.*, 2003 WL 22047891, at *6 (S.D.N.Y. Aug. 29,

address the duties of a trustee, the Second Circuit explained that New York law "charges a party with discovery of breach only . . . when it effectively becomes aware, *rather than simply suspicious,* of breach." *Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 310 (2d Cir. 2016) (emphasis added).[17]  That discovery of a breach may exist only "after [the party] has had a reasonable opportunity to investigate and confirm its suspicions" does not mean that mere opportunity is sufficient or that there is a duty to investigate. *Id.* Rather, for discovery to occur, the party must actually *confirm* any suspicions—*i.e.*, gain actual knowledge.  Because an indenture trustee has no duty to "nose to the source" or otherwise investigate absent Holder direction and indemnification, it cannot be charged with "discovery" of a breach absent evidence that it was actually "aware," *i.e.*, had actual knowledge.  *See also FHFA v. UBS Ams., Inc.*, 2013 WL 3284118, at *15 (S.D.N.Y. June 28, 2013) ("[T]here is no authority for the proposition that evidence of generalized knowledge necessarily qualifies as circumstantial evidence of particularized, actual knowledge.").

Plaintiffs also rely on a recent decision by Judge Failla[18] repeating the "nose to the source" language.  That decision simply cannot be squared with Judge Scheindlin's decision *in this case* that Plaintiffs must prove actual knowledge.  Nor can a "nose to the source" duty be reconciled with the limited duties of an indenture trustee under the governing Agreements.  *See supra* at 17–18.  Moreover, Judge Failla's decision was based primarily on *Policemen's Annuity & Benefit Fund of Chicago v. Bank of America, N.A.*, 907 F. Supp. 2d 536 (S.D.N.Y. 2012).

---

2003) (action against sponsor), or are inconsistent with current controlling precedent such as *Commerce Bank* and *Policemen's Annuity*.

[17] Plaintiffs' view of "discovery" is inconsistent with *Bank of New York Mellon* because it would impose liability based on a trustee being "simply suspicious" of a breach.  821 F.3d at 310.

[18] *BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, N.A.*, --- F. Supp. 3d ---, 2017 WL 1194683, at *10 (S.D.N.Y. Mar. 30, 2017) (internal quotation marks omitted).

That opinion, however, was superseded by a later opinion in the same case, in response to a motion for reconsideration and a second motion to dismiss.  In the later opinion, the Court clarified that "[i]t is certainly true that, as defendants argue, actual notice requires just that— actual notice, not constructive notice."  *Policemen's Annuity & Benefit Fund of Chi. v. Bank of Am., N.A.*, 943 F. Supp. 2d 428, 443 (S.D.N.Y. 2013) (declining to hold that "the existence of even pervasive practices will be sufficient evidence of *actual knowledge* at trial" (emphasis added)), *abrogated on other grounds*, 775 F.3d 154 (2d Cir. 2014).

Plaintiffs also argue that reading "discover" to mean actual knowledge violates a canon of contract interpretation, because the Agreements elsewhere use the phrase "actual knowledge." Obj. at 16–17.  Plaintiffs are wrong.  First, different words in a contract can have the same meaning.  Indeed, in *Bank of New York Mellon*, the Second Circuit held that in the circumstances presented, the contractual terms "discovery" and "becoming aware" had the same meaning. 821 F.3d at 309.[19]  Second, "discovery" and "actual knowledge" do, in fact, connote different things because "discovery" includes a temporal component referring to the first time a party obtains actual knowledge.  *See Webster's Third New International Dictionary* 647 (2002) (defining "discover" as "to obtain for the first time sight or knowledge of").  Thus, Plaintiffs are wrong that the Sampling Order necessarily assigns precisely the same meaning to the two terms.  In any event, Plaintiffs' proposed interpretation violates the "well-settled rule" that provisions of a contract are to be read in harmony, because it ignores the "no investigation" provisions and the limited duties of the trustee.  *See Aquavella*, 79 A.D.3d at 1595.

