**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BLACKROCK BALANCED CAPITAL
PORTFOLIO (FI), *et al.*,

         Plaintiffs,

    -against-

HSBC BANK USA, NATIONAL
ASSOCIATION,

         Defendant.

Case No. 14-cv-9366-LGS- SN

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION AND**
**<u>APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ...................................................................................................... 1

II.     STATEMENT OF FACTS ......................................................................................... 4

        A.      The Bellwether Trusts......................................................................................... 4

        B.      HSBC's Contractual Obligations To The Class................................................... 5

                1.      HSBC's Duties To Address Seller Breaches ............................................ 5

                2.      HSBC's Duty To Remedy Servicer Breaches .......................................... 6

                3.      HSBC's Duties Following An Event Of Default....................................... 7

        C.      HSBC's Duties Under The TIA ........................................................................... 8

III.    EACH CLASS MEMBER'S CLAIM ARISES OUT OF THE SAME
        COURSE OF CONDUCT BY HSBC ......................................................................... 8

        A.      HSBC's Breaches With Respect To Seller Representations And
                Warranties ........................................................................................................... 8

        B.      HSBC's Breaches With Respect To Servicing Violations ................................. 10

IV.     CLASS CERTIFICATION IS APPROPRIATE ........................................................ 12

        A.      Rule 23(a) Requirements Are Satisfied ............................................................. 13

                1.      The Class Is Numerous .......................................................................... 13

                2.      Class Members Share Common Questions Of Law And
                        Fact........................................................................................................ 14

                3.      Plaintiffs' Claims Are Typical Of The Class.......................................... 16

                4.      Plaintiffs Will Fairly And Adequately Represent The Class ................... 18

        B.      The Requirements Of Rule 23(b)(3) Are Also Satisfied ..................................... 19

                1.      Common Questions Of Law And Fact Predominate Under
                        Rule 23(b)(3).......................................................................................... 19

                2.      A Class Action Is Superior .................................................................... 21

        C.      The Class Is Ascertainable................................................................................ 23

        D.      Bernstein Litowitz Should Be Appointed As Class Counsel.............................. 24

V.      CONCLUSION........................................................................................................ 25

i

# TABLE OF AUTHORITIES

<u>Case</u>                                                                                       <u>Page</u>

*Amara v. CIGNA Corp.*,
   775 F.3d 510 (2d Cir. 2014)...........................................................................16

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)......................................................................................21

*Bd. of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
   269 F.R.D. 340 (S.D.N.Y. 2010) ............................................................15, 22, 24

*Brecher v. Republic of Argentina*,
   806 F.3d 22 (2d Cir. 2015)..........................................................................4, 23

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010).........................................................................12

*In re China MediaExpress Holdings, Inc. Shareholder Litig.*,
   2014 WL 4049896 (S.D.N.Y. Aug. 15, 2014).......................................................18

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013).................................................................................3

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995)...........................................................................13

*Dodona I, LLC v. Goldman, Sachs & Co.*,
   296 F.R.D. 261 (S.D.N.Y. 2014) ....................................................................14

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992)........................................................................25

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007)......................................................22

*Excelsior Fund, Inc. v. JP Morgan Chase Bank, NA.*,
   2007 WL 950134 (S.D.N.Y. Mar. 28, 2007).......................................................24

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009)..........................................................................18

*Fleisher v. Phoenix Life Ins. Co.*,
   2013 U.S. Dist. LEXIS 99959 (S.D.N.Y. July 12, 2013) ......................................15

*Fogarazzo v. Lehman Bros., Inc.*,
   263 F.R.D. 90 (S.D.N.Y. 2009) .....................................................................13

*Ft. Worth Emps' Ret. Fund v. J.P. Morgan Chase & Co.*,
301 F.R.D. 116 (S.D.N.Y. 2014) ...................................................................13, 17, 19

*In re IndyMac Mortgage-Backed Sec. Litig.*,
286 F.R.D. 226 (S.D.N.Y. 2012) ........................................................................19, 22

*Jackson v. Bloomberg, L.P.*,
298 F.R.D. 152 (S.D.N.Y. 2014) ...............................................................................18

*Kalkstein v. Collecto, Inc.*,
304 F.R.D. 114 (E.D.N.Y. 2015) ...............................................................................18

*Lapin v. Goldman Sachs & Co.*,
254 F.R.D. 168 (S.D.N.Y. 2008) ...............................................................................21

*Lewis Tree Service, Inc. v. Lucent Techs. Inc.*,
211 F.R.D. 228 (S.D.N.Y. 2002) ...................................................................14, 15, 16

*Marisol A. by Forbes v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)........................................................................................14

*In re Methyl Tertiary Butyl Ether Prod. Liability Litig.*,
209 F.R.D. 323 (S.D.N.Y. 2002) ...............................................................................23

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)....................................................................................................21

*Pub. Emps' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*,
277 F.R.D. 97 (S.D.N.Y. 2011) ...................................................................13, 14, 22

*Reed v. Fed. Ins. Co.*,
123 A.D.2d 188 (2d Dep't 1987) ..................................................................................9

*Ret. Bd. of the Policemen's Annuity and Benefit Fund of the City of Chi. v. The
Bank of New York Mellon*, 914 F. Supp. 2d 422 (S.D.N.Y. 2012) .............................7

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015)....................................................................................3, 21

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993).......................................................................................14

*Robinson v. Metro-North Commuter R.R. Co.*,
267 F.3d 147 (2d Cir. 2001),
*abrogated on other grounds by Wal-Mart*, 564 U.S. 350 .......................................16

*Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co.*, 2017 WL
1331288, at *5-6 (S.D.N.Y. Apr. 4, 2017) ...............................................................23

iii

*Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*,
    109 F. Supp. 3d 587 (S.D.N.Y. 2015)................................................................2, 7

*Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*,
    14 Civ. 8175 (S.D.N.Y.) (LGS) ........................................................................1, 7

*In the matter of Scher Law Firm, LLP v. DB Partners I, LLC*,
    948 N.Y.S.2d 335 (2d Dep't 2012)........................................................................9

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) ..........................................................................17

*Seekamp v. It's Huge, Inc.*,
    2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) ...............................................15, 22

*Steinberg v. Nationwide Mut. Ins. Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004)................................................................2, 14, 15

