LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

AMY MURPHY
(202) 434-5249
amurphy@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

July 7, 2017

Via ECF

Honorable Sarah Netburn
Thurgood Marshall Courthouse
United States District Court

      Re:    *BlackRock Balanced Capital Portfolio (FI), et al. v. HSBC Bank USA, N.A.*, No. 14-CV-09366-LGS-SN

Dear Judge Netburn:

      I write regarding Plaintiffs' letter dated July 5, 2017, but which was submitted to the Court by e-mail yesterday, July 6, at 12:04 a.m. Plaintiffs' letter mischaracterizes and leaves out important details concerning the parties' meet and confer process.

      As the Court may remember, the purpose of that meet and confer process was to discuss issues HSBC had raised with Plaintiffs' privilege logs in accordance with the guidance provided previously by this Court. ECF 412. To facilitate the meet and confer, HSBC identified thirteen Plaintiff documents illustrative of HSBC's concerns in advance of a discussion that took place on July 5. During that discussion, Plaintiffs agreed to drop their privilege claims and produce seven of the thirteen identified documents, and HSBC agreed to drop its request that Plaintiffs produce two of the thirteen documents. With respect to the four remaining identified documents, Plaintiffs gave only a vague explanation for their position as to why each document was privileged, but committed to re-review the documents in light of HSBC's specific concerns and respond to HSBC with their final position on those four documents later that day. Rather than proceeding in this fashion, however, Plaintiffs instead informed HSBC at 11:59 p.m. on July 5 that they were dropping their privilege claim as to one of the four remaining documents, but were adhering to their position with respect to the other three documents. Five minutes later, Plaintiffs then unilaterally submitted those three documents to the Court for review purportedly as documents HSBC had identified as exemplars for the Court's *in camera* review.

      Based on the information Plaintiffs set forth in their July 5 letter attached to their July 6 email, however, HSBC is *not* challenging Plaintiffs' position with respect to the three submitted documents. Had Plaintiffs been willing to provide this information to HSBC during the parties' meet and confer, or had Plaintiffs gotten back to HSBC with their final position and explanation as they had committed to during the meet and confer, there would have been no need for those documents to have been submitted to the Court. Accordingly, there is no issue for the Court to

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
July 7, 2017
Page 2

resolve at this moment. However, as a result of the parties' meet and confer, Plaintiffs indicated that they would be re-reviewing and producing additional documents (based on the principles that resulted in Plaintiffs agreeing to drop their privilege assertions with respect to eight of the thirteen identified documents), as well as providing HSBC with what will be Plaintiffs' third revised privilege log. Once Plaintiffs provide HSBC with that revised log, HSBC will need to review the log to determine if similar problems persist.

**The July 5 meet and confer.** On July 3, HSBC selected thirteen documents from Plaintiffs second revised privilege log for discussion during the parties' meet and confer—eight documents involving Talcott Franklin, and five documents that appeared to require partial redaction. Given the Court's Order on June 26 (ECF 412), and the meet and confer process over *Plaintiffs' documents* that had been ongoing since April 7, HSBC expected Plaintiffs' second revised privilege log to be in final form and the documents appearing on that log to be the documents over which Plaintiffs were claiming privilege. However, at the outset of the parties' July 5 meet and confer, Plaintiffs informed HSBC that they would once again be revising their privilege log and producing additional documents at an unspecified later date, including seven of the thirteen documents HSBC had identified for discussion in advance of the meet and confer. Specifically, Plaintiffs stated that they would produce three of the five documents appearing to require partial redaction, and four of the eight Talcott Franklin documents. The parties then discussed the six remaining documents. After receiving Plaintiffs' explanation for the two remaining documents that appeared to require partial redaction, HSBC agreed that it would not challenge those two designations.

As for the four remaining illustrative Talcott Franklin documents, Plaintiffs were unable to articulate during the meet and confer anything more than a vague explanation that each of the documents involved an attorney-client representation with Mr. Franklin. In light of HSBC's repeatedly stated concern that Mr. Franklin, although a lawyer, in many cases provided only non-legal services in his Clearinghouse capacity, Plaintiffs agreed to revisit those four documents and give HSBC a final position on them. HSBC requested that Plaintiffs provide it with that final position by 6:30 p.m. in light of the Court's deadline that day. Plaintiffs did not respond by 6:30 p.m. Instead, they wrote to HSBC at 11:59 p.m. and explained that they would produce one of the four remaining Talcott Franklin documents to HSBC, but would withhold or produce only in redacted form the three others. At 12:04 a.m., after the Court's deadline, Plaintiffs wrote to the Court and unilaterally provided as HSBC's exemplars the three remaining Talcott Franklin documents without any input from HSBC. In doing so, they provided to the Court detailed explanations of the three documents that they never shared with HSBC during the meet and confer. If Plaintiffs had provided those detailed explanations to HSBC, HSBC would have agreed that there was no apparent issue with respect to the claim of privilege for those three documents and that they could be withheld or produced in redacted form.