---

[19] Plaintiffs' citation to Mortgage Loan Purchase Agreements, Obj. at 17, is inapposite.  HSBC is not a party to those agreements, and only the PSAs articulate the duties of the trustee.

Finally, even assuming *arguendo* that the standard was "should have known," re-underwriting a sample of loans after the fact will not advance Plaintiffs' case, which still must be proven "loan-by-loan." *Policemen's Annuity*, 775 F.3d at 162. As Magistrate Judge Netburn recognized, even if HSBC had a duty to investigate (it did not), sampling "seven or eight years after the fact cannot establish which specific loans HSBC would have actually found to be in breach had it performed an investigation at the time." Sampling Order at 16. An identification of specific loans is required to trigger the Agreements' loan-specific repurchase provisions. Thus, sampling cannot determine whether HSBC "should have known" of loan-by-loan breaches.

### 2.     Sampling cannot establish actual knowledge of R&W breaches.

Magistrate Judge Netburn correctly concluded that Plaintiffs cannot prove actual knowledge by sampling. Sampling Order at 16. "Sampling cannot establish that HSBC had actual knowledge of specific breaches on the requisite loan-by-loan basis." *Id.* (citing *MASTR*, 2015 WL 764665, at *10; *FHFA*, 2013 WL 3284118, at *15). Without proof of actual knowledge of a breach as to specific loans, Plaintiffs cannot meet their burden to prove HSBC was obligated to seek repurchase of specific loans.

Plaintiffs' reliance on exception reports to justify sampling, Obj. at 21-22, fares no better. Even assuming those allegations state a valid claim—which they do not, *see* note 8 *supra*—they would not be susceptible to proof by sampling for the same reasons Plaintiffs' other theories of liability cannot be proved through sampling. Any claims based on missing or defective documents would need to be proved on a loan-by-loan basis. Plaintiffs' contention that sampling would show "what HSBC would have found had it nosed to the source," Obj. at 22, not only contravenes the no-duty-to-investigate provisions of the Agreements, but also fails because sampling would not identify which particular loans had missing or defective (and uncured)

21

documents, much less prove that HSBC "discovered" specific breaches.  Without that, HSBC

had no obligation to invoke the repurchase remedy as Plaintiffs say it should have done.

Finally, even assuming a generalized request to investigate *potential* breaches triggered

some duty to act (it does not), re-underwriting a sample of loans now will not identify which

loans in which trusts HSBC might have found to have been in breach if it had engaged in this

hypothetical investigation years ago.  Sampling Order at 16.  Such information is not susceptible

to proof through sampling, but instead would need to be proven directly on a loan-by-loan basis.

### C.      Sampling Cannot Establish EODs or Actual Knowledge of EODs.

Magistrate Judge Netburn correctly concluded that sampling cannot establish the

existence of EODs under Plaintiffs' theory that servicers' or Master Servicers' alleged failures

purportedly created a duty on HSBC's part to investigate and find breaches of R&Ws made by

other parties.[20]  Obj. at 23-24.  The Court correctly recognized that because this theory ultimately

rests on an alleged failure to invoke the loan-specific repurchase remedy for R&W breaches, it

too requires proof of "loan-specific, material and adverse R&W breaches,"  "the servicer's

discovery of those individual breaching loans," and "the servicer's failure to report those loans to

HSBC."  Sampling Order at 17-19.  Sampling cannot accomplish this, for the reasons above.

Apparently recognizing the merits of the Sampling Order, Plaintiffs barely mention

sampling in their discussion of their EOD claims (Obj. at 22-25).  Instead, they give examples of