*Town of New Castle v. Yonkers Contracting Co., Inc.*,
    131 F.R.D. 38 (S.D.N.Y. 1990) ............................................................................13

*In re U.S. Foodservice Inc. Pricing Litig.*,
    2011 WL 6013551 (D. Conn. Nov. 29, 2011) .............................................. *passim*

*In re Vivendi Universal, S.A. Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) ............................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..........................................................................................14, 18

*Woloszynowski v. The N.Y. Cent. R.R. Co.*,
    254 N.Y. 206 (1930) ...............................................................................................9

## Statutes, Rules & Regulations

15 U.S.C.
    § 77ooo(b)................................................................................................................8
    § 77ooo(c)................................................................................................................8

Federal Rules of Civil Procedure
    Rule 23(a)(1)......................................................................................................2, 13
    Rule 23(a)(2)..............................................................................................2, 14, 16
    Rule 23(a)(3)..............................................................................................3, 16, 17
    Rule 23(a)(4)......................................................................................................3, 18
    Rule 23(b)(3).................................................................................................. *passim*
    Rule 23(g)(1)(A)....................................................................................................24
    Rule 23(g)(4)..........................................................................................................24

Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3) and 23(g), the AEGON, BlackRock, DZ Bank, PIMCO, Prudential, Sealink and TIAA Plaintiffs (collectively, "Plaintiffs")[1] respectfully move the Court for an Order: (i) certifying a class of all individuals who purchased or otherwise acquired a beneficial interest in a security issued from the Bellwether Trusts between the date of offering and 60 days from the final order certifying the class and who hold that beneficial interest in the security through the date of final judgment in the District Court, and who were damaged as a result of Defendant HSBC Bank USA, National Association's ("HSBC" or "Defendant") alleged breaches of contract and violations of the Trust Indenture Act of 1939 ("TIA") (collectively, the "Class");[2] (ii) appointing Plaintiffs as Class Representatives for the respective trusts in which they hold certificates or notes; and (iii) appointing Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Class counsel.[3]

## I.   <u>INTRODUCTION</u>

This action arises from HSBC's breach of its contractual and statutory duties as trustee for the 24 residential mortgage-backed securities ("RMBS") trusts at issue (the "Bellwether Trusts"). After discovering Seller and Servicer breaches, HSBC failed to:  (i) provide notice of known Seller and Servicer defaults; (ii) enforce the Sellers' repurchase requirements and the Servicers' prudent

---

[1] Plaintiff Kore Advisors LP ("Kore") does not seek appointment as a class representative.  Kore and HSBC have stipulated to dismissal of Kore's claims.

[2] Excluded from the Class are the Defendant, the Originators, the Sellers, the Master Servicers and the Servicers to the Trusts, and their officers and directors, their legal representatives, successors or assigns, and any entity in which they have or had a controlling interest.

[3] Plaintiff in the related matter, *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 14 Civ. 8175-LGS (S.D.N.Y.) ("*Royal Park/HSBC*"), is concurrently seeking class certification for three of the 24 Bellwether Trusts (DBALT 2006-AR5; FHLT 2006-C; WFHET 2006-2), only.  Collectively, Plaintiffs in this action are current certificateholders and assert claims on behalf of themselves and all other current certificateholders in each of the 24 Bellwether Trusts.  As detailed herein, Plaintiffs are adequate class representatives for each of the 24 Bellwether Trusts in the proposed class.  *See infra* Section IV.A.4.

servicing obligations; (iii) act prudently by taking appropriate action against responsible parties to protect certificateholders' interests; and (iv) provide notice to certificateholders of all defaults. Instead, HSBC did virtually nothing to protect certificateholders in order to serve its own business interests.  Plaintiffs and hundreds of other certificateholders have suffered substantial losses, giving rise to sustained claims for breach of contract and violations of the TIA.  *See Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 109 F. Supp. 3d 587 (S.D.N.Y. 2015).

The breach of contract, common law, and TIA claims are best addressed and resolved on a class basis to advance judicial economy and provide meaningful relief to certificateholders damaged by HSBC's conduct.  Indeed, courts in this Circuit recognize such cases as being well-suited for treatment as a class action.  *See U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 123-27 (2d Cir. 2013); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004) ("claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such").  This case is no different and meets each of Rule 23's requirements.

*Numerosity*.  The Class is so numerous that joinder of all members is impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  Indeed, there are at least two hundred and possibly hundreds more Class members.

*Commonality and Predominance*.  There are questions of both law and fact common to the Class (Fed. R. Civ. P. 23(a)(2)).  These common legal and factual questions predominate over any questions affecting only individual members.  Fed. R. Civ. P. 23(b)(3).  Plaintiffs' and the Class's claims are "materially uniform" insofar as the Bellwether Trusts' Governing Agreements (as defined herein) and the TIA impose the same fundamental duties HSBC owed equally to all certificateholders.  *U.S. Foodservice*, 729 F.3d at 125.  Moreover, the question of HSBC's breach

of these duties will focus predominately on common evidence to determine the underlying Seller and Servicer breaches, HSBC's discovery of these breaches, and its failure to take action.  Thus, the question of whether HSBC violated its duties is common to all Class members.  Finally, although not required under Second Circuit law (*see Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 409 (2d Cir. 2015) ("we do not read *Comcast* as precluding class certification where damages are not capable of measurement on a classwide basis")), Plaintiffs offer a damages model susceptible of measurement across the entire Class and consistent with their underlying theory of class wide liability.  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432-33 (2013); *see U.S. Foodservice*, 729 F.3d at 123 n.8.

*Typicality and Adequacy*.  Plaintiffs' claims and the defenses thereto are typical of those of the Class (Fed. R. Civ. P. 23(a)(3)), and Plaintiffs will fairly and adequately protect the interests of the Class.  Fed. R. Civ. P. 23(a)(4).  Plaintiffs and the Class assert identical breach of contract and TIA claims governed under New York and federal law.  Moreover, Plaintiffs are not subject to any unique defenses and share all Class members' common interest in maximizing the Class's recovery.  Plaintiffs have and will continue to actively monitor and supervise this action, have a full understanding of the responsibilities of a class representative, and have retained experienced counsel with a proven track record in class actions like this one.