The parties' now months-long meet and confer process concerning *Plaintiffs' privilege logs*—and Plaintiffs' subsequent revised privilege logs and document productions—confirm that many of Plaintiffs' privilege calls are worthy of challenge. But each time HSBC raises issues

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
July 7, 2017
Page 3

with Plaintiffs' logs, Plaintiffs adopt an approach of delay, followed by selective production, and typically counter attack.  Plaintiffs have now promised three times to revise their privilege logs.  In doing so, they have slowly trickled out new document productions without addressing global deficiencies.[1]  The effect of this approach has been a continued delay by Plaintiffs in the production of documents and their final privilege logs, under circumstances in which HSBC is unable to submit proper exemplars to the Court for challenge and review because the target of which documents are claimed by Plaintiffs to be privileged is ever moving.

Nevertheless, HSBC believes that the issues surrounding the thirteen documents HSBC identified for discussion have been resolved—either because Plaintiffs conceded most of the documents should have been produced or because Plaintiffs finally provided explanations about the remaining documents in their 12:04 a.m. letter to the Court.  Plaintiffs now have committed to revising their logs and producing additional documents consistent with the principles the parties discussed relating to the thirteen identified documents.  There is, therefore, no issue for the Court to decide at this juncture.  If, however, problems remain with Plaintiffs' third revised privilege log (which HSBC has yet to receive), HSBC requests the opportunity to submit exemplars for the Court's *in camera* review after it has a chance to review the revised log.

**Exhibit 8 documents**.  The Court's June 26 Order required the *BlackRock* Plaintiffs to submit *in camera* all of the documents identified in Exhibit 8 to HSBC's June 15, 2017 letter.  ECF 412.  HSBC does not have a record of those documents being submitted by Plaintiffs.  Accordingly, HSBC believes those documents still need to be submitted in accordance with the Court's Order.

**HSBC's privilege log.**  Finally, I write briefly to address the final paragraph of Plaintiffs' July 5 letter, which unfortunately follows Plaintiffs' pattern in this case of raising "tit for tat" discovery disputes, which this Court previously and appropriately has discouraged.  Plaintiffs imply in this final paragraph that the parties have been continuing to meet and confer about *HSBC's privilege log* and that, as a result, Plaintiffs may require *imminent* relief.  This assertion is both inaccurate and hyperbole.  HSBC provided Plaintiffs with HSBC's privilege log on February 10, 2017, more than 4 months before the close of fact discovery.  Unlike HSBC, Plaintiffs raised *no* issues with HSBC's log between February 10 and the close of party fact discovery in June (which Plaintiffs previously have argued to the Court took place on May 1, except for certain specifically identified party depositions).  Instead of timely raising purported concerns with HSBC's log, Plaintiffs raised issues with HSBC's log for the first time on Monday, July 3, after the close of fact discovery and after sitting on HSBC's log for nearly 5 months.  Moreover, in an obvious effort to deflect attention from their own log, Plaintiffs attempted to inject their new questions concerning HSBC's log into the Court-ordered meet and confer discussion concerning Plaintiffs' log.  Plaintiffs have unjustifiably delayed raising purported issues with HSBC's log.  In any event, however, HSBC will need time to look into Plaintiffs' questions, and there is no imminent dispute for the Court to resolve at this time.

---

[1] Just yesterday, Plaintiffs produced additional documents, including 45,000 pages from TIAA.

WILLIAMS & CONNOLLY LLP

Honorable Sarah Netburn
July 7, 2017
Page 4

\* \* \* \* \* \* \* \* \* \*

  In keeping with the Court's June 30 Order, I have reviewed the Court's prior guidance on assertions of privilege in this coordinated action and the separate Wells Fargo action. It is my understanding that the subject of this letter has not yet been addressed by a previous order. However, in light of the above facts, HSBC does not believe there is a dispute to resolve at this time.

         Sincerely,

         /s/ Amy E. Murphy
         Amy E. Murphy

cc: Counsel of record