---

[20] EODs must have identifiable beginnings and ends, so the trustee can know whether the standard under which it is to exercise its powers has changed, rather than leaving questions of timing or obligation "to the uncertainties of later litigation."  *Argonaut P'ship L.P. v. Bankers Tr. Co.*, 2001 WL 585519, at *2 (S.D.N.Y. May 30, 2001).  As argued to Magistrate Judge Netburn, Plaintiffs' EOD claim is based on the theory that *servicers* failed to provide notice to HSBC of R&W breaches that the servicers discovered.  This theory is circular and attenuated, but as the Sampling Order correctly observed, "plaintiffs' description of EODs as *servicer* failures overlooks the fact that most of the PSAs governing the trusts at issue indicate that an EOD triggering prudent conduct by the trustee requires a failure to perform by the *master servicer,* not just any servicer."  Sampling Order at 17-18.  Plaintiffs now argue that master servicer failures constituted such EODs, Obj. at 23, but this change in theory still cannot be proven through sampling.

trust-specific or loan-specific evidence they say proves the existence of EODs and HSBC's actual knowledge.  Obj. at 23-24.  HSBC denies that this evidence supports Plaintiffs' case even as to these specific trusts and loans,[21] but the salient point here is that these examples are irrelevant to the merits of sampling in this case.  Plaintiffs appear to contend that once they establish EODs with direct evidence, they are entitled to argue that HSBC was required to conduct sampling, and if it had done so, it would have discovered massive numbers of R&W breaches.  But once again, Plaintiffs' theory cannot overcome the problem that "HSBC would have needed to locate . . . the *specific* breaching loans" to bring about repurchase.  Sampling Order at 19.  Sampling would not have provided this information in a hypothetical investigation conducted years ago and will not do so now.

> **D.  Sampling Cannot Establish Causation, Damages or Standing.**

Although Magistrate Judge Netburn did not base the Sampling Order on Plaintiffs' burden to prove causation, damages or standing, all three provide additional, independent grounds for affirming the Sampling Order.

> **1.  Causation.**

Plaintiffs must show but-for and proximate causation.  Because the sole remedy for breach of R&Ws is to enforce the repurchase of the specific breaching loan, to prove causation

---

[21] As defined in the vast majority of the Agreements, an EOD occurs only when (i) the master servicer materially breaches its obligations; (ii) the master servicer receives written notice of the breach from certain parties, thereby triggering a 30- or 60-day cure period; and (iii) the breach remains uncured.  *See, e.g.*, ECF No. 268-8 (DBALT 2006-AR5 PSA) § 8.1(a)(ii).  Sampling cannot show these procedural requirements have been met.  Moreover, as the court in *Commerce Bank* recently confirmed, "notice of events that, with time might ripen into [EODs]" are not EODs.  *Commerce Bank*, 141 A.D.3d at 415; *see also Millennium Partners, L.P. v. U.S. Bank, N.A.*, 2013 WL 1655990, at *4 (S.D.N.Y. Apr. 17, 2013), *aff'd sub nom. Millennium Partners, L.P. v. Wells Fargo Bank, N.A.*, 654 F. App'x 507 (2d Cir. 2016) (dismissing claim because plaintiffs "d[id] not plead that the requisite written notice was given to trigger an [EOD]"); *Sterling Fed. Bank, F.S.B. v. DLJ Mortg. Capital, Inc.*, 2010 WL 3324705, at *8 (N.D. Ill. Aug. 20, 2010) (dismissing post-default claim against trustee because plaintiff "has not alleged that [servicer]'s alleged failings remained unremedied for 60 days after it received notice in the manner prescribed by the PSAs").

Plaintiffs must show that Holders would have directed and indemnified HSBC to pursue

enforcement efforts and that such efforts would have succeeded.  *See, e.g.*, *Bluebird Partners,*

*L.P. v. First Fid. Bank, N.A.*, 11 A.D.3d 232, 234 (1st Dep't 2004) (claim against an indenture

trustee is akin to a legal malpractice claim in which plaintiff must prove the trustee "would have

prevailed in the underlying action").  Moreover, even if litigation to enforce breaches would have

been successful, Plaintiffs must prove that any judgment would have been collected.  *See, e.g.*,

*Semi-Tech Litig., LLC v. Bankers Tr. Co.*, 353 F. Supp. 2d 460, 482-87 (S.D.N.Y. 2005) (but-for

cause requires that "the complained-of loss would not have occurred had the defendant not

committed the relevant breach"), *aff'd per curiam*, 450 F.3d 121 (2d Cir. 2006).  Finally, each

Plaintiff also will have to prove how much it would have received based on its place in the trust

"waterfall" (the contractually defined priority of payments) at the time the funds would have

been recovered.  Sampling is fundamentally inconsistent with Plaintiffs' burdens on causation

because it cannot establish that any specific enforcement action as to any specific loan would

have produced a benefit.  One must know *which loans* included breaches to prove causation.