*Superiority*.  A class action is preferable to any other method for fairly and efficiently adjudicating this controversy.  *See* Fed. R. Civ. P. 23(b)(3).  Multiple lawsuits would be costly and inefficient, and no manageability issues arise from allowing this case to proceed as a class action.

*Ascertainability*.  Finally, Plaintiffs' proposed class is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."[4]

## II.     STATEMENT OF FACTS

### A.     The Bellwether Trusts

Plaintiffs' Amended Class Action Complaint (the "Complaint") asserts claims against HSBC as Trustee for 267 RMBS trusts securitized between 2004 and 2008, which are collateralized with mortgage loans worth over $254.5 billion at the time of securitization. Plaintiffs are current certificateholders in each of the 267 trusts.  ECF No. 89.  Following the commencement of discovery, the recently retired Honorable Shira A. Scheindlin ordered the parties to proceed on "bellwether" or "representative sample."  ECF No. 76, at 20:17-21:9.  The parties met and conferred and agreed to the Bellwether Trusts, twelve of which were selected by Plaintiffs (together with plaintiffs in five separate, coordinated actions against HSBC) and twelve of which were selected by HSBC.  *See* Declaration of Timothy A. DeLange, dated May 5, 2017 ("DeLange Decl."), Ex. 1 (List of 24 Bellwether Trusts).

The Bellwether Trusts are collateralized with mortgage loans that were valued at more than $18.8 billion at the time of securitization but have since suffered total realized losses of $3.4 billion.  Each Bellwether Trust is governed by a common set of securitization agreements establishing HSBC's duties to certificateholders, including Mortgage Loan Purchase and Sale Agreements ("MLPAs"), Pooling and Servicing Agreements ("PSA"), Indentures, and Sale and Servicing Agreements ("SSA") (or similar agreements) (collectively, the "Governing Agreements").  Each of the Governing Agreements expressly provides that it is governed by New

---

[4] *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (quoting 7A Wright & Miller, Fed. Practice & Procedure § 1760 (3d ed. 1998))

York law and that any dispute arising thereunder is governed by New York law.  DeLange Decl., Ex. 58.  The Certificates incorporate the terms and conditions of the Governing Agreements and bind holders to those terms, including the governing law provisions.  *Id.*, Ex. 59.  The Notes also contain an express New York governing law provision.  *Id.*

A small group of employees within HSBC's Corporate Trust and Loan Agency ("CTLA") administered the Bellwether Trusts.  DeLange Decl., Ex. 6 (Mackay Depo Tr.) at 78:17-79:6, Ex. 3.  Furthermore, a single set of uniform procedures governed the CTLA's administration of the Bellwether Trusts.  *Id.* at 150:18-25, 159:8-21.

## B.    HSBC's Contractual Obligations To The Class

Plaintiffs are certificateholders in each of the Bellwether Trusts.  ECF No. 89 ¶¶1, 17, Ex. 1.  The Governing Agreements are virtually identical and set forth HSBC's substantially identical duties with respect to addressing defects in the underwriting and servicing of the underlying mortgage loans for each Bellwether Trust.

### 1.    HSBC's Duties To Address Seller Breaches

Under the MLPAs, the originator or sponsor (together, the "Sellers") made representations and warranties concerning the characteristics, quality, and risk profile of the mortgage loans. DeLange Decl., Ex. 19, Exhibit A; Ex. 32 § 7.  Among the representations and warranties of the Seller in the MLPA are the following:

- The information in the mortgage loan schedule is true and correct in all material respects;

- Each loan complies in all material respects with all applicable local, state and federal laws and regulations at the time it was made;

- The mortgaged properties are lawfully occupied as the principal residences of the borrowers unless specifically identified otherwise;

- The borrower for each loan is in good standing and not in default;

- No loan has a loan-to-value ratio of more than 100%;

- The related mortgage file contains certain specified documents and instruments;

- Title, priority and enforceability of the liens securing the mortgage loans will be perfected and properly transferred;

- Each mortgaged property was the subject of a valid appraisal; and

- Each loan was originated in accordance with the underwriting guidelines of the related originator. *Id.*

Upon the sale of the mortgage loans to the Bellwether Trusts, the rights under the MLPAs, including with regard to the Sellers' representations and warranties, were assigned to HSBC in its capacity as Trustee for the benefit of the certificateholders.  DeLange Decl., Ex. 14 § 3.

Under the Governing Agreements for each Bellwether Trust, if HSBC "discovers" that a mortgage loan materially breaches one of the representations and warranties, HSBC must give prompt written notice to the Sellers and other parties to the contract.  DeLange Decl., Ex. 51.  If the breach is not timely cured, HSBC must enforce the breaching Seller's obligation to substitute or repurchase the breaching loan and take all other appropriate action necessary to enforce the Bellwether Trusts' rights.  DeLange Decl., Ex. 40; Ex. 41.

### 2.  HSBC's Duty To Remedy Servicer Breaches

Under the Governing Agreements, HSBC also has certain duties with respect to enforcing the obligations of the Servicers (here, Wells Fargo Bank, N.A. and Opteum Financial Services, LLC).  Where HSBC learns of a Servicer's failure to perform its obligations under the Governing Agreements, HSBC must provide written notice to the Servicer.  DeLange Decl., Ex. 49.  Such failures may include a failure to service the mortgage loans in accordance with accepted servicing practices and the failure to supervise and oversee the servicing of the mortgage loans.  DeLange Decl., Ex. 54.  If the responsible Servicer fails to cure the breach, the default ripens into an Event

of Default.  Under the Governing Agreements, if an Event of Default has occurred, HSBC is required to give prompt, written notice to all certificateholders.  DeLange Decl., Ex. 56.  The remedies for uncured Events of Default include termination of the Servicer and recoupment of Bellwether Trust assets lost as a result of the Servicer's violations.  DeLange Decl., Ex. 50.

### 3.    HSBC's Duties Following An Event Of Default

HSBC's duties increase to those of a fiduciary following the occurrence of an Event of Default; HSBC must use the same degree of care and skill as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.  DeLange Decl., Ex. 48.  HSBC must also provide notice to the certificateholders of such Event of Default.  DeLange Decl., Ex. 56.