> **2.     Damages.**

Because repurchase is the sole remedy for breaches of R&Ws, damages must be based on

the amount that would have been recovered if a repurchase was successful—defined as the

principal balance of each specific loan, taking into account other components that also are

"specific to a particular loan."  Sampling Order at 11.  Those amounts cannot be determined by

sampling.  Nor could sampling establish what a particular Plaintiff would recover after any

repurchase proceeds were poured over the relevant waterfall at the relevant time.

> **3.     Standing.**

Because many Plaintiffs have profited on their investments, they claim damages incurred

by prior owners.  To do so, they must establish their standing to recover through either an

express assignment of claims from the party who held the security when the claim accrued, or through succession to such claims, based on a choice-of-law analysis. This requires a fact-specific, security-by-security inquiry. New York law is unique in providing that claims of prior bond owners transfer automatically. *See* N.Y. Gen. Obl. Law § 13-107 (McKinney 2017); *Racepoint Partners, LLC v. JP Morgan Chase Bank*, 2006 WL 3044416, at *4 (S.D.N.Y. Oct. 26, 2006). But whether New York law applies depends on choice-of-law factors, which consider a spectrum of significant contacts. *Lazard Freres & Co. v. Protective Life Ins.*, 108 F.3d 1531, 1538-39 (2d Cir. 1997). Here, Plaintiffs are located in various locations and purchased securities through a variety of regional, national, and international brokers, in transactions with anonymous selling parties. Accordingly, sampling would be inconsistent with Plaintiffs' burden to prove standing. Even if one knows that a percentage of loans in a trust included breaches, Plaintiffs still would have to show they succeeded to claims of prior owners in specific securities.

In a recent decision denying class certification in a trustee case, Judge Nathan highlighted the need for Plaintiffs to "trace the ownership histories of these interests to determine the transfer (or lack thereof) of breach of contract claims" to establish standing. Mem. & Order at 20, *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-cv-4394(AJN) (S.D.N.Y. Apr. 4, 2017). Plaintiffs' standing "turn[s] on both the nature of the assignments themselves (as well as any predecessor assignments) and on the particular jurisdiction whose law governs those assignments." *Id.* at 14. Plaintiffs' burden is incompatible with sampling for similar reasons that it is incompatible with class-action treatment: Plaintiffs' claims must be proved based on individualized facts.

## CONCLUSION

For the foregoing reasons, the Court should affirm and adopt Magistrate Judge Netburn's Sampling Order.

Dated: April 28, 2017                    By:    /s/ *Kevin M. Hodges*
                                                  George A. Borden
                                                  Kevin M. Hodges (*pro hac vice*)
                                                  Andrew W. Rudge  (*pro hac vice*)
                                                  Edward C. Reddington (*pro hac vice*)
                                                  Vidya Atre Mirmira (*pro hac vice*)
                                                  Eric C. Wiener (*pro hac vice*)
                                                  WILLIAMS & CONNOLLY LLP
                                                  725 Twelfth Street, N.W.
                                                  Washington, DC 20005
                                                  Telephone: (202) 434-5000
                                                  Facsimile: (202) 434-5029
                                                  gborden@wc.com
                                                  khodges@wc.com
                                                  arudge@wc.com
                                                  ereddington@wc.com
                                                  vmirmira@wc.com
                                                  ewiener@wc.com

                                                  *Counsel for HSBC Bank USA, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this matter who are on the CM/ECF system.

/s/ *Lauren H. Uhlig*
Lauren H. Uhlig