Among the issuing trust's obligations – the breach of which can ripen into an Event of Default – are to "take such . . . action necessary or advisable to . . . cause the Issuer or Master Servicer to enforce any of the rights of the Mortgage Loans" or to "preserve and defend title to the Trust Estate and the rights of the Trustee and the certificateholders in such Trust Estate against the claims of all persons and parties."  DeLange Decl., Ex. 21 § 3.04.  As such, known and unremedied Seller and Servicer defaults give rise to an Event of Default.  *See Royal Park/HSBC*, 109 F. Supp. 3d at 605; *Ret. Bd. of the Policemen's Annuity and Benefit Fund of the City of Chi. v. The Bank of New York Mellon*, 914 F. Supp. 2d 422, 432 (S.D.N.Y. 2012), *abrogated on other grounds by* 775 F. 3d 154 (2d Cir. 2014) ("While these alleged failures constitute[ ] direct breaches of the SSA, they also violate[ ] the issuer's duties under the Indenture.  After all, if [Sellers] failed to cure or repurchase defective mortgages, the issuer similarly failed to 'enforce any rights with respect to [the Trust Fund],' as the Indenture required it to do.").

### C.     HSBC's Duties Under The TIA

The TIA effectively codifies HSBC's post-Event of Default contractual duties. Specifically, the TIA requires HSBC to inform certificateholders of defaults within ninety days after their occurrence. 15 U.S.C. § 77ooo(b) (citing 15 U.S.C. § 77mmm(c)).  In case of default, the TIA requires HSBC to exercise its rights and powers under the Indenture as a prudent person would, under those circumstances, in the conduct of the person's own affairs.   15 U.S.C. § 77ooo(c).

### III.     EACH CLASS MEMBER'S CLAIM ARISES OUT
### OF THE SAME COURSE OF CONDUCT BY HSBC

#### A.     HSBC's Breaches With Respect To Seller Representations And Warranties

Common evidence will show that HSBC discovered breaches of representations and warranties in each of the Bellwether Trusts, but failed to act as obligated under the Governing Agreements and the TIA.   For example, HSBC prepared final certifications and document exception reports for each of the Bellwether Trusts.  DeLange Decl., Ex. 44; Ex. 45.  HSBC was contractually obligated to certify that key documents for the mortgage loans were included in the mortgage files and to create an exception report identifying any incomplete mortgage loan files. *Id*.  Exception reports prepared and/or received by HSBC show that HSBC learned of document defects for thousands of mortgage loans that were never cured.  DeLange Decl., Ex. 4.  For instance, the exception report for the FHLT 2006-C Trust shows 4,763 exceptions across 3,274 loans, or approximately half of the loans underlying the Trust.  DeLange Decl., Ex. 9.

Likewise, common evidence will demonstrate HSBC's discovery of, or willful blindness to, Seller breaches of representations and warranties.[5]  For example, on March 7, 2007, Goldman Sachs, as an underwriter, sent a "Notice of Breaches of Representations" to HSBC relating to the FHLT 2006-C Trust (among others) stating that "there may exist breaches of the originators' representations and warranties with respect to the mortgage loans" and requested that HSBC "undertake a review of the loans in these [RMBS trusts] to identify instances of breach" to "avoid potential losses" to the certificateholders.  DeLange Decl., Ex. 52.  HSBC refused, responding: "[HSBC, as Trustee], has limited and expressly detailed responsibilities in connection with an originator's breach of its representations and warranties.  These responsibilities do not include reviewing the mortgage loan files in connection with a prospective breach . . . as there is no express requirement under the terms of the [PSAs], the Trustee cannot perform the review requested in the March 7 Notice."  DeLange Decl., Ex. 10.

HSBC's refusal to act was its common practice for all the RMBS trusts it administered, including the Bellwether Trusts.  For example, Nancy Luong, a Corporate Trust Specialist in the CTLA, was the trust administrator for eight Bellwether Trusts.  Ms. Luong testified that following receipt of dozens of "Notice Of Repurchase Claims" for multiple Bellwether Trusts, it was neither her nor HSBC's general practice to conduct any investigation into the breaches of which they were notified.  DeLange Decl., Ex. 3 (Luong Depo Tr.) at 127:5-14 ("It's my understanding that HSBC

---

[5] *See Woloszynowski v. The N.Y. Cent. R.R. Co.*, 254 N.Y. 206, 208-09 (1930) (no direct proof is required to establish a defendant's knowledge; it may be proved by circumstantial evidence); *see also Reed v. Fed. Ins. Co.*, 123 A.D.2d 188, 195 (2d Dep't 1987) (jury was properly instructed that insurer could prove insured's knowledge of loss through circumstantial evidence); *In the matter of Scher Law Firm, LLP v. DB Partners I, LLC*, 948 N.Y.S.2d 335 (2d Dep't 2012) (a plaintiff may rely on evidence of willful blindness on the part of defendant to prove that defendant had knowledge of the alleged fact).

as trustee, we do not have a responsibility to investigate."). *See generally id.* at 125:19-130:4. Similarly, Doris Wong, another Corporate Trust Specialist in the CTLA who administered the Bellwether Trusts, testified that it was her "understanding that we had no duties to investigate from the PSA."  DeLange Decl., Ex. 11 (Wong Depo Tr.) at 191:3-4.  As Susie Moy, a Corporate Trust Specialist in the CTLA, explained:  HSBC "would rely on the other party to investigate the allegations" discussed in the notices of breaches of representations and warranties it received. DeLange, Decl., Ex. 61 (Moy Dep. Tr.) at 117:16-18.  Indeed, according to Fernando Acebedo, a Manager in the CTLA, the mere forwarding of the notice to the responsible party and investors "fulfilled HSBC's contractual obligations with respect to the repurchase notice[]."  DeLange Decl., Ex. 62 (Acebedo Depo Tr.) at 206:8-12.  As a result, HSBC commonly failed to investigate the thousands of defective mortgage loans in the Bellwether Trusts in violation of the Governing Agreements' substantially identical provisions.

## B.    HSBC's Breaches With Respect To Servicing Violations

Common evidence will also show HSBC's responsible officers' actual knowledge (including through receipt of written notice) of Servicer defaults and Servicer Events of Default. For example, on July 15, 2011, Ms. Wong, a trust administrator for the Bellwether Trusts, notified Wells Fargo Bank, N.A., as Master Servicer, that HSBC had learned of widespread Servicer violations concerning properties in Los Angeles, California, including properties underlying numerous Bellwether Trusts.  DeLange Decl., Ex. 12.  Ms. Luong, also a trust administrator for the Bellwether Trusts, testified that the Servicers for the Bellwether Trust were failing to perform their obligations under the Governing Agreements.  DeLange Decl., Ex. 3 (Luong Depo Tr.) at 28:17-21.  Neither Ms. Luong, Ms. Wong nor HSBC took action against the Servicers for their servicing violations.

-10-

Furthermore, HSBC regularly received servicing data and monthly remittance reports. These monthly reports identified and tracked when certain defaulted mortgage loans within the Bellwether Trusts entered a distressed state, when the mortgage loans were processed and eliminated from the Bellwether Trusts' loan pools, and the servicing costs associated with such mortgage loans.  DeLange Decl., Ex. 5; *id.* Ex. 3 (Luong Depo Tr.) at 309:1-315:6.  The servicing data and remittance reports showed that Servicers' timing in foreclosing on defaulted mortgage loans within the Bellwether Trusts violated acceptable servicing practices.  DeLange Decl., Ex. 57. For example, as reflected below, Loan ID *****3892 in the NHELI 2007-1 Trust was originated and sold to the Trust on or about October 2006 with an original balance of $356,250.  The borrower defaulted and the loan became distressed in May 2007.  The Servicer, however, has failed to liquidate the loan to date, meaning that the loan has remained in distress or foreclosure status for ***more than 9 years***, unnecessarily accruing servicing fees at the Trust's expense during this period.



Likewise, Loan ID *****5518 in the WFHET 2006-2 Trust was originated in January 2006.  The borrower defaulted in July 2007.  The Servicer maintained the distressed loan on its books until August 2016, ***more than 9 years***, all the while charging and collecting servicing fees from the Trust.



The common evidence will show through similar servicing data that: (i) each of the Bellwether Trusts are filled with loans that have been distressed for prolonged periods causing the Bellwether Trusts to incur significant yet avoidable servicing expenses; and (ii) HSBC's responsible officers had actual knowledge and received written notice of such servicing violations.

Despite knowing of rampant Servicer defaults and Servicer Events of Default, HSBC failed to address these servicing violations in breach of its contractual and statutory duties, or otherwise take action as a prudent person would under the same circumstances.

## IV.    CLASS CERTIFICATION IS APPROPRIATE

Class certification requires a two-step analysis.  First, a plaintiff must show that all four of the prerequisites of Rule 23(a) are satisfied: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation.  Fed. R. Civ. P. 23(a); *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010).

Second, the action must satisfy at least one of the subcategories of Rule 23(b).  Here, Plaintiffs seek certification under Rule 23(b)(3), which requires a showing that: (i) common questions of fact and law predominate over any individual questions; and (ii) a class action is superior to other available methods for adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  As set forth below, each of the Rule 23(a) and 23(b)(3) requirements is met.

A.      **Rule 23(a) Requirements Are Satisfied**

1.      **The Class Is Numerous**

Certification is appropriate when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Pub. Emps' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, 277 F.R.D. 97, 103-04 (S.D.N.Y. 2011). "Impracticable does not mean impossible; joinder may merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims." *Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 96 (S.D.N.Y. 2009) (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007)). The precise quantification or identification of potential class members is unnecessary at class certification "'because a court may make common sense assumptions regarding numerosity.'" *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007) (citation omitted). In the Second Circuit, the numerosity requirement *is presumptively* satisfied at a level of approximately 40 class members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Ft. Worth Emps' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014); *see also Town of New Castle v. Yonkers Contracting Co., Inc.*, 131 F.R.D. 38, 41 (S.D.N.Y. 1990) (certifying class with 36 potential members).

In support of their motion for class certification, Plaintiffs submit the Declaration of Dr. Michael Hartzmark, Ph.D. DeLange Decl., Ex. 2. Based on publicly available data on the reported holdings of large financial institutions, Dr. Hartzmark, has identified at least 200 separate certificateholders that currently hold active certificates in the Bellwether Trusts, which collectively have a face value of approximately $5.72 billion. *Id*. ¶¶19-20, App'x. C and D. After accounting for principal distributions and write-offs, there are still outstanding approximately $12.74 million in active tranches that are held by institutions, implying that 55% of all current holdings of *active*

tranches by Class members are <u>not</u> reported or accounted for in the Bloomberg data.  *Id.* at ¶20.
Accordingly, it is reasonable to expect that the Class far exceeds 200 class members.  *Id.* at ¶22.

Further, based on publicly available information, certificateholders in the Bellwether
Trusts are geographically dispersed institutions and individuals with a wide range of investment
amounts, from tens of thousands to hundreds of millions of dollars.  This fact supports certification,
which will promote judicial efficiency and avoid duplicative litigation.  *See Robidoux v. Celani*,
987 F.2d 931, 936 (2d Cir. 1993) ("[r]elevant considerations include judicial economy arising from
the avoidance of a multiplicity of actions [and] geographic dispersion of class members").  The
joinder of these investors would be impractical.  *See, e.g., Merrill Lynch*, 277 F.R.D. at 105
(recognizing that joinder or individual adjudication of numerous and dispersed sophisticated
investors' claims would be impractical).

## 2.      Class Members Share Common Questions Of Law And Fact

"Commonality" requires that "there are questions of law or fact common to the class."  Fed.
R. Civ. P. 23(a)(2).  Courts construe the commonality requirement liberally.  *Steinberg*, 224 F.R.D.
at 74, citing *Lewis Tree Service, Inc. v. Lucent Techs. Inc*., 211 F.R.D. 228, 231 (S.D.N.Y. 2002)
(commonality is considered a "minimal burden for a party to shoulder").  Courts demand only that
the plaintiff's and the class member's claims "share a common question of law or of fact."  *Marisol
A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *Lewis Tree*, 211 F.R.D. at 231.  Indeed,
the Supreme Court has held that "***'[e]ven a single [common] question' will do***."  *Wal-Mart Stores,
Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (emphasis added); *see also Dodona I, LLC v. Goldman,
Sachs & Co.*, 296 F.R.D. 261, 267 (S.D.N.Y. 2014) (describing commonality requirement as a
"low hurdle").  A question is common if its answer will resolve an issue relevant to the claims on
a classwide basis "in one stroke" (*Wal-Mart*, 564 U.S. at 350), regardless of whether it will

"overshadow potential individual issues." *In re U.S. Foodservice Inc. Pricing Litig.*, 2011 WL 6013551, at *4 (D. Conn. Nov. 29, 2011), *aff'd*, 729 F.3d 108 (2d Cir. 2013).

Courts within the Second Circuit routinely find commonality is satisfied in cases where: (a) a defendant is alleged to have breached an obligation under substantively identical or similar form agreements (*see*, *e.g.*, *U.S. Foodservice*, 729 F.3d at 123-27; *Seekamp v. It's Huge, Inc.*, 2012 WL 860364, at *3 (N.D.N.Y. Mar. 13, 2012); *Fleisher v. Phoenix Life Ins. Co.*, 2013 U.S. Dist. LEXIS 99959 (S.D.N.Y. July 12, 2013)); and (b) the defendant's challenged practice follows a common course of conduct that has affected all putative class members. *See Lewis Tree*, 211 F.R.D. at 231; *Bd. of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 348 (S.D.N.Y. 2010).

Here, the commonality requirement is easily satisfied.  First, common factual questions exist among the putative Class members.  HSBC breached substantially identical contractual terms to which Class members were beneficiaries.  Adjudication of Plaintiffs' claims will require the Court to apply key contractual terms, such as "discovery" of Seller representation and warranty breaches, "actual knowledge" of servicer defaults, Servicer Events of Defaults, and Indenture Defaults, and "the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's affairs," as they appear in each of the Governing Agreements.  These key terms, their definitions, and other pertinent contractual provisions are substantively similar, if not identical, in all of the Governing Agreements and can be considered uniform or "form contracts" for the purposes of this litigation. *Steinberg*, 224 F.R.D. at 74.

HSBC's common course of conduct with respect to the putative Class further demonstrates that common questions of fact exist among the Class.  HSBC engaged in a common course of

behavior, undertaken by the same group of individuals at HSBC using common (yet flawed) policies and procedures.  *See supra* Section III.  In particular, HSBC's practice of repeatedly failing to take action absent direction or indemnity from certificateholders is a common course of conduct affecting all putative Class members.  Accordingly, a "common factual nexus exists among the putative class."  *Lewis Tree*, 211 F.R.D. at 232.

Moreover, common legal issues exist among the putative Class, including whether:

- HSBC discovered mortgage loans that breached Seller representations and warranties;

- HSBC had knowledge of Servicer breaches, defaults, and Servicer Events of Default;

- HSBC had knowledge of Issuer Defaults;

- HSBC violated its duties by failing to enforce the Sellers' repurchase obligations and the Servicers' prudent servicing requirements;

- HSBC violated its duties by failing to investigate and pursue claims against other responsible parties; and

- HSBC violated its duties by failing to provide notice of all Servicing Events of Default and Issuer Events of Default to certificateholders.

These issues are not complex and involve general principles of contract governed by New York and statutory interpretation governed by federal law.  Accordingly, common issues of both fact and law exist among the putative Class in satisfaction of the commonality requirement in Rule 23(a)(2).

### 3. Plaintiffs' Claims Are Typical Of The Class

Rule 23(a)(3) requires "the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001), *abrogated on other grounds by Wal-Mart*, 564 U.S. at 350, as recognized in *Amara v. CIGNA Corp.*, 775 F.3d 510 (2d Cir.

2014). "Minor variations in the fact patterns underlying the individual claims do not preclude a finding of typicality." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405-06 (S.D.N.Y. 2015). Instead, Rule 23(a)(3) requires "only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Ft. Worth*, 301 F.R.D. at 132.

Here, Plaintiffs' and absent Class members' claims arise from the same course of events, and each Class member will make similar legal arguments to prove HSBC's liability.  Notably, HSBC employed uniform practices and procedures across all of the Bellwether Trusts.  HSBC failed to: (i) provide notice of known Seller and Servicer defaults; (ii) enforce the Sellers' repurchase requirements and the Servicers' prudent servicing obligations; (iii) act prudently by taking appropriate action against responsible parties to protect certificateholders' interests; and (iv) provide notice to certificateholders of all defaults.  Each of these failures give rise to Plaintiffs' and the Class's claims equally.

Furthermore, Plaintiffs and the Class allege that HSBC breached the same contractual and statutory duties owed to all Class members equally.  All Plaintiffs will marshal the same evidence and arguments in support of their claims.  *Scotts EZ Seed Litig.*, 304 F.R.D. at 406.  Indeed, courts have found the typicality requirement satisfied under similar circumstances.  *See Policemen's Annuity and Benefit Fund of the City of Chi. v. Bank of Am., N.A.*, No. 12-cv-02865-KBF, Corrected Final Judgment and Order of Dismissal, ECF No. 328 (S.D.N.Y. Mar. 16, 2016) (approving settlement class of breach of contract and the TIA claims against trustee); *Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*, No. 11-cv-8066-JGK, Final Judgement and Order of Dismissal, ECF No. 130 (S.D.N.Y. July 24, 2016) (same).

### 4.   **Plaintiffs Will Fairly And Adequately Represent The Class**

Rule 23(a)(4) requires plaintiffs to establish that "the representative parties will fairly and adequately protect the interests of the class."   Rule 23(a)(4).   Adequacy "entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct litigation."   *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (citations omitted); *see also In re China MediaExpress Holdings, Inc. Shareholder Litig.*, 2014 WL 4049896, at *4 (S.D.N.Y. Aug. 15, 2014); *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 164 (S.D.N.Y. 2014).

Here, no antagonistic interests exist, as Plaintiffs "'possess the same interest and suffer[ed] the same injury as the class members.'"   *Wal-Mart*, 564 U.S. at 348-49.   Specifically, Plaintiffs each hold certificates issued by one or more of the Bellwether Trusts and were, and continue to be, damaged as a result of HSBC's failure to comply with its contractual and statutory obligations. Each Class member also holds certificates from one or more of the Bellwether Trusts and was similarly damaged.

Plaintiffs are experienced investors in securitized instruments, which include their interests in the Bellwether Trusts at issue here.   Plaintiffs' interests are directly aligned with those of other Class members – to maximize the amount recovered from HSBC for its failure to fulfill its duties to the Class.   *See, e.g.*, *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 121 (E.D.N.Y. 2015) (no conflict of interest between class members and class representative candidate where interests in maximizing class recovery aligned).

Since filing this action, Plaintiffs have taken seriously their role as Class Representatives and have acted diligently to protect the interests of the Class.   At each stage, Plaintiffs have actively participated in, supervised and monitored the litigation.   *See* DeLange Decl., ¶¶2-3.   Through their experienced counsel, Plaintiffs authorized the filing of the Complaint, successfully opposed a

motion to dismiss, pursued and responded to substantial discovery, including sitting for multiple day-long depositions, responding to numerous discovery requests, and producing over 7.9 million documents to date.  *See id*.  Plaintiffs' actions thus far fully satisfy Rule 23(a)(4)'s adequacy standard.

**B.      The Requirements Of Rule 23(b)(3) Are Also Satisfied**

This action also satisfies Rule 23(b)(3)'s requirements that common questions of law or fact predominate over individual questions and that a class action is the superior method to adjudicate this dispute.

**1.      Common Questions Of Law And
Fact Predominate Under Rule 23(b)(3)**

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3). "The predominance requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"  *U.S. Foodservice*, 729 F.3d at 118 (quoting *UFCW Local 1776 v. Eli Lilly and Co.*, 620 F.3d 121, 131 (2d Cir. 2010)).  This "'does not require a plaintiff to show that there are no individual issues.'"  *In re IndyMac Mortgage-Backed Sec. Litig.*, 286 F.R.D. 226, 236 (S.D.N.Y. 2012) (citation omitted).  Instead, it requires that "a court's inquiry [be] directed primarily toward whether the issue of liability is common to members of the class."  *See Ft. Worth*, 301 F.R.D. at 136 (quoting *IndyMac*, 286 F.R.D. at 236).

Here, the primary common questions the Class must address to establish its claims will be whether HSBC: (1) failed to provide notice of and enforce representation and warranty breaches, upon discovering them; (2) failed to notify the Servicers of failures to fulfill their obligations after

-19-

learning of Servicer breaches, defaults and Servicing Events of Default and remedy these servicing breaches; (3) failed to provide notice to certificateholders of uncured Servicing Events of Default and Issuer Events of Default; and (4) failed to act as a reasonable person would to protect its own assets after learning of Issuer Events of Default.   These questions will be answered through common proof.

Indeed, HSBC's duties to Class members will be established through common evidence, including through the Governing Agreements for the Bellwether Trusts.  With respect to these obligations, the requirements imposed on HSBC are identical for all Class members.  *U.S. Foodservice*, 729 F.3d at 124.   Common evidence, including HSBC's internal files, communications and personnel's testimony reflecting its knowledge of Seller and Servicer breaches, demonstrates that HSBC breached its obligations.

Each Class member's damages will be measured by a common methodology consistent with Plaintiffs' theory of liability.  DeLange Decl., Ex. 2, ¶¶25-67.  Plaintiffs' damages model is based on HSBC's and third-party published data with respect to the performance of the mortgage loans and a reunderwriting analysis of a sample of mortgage loans in the Bellwether Trusts.  *Id*. at ¶39.  As set forth in the expert report of Dr. Hartzmark, the impact of HSBC's alleged failure to act can be measured by analyzing the extent to which losses in the Bellwether Trusts were associated with mortgage loans that breached the Seller's representations and warranties.  *Id*. at ¶¶15-16, 25-35, 54, 61, 64.   The analysis includes an examination of the Bellwether Trust's mortgage loans to identify those that contained breaches of representations and warranties and to determine the extent to which losses on these mortgage loans would have been avoided if HSBC performed its contractual duties. *Id.*  Similarly, damages from the alleged servicing failures involve the analysis of mortgage loans within the Bellwether Trusts to identify Servicer breaches and

-20-

Servicer Events of Default, and assess the extent to which these resulted in higher losses or lower value to the collateral pool. *Id.* at ¶¶64-70.

These damage calculations are capable of being performed with a formulaic common methodology such that each Class member's damages calculation is performed in the same manner. *Id.* at ¶¶54-67. Moreover, the method for allocating damages would be based on the clear "waterfall" payment distribution guidelines set forth in the Governing Agreements, eliminating any individualized conflicts regarding the calculation and allocation of damages. Although the specific amount of each Class member's damages may vary, this "does not defeat certification [since] the method of calculating damages is [still] common to the class." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 181 (S.D.N.Y. 2008); *see also Roach*, 778 F.3d at 405 (upholding well-established rule in Second Circuit that "'the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification' under Rule 23(b)(3)"). Thus, Plaintiffs will establish HSBC's liability and the amount of any damages through generalized proof and a classwide, common damages methodology. Accordingly, Rule 23(b)(3)'s predominance requirement is satisfied.

### 2.    A Class Action Is Superior

The Supreme Court has recognized that "[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . . [M]ost of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). Moreover, as the Supreme Court explained:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

To determine whether the "superiority" requirement of Rule 23(b)(3) is satisfied, the Court must consider the following:

(A)     the class members' interests in individually controlling the prosecution . . . of separate actions;

(B)     the extent and nature of any litigation concerning the controversy already begun by . . . class members;

(C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)     the likely difficulties in managing a class action.

*See* Fed. R. Civ. P. 23(b)(3).  Here, each factor weighs strongly in favor of class certification.

The maintenance of a class action in this District ensures the efficient use of party and Court resources, while enabling the parties to more efficiently prosecute their claims and defenses. *See IndyMac*, 286 F.R.D. at 243; *Seekamp*, 2012 WL 860364, at *12.  Furthermore, because the members of the proposed Class are located in geographically dispersed areas, and because the certificates in the Bellwether Trusts were issued in this District, which has overseen the majority of complex RMBS-related cases, the Southern District of New York is an appropriate forum. There does not appear to be an overwhelming interest by Class members to proceed individually. "'[T]he existence of large individual claims that are sufficient for individual suits is no bar to a class,'" particularly where, as here, "'the advantages of unitary adjudication exist to determine the defendant's liability.'"  *AFTRA,* 269 F.R.D. at 355 (citation omitted); *accord IndyMac*, 286 F.R.D. at 243; *Merrill Lynch*, 277 F.R.D. at 121; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *14 (S.D.N.Y. July 27, 2007) (noting that any class members who "would prefer to individually control the prosecution of their claims . . . have the opportunity to opt out or be represented by counsel of their own choice").

Finally, Plaintiffs do not foresee any management difficulties that will preclude this case from being maintained as a class action.  Consistent with the requirements of Rule 23(b)(3), the certification of this case as a class action would not only be superior to other available methods for fairly and efficiently adjudicating the controversy, but appears to be the ***best method*** for fairly and efficiently litigating the claims of all members of the proposed Class.  ECF No. 89, ¶¶500-05.

### C.   The Class Is Ascertainable

The Second Circuit has recognized an "'implied requirement of ascertainability' in Rule 23 of the Federal Rules of Civil Procedure."  *See Brecher*, 806 F.3d at 24 (quoting *In re Initial Pub. Offerings Secs. Litig.,* 471 F.3d 24, 30),  For a class to be ascertainable, the class definition must, first, be based on "objective criteria" and, second, be "administratively feasible" such that class members can be identified without conducting a "mini-hearing on the merits of each case." *Brecher*, 806 F.3d at 25.  This standard "is not demanding and is designed only to prevent the certification of a class whose membership is truly indeterminable."  *Ebin v. Kangadis Food Inc.,* 297 F.R.D. 561, 567 (S.D.N.Y. 2014).  In fact, "[c]lass members need not be ascertained prior to certification, but the exact membership of the class must be ascertainable at some point in the case."  *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liability Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002).

Here, the proposed class definition is based on objective criteria that allows for the ready identification of class members.  Specifically, by referring to a window of acquisition with fixed dates (i.e., between the date of offering and 60 days from the final order certifying the class), and a continuous ownership requirement through judgment, the class definition provides a meaningful temporal limitation.  *See Brecher*, 806 F.3d at 25; *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co.*, 2017 WL 1331288, at *5-6 (S.D.N.Y. Apr. 4, 2017).

Transaction records reflecting bond ownership will establish class membership.  Indeed, this is the precise manner by which HSBC identifies and communicates with current holders regarding trust activities.  DeLange Decl., Ex. 63.  Moreover, that the Trust securities trade on the secondary market does not necessitate individualized inquiries into class membership, because all transfers of the securities are necessarily governed by New York law.  *Id.*, Exs. 58, 59; *Excelsior Fund, Inc. v. JP Morgan Chase Bank, NA.*, 2007 WL 950134, at *6 (S.D.N.Y. Mar. 28, 2007) (finding New York governed transfer of securities where the notes contained an "express New York governing law provision.").

### D.   Bernstein Litowitz Should Be Appointed As Class Counsel

Rule 23(g)(4) requires the court to appoint class counsel who will fairly and adequately represent the interests of the proposed Class.  In appointing class counsel, Rule 23(g)(1)(A) requires the court to consider the following factors: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A); *AFTRA*, 269 F.R.D. at 346.

Plaintiffs are represented by Bernstein Litowitz, whose lawyers have served as class counsel in hundreds of significant national class actions.  *See* DeLange Decl., Ex. 53.  Among other things, Bernstein Litowitz possesses extensive knowledge and experience in class action litigation and has successfully prosecuted numerous high-profile investor class actions, including some of the largest recoveries in this District.[6]  Courts in this Circuit have repeatedly recognized

---

[6] *See*, *e.g., In re WorldCom, Inc. Sec. Litig.*, No. 02-cv-03288-DLC (S.D.N.Y.) ($6 billion); *In re Cendant Corp. Sec. Litig.*, Master File No. 98-1664-WHW (D.N.J.) ($3.3 billion); *Bank of*

the expertise and ability of Bernstein Litowitz's lawyers to effectively litigate complex class actions.  Moreover, Bernstein Litowitz has vigorously prosecuted the Class's claims to date by, *inter alia*: identifying and investigating potential claims; defeating a motion to dismiss; engaging in extensive discovery; litigating numerous discovery motions; providing and obtaining significant written discovery and deposition testimony; and otherwise preparing the case for trial.

The ability of Bernstein Litowitz to fairly and adequately represent the interests of the Class further leads to the conclusion that the requirements of Rule 23(a)(4) and Rule 23(g) are satisfied and that Plaintiffs' counsel should be appointed as Class Counsel pursuant to Rule 23(g).  *See*, *e.g.*, *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) ("class counsel must be 'qualified, experienced and generally able' to conduct the litigation").

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request the Court to: (a) certify this action as a class action pursuant to Rule 23(a) and Rule 23(b)(3); (b) appoint Plaintiffs as the representatives of the proposed Class; and (c) appoint Bernstein Litowitz as Class Counsel.

---

*America*, Master File No. 09 MD 2058 (PKC) (S.D.N.Y. 2012) ($2.425 billion); *In re Nortel Networks Corp. Sec. Litig.*, No. 05-MD-1659 ($1.07 billion); *In re Merck & Co., Inc. Sec. Litig.*, No. 05-cv-1151, No. 05-cv-2367 (S.D.N.Y.) (1.06 billion); *In re McKesson HBOC, Inc. Sec. Litig.*, No. 99-cv-20743-RMW (N.D. Cal.) ($1.05 billion); *see also* DeLange Decl., Ex. 53.

Dated:  May 5, 2017

BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP

*/s/ Timothy A. DeLange*
TIMOTHY A. DeLANGE

BLAIR A. NICHOLAS (admitted *pro hac vice*)
TIMOTHY A. DeLANGE (admitted *pro hac vice*)
BENJAMIN GALDSTON (admitted *pro hac vice*)
NIKI L. MENDOZA (admitted *pro hac vice*)
BRETT M. MIDDLETON (admitted *pro hac vice*)
RICHARD D. GLUCK (admitted *pro hac vice)*
LUCAS E. GILMORE (admitted *pro hac vice*)
ROBERT S. TRISOTTO
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 793-0070
Fax:   (858) 793-0323

*Counsel for Plaintiffs and the Proposed Class*